# United States District Court
# District of Utah

**Gary P. Serdar**
Clerk of Court

**Alison J. Adams**
Chief Deputy Clerk

June 30, 2025

Jacob C. Shorter
GOMBOS LEYTON PC
11350 RANDOM HILLS RD STE 400
FAIRFAX, VA 22030

And Counsel of Record

RE: NOTICE OF APPEAL
United States of America et al v. Stevens-Henager College, Inc et al
Plaintiff/Appellee Defendants/Appellants
Lower Docket: 2:15-cv-00119-JNP

The notice of appeal for this case has been filed.

**APPOINTED** Counsel for the appellant is instructed to download the "Initial Appeal Documents and Instructions" for this appeal from www.ca10.uscourts.gov Please follow the instructions for Transcript Order Form and Docketing Statement (all parties represented by counsel) regarding counsel's responsibility for compliance. For specific requirements concerning transcripts, records on appeal, briefs and appendices to briefs, please refer to the Federal Rules of Appellate Procedure and the Rules of the Tenth Circuit Court of Appeals. Rules of the Tenth Circuit are available at www.ca10.uscourts.gov.

Counsel and the Tenth Circuit will receive the following via CM/ECF (If counsel or party are not e-filers, they will receive these documents by mail): Order/Judgment being appealed from, Notice of Appeal, Letter of Transmission of the Preliminary Record on Appeal, Docket Sheet. This case contains sealed documents.

Sincerely,

Gary P. Serdar, Clerk

By:/s/
Jennifer Jensen
Generalist Clerk

**cc**: Clerk, U.S. Court of Appeals, Tenth Circuit
Court Reporter: Patti Walker, Laura W. Robinson
District: 1088
Jurisdiction: Federal Question
Fee Status: Not Paid

Judge Jill N. Parrish
Counsel of Record
Division: Central

APPEAL,CLOSED,TRANS_IN

Email All Attys
Email All Attys and Secondary Emails

# US District Court Electronic Case Filing System
# District of Utah (Central)
# CIVIL DOCKET FOR CASE #: 2:15−cv−00119−JNP

United States of America et al v. Stevens−Henager College, Inc et al
Assigned to: Judge Jill N. Parrish
Case in other court: Idaho, 1:13−cv−00009
Tenth Circuit, 25−04070
Cause: 375/1 False Claims Act − U.S. Plaintiff

Date Filed: 02/24/2015
Date Terminated: 05/02/2025
Jury Demand: Plaintiff
Nature of Suit: 375 Other Statutes: False Claims Act
Jurisdiction: Federal Question

**Plaintiff**

**United States of America**
*ex rel*

represented by

**Carra Sheppard Cadman**
US ATTORNEY'S OFFICE
111 S MAIN ST STE 1800
SALT LAKE CITY, UT 84111−2176
(801) 325−3371
Email: carra.cadman@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Jay D. Majors**
US DEPARTMENT OF JUSTICE (FED PROG−1100)
COMMERCIAL LITIGATION BRANCH
CIVIL FRAUD SECTION
1100 L ST NW
WASHINGTON, DC 20530
202−307−0340
Email: jay.majors@usdoj.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Jessica Toplin**
DOJ−CIV
1100 L ST NW 8142
WASHINGTON, DC 20530
202−616−0382
Email: jessica.toplin@usdoj.gov
*TERMINATED: 06/16/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Bar Number:*
*Bar Status:* ***Inactive***

**John N. Zarian**
NATIONAL COMMISSION FOR THE CERTIFICATION OF CRANE OPERATORS
5250 COMMERCE DR STE 100
MURRAY, UT 84107
801−363−2693
Email: jzarian@nccco.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status:* ***Registration Lapsed***

**Paden Gallagher**
US DEPARTMENT OF JUSTICE
175 N ST NE
WASHINGTON, DC 20002
202−307−0240
Email: paden.gallagher@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Anna M. Pugsley**
US ATTORNEY'S OFFICE
111 S MAIN ST STE 1800
SALT LAKE CITY, UT 84111−2176
(801)325−3236
*TERMINATED: 06/03/2016*
*Bar Number:*
*Bar Status:* ***Registration Lapsed***

**John W. Black**
US DEPARTMENT OF JUSTICE−CIVIL DIVISION
CIVIL DIVISION COMMERCIAL LITIGATION BRANCH
175 N ST NE 10TH FLR
WASHINGTON, DC 20002
202−305−2479
Email: john.w.black@usdoj.gov
*TERMINATED: 10/23/2020*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Kelly Elizabeth Phipps**

US DEPARTMENT OF JUSTICE
CIVIL DIVISION
175 N ST NE
WASHINGTON, DC 20002
202−307−0240
Email: kelly.e.phipps@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Melina Shiraldi**
US ATTORNEY'S OFFICE
111 S MAIN ST STE 1800
SALT LAKE CITY, UT 84111−2176
(801)325−3322
Email: melina.shiraldi@usdoj.gov
*TERMINATED: 06/16/2022*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Michael M Sawers**
US DEPARTMENT OF JUSTICE
450 5TH ST NW
WASHINGTON, DC 20001
202−532−4602
Email: michael.sawers@usdoj.gov
*TERMINATED: 07/29/2022*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: **Registration Lapsed***

**Sandra L. Steinvoort**
US ATTORNEY'S OFFICE
111 S MAIN ST STE 1800
SALT LAKE CITY, UT 84111−2176
(801) 325−3233
*TERMINATED: 06/20/2023*
*Bar Number: 5352*
*Bar Status: **Inactive***

**Plaintiff**

**Katie Brooks** represented by **John N. Zarian**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: **Registration Lapsed***

**Alissa M. Mellem**
PARSONS BEHLE & LATIMER

201 S MAIN ST STE 1800
PO BOX 45898
SALT LAKE CITY, UT 84145−0898
406−317−7240
Fax: 801−536−6111
Email: Amellem@parsonsbehle.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Brandon J. Mark**
PARSONS BEHLE & LATIMER
201 S MAIN ST STE 1800
PO BOX 45898
SALT LAKE CITY, UT 84145−0898
(801)536−6958
Email: bmark@parsonsbehle.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Joseph M. Stultz**
YORK HOWELL & GUYMON
10610 S JORDAN GATEWAY STE 200
SOUTH JORDAN, UT 84095
(801)527−1040
Email: joe@yorkhowell.com
*TERMINATED: 05/16/2016*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Ruth J. Hackford−Peer**
JAMES DODGE RUSSELL & STEPHENS
545 E 300 S
SALT LAKE CITY, UT 84102
801−363−6363
Email: rhackford−peer@jdrslaw.com
*TERMINATED: 12/16/2016*
*Bar Number:*
*Bar Status: Active*

**Plaintiff**

**Nannette Wride** represented by **John N. Zarian**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*

*Bar Status:* ***Registration Lapsed***

**Alissa M. Mellem**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Brandon J. Mark**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Joseph M. Stultz**
(See above for address)
*TERMINATED: 05/16/2016*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Ruth J. Hackford−Peer**
(See above for address)
*TERMINATED: 12/16/2016*
*Bar Number:*
*Bar Status: Active*

V.

**Intervenor Plaintiff**

**United States of America** represented by **Carra Sheppard Cadman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Jay D. Majors**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Jeffrey Albert McSorley**
US DEPARTMENT OF JUSTICE
175 N ST NE
WASHINGTON, DC 20002

202−307−0240
Email: jeffrey.a.mcsorley@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Paden Gallagher**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Anna M. Pugsley**
(See above for address)
*TERMINATED: 06/03/2016*
*Bar Number:*
*Bar Status:* ***Registration Lapsed***

**John W. Black**
(See above for address)
*TERMINATED: 10/23/2020*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Melina Shiraldi**
(See above for address)
*TERMINATED: 06/16/2022*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Federal*

**Sandra L. Steinvoort**
(See above for address)
*TERMINATED: 06/20/2023*
*Bar Number: 5352*
*Bar Status:* ***Inactive***

V.

**Defendant**

**Stevens−Henager College**
*a Utah corporation*

represented by **Cameron J. Cutler**
SNELL & WILMER LLP
15 W SOUTH TEMPLE STE 1200
SALT LAKE CITY, UT 84101
801−257−1828
Fax: 801−257−1800
Email: ccutler@swlaw.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Paul W. Shakespear**
SNELL & WILMER LLP
15 W SOUTH TEMPLE STE 1200
SALT LAKE CITY, UT 84101
801−257−1972
Fax: 801−257−1800
Email: pshakespear@swlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Steven M. Gombos**
GOMBOS LEYTON PC
11350 RANDOM HILLS RD STE 400
FAIRFAX, VA 22030
(730)934−2660
Email: sgombos@glpclaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Alan L. Sullivan**
SNELL & WILMER LLP
111 S MAIN ST STE 600
SALT LAKE CITY, UT 84101
(801)257−1900
Email: asullivan@swlaw.com
*TERMINATED: 04/15/2025*
*Bar Number: 3152*
*Bar Status:* ***Registration Lapsed***

**Alexander Dushku**
KIRTON MCCONKIE
PO BOX 45120
SALT LAKE CITY, UT 84145−0120
(801)321−4810
Email: adushku@kmclaw.com
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 7712*
*Bar Status:* ***Registration Lapsed***

**Amber M. Mettler**
NO ADDRESS
NO ADDRESS 00000

*TERMINATED: 12/26/2017*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status:* ***Inactive***

**David A. Obuchowicz**
GOMBOS LEYTON PC
11350 RANDOM HILLS RD STE 400
FAIRFAX, VA 22030
(703)934−2660
Email: dobuchowicz@glpclaw.com
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Gerald M. Ritzert**
GOMBOS LEYTON PC
11350 RANDOM HILLS RD STE 400
FAIRFAX, VA 22030
(703)934−2660
Email: gritzert@glpclaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Jacob C. Shorter**
GOMBOS LEYTON PC
11350 RANDOM HILLS RD STE 400
FAIRFAX, VA 22030
(703)934−2660
Email: jshorter@glpclaw.com
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**R. Willis Orton**
GREEN SEED TECHNOLOGIES LLC
1411 W 1250 S STE 300
OREM, UT 84058
(801)597−8612
Email: willis.orton@greenseedtech.com
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 2484*
*Bar Status:* ***Registration Lapsed***

**Defendant**

**California College San Diego**
*a Utah corporation*

represented by **Paul W. Shakespear**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Bar Number:*
*Bar Status: Active*

**Steven M. Gombos**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Alan L. Sullivan**
(See above for address)
*TERMINATED: 04/15/2025*
*Bar Number: 3152*
*Bar Status:* ***Registration Lapsed***

**Alexander Dushku**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 7712*
*Bar Status:* ***Registration Lapsed***

**Amber M. Mettler**
(See above for address)
*TERMINATED: 12/26/2017*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status:* ***Inactive***

**Gerald M. Ritzert**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**R. Willis Orton**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 2484*
*Bar Status:* ***Registration Lapsed***

**Defendant**

**Collegeamerica Denver, Inc**
*a Colorado corporation*

represented by **Paul W. Shakespear**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Steven M. Gombos**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Alan L. Sullivan**
(See above for address)
*TERMINATED: 04/15/2025*
*Bar Number: 3152*
*Bar Status:* ***Registration Lapsed***

**Alexander Dushku**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 7712*
*Bar Status:* ***Registration Lapsed***

**Amber M. Mettler**
(See above for address)
*TERMINATED: 12/26/2017*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status:* ***Inactive***

**Gerald M. Ritzert**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**R. Willis Orton**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 2484*
*Bar Status:* ***Registration Lapsed***

**Defendant**

**Collegeamerica Arizona, Inc**
*a Colorado corporation*

represented by **Paul W. Shakespear**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Steven M. Gombos**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Alan L. Sullivan**
(See above for address)
*TERMINATED: 04/15/2025*
*Bar Number: 3152*
*Bar Status:* ***Registration Lapsed***

**Alexander Dushku**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 7712*
*Bar Status:* ***Registration Lapsed***

**Amber M. Mettler**
(See above for address)
*TERMINATED: 12/26/2017*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status:* ***Inactive***

**Gerald M. Ritzert**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**R. Willis Orton**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 2484*
*Bar Status:* ***Registration Lapsed***

**Defendant**

**Center for Excellence In Higher Education**
*an Indiana Corporation*

represented by

**Cameron J. Cutler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**David A. Obuchowicz**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Paul W. Shakespear**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Steven M. Gombos**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Alan L. Sullivan**
(See above for address)
*TERMINATED: 04/15/2025*
*Bar Number: 3152*
*Bar Status:* ***Registration Lapsed***

**Alexander Dushku**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 7712*
*Bar Status:* ***Registration Lapsed***

**Amber M. Mettler**
(See above for address)
*TERMINATED: 12/26/2017*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status:* ***Inactive***

**Gerald M. Ritzert**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Jacob C. Shorter**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*

*Bar Status: Pro Hac Vice*

**R. Willis Orton**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 2484*
*Bar Status:* ***Registration Lapsed***

**Defendant**

**Carl Barney** represented by **Paul W. Shakespear**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Steven M. Gombos**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Alan L. Sullivan**
(See above for address)
*TERMINATED: 04/15/2025*
*Bar Number: 3152*
*Bar Status:* ***Registration Lapsed***

**Alexander Dushku**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 7712*
*Bar Status:* ***Registration Lapsed***

**Amber M. Mettler**
(See above for address)
*TERMINATED: 12/26/2017*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status:* ***Inactive***

**Gerald M. Ritzert**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**R. Willis Orton**
(See above for address)
*TERMINATED: 06/12/2015*
*ATTORNEY TO BE NOTICED*
*Bar Number: 2484*
*Bar Status:* ***Registration Lapsed***

**Defendant**

**Shaw, Mumford & Co., P.C.**
*an expired Utah Professional Corporation*

represented by **Eric G. Maxfield**
HOLLAND & HART LLP
222 S MAIN ST STE 2200
SALT LAKE CITY, UT 84101
801−799−5882
Email: egmaxfield@hollandhart.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number: 8668*
*Bar Status: Active*

**Defendant**

**Shaw & Co., P.C.**
*a Utah Professional Corporation*
*TERMINATED: 10/04/2017*

represented by **Eric G. Maxfield**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number: 8668*
*Bar Status: Active*

**Defendant**

**PricewaterhouseCoopers LLP**
*a Delaware Limited Liability Partnership*
*TERMINATED: 10/04/2017*

represented by **James S. Jardine**
RAY QUINNEY & NEBEKER PC
36 S STATE ST STE 1400
PO BOX 45385
SALT LAKE CITY, UT 84145−0385
(801) 532−1500
Email: jjardine@rqn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 1647*
*Bar Status: Active*

**Thomas G. Rafferty**
CRAVATH SWAINE & MOORE LLP
825 EIGHTH AVE
NEW YORK, NY 10019
(212)474−1000
Email: trafferty@cravath.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

*Bar Number:*
*Bar Status: Pro Hac Vice*

**Antony L. Ryan**
CRAVATH SWAINE & MOORE LLP
825 EIGHTH AVE
NEW YORK, NY 10019
(212)474−1000
Email: aryan@cravath.com
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Mark W. Pugsley**
PUGSLEY WOOD LLP
350 E 400 S STE 400
SALT LAKE CITY, UT 84111
801−370−9800
Email: mark@pugsleywood.com
*TERMINATED: 12/22/2021*
*Bar Number: 8253*
*Bar Status: Active*

**Samira Shah**
CRAVATH SWAINE & MOORE LLP
825 EIGHTH AVE
NEW YORK, NY 10019
(212)474−1000
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Defendant**

**Weworski & Associates**
*TERMINATED: 10/04/2017*

represented by **Bruce R. McAllister**
PERKINS MITCHELL POPE & MCALLISTER LLP
PO BOX 519
BOISE, ID 83701
(208)345−8600
Email: brmcallister@perkinsmitchell.com
*TERMINATED: 10/04/2017*
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Carsten A. Peterson**
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 MAIN ST STE 1000
PO BOX 1617
BOISE, ID 83701−1617

(208)344−6000
Email: cpeterson@hawleytroxell.com
*TERMINATED: 08/13/2015*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**Joseph E. Minnock**
MORGAN MINNOCK RICE & MINER
136 S MAIN STE 800
SALT LAKE CITY, UT 84101
801−531−7888
Email: jminnock@mmrm.com
*TERMINATED: 08/08/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 6281*
*Bar Status: Active*

**Leslie S. Brown**
PERKINS MITCHELL POPE &
MCALLISTER LLP
PO BOX 519
BOISE, ID 83701
(208)345−8600
Email: lsbrown@perkinsmitchell.com
*TERMINATED: 10/04/2017*
*LEAD ATTORNEY*
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**William G. Pope**
ANDERSON JULIAN & HULL
250 S FIFTH ST STE 700
BOISE, ID 83702
208−344−5800
Fax: 208−344−5510
Email: wpope@ajhlaw.com
*TERMINATED: 10/04/2017*
*Bar Number:*
*Bar Status:* ***Registration Lapsed***

**Movant**

**Duane Morris LLP** represented by **Tyson E. Hafen**
DUANE MORRIS LLP
100 N CITY PKWY STE 1560
LAS VEGAS, NV 89106
(702)868−2655
Email: tehafen@duanemorris.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**John J. Zefutie , Jr.**
DUANE MORRIS LLP
THE LEGAL CENTER
1037 RAYMOND BLVD STE 1800
NEWARK, NJ 07102
(973)424−2039
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Pro Hac Vice*

**Movant**

**Keith Zakarin** represented by **Tyson E. Hafen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Active*

**John J. Zefutie , Jr.**
(See above for address)
*PRO HAC VICE*
*Bar Number:*
*Bar Status: Pro Hac Vice*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/03/2013 | 1 | COMPLAINT against California College San Diego, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, − Does 1−500, Stevens−Henager College, Inc, filed by Nannette Wride, Katie Brooks, United States of America. (Attachments: # 1 Cover Sheet, # 2 Exhibit List, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 4 continued, # 8 Exhibit 4 continued, # 9 Exhibit 4 continued, # 10 Exhibit 4 continued, # 11 Exhibit 4 continued, # 12 Exhibit 4 final, # 13 Exhibit 5)(cjm)(Civil Filing Fee to be mailed.) [Transferred from Idaho on 2/24/2015.] (Entered: 01/04/2013) |
| 01/03/2013 | 3 | MOTION FOR PRO HAC VICE APPEARANCE by Brandon J Mark. John N Zarian appearing for Plaintiffs Katie Brooks, United States of America, Nannette Wride. Responses due by 1/28/2013 (Attachments: # 1 Certificate of Good Standing)(cjm)(PHV Fee to be mailed.) [Transferred from Idaho on 2/24/2015.] (Entered: 01/04/2013) |
| 01/03/2013 | 4 | MOTION FOR PRO HAC VICE APPEARANCE by Joseph M Stultz. John N Zarian appearing for Plaintiffs Katie Brooks, United States of America, Nannette Wride. Responses due by 1/28/2013 (Attachments: # 1 Certificate of Good Standing)(cjm)(PHV Fee to be mailed.) [Transferred from Idaho on 2/24/2015.] (Entered: 01/04/2013) |
| 01/08/2013 | | |

| | | |
|---|---|---|
| | | ***Set LC17 Flag (jlg) [Transferred from Idaho on 2/24/2015.] (Entered: 01/08/2013) |
| 01/08/2013 | | RECEIPT: for Civil filing fee and 2 Motions for Pro Hac Vice (doc 3&4) Fee Received $ 800.00, receipt # 8701 (st) [Transferred from Idaho on 2/24/2015.] (Entered: 01/14/2013) |
| 01/14/2013 | 5 | DOCKET ENTRY ORDER granting 3 , 4 Applications for Pro Hac Vice Appearance of attorneys Brandon J Mark and Joseph M Stultz for Katie Brooks and Nannette Wride. Per General Order 206, out−of−state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 01/14/2013) |
| 01/14/2013 | | ***Staff notes: Mailed doc 5 to Brandon Mark, Joseph Stultz, and John Zarian (st) [Transferred from Idaho on 2/24/2015.] (Entered: 01/14/2013) |
| 01/22/2013 | | ***Staff notes: Doc 6 has been emailed to jzarian@parsonsbehle.com and mailed to Brandon Mark and Joseph Stultz (st) [Transferred from Idaho on 2/24/2015.] (Entered: 01/22/2013) |
| 03/08/2013 | 7 | SEALED MOTION for Extension of Time.Amy S Howe appearing for Plaintiff United States of America. Responses due by 4/1/2013 (Attachments: # 1 Ex Parte Memorandum in Support)(jp) [Transferred from Idaho on 2/24/2015.] (Entered: 03/08/2013) |
| 03/13/2013 | 8 | ORDER re 7 Sealed Motion. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 03/13/2013) |
| 03/13/2013 | | ***Staff notes: Emailed Order (doc 8) to amy.howe@usdoj.gov, heather.crawford@usdoj.gov, and jzarian@parsonsbehle.com. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 03/13/2013) |
| 07/01/2013 | 9 | SEALED MOTION. Amy S Howe appearing for Plaintiff United States of America. Responses due by 7/25/2013 (Attachments: # 1 Ex Parte Memorandum in Support)(st) [Transferred from Idaho on 2/24/2015.] (Entered: 07/10/2013) |
| 07/12/2013 | | Set Deadlines/Hearings: Case Management deadline set for 10/15/2013 (Per Order, dkt 10) (st) [Transferred from Idaho on 2/24/2015.] (Entered: 07/12/2013) |
| 07/12/2013 | | ***Staff notes: Emailed a copy of the Order (dkt 10) to John Zarian and Amy Howe. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 07/12/2013) |
| 09/27/2013 | 11 | First AMENDED COMPLAINT against Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, − Does 1−500, Stevens−Henager College, Inc, filed by Nannette Wride, Katie Brooks, United States of America ex rel. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(cjm) [Transferred from Idaho on 2/24/2015.] (Entered: 09/27/2013) |
| 09/27/2013 | | ***Staff notes: emailed dkt #11 to JStultz@parsonsbehle.com>, jzarian@parsonsbehle.com. Also reminded attorneys Stultz and Mark to either register for ECF or log in and update their ECF user accounts to reflect their email addresses.(cjm) [Transferred from Idaho on 2/24/2015.] (Entered: 09/27/2013) |

| | | |
|---|---|---|
| 09/27/2013 | 12 | SUPPLEMENT of Exhibits 3 through 6 by Plaintiffs Katie Brooks, United States of America, Nannette Wride re 11 First Amended Complaint. (Attachments: # 1 Exhibit 4, # 2 Exhibit 5, # 3 Exhibit 5 continued, # 4 Exhibit 6)(cjm) [Transferred from Idaho on 2/24/2015.] (Entered: 09/27/2013) |
| 09/27/2013 | | ***Staff notes: emailed dkt #12 to JStultz@parsonsbehle.com>, jzarian@parsonsbehle.com.(cjm) [Transferred from Idaho on 2/24/2015.] (Entered: 09/27/2013) |
| 10/01/2013 | 13 | SEALED MOTION by Amy S Howe appearing for Plaintiff United States of America. Responses due by 10/25/2013 (Attachments: # 1 Memorandum in Support)(st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/15/2013) |
| 10/15/2013 | | ***Staff notes: Sealed Motion and attached Memorandum in Support (dkt #13) was sent to the judge's proposed orders box by the US Attorney's Office. Marci caught it in the proposed orders box and it has now been docketed. I have emailed Heather at the US Attorney's Office reminding her to email sealed documents to the docket clerk to be filed in the future. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/15/2013) |
| 10/17/2013 | 14 | SEALED ORDER re 13 Sealed Motion. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/17/2013) |
| 10/17/2013 | | Set/Reset Deadlines: Case Management deadline set for 2/14/2014. (Per sealed order, dkt 14) (st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/17/2013) |
| 10/17/2013 | | ***Staff notes: I emailed a copy of Sealed Order (dkt #14) to amy.howe@usdoj.gov, jzarian@parsonsbehle.com, bmark@parsonsbehle.com, and jstultz@parsonsbehle.com. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/17/2013) |
| 02/13/2014 | 15 | SEALED MOTION by USA. Responses due by 3/10/2014 (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(st) [Transferred from Idaho on 2/24/2015.] (Entered: 02/14/2014) |
| 02/13/2014 | 16 | SUPPLEMENT (Exhibit D) by USA re 15 SEALED MOTION. (Attachments: # 1 Exhibit E, # 2 Exhibit F, # 3 Exhibit G)(st) (Additional attachment(s) added on 2/14/2014: # 4 Exhibit H, # 5 Exhibit I) (st). [Transferred from Idaho on 2/24/2015.] (Entered: 02/14/2014) |
| 02/13/2014 | 17 | SUPPLEMENT (Exhibit J part 1) by USA re 15 SEALED MOTION. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 02/14/2014) |
| 02/13/2014 | 18 | SUPPLEMENT (Exhibit J part 2) by USA re 15 SEALED MOTION. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 02/14/2014) |
| 02/14/2014 | | ***Staff notes: Dkt #15−18 was emailed to the judge's proposed orders box by Heather Crawford with the US Attorney's Office. I emailed her letting her know that they have been filed and in the future to please send any documents to be filed in a sealed case to docketing and that only proposed orders are to be emailed to the judge's box. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 02/14/2014) |
| 03/03/2014 | 19 | SEALED ORDER re 15 Sealed Motion. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of |

| | | |
|---|---|---|
| | | Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 03/04/2014) |
| 03/04/2014 | | ***Staff notes: I emailed a copy of Sealed Order (dkt #19) to amy.howe@usdoj.gov, jzarian@parsonsbehle.com, bmark@parsonsbehle.com, jstultz@parsonsbehle.com, and heather.crawford@usdoj.gov. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 03/04/2014) |
| 03/05/2014 | | Set Deadlines: Case Management deadline set for 3/17/2014 for the case to be unsealed and for plaintiff to serve the complaint per Order 19 . (jlg) [Transferred from Idaho on 2/24/2015.] (Entered: 03/05/2014) |
| 03/06/2014 | 20 | SEALED MOTION by Amy S Howe appearing for Plaintiff United States of America. Responses due 3/31/2014. (st) Modified on 3/6/2014 to edit docket text. [Transferred from Idaho on 2/24/2015.] (Entered: 03/06/2014) |
| 03/11/2014 | 21 | SEALED ORDER re 20 SEALED MOTION filed by United States of America. Signed by Judge B. Lynn Winmill. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 03/11/2014) |
| 03/11/2014 | | ***Staff notes: I emailed a copy of Sealed Order (dkt #21) to amy.howe@usdoj.gov, heather.crawford@usdoj.gov, jzarian@parsonsbehle.com, bmark@parsonsbehle.com, and jstultz@parsonsbehle.com. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 03/11/2014) |
| 03/12/2014 | 22 | Summons Issued as to Carl Barney and Center for Excellence in Higher Education, Inc. (Print attached Summons for service.) (Attachments: # 1 Center for Exellence in Higher Education, Inc. summons)(st) [Transferred from Idaho on 2/24/2015.] (Entered: 03/12/2014) |
| 03/12/2014 | | ***Staff notes<: I emailed summons issued for Carl Barney and Center for Excellence in Higher Education, Inc. (dkt #22) to Alex Nelson with Parsons Behle & Latimer. /font>(st) [Transferred from Idaho on 2/24/2015.] (Entered: 03/12/2014) |
| 04/07/2014 | 23 | United States' Notice of Election to Intervene in Part and to Decline to Intervene in Part. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 04/07/2014) |
| 04/08/2014 | 24 | ORDER. IT IS ORDERED that: This entire case shall be unsealed as of the date of this order. The relators, using due diligence, shall serve their complaint upon defendants as previously ordered. The United States shall serve its complaint in intervention upon defendants, together with this order, within 21 days of the date of this order. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 04/09/2014) |
| 04/09/2014 | 25 | NOTICE by Katie Brooks, Nannette Wride *Notice of Attempted Service of Carl Barney* (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 04/09/2014) |
| 04/09/2014 | 26 | DECLARATION of James Thomas re 25 Notice (Other) filed by Katie Brooks, Nannette Wride . (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 04/09/2014) |
| 04/10/2014 | 27 | SUMMONS Returned Executed by Nannette Wride, Katie Brooks. Center for Excellence in Higher Education, Inc served on 4/8/2014, answer due 4/29/2014. (Attachments: # 1 Exhibit A − Affidavit of Service)(Mark, Brandon) [Transferred |

| | | |
|---|---|---|
| | | from Idaho on 2/24/2015.] (Entered: 04/10/2014) |
| 04/11/2014 | | ***Staff notes: I spoke with attorney Brandon Mark about dkt #25 and 26 and he confirmed that even though these documents say sealed on the first page, they were not intended to be sealed. He had just put sealed on them because the case used to be sealed. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 04/11/2014) |
| 04/15/2014 | 28 | NOTICE by Katie Brooks, Nannette Wride *Second Notice of Attempted Service of Carl Barney* (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 04/15/2014) |
| 04/15/2014 | 29 | DECLARATION of James P. Thomas re 28 Notice (Other) filed by Katie Brooks, Nannette Wride . (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 04/15/2014) |
| 04/24/2014 | 30 | NOTICE of Appearance by Eric B Swartz on behalf of Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc (Swartz, Eric)[Transferred from Idaho on 2/24/2015.] (Entered: 04/24/2014) |
| 04/24/2014 | 31 | MOTION FOR PRO HAC VICE APPEARANCE by Steven M. Gombos. ( Filing fee $ 225 receipt number 0976−1151260.)Eric B Swartz appearing for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc. Responses due by 5/19/2014 (Swartz, Eric) [Transferred from Idaho on 2/24/2015.] (Entered: 04/24/2014) |
| 04/24/2014 | 32 | MOTION FOR PRO HAC VICE APPEARANCE by Gerald M. Ritzert. ( Filing fee $ 225 receipt number 0976−1151262.)Eric B Swartz appearing for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc. Responses due by 5/19/2014 (Swartz, Eric) [Transferred from Idaho on 2/24/2015.] (Entered: 04/24/2014) |
| 04/25/2014 | 33 | Joint MOTION Modify Court Order (ECF No. 24) re 24 Order, Case Unsealed,, Amy S Howe appearing for Plaintiff United States of America. Responses due by 5/19/2014 (Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 04/25/2014) |
| 04/25/2014 | 34 | DOCKET ENTRY ORDER approving 31 Motion for Pro Hac Vice Appearance of attorney Steven M Gombos for California College San Diego, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, and Stevens−Henager College, Inc.; approving 32 Motion for Pro Hac Vice Appearance of attorney Gerald M Ritzert for California College San Diego, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, and Stevens−Henager College, Inc. Per General Order 206, out−of−state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 04/25/2014) |
| 04/28/2014 | 35 | ORDER ON JOINT MOTION TO MODIFY THE COURT'S ORDER OF APRIL 9, 2014 (ECF NO. 24) granting in part and denying in part 33 Motion. IT IS HEREBY ORDERED that the Court's prior order 24 is modified as follows: The United States will file its Complaint in Intervention no later than 5/2/2014. The Relators may |

| | | |
|---|---|---|
| | | amend their Complaint up to and including 5/13/2014. The Defendants will have until 7/14/2014 to file any responsive pleading. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 04/28/2014) |
| 04/28/2014 | | Set/Reset Deadlines: Defendants' responsive pleading due 7/14/2014. Relators may amend their complaint by 5/13/2014. USA to file complaint in intervention by 5/2/2014. (Per Order, dkt #35) (st) [Transferred from Idaho on 2/24/2015.] (Entered: 04/29/2014) |
| 04/29/2014 | 36 | NOTICE by Katie Brooks, Nannette Wride *Third Notice of Attempted Service of Carl Barney* (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 04/29/2014) |
| 04/29/2014 | 37 | DECLARATION of James Thomas re 36 Notice (Other) filed by Katie Brooks, Nannette Wride *Third Declaration of James Thomas About Attempts to Serve Carl Barney*. (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 04/29/2014) |
| 04/30/2014 | 38 | ERRATA re 31 Motion for Pro Hac Vice Appearance by Steven M Gombos for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, and Stevens−Henager College, Inc. (Swartz, Eric) (Modified on 5/1/2014 to replace main document so it is not in a fillable format and to link to dkt #31.) (st). [Transferred from Idaho on 2/24/2015.] (Entered: 04/30/2014) |
| 04/30/2014 | 39 | ERRATA re 32 Motion for Pro Hac Vice Appearance by Gerald M. Ritzert for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, and Stevens−Henager College, Inc. (Swartz, Eric) (Modified on 5/1/2014 to replace main document so it is not in a fillable format and to link to dkt #32) (st). [Transferred from Idaho on 2/24/2015.] (Entered: 04/30/2014) |
| 04/30/2014 | 40 | NOTICE by Katie Brooks, Nannette Wride *Fourth Notice of Attempted Service* (Stultz, Joseph) [Transferred from Idaho on 2/24/2015.] (Entered: 04/30/2014) |
| 05/02/2014 | 41 | COMPLAINT *in Intervention Under the FCA and Common Law for Unjust Enrichment and Payment by Mistake* against Center for Excellence in Higher Education, Inc, Stevens−Henager College, Inc, filed by United States of America. (Attachments: # 1 Cover Sheet, # 2 Summons)(Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 05/02/2014) |
| 05/02/2014 | 42 | MOTION to Seal *Exhibits A−K to 41 Complaint* Amy S Howe appearing for Plaintiff United States of America. Responses due by 5/27/2014 (Howe, Amy) Modified on 5/6/2014 to link to dkt #41 (st). [Transferred from Idaho on 2/24/2015.] (Entered: 05/02/2014) |
| 05/02/2014 | 43 | MOTION to Seal *Exhibits A−K to Complaint* . (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D Part 1, # 4 Exhibit D Part 2, # 5 Exhibit E Part 1, # 6 Exhibit E Part 2, # 7 Exhibit F Part 1, # 8 Exhibit F Part 2, # 9 Exhibit F Part 3, # 10 Exhibit F Part 4, # 11 Exhibit F Part 5, # 12 Exhibit F Part 6, # 13 Exhibit F Part 7, # 14 Exhibit F Part 8, # 15 Exhibit F Part 9, # 16 Exhibit F Part 10, # 17 Exhibit F Part 11, # 18 Exhibit G Part 1, # 19 Exhibit G Part 2, # 20 Exhibit G Part 3, # 21 Exhibit H, # 22 Exhibit I, # 23 Exhibit J, # 24 Exhibit K)(Howe, Amy) [Transferred from Idaho on |

| | | |
|---|---|---|
| | | 2/24/2015.] Modified by unsealing entry and adding sealed document text on 8/27/2015 (rks). Modified on 7/28/2016 by unsealing entries − motion to seal exhibits withdrawn(jlw). (Entered: 05/02/2014) |
| 05/05/2014 | 44 | CERTIFICATE OF SERVICE by United States of America re 42 MOTION to Seal *Exhibits A−K to Complaint*, 41 Complaint, 43 Sealed Document,, (Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 05/05/2014) |
| 05/06/2014 | 45 | Summons Issued as to Center for Excellence in Higher Education, Inc. (Print attached Summons for service.) (st) [Transferred from Idaho on 2/24/2015.] (Entered: 05/06/2014) |
| 05/07/2014 | 46 | WAIVER OF SERVICE Returned Executed by United States of America. Center for Excellence in Higher Education, Inc waiver sent on 5/7/2014, answer due 7/7/2014. (Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 05/07/2014) |
| 05/07/2014 | 47 | MOTION FOR PRO HAC VICE APPEARANCE by Alissa M. Mellem. ( Filing fee $ 225 receipt number 0976−1156769.)John N Zarian appearing for Plaintiffs Katie Brooks, Nannette Wride. Responses due by 6/2/2014 (Zarian, John) [Transferred from Idaho on 2/24/2015.] (Entered: 05/07/2014) |
| 05/07/2014 | | CORRECTIVE ENTRY − The entry docket number 46 Waiver of Service Executed filed by United States of America was filed using the wrong event. The filing party shall re−submit their filing using the event Summons Returned Executed.(st) [Transferred from Idaho on 2/24/2015.] (Entered: 05/07/2014) |
| 05/07/2014 | 48 | SUMMONS Returned Executed as to Center for Excellence in Higher Education, Inc. by United States of America. Answer due 7/14/2014 (per Order, docket number 35). (Howe, Amy) Modified on 5/8/2014 to include answer deadline and reference docket #35 (st). [Transferred from Idaho on 2/24/2015.] (Entered: 05/07/2014) |
| 05/08/2014 | | Set/Reset Deadlines: Center for Excellence in Higher Education, Inc answer due 7/14/2014 re 48 Summons Returned Executed (per Order, dkt #35). (st) [Transferred from Idaho on 2/24/2015.] (Entered: 05/08/2014) |
| 05/08/2014 | 49 | DOCKET ENTRY ORDER approving 47 Motion for Pro Hac Vice Appearance of attorney Alissa M Mellem for Katie Brooks and Nannette Wride. Per General Order 206, out−of−state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 05/08/2014) |
| 05/08/2014 | | ***Staff notes: Per LC17 (Marci), I reset the answer deadline for Center for Excellence in Higher Education, Inc. to 7/14/2014 (re Summons Returned Executed, dkt #48 and per Order, dkt #35).(st) [Transferred from Idaho on 2/24/2015.] (Entered: 05/08/2014) |
| 05/12/2014 | 50 | MOTION to Seal Document *Partially Seal Second Amended Complaint* Brandon J Mark appearing for Plaintiffs Katie Brooks, Nannette Wride. Responses due by 6/5/2014 (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 05/12/2014) |
| 05/12/2014 | 51 | MEMORANDUM in Support re 50 MOTION to Seal Document *Partially Seal Second Amended Complaint* filed by Katie Brooks, Nannette Wride.(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 05/12/2014) |

| | | |
|---|---|---|
| 05/13/2014 | 52 | STRICKEN per 468 MEMORANDUM DECISION AND ORDER ~~AMENDED COMPLAINT *(Second) (Redacted)* against Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, − Does 1−500, Stevens−Henager College, Inc, filed by Nannette Wride, Katie Brooks. (Attachments: # 1 Exhibit 1 − Program Participation Agreement, # 2 Exhibit 2 − Audit Guide, # 3 Exhibit 3 − Standards of Accreditation, # 4 Exhibit 4 − Example of G5 Certification, # 5 Exhibit 5 Part 1 − Admissions Consultant Manual, # 6 Exhibit 5 Part 2 − Admissions Consultant Manual, # 7 Exhibit 6 − Procedure Directive)(Mark, Brandon) [Transferred from Idaho on 2/24/2015.]~~ Modified on 1/14/2019 (jds). (Entered: 05/13/2014) |
| 05/14/2014 | 53 | Summons Issued as to Pricewaterhousecoopers LLP, Shaw & Co., P.C., and Shaw, Mumford & Co., P.C. (Print attached Summons for service.) (Attachments: # 1 Shaw & Co., P.C. summons, # 2 Shaw, Mumford & Co., P.C. summons)(st) [Transferred from Idaho on 2/24/2015.] (Entered: 05/14/2014) |
| 05/16/2014 | 54 | SUMMONS Returned Executed by Nannette Wride, Katie Brooks. Pricewaterhousecoopers LLP served on 5/15/2014, answer due 6/5/2014. (Attachments: # 1 Exhibit A − Proof of Service)(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 05/16/2014) |
| 05/16/2014 | 55 | NOTICE by Katie Brooks, Nannette Wride *Fifth Notice of Attempted Service* (Stultz, Joseph) [Transferred from Idaho on 2/24/2015.] (Entered: 05/16/2014) |
| 05/20/2014 | 56 | NOTICE by United States of America re 50 MOTION to Seal Document *Partially Seal Second Amended Complaint of Non−Opposition* (Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 05/20/2014) |
| 05/20/2014 | 57 | ERRATA by Plaintiff United States of America re 56 Notice (Other) *of Non−Opposition*. (Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 05/20/2014) |
| 05/23/2014 | 58 | NOTICE by Katie Brooks, Nannette Wride re 42 MOTION to Seal *Exhibits A−K to Complaint Non−Opposition to Motion* (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 05/23/2014) |
| 05/27/2014 | 59 | SUMMONS Returned Executed by Nannette Wride, Katie Brooks. Shaw & Co., P.C. served on 5/19/2014, answer due 6/9/2014. (Attachments: # 1 Exhibit A − Proof of Service)(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 05/27/2014) |
| 05/27/2014 | 60 | SUMMONS Returned Executed by Nannette Wride, Katie Brooks. Shaw, Mumford & Co., P.C. served on 5/19/2014, answer due 6/9/2014. (Attachments: # 1 Exhibit A − Proof of Service)(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 05/27/2014) |
| 05/27/2014 | 61 | SUMMONS Returned Executed by Nannette Wride, Katie Brooks. Carl Barney served on 5/22/2014, answer due 6/12/2014. (Attachments: # 1 Exhibit A − Proof of Service)(Mark, Brandon) Modified on 5/28/2014 to correct service date and answer due date (st). [Transferred from Idaho on 2/24/2015.] (Entered: 05/27/2014) |
| 05/27/2014 | | CORRECTIVE ENTRY − Docket number 56 Notice (Other) filed by United States of America was filed using the wrong event. The filing party shall re−submit their filing using the event 'Response to Motion' located under civil events, motions and related filings, responses and replies. (st) [Transferred from Idaho on 2/24/2015.] |

| | | |
|---|---|---|
| | | (Entered: 05/27/2014) |
| 05/28/2014 | | CORRECTIVE ENTRY − Docket number 58 Notice (Other) filed by Nannette Wride, Katie Brooks was filed using the wrong event. The filing party shall re−submit their filing using the event 'Response to Motion' located under civil events, motions and related filings, responses and replies. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 05/28/2014) |
| 05/28/2014 | 62 | RESPONSE to Motion re 42 MOTION to Seal *Exhibits A−K to Complaint Notice of Non−Opposition* filed by Katie Brooks, Nannette Wride. Replies due by 6/16/2014.(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 05/28/2014) |
| 05/28/2014 | 63 | RESPONSE to Motion re 50 MOTION to Seal Document *Partially Seal Second Amended Complaint* filed by United States of America. Replies due by 6/16/2014.(Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 05/28/2014) |
| 05/28/2014 | | Set/Reset Deadlines: Carl Barney answer due 6/12/2014. (Per summons returned executed, dkt #61.) (st) [Transferred from Idaho on 2/24/2015.] (Entered: 05/28/2014) |
| 06/05/2014 | 64 | NOTICE of Appearance by A. Dean Bennett on behalf of Shaw & Co., P.C., Shaw, Mumford & Co., P.C. (Bennett, A.) [Transferred from Idaho on 2/24/2015.] (Entered: 06/05/2014) |
| 06/05/2014 | 65 | MOTION FOR PRO HAC VICE APPEARANCE by Eric G. Maxfield. ( Filing fee $ 225 receipt number 0976−1168321.)A. Dean Bennett appearing for Defendants Shaw & Co., P.C., Shaw, Mumford & Co., P.C.. Responses due by 6/30/2014 (Bennett, A.) [Transferred from Idaho on 2/24/2015.] (Entered: 06/05/2014) |
| 06/06/2014 | 66 | DOCKET ENTRY ORDER approving 65 Motion for Pro Hac Vice Appearance of attorney Eric G Maxfield for Shaw & Co., P.C. and Shaw, Mumford & Co., P.C. Per General Order 206, out−of−state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 06/06/2014) |
| 06/10/2014 | 67 | MOTION for Extension of Time to File Response/Reply *entitled Joint Motion to Extend Deadline to File Responsive Pleadings* Eric B Swartz appearing for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc. Responses due by 7/7/2014 (Swartz, Eric) [Transferred from Idaho on 2/24/2015.] (Entered: 06/10/2014) |
| 06/11/2014 | 68 | NOTICE of Appearance by Richard H Greener on behalf of Pricewaterhousecoopers LLP (Greener, Richard) [Transferred from Idaho on 2/24/2015.] (Entered: 06/11/2014) |
| 06/27/2014 | 69 | MOTION FOR PRO HAC VICE APPEARANCE by Antony L. Ryan. ( Filing fee $ 225 receipt number 0976−1177214.)Richard H Greener appearing for Defendant Pricewaterhousecoopers LLP. Responses due by 7/21/2014 (Greener, Richard) [Transferred from Idaho on 2/24/2015.] (Entered: 06/27/2014) |
| 06/27/2014 | 70 | MOTION FOR PRO HAC VICE APPEARANCE by Thomas G. Rafferty. ( Filing fee $ 225 receipt number 0976−1177220.)Richard H Greener appearing for |

| | | |
|---|---|---|
| | | Defendant Pricewaterhousecoopers LLP. Responses due by 7/21/2014 (Greener, Richard) [Transferred from Idaho on 2/24/2015.] (Entered: 06/27/2014) |
| 06/27/2014 | 71 | MOTION FOR PRO HAC VICE APPEARANCE by Samira Shah. ( Filing fee $ 225 receipt number 0976−1177226.)Richard H Greener appearing for Defendant Pricewaterhousecoopers LLP. Responses due by 7/21/2014 (Greener, Richard) [Transferred from Idaho on 2/24/2015.] (Entered: 06/27/2014) |
| 06/27/2014 | 72 | DOCKET ENTRY ORDER approving 69 Motion for Pro Hac Vice Appearance of attorney Antony L Ryan for Pricewaterhousecoopers LLP; approving 70 Motion for Pro Hac Vice Appearance of attorney Thomas G Rafferty for Pricewaterhousecoopers LLP; approving 71 Motion for Pro Hac Vice Appearance of attorney Samira Shah for Pricewaterhousecoopers LLP. Per General Order 206, out−of−state counsel shall immediately register for ECF. (Notice sent to CM/ECF Registration Clerk) (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 06/27/2014) |
| 07/02/2014 | 73 | DOCKET ENTRY ORDER: Relators shall submit an unredacted version of the Second Amended Complaint for the Courts in camera review. Relators shall email a copy of this document to the Court by no later than July 3, 2014, at the following address: blw_orders@id.uscourts.gov. Signed by Judge B. Lynn Winmill. (mls) [Transferred from Idaho on 2/24/2015.] (Entered: 07/02/2014) |
| 07/07/2014 | 74 | ORDER. IT IS ORDERED that The United States' Motion to Seal Exhibits A through K to its Complaint in Intervention 42 is DENIED WITHOUT PREJUDICE. Relators' Motion to Partially Seal the Second Amended Complaint 50 is GRANTED. The parties' Joint Motion to Extend Deadline to File Responsive Pleadings 67 is GRANTED. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 07/07/2014) |
| 07/08/2014 | 75 | NOTICE of Appearance by Jay D Majors on behalf of United States of America (Majors, Jay) [Transferred from Idaho on 2/24/2015.] (Entered: 07/08/2014) |
| 08/07/2014 | 76 | MOTION to Seal Document 43 Sealed Document,, Gerald M Ritzert appearing for Defendant Stevens−Henager College, Inc. Responses due by 9/2/2014 (Ritzert, Gerald) [Transferred from Idaho on 2/24/2015.] (Entered: 08/07/2014) |
| 08/07/2014 | 77 | Memorandum in Support re 76 Motion to Seal Document 43 Sealed Document. Gerald M Ritzert appearing for Defendant Stevens−Henager College, Inc. (Attachments: # 1 Declaration in Support, # 2 Proposed Order)(Ritzert, Gerald) Modified on 8/8/2014 to edit document title in the docket text, link to dkt #76, remove the response deadline from the docket text and terminate document as a motion since it is not a motion (st). [Transferred from Idaho on 2/24/2015.] (Entered: 08/07/2014) |
| 08/08/2014 | | ***Motions terminated: 77 MOTION to Seal Document 43 Sealed Document, *Memorandum in Support* filed by Stevens−Henager College, Inc. Document terminated because it is not a motion. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 08/08/2014) |
| 08/08/2014 | | CORRECTIVE ENTRY − Document number 77 MOTION to Seal Document 43 Sealed Document, *Memorandum in Support* filed by Stevens−Henager College, Inc was filed using the wrong event. This was filed as a Motion to Seal, but it is a |

| | | |
|---|---|---|
| | | Memorandum in Support of (dkt #76) Motion to Seal. The docket text has been fixed. In addition, pursuant to the ECF Procedures, section 12B, all proposed orders are to be submitted by email to the appropriate Judges proposed order email box. The filing party shall re−submit their proposed order.(st) [Transferred from Idaho on 2/24/2015.] (Entered: 08/08/2014) |
| 08/29/2014 | 78 | RESPONSE to Motion re 76 MOTION to Seal Document 43 Sealed Document,, *Notice of Non−Opposition* filed by United States of America. Replies due by 9/15/2014.(Majors, Jay) [Transferred from Idaho on 2/24/2015.] (Entered: 08/29/2014) |
| 09/02/2014 | 79 | RESPONSE to Motion re 76 MOTION to Seal Document 43 Sealed Document,, filed by Katie Brooks, Nannette Wride. Replies due by 9/19/2014.(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 09/02/2014) |
| 09/02/2014 | 80 | DECLARATION of Nannette Wride re 79 Response to Motion filed by Katie Brooks, Nannette Wride . (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 09/02/2014) |
| 09/02/2014 | 81 | DECLARATION of Katie Brooks re 79 Response to Motion filed by Katie Brooks, Nannette Wride . (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 09/02/2014) |
| 09/02/2014 | 82 | DECLARATION of Craig Hinson re 79 Response to Motion filed by Katie Brooks, Nannette Wride . (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 09/02/2014) |
| 09/02/2014 | 83 | DECLARATION of Debbi Potts re 79 Response to Motion filed by Katie Brooks, Nannette Wride . (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 09/02/2014) |
| 09/04/2014 | | ***Staff notes: Sent QC mailer to Brandon Mark to let him know for future reference that documents supporting his response can be filed as attachments to the response (re dkt #80−83). (st) [Transferred from Idaho on 2/24/2015.] (Entered: 09/04/2014) |
| 09/04/2014 | 84 | NOTICE by United States of America *of Election Not to Intervene in the New Claims inthe Relators' Second Amended Complaint* (Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 09/04/2014) |
| 09/08/2014 | 85 | DOCKET ENTRY ORDER: Based on the Notice of Election Not to Intervene in the New Claims in the Relators Second Amended Complaint, see Dkt. 84, Relators shall file and serve upon all parties a copy of the unredacted Second Amended Complaint. Signed by Judge B. Lynn Winmill (mls) [Transferred from Idaho on 2/24/2015.] (Entered: 09/08/2014) |
| 09/08/2014 | 86 | AMENDED COMPLAINT *(Second) (Unredacted)* against Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, − Does 1−500, Pricewaterhousecoopers LLP, Shaw & Co., P.C., Shaw, Mumford & Co., P.C., Stevens−Henager College, Inc, filed by Nannette Wride, Katie Brooks.(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 09/08/2014) |
| 09/19/2014 | 87 | REPLY to Response to Motion re 76 MOTION to Seal Document 43 Sealed Document,, filed by Stevens−Henager College, Inc. (Attachments: # 1 Declaration in Support)(Ritzert, Gerald) [Transferred from Idaho on 2/24/2015.] (Entered: 09/19/2014) |

| | | |
|---|---|---|
| 09/19/2014 | 88 | MOTION to Seal Document *(Exhibits to Relators' Complaints)* Gerald M Ritzert appearing for Defendant Stevens−Henager College, Inc. Responses due by 10/14/2014 (Attachments: # 1 Memorandum in Support)(Ritzert, Gerald) [Transferred from Idaho on 2/24/2015.] (Entered: 09/19/2014) |
| 09/24/2014 | 89 | STIPULATION re 86 Amended Complaint, *for Extension of Time to Answer* by Shaw & Co., P.C., Shaw, Mumford & Co., P.C.. (Bennett, A.) [Transferred from Idaho on 2/24/2015.] (Entered: 09/24/2014) |
| 09/24/2014 | 90 | ORDER RE: STIPULATION FOR EXTENSION OF TIME TO ANSWER COMPLAINT. It is hereby ordered that Defendants Shaw Mumford & Co., P.C. and Shaw & Co., P.C.'s deadline for filing an answer or other responsive pleading in this matter is extended to 10/17/2014. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 09/24/2014) |
| 09/29/2014 | 91 | MOTION for Extension of Time to File Response/Reply Gerald M Ritzert appearing for Defendant Stevens−Henager College, Inc. Responses due by 10/23/2014 (Ritzert, Gerald) [Transferred from Idaho on 2/24/2015.] (Entered: 09/29/2014) |
| 10/01/2014 | 92 | ORDER re 91 MOTION for Extension of Time to File Response/Reply filed by Stevens−Henager College, Inc. It is hereby ORDERED that all defendants' answers or responsive pleadings shall be filed on or before 10/27/2014. Opposition briefs to any motion shall be filed on or before 11/26/2014. Reply briefs shall be filed on or before 12/17/2014. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/02/2014) |
| 10/14/2014 | 93 | RESPONSE to Motion re 88 MOTION to Seal Document *(Exhibits to Relators' Complaints)* filed by Katie Brooks, Nannette Wride. Replies due by 10/31/2014.(Stultz, Joseph) [Transferred from Idaho on 2/24/2015.] (Entered: 10/14/2014) |
| 10/24/2014 | 94 | NOTICE of Appearance by Daniel Loras Glynn on behalf of Pricewaterhousecoopers LLP (Glynn, Daniel) [Transferred from Idaho on 2/24/2015.] (Entered: 10/24/2014) |
| 10/24/2014 | 95 | MOTION for Leave to File Excess Pages *entitled Defendants' Motion to Exceed Page Limit in Filing Motion to Transfer Venue* Eric B Swartz appearing for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc. Responses due by 11/17/2014 (Attachments: # 1 Brief in Support)(Swartz, Eric) [Transferred from Idaho on 2/24/2015.] (Entered: 10/24/2014) |
| 10/27/2014 | 96 | RESPONSE to Motion re 95 MOTION for Leave to File Excess Pages *entitled Defendants' Motion to Exceed Page Limit in Filing Motion to Transfer Venue (Notice of Non−Opposition)* filed by Katie Brooks, Nannette Wride. Replies due by 11/13/2014.(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 10/27/2014) |
| 10/27/2014 | 97 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Richard H Greener appearing for Defendant Pricewaterhousecoopers LLP. Responses due by 11/20/2014 (Attachments: # 1 Memorandum in Support, # 2 Affidavit of Richard H. Greener, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, Pt. 1, # 7 Exhibit D, Pt. 2, # 8 |

| | | |
|---|---|---|
| | | Exhibit E, # 9 Exhibit F, # 10 Exhibit G, Pt. 1.1, # 11 Exhibit G, Pt. 1.2, # 12 Exhibit G, Pt. 1.3, # 13 Exhibit G, Pt. 2.1, # 14 Exhibit G, Pt. 2.2, # 15 Exhibit G, Pt. 2.3, # 16 Exhibit H, # 17 Exhibit I, # 18 Exhibit J, # 19 Exhibit K)(Greener, Richard) [Transferred from Idaho on 2/24/2015.] (Entered: 10/27/2014) |
| 10/27/2014 | 98 | MOTION to Dismiss *Second Amended Complaint* A. Dean Bennett appearing for Defendants Shaw & Co., P.C., Shaw, Mumford & Co., P.C.. Responses due by 11/20/2014 (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G)(Bennett, A.) [Transferred from Idaho on 2/24/2015.] (Entered: 10/27/2014) |
| 10/27/2014 | 99 | Defendant's Brief in Support of Motions to Transfer Venue Pursuant to 28 U.S.C. 1404(a) re 101 Motion to Transfer Venue. Steven M Gombos appearing for Defendants California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc. (Gombos, Steven) Modified on 10/30/2014 to edit document title in the docket text, link to dkt #101, and remove response deadline (st). [Transferred from Idaho on 2/24/2015.] (Entered: 10/27/2014) |
| 10/27/2014 | 100 | DECLARATION of Eric Juhlin re 99 First MOTION to Transfer Case filed by California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc . (Gombos, Steven) [Transferred from Idaho on 2/24/2015.] (Entered: 10/27/2014) |
| 10/28/2014 | | ***Staff notes: Sent a QC mailer to Steven Gombos asking him to file a certificate of service for dkt #100. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/28/2014) |
| 10/28/2014 | | Set/Reset Deadlines as to 98 MOTION to Dismiss Second Amended Complaint and 97 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. Responses due by 11/26/2014 Replies due by 12/17/2014. (Per Order, dkt #92)(st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/28/2014) |
| 10/28/2014 | 101 | Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)or Alternatively to Dismiss Pursuant to FRCP Rules 9(b) & 12(b)(6) re 99 First MOTION to Transfer Case by Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc. (Gombos, Steven) Modified on 10/28/2014 to edit document title in the docket text (st). Modified on 10/30/2014 to change event type to motion. Brief in Support of Motion is docket #99 (st). [Transferred from Idaho on 2/24/2015.] (Entered: 10/28/2014) |
| 10/28/2014 | 102 | CERTIFICATE OF SERVICE by Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc re 100 Declaration, (Gombos, Steven) [Transferred from Idaho on 2/24/2015.] (Entered: 10/28/2014) |
| 10/30/2014 | | ***Motions terminated: 99 First MOTION to Transfer Case filed by Center for Excellence in Higher Education, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc, California College San Diego, Inc, Collegeamerica Arizona, Inc. Motion termed because actual motion is docket #101. (st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/30/2014) |
| 10/30/2014 | | |

| | | |
|---|---|---|
| | | Set/Reset Deadlines as to 101 MOTION. Responses due by 11/26/2014. Replies due by 12/17/2014. (Per Order, dkt #92)(st) [Transferred from Idaho on 2/24/2015.] (Entered: 10/30/2014) |
| 11/04/2014 | 103 | MEMORANDUM/BRIEF re 99 First MOTION to Transfer Case filed by Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc *Amended Brief in Support and related Attachment (Errata Sheet)*. (Attachments: # 1 Errata Sheet)(Gombos, Steven) [Transferred from Idaho on 2/24/2015.] (Entered: 11/04/2014) |
| 11/13/2014 | 104 | DOCKET ENTRY ORDER granting 95 Motion for Leave to File Excess Pages. Signed by Judge B. Lynn Winmill. (mls) [Transferred from Idaho on 2/24/2015.] (Entered: 11/13/2014) |
| 11/19/2014 | 105 | MOTION for Leave to File Excess Pages Amy S Howe appearing for Plaintiff United States of America. Responses due by 12/15/2014 (Attachments: # 1 Memorandum in Support)(Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 11/19/2014) |
| 11/20/2014 | 106 | DOCKET ENTRY ORDER granting 105 Motion for Leave to File Excess Pages Signed by Judge B. Lynn Winmill (mls) [Transferred from Idaho on 2/24/2015.] (Entered: 11/20/2014) |
| 11/20/2014 | 107 | JOINDER by Defendants Shaw & Co., P.C., Shaw, Mumford & Co., P.C. joining 101 MOTION, 103 Memorandum/Brief (generic), *Stevens−Henager Defendants' Motion to Transfer Venue*. (Attachments: # 1 Declaration of Justin Shaw)(Bennett, A.) [Transferred from Idaho on 2/24/2015.] (Entered: 11/20/2014) |
| 11/25/2014 | 108 | MOTION for Leave to File *Overlength Response to Motion to Transfer or Dismiss (ECF No. 101) (Unopposed)* Brandon J Mark appearing for Plaintiffs Katie Brooks, Nannette Wride. Responses due by 12/19/2014 (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 11/25/2014) |
| 11/25/2014 | 109 | MEMORANDUM in Support re 108 MOTION for Leave to File *Overlength Response to Motion to Transfer or Dismiss (ECF No. 101) (Unopposed)* filed by Katie Brooks, Nannette Wride.(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 11/25/2014) |
| 11/26/2014 | 110 | RESPONSE to Motion re 101 MOTION *(United States' Response in Opposition to Defendants' Motion to Transfer Venue and to Dismiss the United States' Complaint)* filed by United States of America. Replies due by 12/15/2014. (Attachments: # 1 Exhibit AA, # 2 Exhibit BB, # 3 Exhibit CC, # 4 Exhibit DD, # 5 Exhibit EE, # 6 Exhibit FF, # 7 Exhibit GG, # 8 Exhibit HH, # 9 Affidavit Declaration of Special Agent Dana McKay, # 10 Exhibit A, # 11 Exhibit B, # 12 Exhibit C, # 13 Exhibit D, # 14 Exhibit E, # 15 Exhibit F, # 16 Exhibit G, # 17 Exhibit H, # 18 Exhibit I, # 19 Exhibit J, # 20 Exhibit K)(Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 11/26/2014) |
| 11/26/2014 | 111 | MEMORANDUM in Opposition re 97 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Katie Brooks, Nannette Wride. Replies due by 12/22/2014. (Attachments: # 1 Exhibit A− Corinthian Colleges Complaint)(Mark, Brandon) Modified on 12/16/2014 to edit reply deadline per Order, dkt #123 (st). [Transferred from Idaho on 2/24/2015.] (Entered: 11/26/2014) |
| 11/26/2014 | 112 | |

| | | |
|---|---|---|
| | | MEMORANDUM in Opposition re 98 MOTION to Dismiss *Second Amended Complaint* filed by Katie Brooks, Nannette Wride. Replies due by 12/22/2014.(Mark, Brandon) Modified on 12/16/2014 to edit reply deadline per Order, dkt #123 (st). [Transferred from Idaho on 2/24/2015.] (Entered: 11/26/2014) |
| 11/26/2014 | 113 | MEMORANDUM in Opposition re 101 MOTION *Motion to Transfer or in the Alternative to Dismiss* filed by Katie Brooks, Nannette Wride. Replies due by 12/22/2014. (Attachments: # 1 Affidavit Declaration of Joseph Stultz In Support of Opposition to Motion, # 2 Exhibit A to Stultz Declaration, # 3 Exhibit B to Stultz Declaration, # 4 Exhibit C to Stultz Declaration, # 5 Exhibit D to Stultz Declaration, # 6 Exhibit E to Stultz Declaration)(Mark, Brandon) Modified on 12/16/2014 to edit reply deadline per Order, dkt #123 (st). [Transferred from Idaho on 2/24/2015.] (Entered: 11/26/2014) |
| 11/26/2014 | 114 | MOTION to Amend/Correct *−For Leave to File Third Amended Complaint* Brandon J Mark appearing for Plaintiffs Katie Brooks, Nannette Wride. Responses due by 12/22/2014 (Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 11/26/2014) |
| 11/26/2014 | 115 | MEMORANDUM in Support re 114 MOTION to Amend/Correct *−For Leave to File Third Amended Complaint* filed by Katie Brooks, Nannette Wride. (Attachments: # 1 Exhibit A− Proposed Third Amended Complaint, # 2 Exhibit B− Redline Comparison of Second Amended Complaint with Proposed Third Amended Complaint)(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 11/26/2014) |
| 12/11/2014 | 116 | MOTION to Amend/Correct *entitled Defendants' Motion to Amend Briefing Schedule* Eric B. Swartz appearing for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc. Responses due by 1/5/2015 (Attachments: # 1 Brief in Support)(Swartz, Eric) [Transferred from Idaho on 2/24/2015.] (Entered: 12/11/2014) |
| 12/11/2014 | 117 | ERRATA by Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc re 116 MOTION to Amend/Correct *entitled Defendants' Motion to Amend Briefing Schedule* . (Swartz, Eric) [Transferred from Idaho on 2/24/2015.] (Entered: 12/11/2014) |
| 12/12/2014 | 118 | DOCKET ENTRY ORDER: The parties shall file responses, or statements of non−opposition, to the pending Motion to Amend Briefing Schedule (Dkt. 116) by no later than Monday, December 15, 2014. Response briefs shall not exceed 5 pages. Signed by Judge B. Lynn Winmill. (mls) [Transferred from Idaho on 2/24/2015.] (Entered: 12/12/2014) |
| 12/15/2014 | 119 | RESPONSE to Motion re 116 MOTION to Amend/Correct *entitled Defendants' Motion to Amend Briefing Schedule United States' Notice of Partial Non−Opposition to Defendants' Motion to Amend Briefing Schedule* filed by United States of America. Replies due by 1/2/2015.(Howe, Amy) [Transferred from Idaho on 2/24/2015.] (Entered: 12/15/2014) |
| 12/15/2014 | 120 | RESPONSE to Motion re 116 MOTION to Amend/Correct *entitled Defendants' Motion to Amend Briefing Schedule* filed by Pricewaterhousecoopers LLP. Replies due by 1/2/2015.(Greener, Richard) [Transferred from Idaho on 2/24/2015.] (Entered: 12/15/2014) |

| | | |
|---|---|---|
| 12/15/2014 | 121 | RESPONSE to Motion re 116 MOTION to Amend/Correct *entitled Defendants' Motion to Amend Briefing Schedule* filed by Shaw & Co., P.C., Shaw, Mumford & Co., P.C.. Replies due by 1/2/2015.(Bennett, A.) [Transferred from Idaho on 2/24/2015.] (Entered: 12/15/2014) |
| 12/15/2014 | 122 | RESPONSE to Motion re 116 MOTION to Amend/Correct *entitled Defendants' Motion to Amend Briefing Schedule* filed by Katie Brooks, Nannette Wride. Replies due by 1/2/2015.(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 12/15/2014) |
| 12/16/2014 | 123 | ORDER ON MOTION TO AMEND BRIEFING SCHEDULE. IT IS ORDERED that: The Motion to Amend Briefing Schedule 116 is GRANTED in part and DENIED in part. Defendants reply briefs in support of their respective motions, at Dkts. 97, 98, and 101, due by 12/22/2014. Defendants' responses to Relators' Motion for Leave to File a Third Amended Complaint (114) are also due by 12/22/2014. Relators' reply brief in support of their motion for leave to file a third amended complaint due by 1/12/2015. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 12/16/2014) |
| 12/16/2014 | | Set/Reset Deadlines as to 114 MOTION to Amend/Correct *−For Leave to File Third Amended Complaint*. Responses due by 12/22/2014 Replies due by 1/12/2015. (Per Order, dkt #123)(st) [Transferred from Idaho on 2/24/2015.] (Entered: 12/16/2014) |
| 12/16/2014 | | Set/Reset Deadlines as to 98 MOTION to Dismiss *Second Amended Complaint*, 101 MOTION, 97 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . Replies due by 12/22/2014. (Per Order, dkt #123)(st) [Transferred from Idaho on 2/24/2015.] (Entered: 12/16/2014) |
| 12/16/2014 | 124 | DOCKET ENTRY ORDER granting 108 Motion for Leave to File Overlength Brief. Counsel may file a brief up to 50 pages in length, although the Court encourages a shorter brief. Signed by Judge B. Lynn Winmill. (mls) [Transferred from Idaho on 2/24/2015.] (Entered: 12/16/2014) |
| 12/18/2014 | 125 | MOTION for Leave to File Excess Pages − *Overlength Consolidated Briefing* Daniel Loras Glynn appearing for Defendant Pricewaterhousecoopers LLP. Responses due by 1/12/2015 (Attachments: # 1 Memorandum in Support)(Glynn, Daniel) [Transferred from Idaho on 2/24/2015.] (Entered: 12/18/2014) |
| 12/19/2014 | 126 | DOCKET ENTRY ORDER granting 125 Motion for Leave to File Excess Pages. The moving defendant may file an overlength brief, as requested, although the Court encourages a shorter brief. Signed by Judge B. Lynn Winmill. (mls) [Transferred from Idaho on 2/24/2015.] (Entered: 12/19/2014) |
| 12/19/2014 | 127 | MOTION for Leave to File Excess Pages *entitled Defendants' Motion for Leave to File Reply Briefs in Excess of the Ten−Page Limit* Eric B. Swartz appearing for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc. Responses due by 1/12/2015 (Swartz, Eric) [Transferred from Idaho on 2/24/2015.] (Entered: 12/19/2014) |
| 12/22/2014 | 128 | DOCKET ENTRY ORDER granting 127 Motion for Leave to File Excess Pages. The Court GRANTS defendants motion for to file an overlength reply in support of the motion to dismiss or transfer at Docket No. 101. The Court will allow a total of 35 pages of briefing on the reply. Counsel is encouraged to file a much shorter brief |

| | | |
|---|---|---|
| | | and, further, is encouraged to file a single reply brief addressing both responses (at Dkts. 110 and 113) rather than filing two separate briefs Signed by Judge B. Lynn Winmill. (mls) [Transferred from Idaho on 2/24/2015.] (Entered: 12/22/2014) |
| 12/22/2014 | 129 | RESPONSE to Motion re 114 MOTION to Amend/Correct −*For Leave to File Third Amended Complaint*, 98 MOTION to Dismiss *Second Amended Complaint Combined Response/Reply* filed by Shaw & Co., P.C., Shaw, Mumford & Co., P.C.. Replies due by 1/8/2015.(Bennett, A.) [Transferred from Idaho on 2/24/2015.] (Entered: 12/22/2014) |
| 12/22/2014 | 130 | RESPONSE to Motion re 114 MOTION to Amend/Correct −*For Leave to File Third Amended Complaint*, 97 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *(Combined Brief − Response to Dkt 114 filed 11/26/2014 and Reply to Dkt 97 filed 10/27/2014)* filed by Pricewaterhousecoopers LLP. Replies due by 1/8/2015.(Greener, Richard) [Transferred from Idaho on 2/24/2015.] (Entered: 12/22/2014) |
| 12/22/2014 | 131 | RESPONSE to Motion re 114 MOTION to Amend/Correct −*For Leave to File Third Amended Complaint* filed by Collegeamerica Denver, Inc. Replies due by 1/8/2015.(Gombos, Steven) [Transferred from Idaho on 2/24/2015.] (Entered: 12/22/2014) |
| 12/22/2014 | 132 | REPLY to Response to Motion re 101 MOTION, 99 First MOTION to Transfer Case filed by Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc. (Attachments: # 1 Affidavit Juhlin Declaration, # 2 Affidavit Barney Declaration)(Gombos, Steven) [Transferred from Idaho on 2/24/2015.] (Entered: 12/22/2014) |
| 12/22/2014 | 133 | REPLY to Response to Motion re 101 MOTION, 99 First MOTION to Transfer Case filed by Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc. (Attachments: # 1 Affidavit Juhlin Declaration, # 2 Affidavit Barney Declaration)(Gombos, Steven) [Transferred from Idaho on 2/24/2015.] (Entered: 12/22/2014) |
| 12/22/2014 | 134 | MOTION to Take Judicial Notice Steven M Gombos appearing for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc. Responses due by 1/15/2015 (Attachments: # 1 Exhibit Ex. C to Request, # 2 Exhibit Ex. D to Request)(Gombos, Steven) [Transferred from Idaho on 2/24/2015.] (Entered: 12/22/2014) |
| 01/07/2015 | 135 | MOTION to Take Judicial Notice Steven M Gombos appearing for Defendants Carl Barney, California College San Diego, Inc, Center for Excellence in Higher Education, Inc, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College, Inc. Responses due by 2/2/2015 (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B)(Gombos, Steven) [Transferred from Idaho on 2/24/2015.] (Entered: 01/07/2015) |
| 01/12/2015 | 136 | REPLY to Response to Motion re 114 MOTION to Amend/Correct −*For Leave to File Third Amended Complaint* filed by Katie Brooks, Nannette Wride.(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 01/12/2015) |
| 01/15/2015 | 137 | |

| | | |
|---|---|---|
| | | MEMORANDUM in Opposition re 135 MOTION to Take Judicial Notice , 134 MOTION to Take Judicial Notice filed by Katie Brooks, Nannette Wride. Replies due by 2/2/2015.(Mark, Brandon) [Transferred from Idaho on 2/24/2015.] (Entered: 01/15/2015) |
| 01/16/2015 | 138 | RESPONSE to Motion re 135 MOTION to Take Judicial Notice , 134 MOTION to Take Judicial Notice filed by United States of America. Replies due by 2/2/2015.(Majors, Jay) [Transferred from Idaho on 2/24/2015.] (Entered: 01/16/2015) |
| 02/23/2015 | 139 | MEMORANDUM DECISION AND ORDER. IT IS ORDERED that the Defendant Schools and Barney's Motion to Transfer Venue 101 is GRANTED. The Clerk of Court is directed to immediately transfer this action to the District of Utah and close this file. Signed by Judge B. Lynn Winmill. (caused to be mailed to non Registered Participants at the addresses listed on the Notice of Electronic Filing (NEF) by (st) [Transferred from Idaho on 2/24/2015.] (Entered: 02/23/2015) |
| 02/24/2015 | 140 | Case transferred in from USDC of Idaho; Case Number 1:13−cv−00009. Original file, certified copy of transfer order and docket sheet received. (Entered: 02/24/2015) |
| 02/24/2015 | 141 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Amy S. Howe, for Plaintiff United States of America (jwt) (Entered: 02/24/2015) |
| 02/24/2015 | 142 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Jay D. Majors, for Intervenor Plaintiff United States of America (jwt) (Entered: 02/24/2015) |
| 02/24/2015 | 143 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Eric B. Swartz, for Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College (jwt) (Entered: 02/24/2015) |
| 02/24/2015 | 144 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Gerald M. Ritzert, Steven M. Gombos, for Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College (jwt) (Entered: 02/24/2015) |
| 02/24/2015 | 145 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Mark Paul Coonts, for Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College (jwt) (Entered: 02/24/2015) |
| 02/24/2015 | 146 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Antony L. Ryan, Samira Shah, Thomas G. Rafferty, for Defendant PricewaterhouseCoopers LLP (jwt) (Entered: 02/24/2015) |
| 02/24/2015 | 147 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Richard H. Greener, Thomas John Lloyd III, Daniel Loras Glynn, for Defendant PricewaterhouseCoopers LLP (jwt) (Entered: 02/24/2015) |
| 02/24/2015 | 148 | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney A. Dean Bennett, for Defendants Shaw & Co., P.C., Shaw, Mumford & Co., P.C. (jwt) (Entered: 02/24/2015) |
| 02/26/2015 | 149 | DOCKET TEXT ORDER REFERRING CASE to Magistrate Judge Evelyn J. Furse under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial matters. No attached document. Signed by Judge Clark Waddoups on 2/26/2015. (aw) (Entered: 02/26/2015) |

| | | |
|---|---|---|
| 03/03/2015 | 150 | NOTICE of Appearance by Mark W. Pugsley on behalf of PricewaterhouseCoopers LLP (Pugsley, Mark) (Entered: 03/03/2015) |
| 03/03/2015 | 151 | NOTICE of Appearance by James S. Jardine on behalf of PricewaterhouseCoopers LLP (Jardine, James) (Entered: 03/03/2015) |
| 03/04/2015 | 152 | NOTICE of Appearance by Ruth J. Hackford−Peer on behalf of Katie Brooks, Nannette Wride (Hackford−Peer, Ruth) (Entered: 03/04/2015) |
| 03/10/2015 | 153 | NOTICE of Withdrawal of Idaho Law Firm and Request to be Removed from Service List by PricewaterhouseCoopers LLP (Pugsley, Mark) (Entered: 03/10/2015) |
| 03/12/2015 | 154 | NOTICE of Appearance by Anna M. Pugsley on behalf of United States of America, United States of America (Pugsley, Anna) (Entered: 03/12/2015) |
| 03/17/2015 | 155 | MOTION for Admission Pro Hac Vice of Thomas G. Rafferty , Registration fee $ 15, receipt number 1088−2227882, filed by Defendant PricewaterhouseCoopers LLP. (Attachments: # 1 Exhibit Application, # 2 Exhibit ECF Registration, # 3 Text of Proposed Order Proposed Order)(Pugsley, Mark) (Entered: 03/17/2015) |
| 03/17/2015 | 156 | MOTION for Admission Pro Hac Vice of Antony L. Ryan , Registration fee $ 15, receipt number 1088−2227890, filed by Defendant PricewaterhouseCoopers LLP. (Attachments: # 1 Exhibit Application, # 2 Exhibit ECF Registration, # 3 Text of Proposed Order Proposed Order)(Pugsley, Mark) (Entered: 03/17/2015) |
| 03/17/2015 | 157 | MOTION for Admission Pro Hac Vice of Samira Shah , Registration fee $ 15, receipt number 1088−2227904, filed by Defendant PricewaterhouseCoopers LLP. (Attachments: # 1 Exhibit Application, # 2 Exhibit ECF Registration, # 3 Text of Proposed Order Proposed Order)(Pugsley, Mark) (Entered: 03/17/2015) |
| 03/23/2015 | 158 | MOTION for Admission Pro Hac Vice of John W. Black (no registration fee required) filed by Intervenor Plaintiff United States of America, Plaintiff United States of America. (Attachments: # 1 Exhibit A − Application, # 2 Exhibit B − ECF Registration, # 3 Text of Proposed Order)(Pugsley, Anna) (Entered: 03/23/2015) |
| 03/24/2015 | 159 | ORDER granting 158 Motion for Admission Pro Hac Vice of John W. Black for United States of America,John W. Black for United States of America. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* . Signed by Magistrate Judge Evelyn J. Furse on 03/24/2015. (tls) (Entered: 03/24/2015) |
| 04/06/2015 | 160 | ORDER granting 155 Motion for Admission Pro Hac Vice of Thomas G. Rafferty for PricewaterhouseCoopers LLP. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* Signed by Judge Clark Waddoups on 4/6/2015. (blh) (Entered: 04/06/2015) |
| 04/06/2015 | 161 | ORDER granting 156 Motion for Admission Pro Hac Vice of Antony L. Ryan for PricewaterhouseCoopers LLP. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* Signed by Judge Clark Waddoups on 4/6/2015. (blh) (Entered: 04/06/2015) |
| 04/06/2015 | 162 | ORDER granting 157 Motion for Admission Pro Hac Vice of Samira Shah for PricewaterhouseCoopers LLP. |

| | | |
|---|---|---|
| | | *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* Signed by Judge Clark Waddoups on 4/6/2015. (blh) (Entered: 04/06/2015) |
| 04/06/2015 | 163 | MOTION for Admission Pro Hac Vice of Jay D. Majors (no registration fee required) filed by Intervenor Plaintiff United States of America, Plaintiff United States of America. (Attachments: # 1 Exhibit A − Application, # 2 Exhibit B − ECF Registration, # 3 Text of Proposed Order)(Pugsley, Anna) (Entered: 04/06/2015) |
| 04/07/2015 | 164 | ORDER granting 163 Motion for Admission Pro Hac Vice of Jay D. Majors for United States of America. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* Signed by Magistrate Judge Evelyn J. Furse on 4/7/2015. (blh) (Entered: 04/07/2015) |
| 04/14/2015 | 165 | NOTICE of Appearance by R. Willis Orton on behalf of Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College (Orton, R.) (Entered: 04/14/2015) |
| 04/14/2015 | 166 | NOTICE of Appearance by Alexander Dushku on behalf of California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College (Dushku, Alexander) (Entered: 04/14/2015) |
| 04/15/2015 | 167 | MOTION for Admission Pro Hac Vice of Steven M. Gombos , Registration fee $ 15, receipt number 1088−2246019, filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Exhibit A − Application for Admission Pro Hac Vice, # 2 Exhibit B − Electronic Case Filing Registration Form)(Orton, R.) (Entered: 04/15/2015) |
| 04/15/2015 | 168 | MOTION for Admission Pro Hac Vice of Gerald M. Ritzert , Registration fee $ 15, receipt number 1088−2246086, filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Exhibit A − Application for Admission Pro Hac Vice, # 2 Exhibit B − Electronic Case Filing Registration Form)(Orton, R.) (Entered: 04/15/2015) |
| 04/17/2015 | 169 | ORDER granting 167 Motion for Admission Pro Hac Vice of Steven M. Gombos for Carl Barney,Steven M. Gombos for California College San Diego,Steven M. Gombos for Center for Excellence In Higher Education,Steven M. Gombos for Collegeamerica Arizona, Inc,Steven M. Gombos for Collegeamerica Denver, Inc,Steven M. Gombos for Stevens−Henager College. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* . Signed by Judge Clark Waddoups on 4/17/15. (jmr) (Entered: 04/17/2015) |
| 04/17/2015 | 170 | ORDER granting 168 Motion for Admission Pro Hac Vice of Gerald M. Ritzert for Carl Barney,Gerald M. Ritzert for California College San Diego,Gerald M. Ritzert for Center for Excellence In Higher Education,Gerald M. Ritzert for Collegeamerica Arizona, Inc,Gerald M. Ritzert for Collegeamerica Denver, Inc,Gerald M. Ritzert for Stevens−Henager College. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* |

| | | |
|---|---|---|
| | | . Signed by Judge Clark Waddoups on 4/17/15. (jmr) (Entered: 04/17/2015) |
| 05/05/2015 | 171 | Joint MOTION Status conference filed by Intervenor Plaintiff United States of America. Motions referred to Evelyn J. Furse.(Majors, Jay) (Entered: 05/05/2015) |
| 05/06/2015 | 172 | ORDER granting 171 Motion. Status conference shall be held on May 21, 2015, starting at 10:30 a.m. Co−counsel outside this district may attend telephonically. The Court will send the parties conference call information by email. Signed by Magistrate Judge Evelyn J. Furse on 5/6/15. (jmr) (Entered: 05/06/2015) |
| 05/06/2015 | | Set Deadlines/Hearings: Status Conference set for 5/21/2015 at 10:30 AM in Rm 7.400 before Magistrate Judge Evelyn J. Furse per Order 172 . (jmr) (Entered: 05/06/2015) |
| 05/21/2015 | 173 | Minute Order. Proceedings held before Magistrate Judge Evelyn J. Furse: Motion Hearing held on 5/21/2015 re 98 MOTION to Dismiss *Second Amended Complaint* filed by Shaw, Mumford & Co., P.C., Shaw & Co., P.C., 114 MOTION to Amend/Correct −*For Leave to File Third Amended Complaint* filed by Nannette Wride, Katie Brooks, 97 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by PricewaterhouseCoopers LLP. Court hears argument from counsel and finds MOOT 97 Motion to Dismiss for Failure to State a Claim, 98 Motion to Dismiss, 114 Motion to Amend/Correct. Court orders 3rd Amended Complaint to be filed by 6/5/2015 and Motion to Dismiss/Answers to be filed by 7/6/2015. Attorney for Plaintiff: Anna M. Pugsley, Jay D. Majors (Telephonic), John W. Black (Telephonic), Alissa M. Mellem (Telephonic), Brandon J. Mark (Telephonic), Ruth J. Hackford−Peer,, Attorney for Defendant R. Willis Orton, Steven M. Gombos (Telephonic), Eric G. Maxfield, Mark W. Pugsley, Samira Shah,. Court Reporter: Electronic.(Time Start: 10:34:14, Time End: 11:04:36, Room 7.4.) (lnp) (Entered: 05/21/2015) |
| 06/03/2015 | 174 | NOTICE FROM THE COURT Concerning Waiver of Judicial Disqualification. (jmr) (Entered: 06/03/2015) |
| 06/05/2015 | 175 | STRICKEN per 468 MEMORANDUM DECISION AND ORDER ~~AMENDED COMPLAINT *(Third)* against Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, PricewaterhouseCoopers LLP, Shaw & Co., P.C., Shaw, Mumford & Co., P.C., Stevens−Henager College with Jury Demand. *New Defendants: WEWORSKI & ASSOCIATES*., filed by Nannette Wride, Katie Brooks. (Attachments: # 1 Exhibit 1−Program Participation Agreement, # 2 Exhibit 2−Department of Education Audit Guide, # 3 Exhibit 3−ACCSCs Standards of Accreditation, # 4 Exhibit 4−G5 Certification, # 5 Exhibit 5−Admissions Consultant Manual, # 6 Exhibit 6−Procedure Directive) (Mark, Brandon)~~ Modified on 1/14/2019 (jds). (Entered: 06/05/2015) |
| 06/08/2015 | 176 | ****RESTRICTED DOCUMENT****Summons Issued Electronically as to Weworski & Associates.<br>Instructions to Counsel:<br>1. Click on the document number.<br>2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF.<br>3. Print the issued summons for service. (eat) (Entered: 06/08/2015) |
| 06/11/2015 | 177 | ****RESTRICTED DOCUMENT**** SUMMONS Returned Executed by Nannette Wride, Katie Brooks as to Weworski & Associates served on 6/9/2015, answer due 6/30/2015. (Mark, Brandon) (Entered: 06/11/2015) |

| | | |
|---|---|---|
| 06/12/2015 | 178 | SUBSTITUTION OF COUNSEL Alan L. Sullivan replacing Alexander Dushku and R. Willis Orton as counsel on behalf of Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Sullivan, Alan) (Entered: 06/12/2015) |
| 06/16/2015 | 179 | NOTICE of Appearance by Amber M. Mettler on behalf of Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College (Mettler, Amber) (Entered: 06/16/2015) |
| 06/18/2015 | 180 | NOTICE of Appearance by Carsten A. Peterson on behalf of Weworski & Associates (Peterson, Carsten) (Entered: 06/18/2015) |
| 06/18/2015 | 181 | MOTION for Extension of Time Answer , MOTION for Extension of Time to File Answer filed by Defendant Weworski & Associates. (Attachments: # 1 Text of Proposed Order Order Granting Motion to Extend Time To Answer Or Otherwise Respond) Motions referred to Evelyn J. Furse.(Peterson, Carsten) (Entered: 06/18/2015) |
| 06/19/2015 | 182 | ORDER granting 181 Motion for Extension of Time; granting 181 Motion for Extension of Time to Answer. Answer deadline updated for Weworski & Associates answer due 7/30/2015. Signed by Magistrate Judge Evelyn J. Furse on 6/19/15. (jmr) (Entered: 06/19/2015) |
| 06/19/2015 | 183 | NOTICE Vacating 174 Notice Concerning Waiver of Judicial Disqualification re Notice From the Court. On 6/12/2015 the Steven−Henager defendants filed a 178 Substitution of Counsel, substituting Snell & Wilmer for Kirton McConkie. Accordingly, any potential conflict with Kirton McConkie is MOOT. (aw) (Entered: 06/19/2015) |
| 06/22/2015 | 184 | MOTION for Admission Pro Hac Vice of Bruce R. McAllister , Registration fee $ 15, receipt number 1088−2288093, filed by Defendant Weworski & Associates. (Attachments: # 1 Affidavit Application for Admission Pro Hac Vice, # 2 Text of Proposed Order Order for Pro Hac Admission, # 3 Affidavit Electronic Case Filing Registration Form)(Peterson, Carsten) (Entered: 06/22/2015) |
| 06/22/2015 | 185 | MOTION for Admission Pro Hac Vice of Leslie S. Brown , Registration fee $ 15, receipt number 1088−2288128, filed by Defendant Weworski & Associates. (Attachments: # 1 Exhibit Application for Admission Pro Hac Vice, # 2 Text of Proposed Order Order for Pro Hac Admission, # 3 Exhibit Electronic Case Filing Registration Form)(Peterson, Carsten) (Entered: 06/22/2015) |
| 07/01/2015 | 186 | Ex Parte (Not Sealed) MOTION for Leave to File Overlength Motion to Dismiss United States' Complaint in Intervention filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Mettler, Amber) (Entered: 07/01/2015) |
| 07/01/2015 | 187 | Ex Parte (Not Sealed) MOTION for Leave to File Overlength Motion to Dismiss Realtors' Third Amended Complaint filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Mettler, Amber) |

| | | |
|---|---|---|
| | | Modified on 7/10/2015 untermed to docket order(jmr). (Entered: 07/01/2015) |
| 07/01/2015 | 188 | Motions No Longer Referred: 187 Ex Parte (Not Sealed) MOTION for Leave to File Overlength Motion to Dismiss Realtors' Third Amended Complaint , 186 Ex Parte (Not Sealed) MOTION for Leave to File Overlength Motion to Dismiss United States' Complaint in Intervention. Motions will be handled by district judge. (aw) (Entered: 07/01/2015) |
| 07/01/2015 | 189 | DOCKET TEXT ORDER finding as moot 187 Motion for Leave to File. Motion is a duplicate of 186 Motion for Leave to File. Signed by Judge Clark Waddoups on 7/1/2015. No attached document. (aw) (Entered: 07/01/2015) |
| 07/01/2015 | 190 | DOCKET TEXT ORDER VACATING 189 Order on Motion for Leave to File. Order was filed in error because 187 Defendants' Motion to Dismiss Realtor's Third Amended Complaint is not a duplicate of 186 Defendants' Motion to Dismiss Complaint in Intervention. No attached document. Signed by Judge Clark Waddoups on 7/1/2015. (aw) (Entered: 07/01/2015) |
| 07/01/2015 | 191 | ORDER granting 186 Motion for Leave to File Overlength Motion to Dismiss United States' Complaint in Intervention. Stevens−Henager may file a motion to dismiss the United States Complaint in Intervention containing up to 30 pages of argument. Signed by Judge Clark Waddoups on 7/1/15. (jmr) (Entered: 07/01/2015) |
| 07/06/2015 | 192 | ORDER granting 185 Motion for Admission Pro Hac Vice of Leslie S. Brown for Weworski & Associates. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* . Signed by Judge Clark Waddoups on 7/2/2015. (jds) (Entered: 07/06/2015) |
| 07/06/2015 | 193 | ORDER granting 184 Motion for Admission Pro Hac Vice of Bruce R. McAllister for Weworski & Associates. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* . Signed by Judge Clark Waddoups on 7/2/2015. (jds) (Entered: 07/06/2015) |
| 07/06/2015 | 194 | MOTION to Dismiss and Memorandum in Support filed by Defendant PricewaterhouseCoopers LLP. (Pugsley, Mark) (Entered: 07/06/2015) |
| 07/06/2015 | 195 | AFFIDAVIT/DECLARATION of Mark W. Pugsley in Support re 194 MOTION to Dismiss and Memorandum in Support filed by Defendant PricewaterhouseCoopers LLP. (Attachments: # 1 Exhibit 2009 CA Stevens−Henager, # 2 Exhibit Governments Auditing Standards 2007, # 3 Exhibit SSAE AT 601)(Pugsley, Mark) (Entered: 07/06/2015) |
| 07/06/2015 | 196 | MOTION to Dismiss and Memorandum in Support filed by Defendant Shaw & Co., P.C. See 273 for redacted exhibits (Attachments: # 1 Exhibit A − 2007 Financial Statement, # 2 Exhibit B − 2007 Compliance Attestation Examination, # 3 Exhibit C − 2008 Financial Statement, # 4 Exhibit D − 2008 Compliance Attestation Examination, # 5 Exhibit E − 2008 Financial Statement Revised and Resubmitted, # 6 Exhibit F − 2008 Financial Statement Restated)(Maxfield, Eric) Modified by sealing exhibits and adding link to redacted exhibits on 1/4/2017 (rks). (Entered: 07/06/2015) |
| 07/06/2015 | 197 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, |

| | | |
|---|---|---|
| | | Stevens−Henager College. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E)(Gombos, Steven) (Entered: 07/06/2015) |
| 07/06/2015 | 198 | Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *re Third Amended Complaint* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) Modified on 10/6/2015: corrected text (alt) (Entered: 07/06/2015) |
| 07/10/2015 | 199 | ORDER granting 187 Motion for Leave to File Overlength Motion to Dismiss United States' Complaint in Intervention. See Order for details. Signed by Judge Clark Waddoups on 7/9/15. (jmr) (Entered: 07/10/2015) |
| 07/28/2015 | 200 | NOTICE of Change of Address by Carsten A. Peterson (Peterson, Carsten) (Entered: 07/28/2015) |
| 07/29/2015 | 201 | MOTION to Dismiss and Memorandum in Support filed by Defendant Weworski & Associates. (McAllister, Bruce) (Entered: 07/29/2015) |
| 07/29/2015 | 202 | AFFIDAVIT/DECLARATION of Bruce R. McAllister in Support re 201 MOTION to Dismiss and Memorandum in Support filed by Defendant Weworski & Associates. (Attachments: # 1 Exhibit November 24, 2010 engagment letter for conducting the attestation examination, # 2 Exhibit compliance examination report on Steven−Henager College, Inc.−2010, # 3 Exhibit compliance examination report on California College San Diego, Inc.−2010, # 4 Exhibit compliance examination report on College America−Denver, Inc.−2010, # 5 Exhibit compliance examination report on College America−Arizona, Inc.−2010, # 6 Exhibit January 11, 2012 engagement letter for conducting the attestation examination, # 7 Exhibit compliance examination report on Steven−Henager College, Inc−2011, # 8 Exhibit compliance examination report on California College San Diego, Inc.−2011, # 9 Exhibit compliance examination report on College America−Denver, Inc.−2011, # 10 Exhibit compliance examination report on College America−Arizona, Inc−2011)(McAllister, Bruce) (Entered: 07/29/2015) |
| 08/04/2015 | 203 | MOTION for Leave to File Excess Pages *in Responses to Defendants Pricewaterhousecooper's and Shaw Defendants' Motions to Dismiss Third Amended Complaint* filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Hackford−Peer, Ruth) (Entered: 08/04/2015) |
| 08/04/2015 | 204 | MOTION for Leave to File Excess Pages *in Response to Defendant Schools' Motion to Dismiss Third Amended Complaint* filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Hackford−Peer, Ruth) (Entered: 08/04/2015) |
| 08/04/2015 | 205 | Ex Parte (Not Sealed) MOTION for Leave to File Excess Pages *in Response to Defendants' Motion to Dismiss* filed by Intervenor Plaintiff United States of America, Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Pugsley, Anna) (Entered: 08/04/2015) |
| 08/06/2015 | 206 | Motions No Longer Referred: 203 MOTION for Leave to File Excess Pages *in Responses to Defendants Pricewaterhousecooper's and Shaw Defendants' Motions to Dismiss Third Amended Complaint*, 205 Ex Parte (Not Sealed) MOTION for Leave |

| | | |
|---|---|---|
| | | to File Excess Pages *in Response to Defendants' Motion to Dismiss*, 204 MOTION for Leave to File Excess Pages *in Response to Defendant Schools' Motion to Dismiss Third Amended Complaint*. Motion will be handled by district judge. (aw) (Entered: 08/06/2015) |
| 08/06/2015 | 207 | RESPONSE to Motion re 198 Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *Motion to Dismiss Third Amended Complaint (Relators' Response)* filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 08/06/2015) |
| 08/06/2015 | 208 | RESPONSE to Motion re 196 MOTION to Dismiss and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 08/06/2015) |
| 08/06/2015 | 209 | RESPONSE to Motion re 194 MOTION to Dismiss and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 08/06/2015) |
| 08/06/2015 | 210 | RESPONSE to Motion re 197 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Intervenor Plaintiff United States of America, Plaintiff United States of America. (Pugsley, Anna) (Entered: 08/06/2015) |
| 08/10/2015 | 211 | ORDER granting 203 Motion for Leave to File Excess Pages. See Order for details. Signed by Judge Clark Waddoups on 8/10/15. (jmr) (Entered: 08/10/2015) |
| 08/10/2015 | 212 | ORDER granting Ex Parte 205 Motion for Leave to File Excess Pages. The Court ORDERS that the United States may file a response to Defendants Motion to Dismiss containing up to 30 pages of argument. Signed by Judge Clark Waddoups on 8/10/15. (jmr) (Entered: 08/10/2015) |
| 08/10/2015 | 213 | RESPONSE to Motion re 201 MOTION to Dismiss and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 08/10/2015) |
| 08/11/2015 | 214 | ORDER granting 204 Motion for Leave to File Excess Pages. See Order for details. Signed by Judge Clark Waddoups on 8/10/15. (jmr) (Entered: 08/11/2015) |
| 08/11/2015 | 215 | NOTICE of SUPPLEMENTAL AUTHORITY by Katie Brooks, United States of America, United States of America, Nannette Wride re 210 Response to Motion, 207 Response to Motion, (Pugsley, Anna) (Entered: 08/11/2015) |
| 08/12/2015 | 216 | CERTIFICATE of Counsel re 214 Order on Motion for Leave to File Excess Pages by Brandon J. Mark for Plaintiffs Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 08/12/2015) |
| 08/13/2015 | 217 | SUBSTITUTION OF COUNSEL Joseph E. Minnock replacing Carsten A. Peterson as counsel on behalf of Weworski & Associates. (Minnock, Joseph) (Entered: 08/13/2015) |
| 08/17/2015 | 218 | Ex Parte (Not Sealed) MOTION for Leave to File Overlength Reply Memorandum to Relators' Opposition to Defendants' Motion to Dismiss Relators' Third Amended Complaint filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Proposed Order) Motions referred to Evelyn J. Furse.(Mettler, Amber) (Entered: 08/17/2015) |

| | | |
|---|---|---|
| 08/17/2015 | 219 | MOTION for Extension of Time to File Response/Reply as to 207 Response to Motion, filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Proposed Order) Motions referred to Evelyn J. Furse.(Mettler, Amber) (Entered: 08/17/2015) |
| 08/17/2015 | 220 | Motions No Longer Referred: 219 MOTION for Extension of Time to File Response/Reply as to 207 Response to Motion, (aw) (Entered: 08/17/2015) |
| 08/18/2015 | 221 | ORDER granting 219 Motion for Extension of Time to File Response/Reply re 219 MOTION for Extension of Time to File Response/Reply as to 207 Response to Motion . Replies due by 8/31/2015. Signed by Judge Clark Waddoups on 8/17/15. (jmr) (Entered: 08/18/2015) |
| 08/18/2015 | 222 | RESPONSE to Motion re 219 MOTION for Extension of Time to File Response/Reply as to 207 Response to Motion, *Relators' Notice of Non−Opposition to Motion for Extension of Time* filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 08/18/2015) |
| 08/24/2015 | 223 | REASSIGNMENT to Newly Appointed District Judge. Case Reassigned to District Judge Jill N. Parrish. Judge Clark Waddoups no longer assigned to the case.<br><br>Orders of the prior judge are affirmed including the order of reference to Magistrate Judge Evelyn J. Furse under 28:636 (b)(1)(A) re 149 Order Referring Case to Magistrate Judge.<br><br>Case number will now read **2:15−cv−00119−JNP−EJF.** Please make changes to document captions accordingly. (rks) (Entered: 08/24/2015) |
| 08/24/2015 | 224 | REPLY to Response to Motion re 194 MOTION to Dismiss and Memorandum in Support filed by Defendant PricewaterhouseCoopers LLP. (Pugsley, Mark) (Entered: 08/24/2015) |
| 08/24/2015 | 225 | REPLY to Response to Motion re 196 MOTION to Dismiss and Memorandum in Support filed by Defendant Shaw & Co., P.C.. (Maxfield, Eric) (Entered: 08/24/2015) |
| 08/24/2015 | 226 | REPLY to Response to Motion re 197 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Gombos, Steven) (Entered: 08/24/2015) |
| 08/27/2015 | 227 | REPLY to Response to Motion re 201 MOTION to Dismiss and Memorandum in Support filed by Defendant Weworski & Associates. (McAllister, Bruce) (Entered: 08/27/2015) |
| 08/31/2015 | 228 | REPLY to Response to Motion re 198 Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *Motion to Dismiss Third Amended Complaint* filed by Defendants Carl Barney, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 08/31/2015) |
| 09/02/2015 | 229 | REQUEST to Submit for Decision re 198 Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *Motion to Dismiss Third Amended Complaint*, 197 MOTION TO DISMISS FOR FAILURE TO STATE |

| | | |
|---|---|---|
| | | A CLAIM and Memorandum in Support , 201 MOTION to Dismiss and Memorandum in Support , 194 MOTION to Dismiss and Memorandum in Support , 196 MOTION to Dismiss and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Hackford−Peer, Ruth) (Entered: 09/02/2015) |
| 09/09/2015 | 230 | **NOTICE OF HEARING ON MOTION** re: 194 MOTION to Dismiss and Memorandum in Support , 198 Defendant's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *Motion to Dismiss Third Amended Complaint*, 196 MOTION to Dismiss and Memorandum in Support , 201 MOTION to Dismiss and Memorandum in Support , 197 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support : (Notice generated by ss) Motion Hearing set for 10/6/2015 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. (ss) (Entered: 09/09/2015) |
| 10/01/2015 | 231 | DOCKET TEXT ORDER re 230 Notice of Hearing on Motion: Absent a stipulation among all counsel stating differently, the Court will conduct the hearing scheduled on Tuesday, October 6, 2015 at 2:00 p.m. for the pending Motions to Dismiss as follows: The Court will first hear oral argument on the Motions to Dismiss filed by the Accountant Defendants 194 , 196 , and 201 . The Accountant Defendants will have thirty (30) minutes collectively to present their arguments, including rebuttal. Plaintiffs will have twenty (20) minutes to present their arguments. The Court will next hear oral argument on the Motion to Dismiss the United States Complaint 197 , followed by oral argument on the Motion to Dismiss the Relators Complaint 198 . For each of these motions, each side will have twenty−five (25) minutes to present their arguments. There will be a short break after each hour of argument. Counsel may stipulate to a time allotment different from that outlined above. However, counsels stipulated time allotment must not exceed 150 minutes. If counsel stipulate to a different time allotment, counsel will submit a stipulated notice to the Court no later than Monday, October 5, 2015 at 12:00 p.m. No attached document. Signed by Judge Jill N. Parrish on 10/1/2015. (jh) (Entered: 10/01/2015) |
| 10/06/2015 | 232 | Minute Entry for proceedings held before Judge Jill N. Parrish: Motion Hearing held on 10/6/2015 re 198 Motion To Dismiss For Failure To State A Claim *re Third Amended Complaint* filed by Collegeamerica Denver, Inc, Center for Excellence In Higher Education, California College San Diego, Carl Barney, Stevens−Henager College, Collegeamerica Arizona, Inc, 197 Motion To Dismiss For Failure To State A Claim filed by Center for Excellence In Higher Education, Stevens−Henager College, 201 MOTION to Dismiss filed by Weworski & Associates, 194 MOTION to Dismiss filed by PricewaterhouseCoopers LLP, 196 MOTION to Dismiss filed by Shaw & Co., P.C.,. After hearing arguments from counsel, Court took the motions to dismiss under advisement. As to the 88 MOTION to Seal Document *(Exhibits to Relators' Complaints)* filed by Stevens−Henager College, counsel will contact his client and see if this motion needs to be addressed. Attorney for Plaintiff: John Black,Anna Pugsley, Jay Majors, Ruth Hackford−Peer, Alissa Mellem, Attorney for Defendant: Steven Gombos, James Jardine, Eric Maxfield, Bruce McAlllister, Amber Mettler, Mark Puglsey, Thomas Rafferty. Court Reporter: Patti Walker.(ss) (Entered: 10/06/2015) |
| 10/21/2015 | 233 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing held on October 6, 2015, before Judge Jill N. Parrish. Court Reporter/Transcriber Patti Walker, CSR, RPR, CP. |

| | | |
|---|---|---|
| | | **NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/12/2015. Redacted Transcript Deadline set for 11/23/2015. Release of Transcript Restriction set for 1/19/2016 (alt) Modified on 1/19/2016 by removing restricted text (las). (Entered: 10/21/2015) |
| 12/03/2015 | 235 | WITHDRAWAL OF MOTION by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College re 76 MOTION to Seal Document 43 Sealed Document,, filed by Stevens−Henager College . (Mettler, Amber) (Entered: 12/03/2015) |
| 12/03/2015 | 236 | NOTICE of SUPPLEMENTAL AUTHORITY by Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Carl Barney, California College San Diego, re 198 Motion To Dismiss For Failure To State A Claim *re Third Amended Complaint* (Gombos, Steven) Modified on 12/15/2015 − added Collegeamerica Denver, Inc, Carl Barney, California College San Diego as filers (jwt). (Entered: 12/03/2015) |
| 12/07/2015 | 237 | NOTICE OF FILING of Response to Notice of Supplemental Authority re 236 Notice of Supplemental Authority filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Exhibit A− Department of Education Clarification)(Mark, Brandon) (Entered: 12/07/2015) |
| 12/10/2015 | 238 | First RESPONSE re 237 Notice of Filing,,*Defendant Weworski's Response to Relators' Response to Defendant Schools' Notice of Supplemental Authority* filed by Weworski & Associates. (McAllister, Bruce) (Entered: 12/10/2015) |
| 12/10/2015 | 239 | RESPONSE re 236 Notice of Supplemental Authority, filed by United States of America, United States of America. (Pugsley, Anna) (Entered: 12/10/2015) |
| 12/16/2015 | 240 | MOTION to Strike 238 Response (NOT to motion) and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Exhibit A − Proposed Relators' Response to Weworski's Response to Relators' Response to Defendant Schools' Notice of Supplemental Authority) Motions referred to Evelyn J. Furse.(Hackford−Peer, Ruth) (Entered: 12/16/2015) |
| 12/23/2015 | 241 | RESPONSE to Motion re 240 MOTION to Strike 238 Response (NOT to motion) and Memorandum in Support filed by Defendant Weworski & Associates. (McAllister, Bruce) (Entered: 12/23/2015) |
| 12/23/2015 | 242 | First MOTION for Leave to File Weworski's December 10, 2015 Response and Memorandum in Support filed by Defendant Weworski & Associates. Motions referred to Evelyn J. Furse.(McAllister, Bruce) (Entered: 12/23/2015) |

| | | |
|---|---|---|
| 12/29/2015 | 243 | REPLY to Response to Motion re 240 MOTION to Strike 238 Response (NOT to motion) and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 12/29/2015) |
| 12/29/2015 | 244 | RESPONSE to Motion re 242 First MOTION for Leave to File Weworski's December 10, 2015 Response and Memorandum in Support *(Relators' Non−Opposition to Motion for Leave)* filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 12/29/2015) |
| 03/30/2016 | 245 | ORDER granting 194 Defendant PricewaterhouseCoopers LLP's Motion to Dismiss; granting 196 Defendant Shaw & Co., P.C.'s Motion to Dismiss; granting in part and denying in part 197 Defendants Center for Excellence In Higher Education's and Stevens−Henager College's Motion to Dismiss for Failure to State a Claim; granting in part and denying in part 198 Defendants Carl Barney's, California College San Diego's, Center for Excellence In Higher Education's, Collegeamerica Arizona, Inc.'s, Collegeamerica Denver, Inc.'s, and Stevens−Henager College's Motion to Dismiss for Failure to State a Claim; granting 201 Defendant Weworski & Associates' Motion to Dismiss; denying as moot 240 Plaintiffs Katie Brooks's and Nannette Wride's Motion to Strike Response; denying as moot 242 Defendant Weworski & Associates' Motion for Leave to File Weworski's December 10, 2015 Response. Signed by Judge Jill N. Parrish on 03/30/2016. (jh) (Entered: 03/30/2016) |
| 03/31/2016 | 246 | NOTICE OF WITHDRAWAL OF COUNSEL of Ruth Hackford−Peer filed by Ruth J. Hackford−Peer on behalf of Katie Brooks, Nannette Wride (Hackford−Peer, Ruth) (Entered: 03/31/2016) |
| 04/11/2016 | 247 | MOTION for Extension of Time to File Answer and Memorandum in Support *to Plaintiff/Realtor's Third Amended Complaint (Dkt. 175) and United States' Complaint in Intervention (Dkt. 41.) Unopposed* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order Granting Unopposed Motion to Extend Deadlines for Defendants to File Responsive Pleadings) Motions referred to Evelyn J. Furse.(Mettler, Amber) (Entered: 04/11/2016) |
| 04/12/2016 | 248 | ORDER granting 247 Motion for Extension of Time to Answer re 41 Complaint in Invervention 175 Third Amended Complaint. Answer deadline updated for Carl Barney − answer due 5/13/2016; California College San Diego − answer due 5/13/2016; Center for Excellence In Higher Education − answer due 5/13/2016; Collegeamerica Arizona, Inc − answer due 5/13/2016; Collegeamerica Denver, Inc − answer due 5/13/2016; Stevens−Henager College − answer due 5/13/2016. Signed by Magistrate Judge Evelyn J. Furse on 4/12/16. (jlw) (Entered: 04/12/2016) |
| 05/13/2016 | 249 | *Defendants* ANSWER to Complaint with Jury Demand filed by Stevens−Henager College.(Gombos, Steven) (Entered: 05/13/2016) |
| 05/13/2016 | 250 | *Defendants'* ANSWER to Complaint with Jury Demand filed by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College.(Gombos, Steven) (Entered: 05/13/2016) |
| 05/16/2016 | 251 | NOTICE OF WITHDRAWAL OF COUNSEL of Joseph M. Stultz filed by Joseph M. Stultz on behalf of Katie Brooks, Nannette Wride (Stultz, Joseph) (Entered: 05/16/2016) |

| | | |
|---|---|---|
| 06/03/2016 | 252 | SUBSTITUTION OF COUNSEL Sandra L. Steinvoort replacing Anna M. Pugsley as counsel on behalf of United States of America. (Steinvoort, Sandra) (Entered: 06/03/2016) |
| 06/03/2016 | 253 | MOTION for Extension of Time Motions to Strike filed by Intervenor Plaintiff United States of America, Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse. Attorney Sandra L. Steinvoort added to party United States of America(pty:intvp)(Steinvoort, Sandra) (Entered: 06/03/2016) |
| 06/06/2016 | 254 | DOCKET TEXT ORDER granting 253 Motion for Extension of Time to File Motions to Strike. Deadline is 6/20/16. Signed by Judge Jill N. Parrish on 6/6/16. No attached document. (ss) (Entered: 06/06/2016) |
| 06/22/2016 | 255 | Stipulated MOTION to Stay *Deadlines Pending Mediation* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order [Proposed] Order Granting Stipulated Motion to Stay Deadlines Pending Mediation) Motions referred to Evelyn J. Furse.(Mettler, Amber) (Entered: 06/22/2016) |
| 06/23/2016 | 256 | ORDER granting 255 Motion to Stay Deadlines Pending Mediation. Signed by Magistrate Judge Evelyn J. Furse on 6/23/16. (jlw) (Entered: 06/23/2016) |
| 10/06/2016 | 257 | NOTICE of Mediation Progress Report by Katie Brooks, Nannette Wride (Mellem, Alissa) (Entered: 10/06/2016) |
| 11/15/2016 | 258 | Stipulated MOTION to Lift Stay filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Text of Proposed Order Proposed Order) Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: 11/15/2016) |
| 11/16/2016 | 259 | DOCKET TEXT ORDER granting 258 Stipulated Motion to Lift Stay. Pursuant to the Stipulated Request to Lift Stay filed by the parties, the Court hereby Orders the stay on this case lifted. The parties will file appropriate discovery conference documents within ten (10) business days of the date of this Order. Signed by Judge Jill N. Parrish on 11/16/2016. No attached document. (scd) (Entered: 11/16/2016) |
| 12/01/2016 | 260 | REPORT OF ATTORNEY PLANNING MEETING. (Mark, Brandon) (Entered: 12/01/2016) |
| 12/07/2016 | 261 | MOTION for Judgment under Rule 54(b) and Memorandum in Support *of Motion for Reconsideration* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 12/07/2016) |
| 12/09/2016 | 262 | MOTION to Compel Compliance with Subpoena and Memorandum in Support *(Subpoena to PricewaterhouseCooper)*, MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: 12/09/2016) |
| 12/09/2016 | 263 | MOTION to Compel Compliance with Subpoena to Shaw & Company and Memorandum in Support , MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: |

| | | |
|---|---|---|
| | | 12/09/2016) |
| 12/09/2016 | 264 | MOTION to Compel Compliance with Subpoena to Weworski & Associates and Memorandum in Support , MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: 12/09/2016) |
| 12/12/2016 | 265 | **NOTICE OF HEARING ON MOTION** re: 263 MOTION to Compel Compliance with Subpoena to Shaw & Company and Memorandum in Support MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support , 262 MOTION to Compel Compliance with Subpoena and Memorandum in Support *(Subpoena to PricewaterhouseCooper)* MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support , 264 MOTION to Compel Compliance with Subpoena to Weworski & Associates and Memorandum in Support MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support : (Notice generated by EJF Chambers) Motion Hearing set for 12/16/2016 at 09:00 AM in Rm 8.400 before Magistrate Judge Evelyn J. Furse. (lnp) (Entered: 12/12/2016) |
| 12/13/2016 | 266 | **AMENDED NOTICE OF HEARING ON MOTION** re: 263 MOTION to Compel Compliance with Subpoena to Shaw & Company and Memorandum in Support MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support , 262 MOTION to Compel Compliance with Subpoena and Memorandum in Support *(Subpoena to PricewaterhouseCooper)* MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support , 264 MOTION to Compel Compliance with Subpoena to Weworski & Associates and Memorandum in Support MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support : (Notice generated by EJF Chambers) Motion Hearing set for 12/16/2016 at 09:00 AM in Rm 8.400 before Magistrate Judge Evelyn J. Furse. **Please note hearing will be held telephonically. A separate email will be sent to the parties providing instructions for the call.** (tls) (Entered: 12/13/2016) |
| 12/15/2016 | 267 | MEMORANDUM in Opposition re 262 MOTION to Compel Compliance with Subpoena and Memorandum in Support *(Subpoena to PricewaterhouseCooper)* MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support filed by Defendant PricewaterhouseCoopers LLP. (Jardine, James) (Entered: 12/15/2016) |
| 12/15/2016 | 268 | MEMORANDUM in Opposition re 263 MOTION to Compel Compliance with Subpoena to Shaw & Company and Memorandum in Support MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support filed by Defendant Shaw & Co., P.C.. (Maxfield, Eric) (Entered: 12/15/2016) |
| 12/15/2016 | 269 | MEMORANDUM in Opposition re 264 MOTION to Compel Compliance with Subpoena to Weworski & Associates and Memorandum in Support MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support filed by Defendant Weworski & Associates. (McAllister, Bruce) (Entered: 12/15/2016) |
| 12/16/2016 | 272 | Minute Order. Proceedings held before Magistrate Judge Evelyn J. Furse: Motion Hearing held on 12/16/2016 re 262 MOTION to Compel Compliance with Subpoena and Memorandum in Support *(Subpoena to PricewaterhouseCooper)* MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support |

| | | |
|---|---|---|
| | | filed by Nannette Wride, Katie Brooks, 263 MOTION to Compel Compliance with Subpoena to Shaw & Company and Memorandum in Support MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support filed by Nannette Wride, Katie Brooks, 264 MOTION to Compel Compliance with Subpoena to Weworski & Associates and Memorandum in Support MOTION to Expedite Resolution of Short Form Discovery Motion and Memorandum in Support filed by Nannette Wride, Katie Brooks. The Court hears argument from the parties. The Court makes partial ruling from the bench and orders the parties to meet and confer to set the scope of the subpoenas. If the parties are unable to reach an agreement they may approach the court again on this issue. The Court directs Brandon Mark to prepare and circulate a proposed order reflection the Courts ruling today. Written Order to follow oral order: Yes. Attorney for Plaintiff: Brandon Mark, Jay Richards, Carey Richert, Attorney for Defendant Amber Metler, James Jardine, Bruce McCallister, Eric Maxfield, Thomas Rafferty. Court Reporter: Electronic. (Time Start: 9:02:23, Time End: 10:34:30, Room 8.400). (tls) (Entered: 12/20/2016) |
| 12/19/2016 | 270 | Stipulated MOTION for Extension of Time to File Response/Reply as to 261 MOTION for Judgment under Rule 54(b) and Memorandum in Support *of Motion for Reconsideration* and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Text of Proposed Order Proposed Order) Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: 12/19/2016) |
| 12/19/2016 | 271 | DOCKET TEXT ORDER granting 270 Motion for Extension of Time to File Response/Reply. Response due on December 23, 2016. Reply due on January 9, 2017. Signed by Judge Jill N. Parrish on 12/19/16. No attached document. (ksb) (Entered: 12/19/2016) |
| 12/20/2016 | 273 | ERRATA of redacted exhibits re: 196 Motion to Dismiss filed by Defendant Shaw & Co., P.C. . (Attachments: # 1 Exhibit A − 2007 Financial Statement, # 2 Exhibit B − 2007 Compliance Attestation Examination, # 3 Exhibit C − 2008 Financial Statement, # 4 Exhibit D − 2008 Compliance Attestation Examination, # 5 Exhibit E − 2008 Financial Statement Revised and Resubmitted, # 6 Exhibit E − 2008 Financial Statement Revised and Resubmitted)(Maxfield, Eric) Modified by adding a link to document 196 on 1/4/2017 (rks). (Entered: 12/20/2016) |
| 12/23/2016 | 274 | MEMORANDUM in Opposition re 261 MOTION for Judgment under Rule 54(b) and Memorandum in Support *of Motion for Reconsideration* filed by Intervenor Plaintiff United States of America. (Majors, Jay) (Entered: 12/23/2016) |
| 12/23/2016 | 275 | MEMORANDUM in Opposition re 261 MOTION for Judgment under Rule 54(b) and Memorandum in Support *of Motion for Reconsideration* filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 12/23/2016) |
| 12/28/2016 | 276 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion to Compel Compliance with Subpoena held on December 16, 2016 before Judge Evelyn J. Furse. Court Reporter/Transcriber Laura W. Robinson, RPR, FCRR, CSR, CP, Telephone number (801)328−4800.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to** |

| | | |
|---|---|---|
| | | **Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/18/2017. Redacted Transcript Deadline set for 1/30/2017. Release of Transcript Restriction set for 3/28/2017. (jmr) Modified on 3/28/2017 by removing restricted text (las). (Entered: 12/28/2016) |
| 12/30/2016 | 278 | SCHEDULING ORDER: Amended Pleadings due by 4/3/2017. Joinder of Parties due by 4/3/2017. Discovery due by 10/13/2017. Motions due by 11/9/2017. Status Conference set for 11/16/2017 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish.<br><br>The Court sets a discovery conference for January 30, 2017 at 10:00 a.m. to discussthe progress on the discovery issues identified in this Order.<br><br>Signed by Magistrate Judge Evelyn J. Furse on 12/30/2016. (jds) (Entered: 12/30/2016) |
| 12/30/2016 | 279 | **NOTICE OF HEARING**: (Notice generated by EJF Chambers) Discovery Hearing set for 1/30/2017 at 10:00 AM in Rm 7.400 before Magistrate Judge Evelyn J. Furse. (jds) (Entered: 12/30/2016) |
| 01/04/2017 | 280 | Modification of Docket: Error: Exhibits filed contained private information. Correction: The exhibits have been sealed and a link to the Errata 273 filed with redacted versions has been added to the entry re 196 MOTION to Dismiss. (rks) (Entered: 01/04/2017) |
| 01/09/2017 | 281 | REPLY to Response to Motion re 261 MOTION for Judgment under Rule 54(b) and Memorandum in Support *of Motion for Reconsideration Reply to United States' Opposition* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 01/09/2017) |
| 01/09/2017 | 282 | REPLY to Response to Motion re 261 MOTION for Judgment under Rule 54(b) and Memorandum in Support *of Motion for Reconsideration Reply to Relators' Opposition* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 01/09/2017) |
| 01/10/2017 | 283 | ORDER Partially granting Motions to Compel; 262 263 and 264 : This matter came before the Court on Relators Motions to Compel Compliance with Subpoenas Duces Tecum served on PricewaterhouseCoopers, LLP, Weworski & Associates, and Shaw & Company (collectively, the Auditors). The parties to the motions briefed the issues pursuant to the short−form discovery motion rule, and the Court held oral argument on December 16, 2016. Counsel for all parties were present by telephone, and the Auditors were represented by counsel present in the courtroom. Based on the briefs submitted, as well the arguments of counsel: IT IS HEREBY ORDERED that the Motions to Compel are granted in part. Counsel for Relators and the Auditors are to meet and confer further to try and set the scope of the subpoenas. Signed by Magistrate Judge Evelyn J. Furse on 1/10/17. (jlw) (Entered: 01/10/2017) |
| 01/17/2017 | 284 | |

| | | |
|---|---|---|
| | | Civil Standing Order. Signed by Judge Jill N. Parrish on 1/17/17. (ss) (Entered: 01/17/2017) |
| 01/23/2017 | 285 | NOTICE of Acknowledgement by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College re 284 Order (Gombos, Steven) (Entered: 01/23/2017) |
| 01/24/2017 | 286 | NOTICE of Acknowledgement by Relators by Katie Brooks, Nannette Wride re 284 Order (Mellem, Alissa) (Entered: 01/24/2017) |
| 01/30/2017 | 287 | Minute Entry for proceedings held before Magistrate Judge Evelyn J. Furse: Status Conference held on 1/30/2017. Jay Majors, John Black, Steven Gombos and Gerald Ritzert appearing by telephone. The court hears from counsel regarding discovery. Counsel reports they are currently working on discovery issues and will continue to do so. The court encourages counsel to continue working on discovery issues and seek the courts help if needed. Attorney for Plaintiff: Jay Majors, Sandra Steinvoort, John Black, Alissa Mellem, Attorney for Defendant: Steven Gombos, Amber Mettler, Gerald Ritzert. Court Reporter: Patti Walker.(Time Start: 10:23, Time End: 10:44, Room 7.100.)(las) (Entered: 01/30/2017) |
| 02/09/2017 | 288 | NOTICE of SUPPLEMENTAL AUTHORITY by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College re 281 Reply Memorandum/Reply to Response to Motion, 282 Reply Memorandum/Reply to Response to Motion, (Attachments: # 1 Exhibit Supplement Authority) (Gombos, Steven) (Entered: 02/09/2017) |
| 03/22/2017 | 289 | MOTION to Stay and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Gombos, Steven) (Entered: 03/22/2017) |
| 03/29/2017 | 290 | MOTION for Extension of Time to Amend *(Unopposed)* filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Text of Proposed Order Proposed Order) Motions referred to Evelyn J. Furse.(Mark, Brandon) Modified on 4/10/2017 by changing event to motion for amended scheduling order(jlw). (Entered: 03/29/2017) |
| 03/30/2017 | 291 | NOTICE of Supplemental Brief on Relators' Unopposed Motion to Extend Deadlines to Amend Pleadings and Add Parties by Katie Brooks, Nannette Wride re 290 MOTION for Extension of Time to Amend *(Unopposed)* (Attachments: # 1 Exhibit A−Letter from Auditors' Counsel) (Mark, Brandon) (Entered: 03/30/2017) |
| 04/05/2017 | 292 | RESPONSE to Motion re 289 MOTION to Stay and Memorandum in Support filed by Plaintiff United States of America. (Steinvoort, Sandra) (Entered: 04/05/2017) |
| 04/05/2017 | 293 | MEMORANDUM in Opposition re 289 MOTION to Stay and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Exhibit A−Examples of Defendants' Document Production, # 2 Affidavit Declaration of Brandon Mark in Support of Relators' Response to Motion to Stay)(Mark, Brandon) (Entered: 04/05/2017) |
| 04/10/2017 | 294 | ORDER granting 290 Motion for Amended Scheduling Order Amended Pleadings due by 5/30/2017. Joinder of Parties due by 5/30/2017. Discovery due by 10/13/2017. |

| | | |
|---|---|---|
| | | Motions due by 11/9/2017. Scheudling Conference set for 11/16/2017 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. At the time of argument on Motions for summary judgment, the court will discuss the scheduling of trial. Counsel should come to the hearing prepared to discuss possible trial dates. If the schedule set forth herein is not extended, the parties can generally expect that trial will be set sometime during the 3rd quarter of 2018. See order for further details. Signed by Magistrate Judge Evelyn J. Furse on 4/7/17. (jlw) (Entered: 04/10/2017) |
| 04/13/2017 | 295 | MOTION to Compel Responses to Discovery Requests , MOTION to Expedite Ruling on Motion to Compel filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Exhibit Exs A−F (Defendants' Discovery Responses), # 2 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: 04/13/2017) |
| 04/14/2017 | 296 | **NOTICE OF HEARING ON MOTION** re: 295 MOTION to Compel Responses to Discovery Requests MOTION to Expedite Ruling on Motion to Compel : (Notice generated by EJF Chambers) Motion Hearing set for 4/20/2017 at 02:30 PM in Rm 7.400 before Magistrate Judge Evelyn J. Furse. (lnp) (Entered: 04/14/2017) |
| 04/19/2017 | 297 | REPLY to Response to Motion re 289 MOTION to Stay and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 04/19/2017) |
| 04/19/2017 | 298 | RESPONSE to Motion re 295 MOTION to Compel Responses to Discovery Requests MOTION to Expedite Ruling on Motion to Compel filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order)(Gombos, Steven) (Entered: 04/19/2017) |
| 04/20/2017 | 299 | Minute Entry for proceedings held before Magistrate Judge Evelyn J. Furse: Motion Hearing held on 4/20/2017 re 295 MOTION to Compel Responses to Discovery Requests MOTION to Expedite Ruling on Motion to Compel filed by Nannette Wride, Katie Brooks. Court hears argument from counsel and GRANTS IN PART, DENIES IN PART 295 MOTION to Compel Responses to Discovery Requests MOTION to Expedite Ruling on Motion to Compel. Court to issue a written order. **Court sets a Status Conference for 5/8/2017 at 03:00 PM in Rm 7.400 before Magistrate Judge Evelyn J. Furse.** Attorney for Plaintiff: Brandon Mark, John Love for Relators Nannette Wride and Katie Brooks. Sandra Steinvoort for USA. John Black, Jay Majors Appearing by Phone for the USA,, Attorney for Defendant: Amber Mettler. Gerald Ritzert, Jacob Shorter (Appearing by phone). Court Reporter: Electronic.(Time Start: 2:35:17, Time End: 4:35:40, Room 7.400.)(lnp) (Entered: 04/24/2017) |
| 04/25/2017 | 300 | ORDER: The Court ORDERS the parties to meet and confer at least weekly until all discovery disputes are resolved. The Court further ORDERS the parties to file a one page bullet pointreport of what the parties accomplished in the meet and confer and the time frames agreed to.For matters the parties cannot resolve after a good faith meet and confer they should use theprocedure attached as exhibit 1 and the form attached as exhibit 2. The Court and the parties willevaluate whether this procedure was helpful in resolving matters after its use the first time. Signed by Magistrate Judge Evelyn J. Furse on 4/24/17. (jlw) (Entered: 04/25/2017) |

| | | |
|---|---|---|
| 05/02/2017 | 301 | NOTICE of Joint Report of the Parties Regarding April 27, 2017 Discovery Conference by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 05/02/2017) |
| 05/05/2017 | 302 | ORDER granting in part and denying in part 295 the Relators' Short Form Discovery MotionRelating to Numerous Discovery Failures by Defendants. The Court finds Defendants have failed to meet their discovery obligations as required by the Federal Rules of Civil Procedure. The Court provided guidance about what Defendants needed to do to remedy their failures from the bench and issued a separate order 300 requiring Defendants to meet and confer with the Relators. Signed by Magistrate Judge Evelyn J. Furse on 5/5/17. (jlw) (Entered: 05/05/2017) |
| 05/05/2017 | 303 | NOTICE of Joint Stipulation on Pending Discovery Issues for May 8, 2017, Hearing by Katie Brooks, Nannette Wride (Attachments: # 1 Exhibit Relators' Exhibits A−E, # 2 Exhibit Defendants' Exhibits A−H) (Mark, Brandon) (Entered: 05/05/2017) |
| 05/07/2017 | 304 | Supplemental MEMORANDUM re 303 Notice (Other) *to Joint Stipulation of Discovery Issues* filed by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 05/07/2017) |
| 05/08/2017 | 305 | NOTICE of Relators' Supplemental Brief for May 8, 2017, Discovery Hearing by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 05/08/2017) |
| 05/08/2017 | 306 | Minute Entry for proceedings held before Magistrate Judge Evelyn J. Furse: Status Conference held on 5/8/2017. Court hears argument from counsel. After hearing from counsel, the Court orders all parties to confer and suggest changes to order 300 that was issued on 4/25/2017. Counsel to submit a proposed process the Court. If the parties cannot agree, each side to submit a proposed order. Submissions due within a week from 5/8/2017.<br>Court orders defendants to provide a sworn interrogatory response that explains and provides a range of averages of both weekly/yearly submissions of the certifications for the relevant time period. Court orders Relators to produce all faculty reports from the 5 campuses that are specifically alleged in the complaint. Court instructs counsel for the Relators to prepare a proposed order and submit to the Court. Court orders items to be completed within 14 days from 5/8/2017. **Court sets a Status Conference for 6/1/2017 at 10:00 AM in Rm 8.400 before Magistrate Judge Evelyn J. Furse. Conference call information will be emailed to out of state counsel.** Attorney for Plaintiff: Brandon Mark, John Love for the Relators. Sandra Steinvoort for the USA. John Black and Jay Majors Appearing by Phone for the USA, Attorney for Defendant: Amber Mettler. Gerald Ritzert and Jacob Shorter (Appearing by phone). Court Reporter: Electronic.(Time Start: 3:06:25, Time End: 4:14:12, Room 7.400.)(lnp) (Entered: 05/09/2017) |
| 05/11/2017 | 307 | NOTICE of Joint Report of May 4, 2017, Discovery Conference by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 05/11/2017) |
| 05/22/2017 | 308 | NOTICE of Joint Report of May 11, 2017, Discovery Conference by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 05/22/2017) |
| 05/26/2017 | 309 | MOTION for Scheduling Order and Memorandum in Support *of Motion to Modify the Scheduling Order* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Ritzert, Gerald) (Entered: |

| | | |
|---|---|---|
| | | 05/26/2017) |
| 05/26/2017 | 310 | NOTICE of Joint Stipulation on Pending Discovery Issues for June 1, 2017, Hearing by Katie Brooks (Mark, Brandon) (Entered: 05/26/2017) |
| 05/30/2017 | 311 | SCHEDULING ORDER: Amended Pleadings due by 11/15/2017., Joinder of Parties due by 11/15/2017., Discovery due by 5/28/2018., Motions due by 7/17/2018. Fact Discovery due by 2/28/18. Deadline for filing partial or complete motions to exclude expert testimony. See order for further details. Signed by Magistrate Judge Evelyn J. Furse on 5/30/17. (jlw) (Entered: 05/30/2017) |
| 05/30/2017 | 312 | NOTICE of Relators' Supplemental Brief for June 1 Discovery Hearing by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 05/30/2017) |
| 05/31/2017 | 313 | MOTION for Hearing re 310 Notice (Other) re Consolidated Hearing on Relators' Motion to Compel and Defendants' Objections and Motion to Quash Relators' Subpoena to Duane Morris, LLP, and Keith Zakarin and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. Motions referred to Evelyn J. Furse.(Ritzert, Gerald) (Entered: 05/31/2017) |
| 05/31/2017 | 314 | RESPONSE to Motion re 309 MOTION for Scheduling Order and Memorandum in Support *of Motion to Modify the Scheduling Order* filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 05/31/2017) |
| 06/01/2017 | 315 | NOTICE of Joint Report of May 18, 2017 Discovery Conference by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 06/01/2017) |
| 06/01/2017 | 316 | NOTICE of Joint Report of May 25, 2017 Discovery Conference by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 06/01/2017) |
| 06/01/2017 | 317 | Minute Entry for proceedings held before Magistrate Judge Evelyn J. Furse: Status Conference held on 6/1/2017. Court hears argument from counsel. After hearing from counsel, the Court orders the last five documents on the privilege log be produced by Monday, June 5, 2017. Court to enter a docket text order. Court hears from counsel regarding the motion to modify the scheduling order. Court provides guidance to the parties regarding matters to be addressed at the upcoming scheduling conference. Court sets a Scheduling Conference set for 6/26/2017 at 04:00 PM in Rm 8.400 before Magistrate Judge Evelyn J. Furse. Attorney for Plaintiff: Brandon Mark, John Love for Relators Nannette Wride and Katie Brooks. Carra Sheppard Cadman for the USA. Jay Majors Appearing by Phone for the USA, Attorney for Defendant: Allan Sullivan. Gerald Ritzert (Appearing by phone. Court Reporter: Electronic.(Time Start: 10:02:03, Time End: 10:46:27, Room 8.400.)(lnp) (Entered: 06/01/2017) |
| 06/01/2017 | 318 | DOCKET TEXT ORDER DENYING 313 Motion to Reschedule Motion Hearing. Signed by Magistrate Judge Evelyn J. Furse on 6/1/2017. No attached document. (lnp) (Entered: 06/01/2017) |
| 06/01/2017 | 319 | DOCKET TEXT ORDER GRANTING Relators Motion to Compel five documents from privilege log re 310 Notice (Other) filed by Katie Brooks. Signed by Magistrate Judge Evelyn J. Furse on 6/1/2017. (lnp) (Entered: 06/01/2017) |
| 06/02/2017 | 320 | MOTION to Quash Subpoenas Duces Tecum and Memorandum in Support , MOTION to Expedite Discovery Motion to Quash and Memorandum in Support filed by Movants Duane Morris LLP, Keith Zakarin. (Attachments: # 1 Exhibit 1, # 2 |

| | | |
|---|---|---|
| | | Exhibit 2, # 3 Text of Proposed Order) Motions referred to Evelyn J. Furse. Attorney Tyson E. Hafen added to party Duane Morris LLP(pty:mov), Attorney Tyson E. Hafen added to party Keith Zakarin(pty:mov)(Hafen, Tyson) (Entered: 06/02/2017) |
| 06/02/2017 | 321 | MOTION to Quash Relators' Subpoenas to Third Parties Duane Morris, LLP, and Keith Zakarin and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. Motions referred to Evelyn J. Furse.(Gombos, Steven) (Entered: 06/02/2017) |
| 06/05/2017 | 322 | MOTION for Admission Pro Hac Vice of John J. Zefutie, Jr. , Registration fee $ 250, receipt number 1088−2768424, filed by Movants Duane Morris LLP, Keith Zakarin. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Hafen, Tyson) (Entered: 06/05/2017) |
| 06/05/2017 | 323 | **NOTICE OF HEARING ON MOTIONS** re: 320 MOTION to Quash Subpoenas Duces Tecum and Memorandum in Support MOTION to Expedite Discovery Motion to Quash and Memorandum in Support , 321 MOTION to Quash Relators' Subpoenas to Third Parties Duane Morris, LLP, and Keith Zakarin and Memorandum in Support : (Notice generated by EJF Chambers) Motion Hearing set for 6/8/2017 at 09:00 AM in Rm 8.400 before Magistrate Judge Evelyn J. Furse. (lnp) (Entered: 06/05/2017) |
| 06/06/2017 | 324 | DOCKET TEXT ORDER granting 322 Motion for Admission Pro Hac Vice of John J Zefutie, Jr for Duane Morris LLP,John J Jufutie, Jr for Keith Zakarin. *Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at http://www.utd.uscourts.gov* Signed by Judge Jill N. Parrish on 6/6/17. No attached document. (jlw) Modified by correcting attorney's name on 6/6/2017 (rks). (Entered: 06/06/2017) |
| 06/07/2017 | 325 | **AMENDED NOTICE OF HEARING ON MOTIONS** re: 320 MOTION to Quash Subpoenas Duces Tecum and Memorandum in Support MOTION to Expedite Discovery Motion to Quash and Memorandum in Support , 321 MOTION to Quash Relators' Subpoenas to Third Parties Duane Morris, LLP, and Keith Zakarin and Memorandum in Support : (Notice generated by EJF Chambers) Motion Hearing reset for 6/23/2017 at 09:00 AM in Rm 8.400 before Magistrate Judge Evelyn J. Furse. **HEARING RESET AT THE REQUEST OF COUNSEL.** (lnp) (Entered: 06/07/2017) |
| 06/09/2017 | 326 | MEMORANDUM in Opposition re 320 MOTION to Quash Subpoenas Duces Tecum and Memorandum in Support MOTION to Expedite Discovery Motion to Quash and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 06/09/2017) |
| 06/09/2017 | 327 | MEMORANDUM in Opposition re 321 MOTION to Quash Relators' Subpoenas to Third Parties Duane Morris, LLP, and Keith Zakarin and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 06/09/2017) |
| 06/19/2017 | 328 | ORDER ON RULINGS AT MAY 8, 2017, DISCOVERY CONFERENCE: Based on the parties submissions for the May 8, 2017, discovery conference and the arguments of the parties at the conference, as well as on the parties prior submissions and arguments on the same and similar subjects, and good cause appearing therefor, the Court hereby Orders that within two weeks of May 8, 2017, Defendants shall: 1. provide a sworn interrogatory response that provides the weekly and annual |

| | | |
|---|---|---|
| | | average number of submissions of G5 certifications by Defendants (or their agents) for the period of time requested; and 2. produce all faculty personnel reports for the period of time requested for the following five campuses: Boise, Colorado Springs, Denver, Salt Lake City/Murray, and Orem. The Court expresses no position on whether Defendants production of additional information from these categories may be appropriate in the future, which is an issue the Court has reserved for future proceedings. Signed by Magistrate Judge Evelyn J. Furse on 6/19/17. (jlw) (Entered: 06/19/2017) |
| 06/20/2017 | 329 | MOTION for Judgment on the Pleadings and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order)(Gombos, Steven) (Entered: 06/20/2017) |
| 06/22/2017 | 330 | NOTICE of Joint Report of June 8, 2017 Discovery Conference by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 06/22/2017) |
| 06/23/2017 | 331 | Minute Order. Proceedings held before Magistrate Judge Evelyn J. Furse: Motion Hearing held on 6/23/2017 re 321 MOTION to Quash Relators' Subpoenas to Third Parties Duane Morris, LLP, and Keith Zakarin and Memorandum in Support filed by Collegeamerica Denver, Inc, Center for Excellence In Higher Education, California College San Diego, Carl Barney, Stevens−Henager College, Collegeamerica Arizona, Inc, 320 MOTION to Quash Subpoenas Duces Tecum and Memorandum in Support MOTION to Expedite Discovery Motion to Quash and Memorandum in Support filed by Keith Zakarin, Duane Morris LLP. Court hears argument from counsel and TAKES UNDER ADVISEMENT 320 Motion to Quash/ 320 Motion to Expedite and TAKES UNDER ADVISEMENT 321 Motion to Quash. Counsel stipulates to portions of 320 Motion to Quash/ 320 Motion to Expedite and 321 Motion to Quash. Court instructs counsel to prepare and submit a proposed order. Attorney for Plaintiff: Jay Majors, John Black − Appearing by phone. Carra Sheppard Cadman for the USA. Brandon Mark and John Love for Relators Nannette Wride and Katie Brooks., Attorney for Defendant Amber M. Mettler, Steven M. Gombos. John J. Zefutie, Jr. for Movant Duane Morris LLP. Court Reporter: Electronic.(Time Start: 9:07:48, Time End: 10:55:25, Room 8.400.) (lnp) (Entered: 06/23/2017) |
| 06/23/2017 | 332 | ORDER denying 289 Motion to Stay Discovery Pending Ruling on the College Defendants' Motion for Reconsideration 298 . Signed by Magistrate Judge Evelyn J. Furse on 6/23/17. (jlw) (Entered: 06/23/2017) |
| 06/26/2017 | 333 | NOTICE of Joint Report of June 15, 2017, Discovery Conference by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 06/26/2017) |
| 06/26/2017 | 334 | Minute Entry for proceedings held before Magistrate Judge Evelyn J. Furse: Scheduling Conference held on 6/26/2017. Court hears from counsel and sets scheduling dates. Court instructs counsel to prepare and submit a proposed order. Attorney for Plaintiff: Brandon Mark, John Love for Relators Nannette Wride and Katie Brooks. Sandra L. Steinvoort for the USA. Jay Majors and John Black Appearing by Phone for the USA, Attorney for Defendant: Amber Mettler. Gerald Ritzert (Appearing by phone). Court Reporter: Electronic.(Time Start: 4:32:52, Time End: 5:21:12, Room 8.400.)(lnp) (Entered: 06/26/2017) |
| 07/07/2017 | 335 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing held on 6/23/17 before Judge Evelyn Furse. Court Reporter/Transcriber Patti Walker, |

| | | |
|---|---|---|
| | | Telephone number (801)364−5440.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/28/2017. Redacted Transcript Deadline set for 8/7/2017. Release of Transcript Restriction set for 10/5/2017. (jlw) Modified on 10/6/2017by removing restricted text (jlw). (Entered: 07/07/2017) |
| 07/07/2017 | 337 | OBJECTION TO MAGISTRATE JUDGE DECISION to District Court by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College re 332 Order on Motion to Stay (Gombos, Steven) (Entered: 07/07/2017) |
| 07/14/2017 | 338 | ORDER ON RULINGS AT HEARING ON 6/26/17 334 Scheduling Conference: By July 10, 2017, Defendants shall provide responses to the interrogatory in Relators Fifth Set of Discovery Requests involving reliance on third−parties; By July 31, 2017, the parties shall meet and confer and try to reach an agreement regarding a proposed sampling method for documents and materials related to student grade changes;By August 14, 2017, the parties shall meet and confer and try to reach an agreement regarding Relators Sixth Set of Discovery Requests; and The parties shall meet and confer biweekly to resolve discovery disputes. Following each meet and confer, the parties shall file a one page bullet point report of what the parties accomplished in the meet and confer and the time frames agreed to. The parties are no longer required to meet and confer weekly as required by the Courts April 25 Order 300 . Signed by Magistrate Judge Evelyn J. Furse on 7/14/17. (jlw) (Entered: 07/14/2017) |
| 07/18/2017 | 339 | RESPONSE to Motion re 329 MOTION for Judgment on the Pleadings and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 07/18/2017) |
| 07/18/2017 | 340 | ORDER ON RULINGS AT JUNE 23, 2017 HEARING REGARDING MOTIONS TO QUASH SUBPOENAS: Based on the submissions on Defendants Motion to Quash Relators Subpoenas to Third Parties, Duane Morris, LLP, and Keith Zakarin and non−parties Duane Morris, LLPs, and Keith Zakarins (collectively Non−Parties) Short Form Discovery Motion to Quash Subpoenas Duces Tecum Issued to Duane Morris, LLP, and Keith Zakarin, and the arguments of the parties at the May 23, 2017 hearing, and good cause appearing therefor, the Court hereby Orders that the following requests in the relevant subpoenas are limited as follows by stipulation: Requests 6 and 17 are limited to documents that reflect material or information provided by any Defendant (including any subsidiaries, affiliates, officers, directors, employees, agents, representatives, and anyone acting on their behalf) to the Non−Parties in connection with any advice related to the payment of admissions |

| | | |
|---|---|---|
| | | consultants or the Incentive Compensation Ban (ICB) and related safe harbors at issue in the above−captioned litigation. Requests 14, 15, and 16 are limited to documents within the requested categories that were provided to Defendants or their agents, employees, or representatives as they relate to issues in the above−captioned litigation, from January 1, 2006 to present. Signed by Magistrate Judge Evelyn J. Furse on 7/18/17. (jlw) (Entered: 07/18/2017) |
| 07/21/2017 | 341 | NOTICE OF FILING of Plaintiff's Submission of Proposed Order filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order)(Steinvoort, Sandra) (Entered: 07/21/2017) |
| 08/01/2017 | 342 | REPLY to Response to Motion re 329 MOTION for Judgment on the Pleadings and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 08/01/2017) |
| 08/08/2017 | 343 | NOTICE of Notice of Firm Name Change by Weworski & Associates (Pope, William) (Entered: 08/08/2017) |
| 08/08/2017 | 344 | SUBSTITUTION OF COUNSEL William G. Pope replacing Joseph E. Minnock as counsel on behalf of Weworski & Associates. (Pope, William) (Entered: 08/08/2017) |
| 08/25/2017 | 345 | NOTICE of Relators' Brief on the Proper Scope of Discovery by Katie Brooks, Nannette Wride (Attachments: # 1 Exhibit A−Defendants' Response to Interrogatory No. 5, # 2 Exhibit B−Defendants' Document, # 3 Exhibit C−Letter from Defendants' Counsel, # 4 Exhibit D− Defendants' Response to Court's May 9 Order) (Mark, Brandon) (Entered: 08/25/2017) |
| 08/28/2017 | 346 | ORDER granting 329 Motion for Judgment on the Pleadings. Judgment on the pleadings is entered in favor of the defendants on all of the relators claims to the extent that they seek compensation for false claims occurring before January 3, 2007. Signed by Judge Jill N. Parrish on 8/25/17. (jlw) (Entered: 08/28/2017) |
| 08/31/2017 | 347 | MOTION to Compel Documents Regarding Transactions Between Defendants and Memorandum in Support , MOTION to Expedite Resolution of Motion to Compel (Short Form Rule DUCivR 37−1) and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Exhibit A−Copy of Pertinent Requests and Objections (Excerpt of Relators' Sixth Set), # 2 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: 08/31/2017) |
| 09/01/2017 | 348 | **NOTICE OF HEARING ON MOTION** re: 347 MOTION to Compel Documents Regarding Transactions Between Defendants and Memorandum in Support MOTION to Expedite Resolution of Motion to Compel (Short Form Rule DUCivR 37−1) and Memorandum in Support : (Notice generated by EJF Chambers) Motion Hearing set for 9/11/2017 at 10:00 AM in Rm 7.100 before Magistrate Judge Evelyn J. Furse. (lnp) (Entered: 09/01/2017) |
| 09/06/2017 | 349 | On the Proper Scope of Discovery BRIEF filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Ritzert, Gerald) (Entered: 09/06/2017) |
| 09/08/2017 | 350 | DOCKET TEXT ORDER: If the parties seek a ruling on any discovery disputes contained in ECF Nos. 345 and 349 , the parties should raise those issues by |

| | | |
|---|---|---|
| | | motion(s). Signed by Magistrate Judge Evelyn J. Furse on 9/8/2017. (nas) (Entered: 09/08/2017) |
| 09/08/2017 | 351 | Joint MOTION for Extension of Time Stipulated Motion to Extend Defendants' Response to Relators' Short−Form Motion and to Move Hearing Date and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Ritzert, Gerald) (Entered: 09/08/2017) |
| 09/08/2017 | 352 | ORDER granting 351 Joint Stipulated Motion to Extend Time for Defendants to Respond to Relators Short−Form Discovery Motion and Move Hearing Date. The Court hereby GRANTS the motion, and ORDERS that the time for Defendants to file their response shall be extended to 9/12/2017, and thehearing on Relators' Short−Form Discovery Motion will be held on 9/22/2017, at 10:00 a.m. Signed by Magistrate Judge Evelyn J. Furse on 9/8/17. (dla) (Entered: 09/08/2017) |
| 09/08/2017 | 353 | **NOTICE OF HEARING ON MOTION** re: 347 Relators' Short−Form Discovery Motion reset for 9/22/2017 at 10:00 AM in Rm 7.400 before Magistrate Judge Evelyn J. Furse. (dla) (Entered: 09/08/2017) |
| 09/08/2017 | | Hearings set for 9/11/2017, terminated. Hearing reset for 9/22/2017, at 10:00 a.m. (dla) (Entered: 09/08/2017) |
| 09/08/2017 | 354 | **AMENDED NOTICE OF HEARING ON MOTION** re: 347 MOTION to Compel Documents Regarding Transactions Between Defendants and Memorandum in Support MOTION to Expedite Resolution of Motion to Compel (Short Form Rule DUCivR 37−1) and Memorandum in Support : (Notice generated by EJF Chambers) Motion Hearing set for 9/22/2017 at 10:00 AM in Rm 7.100 before Magistrate Judge Evelyn J. Furse. **PLEASE NOTE THE CHANGE IN COURTROOM.** (lnp) (Entered: 09/08/2017) |
| 09/12/2017 | 355 | RESPONSE to Motion re 347 MOTION to Compel Documents Regarding Transactions Between Defendants and Memorandum in Support MOTION to Expedite Resolution of Motion to Compel (Short Form Rule DUCivR 37−1) and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Ritzert, Gerald) (Entered: 09/12/2017) |
| 09/14/2017 | 356 | MOTION for Discovery and Memorandum in Support , MOTION to Expedite Resolution of Short−Form Discovery Motion and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: 09/14/2017) |
| 09/15/2017 | 357 | **NOTICE OF HEARING ON MOTION** re: 356 MOTION for Discovery and Memorandum in Support MOTION to Expedite Resolution of Short−Form Discovery Motion and Memorandum in Support : (Notice generated by EJF Chambers) Motion Hearing set for 9/22/2017 at 10:00 AM in Rm 7.100 before Magistrate Judge Evelyn J. Furse. (lnp) (Entered: 09/15/2017) |
| 09/22/2017 | 358 | Minute Entry for proceedings held before Magistrate Judge Evelyn J. Furse: Motion Hearing held on 9/22/2017 re 347 MOTION to Compel Documents Regarding Transactions Between Defendants and Memorandum in Support MOTION to |

| | | |
|---|---|---|
| | | Expedite Resolution of Motion to Compel (Short Form Rule DUCivR 37−1) and Memorandum in Support filed by Nannette Wride, Katie Brooks, 356 MOTION for Discovery and Memorandum in Support MOTION to Expedite Resolution of Short−Form Discovery Motion and Memorandum in Support filed by Nannette Wride, Katie Brooks. Court hears argument from counsel and TAKES UNDER ADVISEMENT 347 MOTION to Compel Documents Regarding Transactions Between Defendants and TAKES UNDER ADVISEMENT 356 MOTION for Discovery. Court to issue a written order. Attorney for Plaintiff: Jay Majors and John Black appearing by phone. Attorney for Defendant: Amber Mettler. Steven Gombos and Gerald Ritzert appearing by phone. Carra Cadman for the USA. Brandon Mark for Relators Nannette Wride and Katie Brooks. Court Reporter: Electronic.(Time Start: 10:14:23, Time End: 11:07:40, Room 7.100.)(lnp) (Entered: 09/22/2017) |
| 09/27/2017 | 359 | NOTICE of Joint Status Report of Discovery Conferences in July and August by Katie Brooks, Nannette Wride (Mark, Brandon) (Entered: 09/27/2017) |
| 10/04/2017 | 360 | **NOTICE OF HEARING ON MOTION** re: 261 MOTION for Judgment under Rule 54(b) *of Motion for Reconsideration* : (Notice generated by ss) Motion Hearing set for 11/8/2017 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. **If counsel have a conflict, please contact chambers.** (ss) (Entered: 10/04/2017) |
| 10/23/2017 | 361 | **AMENDED NOTICE OF HEARING ON MOTION** re: 261 Motion for Judgment under Rule 54(b) : (Notice generated by ss) Motion Hearing set for 11/15/2017 at 02:00 PM in Rm 8.300 before Judge Jill N. Parrish. (ss) (Entered: 10/23/2017) |
| 11/14/2017 | 362 | NOTICE of Appearance by Paul W. Shakespear on behalf of Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College (Shakespear, Paul) (Entered: 11/14/2017) |
| 11/15/2017 | 363 | Minute Entry for proceedings held before Judge Jill N. Parrish. Motion Hearing held on 11/15/2017 re 261 Motion for Judgment under Rule 54(b) *of Motion for Reconsideration. Counsel for parties present. After hearing arguments from counsel, Court took the motion under advisement. Attorney for Plaintiff: Allissa Mellem, John Black, Attorney for Defendant: Steve Gombos, Paul Shakespear,. Court Reporter: Patti Walker.(ss) (Entered: 11/15/2017)* |
| 11/16/2017 | 364 | Plaintiff's MOTION Reconsideration re 245 Order on Motion to Dismiss,, Order on Motion to Dismiss for Failure to State a Claim,,, Order on Motion to Strike, Order on Motion for Leave to File, and Memorandum in Support filed by Plaintiffs Katie Brooks, Nannette Wride. Motions referred to Evelyn J. Furse.(Mark, Brandon) Modified by correcting event type on 11/21/2017 (dla). (Entered: 11/16/2017) |
| 11/17/2017 | 365 | Motions No Longer Referred: 364 Plaintiff's MOTION Reconsideration re 245 Order on Motion to Dismiss,, Order on Motion to Dismiss for Failure to State a Claim,,, Order on Motion to Strike, Order on Motion for Leave to File,,,,,,,,,,,,,,,,,,,,,,,,,, and Memorandum in in Support filed by Plaintiffs Katie Brooks, Nannette Wride. **District Judge to handle the motion.** (lnp) (Entered: 11/17/2017) |
| 11/17/2017 | 366 | DOCKET TEXT ORDER. In light of Relators' Motion for Partial Reconsideration, the United States is hereby ordered to file either: (1) a motion asking the Court to reconsider its March 30, 2016 Memorandum Decision & Order; or (2) a statement indicating that the United States intends its claims to be limited to the legal theory that Defendants knowingly made false certifications or statements, either express or implied, when entering into program participation agreements with the Department of |

| | | |
|---|---|---|
| | | Education. The United States must respond accordingly on or before December 1, 2017. Signed by Judge Jill N. Parrish on 11/17/2017. (dcb) (Entered: 11/17/2017) |
| 11/22/2017 | 367 | MOTION to Amend/Correct 311 Scheduling Order, and Memorandum in Support *(to amend deadlines for amending pleadings and joining parties)* filed by Plaintiffs Katie Brooks, Nannette Wride. Motions referred to Evelyn J. Furse.(Mark, Brandon) Modified event type on 11/27/2017 (jds). (Entered: 11/22/2017) |
| 11/29/2017 | 368 | First MOTION for Extension of Time for the Government to File its Motion for Reconsideration and for Defendants to File their Responses to Relators' and the Government's Motions for Reconsideration and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order Proposed Order re: Motion to Extend Time For Government to File Request fro Reconsideration and For Defendants to File Responses to Relators' and Government's Requests for Reconsideration) Motions referred to Evelyn J. Furse.(Gombos, Steven) (Entered: 11/29/2017) |
| 11/29/2017 | 369 | DOCKET TEXT ORDER granting 368 Motion for Extension of Time. Government's motion due by December 4, 2017; Defendants' responses due by January 5, 2018; replies due by January 19, 2018. Signed by Judge Jill N. Parrish on 11/29/17. No attached document. (ksb) (Entered: 11/29/2017) |
| 11/30/2017 | 370 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing held on November 15, 2017 before Judge JILL N. PARRISH. Court Reporter/Transcriber Patti Walker, CSR, RPR, CP, Telephone number 801−364−5440.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/21/2017. Redacted Transcript Deadline set for 1/2/2018. Release of Transcript Restriction set for 2/28/2018. (jds) Modified on 3/1/2018 by removing restricted text (jlw). (Entered: 11/30/2017) |
| 12/04/2017 | 372 | MOTION Reconsideration re 245 Order on Motion to Dismiss, Order on Motion to Dismiss for Failure to State a Claim, Order on Motion to Strike, Order on Motion for Leave to File,and Memorandum in Support filed by Plaintiff United States of America. Motions referred to Evelyn J. Furse.(Steinvoort, Sandra) (Entered: 12/04/2017) |
| 12/05/2017 | 373 | Motions No Longer Referred: 372 MOTION Reconsideration re 245 Order on Motion to Dismiss,,,,,,,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,, Order on Motion to Strike,,,,, Order on Motion for Leave to File,,,, and Memorandum in Support. District Judge to handle the motion. (lnp) (Entered: |

| | | |
|---|---|---|
| | | 12/05/2017) |
| 12/06/2017 | 374 | RESPONSE to Motion re 367 MOTION to Amend Scheduling Order filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order Proposed Order Denying Relators' Motion to Extend Deadlines to Amend Pleadings and Join Parties)(Gombos, Steven) (Entered: 12/06/2017) |
| 12/20/2017 | 375 | **NOTICE OF HEARING ON MOTION** re: 364 Motion for Reconsideration, 372 Motion for Reconsideration re 245 Order on Motion to Dismiss (Notice generated by ss) Motion Hearing set for 2/6/2018 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. **No further extensions will be granted on the parties' briefing schedule. If counsel have conflict with date or time of the hearing, please contact chambers.** (ss) (Entered: 12/20/2017) |
| 12/20/2017 | 376 | REPLY to Response to Motion re 367 MOTION to Amend Scheduling Order filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Exhibit A−November 14, 2017 Email, # 2 Exhibit B− November 16, Email pt. 1, # 3 Exhibit C− November 16, Email pt. 2)(Mark, Brandon) (Entered: 12/20/2017) |
| 12/21/2017 | 377 | **AMENDED NOTICE OF HEARING ON MOTIONS** re: 364 Motion for Reconsideration, 372 MOTION Reconsideration re 245 Order on Motion to Dismiss Order on Motion to Dismiss for Failure to State a Claim Order on Motion to Strike Order on Motion for Leave to File (Notice generated by ss) Motion Hearing continued to 2/13/2018 at 10:00 AM in Rm 8.200 before Judge Jill N. Parrish. **No further extensions will be granted on the parties' briefing schedule. If counsel have conflict with date or time of the hearing, please contact chambers.** (ss) (Entered: 12/21/2017) |
| 12/22/2017 | 378 | NOTICE OF WITHDRAWAL OF COUNSEL of Amber M. Mettler filed by Amber M. Mettler on behalf of Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College (Mettler, Amber) (Entered: 12/22/2017) |
| 12/27/2017 | 379 | MEMORANDUM DECISION AND ORDER granting in part and denying in part 320 Motion to Quash AND granting in part and denying in part 321 Motion to Quash. Signed by Magistrate Judge Evelyn J. Furse on 12/27/2017. (jds) (Entered: 12/27/2017) |
| 01/03/2018 | 380 | DOCKET TEXT ORDER GRANTING 367 Motion for Scheduling Order. The deadlines for amending pleadings and joining parties are extended to January 29, 2018. Signed by Magistrate Judge Evelyn J. Furse on 1/3/2018. No attached document. (nas) (Entered: 01/03/2018) |
| 01/04/2018 | 381 | MEMORANDUM DECISION AND ORDER: regarding the proper temporal scope of discovery re 356 Motion for Discovery AND granting in part 347 Brooks and Wrides Motion to Compel. Signed by Magistrate Judge Evelyn J. Furse on 1/4/2018. (jds) (Entered: 01/04/2018) |
| 01/04/2018 | 382 | Stipulated MOTION for Leave to File Excess Pages and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Shakespear, Paul) (Entered: 01/04/2018) |

| | | |
|---|---|---|
| 01/05/2018 | 383 | ORDER granting 382 Unopposed Motion for Leave to File a single over−length opposition to Plaintiffs Motions for Reconsideration. Signed by Judge Jill N. Parrish on 1/4/2018. (jds) (Entered: 01/05/2018) |
| 01/05/2018 | 384 | MEMORANDUM in Opposition re 364 MOTION for Reconsideration, 372 MOTION Reconsideration re 245 Order on Motion to Dismiss,,,,,,,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,, Order on Motion to Strike,,,, Order on Motion for Leave to File,,,, and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Exhibit Letter to Government Counsel)(Gombos, Steven) (Entered: 01/05/2018) |
| 01/10/2018 | 385 | OBJECTION TO MAGISTRATE JUDGE DECISION to District Court by Duane Morris LLP re 379 Order on Motion to Quash, Order on Motion to Expedite,, Memorandum Decision (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Hafen, Tyson) (Entered: 01/10/2018) |
| 01/10/2018 | 386 | OBJECTION TO MAGISTRATE JUDGE DECISION to District Court by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College re 385 Objection to Magistrate Judge Decision to District Court, (Gombos, Steven) (Entered: 01/10/2018) |
| 01/17/2018 | 387 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion Hearing held on September 22, 2017 before Judge Evelyn J. Furse. Court Reporter/Transcriber Patti Walker, CSR, RPR, CP, Telephone number 801−364−5440.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/7/2018. Redacted Transcript Deadline set for 2/20/2018. Release of Transcript Restriction set for 4/17/2018. (jds) Modified by removing restricted text on 4/17/2018 (rgj). (Entered: 01/17/2018) |
| 01/18/2018 | 389 | OBJECTION TO MAGISTRATE JUDGE DECISION to District Court by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College re 381 Order on Motion to Compel,, Order on Motion to Expedite,, Order on Motion for Discovery,,,, Memorandum Decision, (Attachments: # 1 Exhibit, # 2 Exhibit)(Gombos, Steven) (Entered: 01/18/2018) |
| 01/18/2018 | 390 | Joint MOTION to Stay and Memorandum in Support *Pending the Court's Resolution of the Parties' Pending Motions for Reconsideration* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, |

| | | |
|---|---|---|
| | | Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Gombos, Steven) (Entered: 01/18/2018) |
| 01/19/2018 | 391 | REPLY to Response to Motion re 372 MOTION Reconsideration re 245 Order on Motion to Dismiss,,,,,,,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,, Order on Motion to Strike,,,, Order on Motion for Leave to File,,,, and Memorandum in Support filed by Plaintiff United States of America. (Steinvoort, Sandra) (Entered: 01/19/2018) |
| 01/19/2018 | 392 | REPLY to Response to Motion re 364 MOTION for Reconsideration filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 01/19/2018) |
| 01/22/2018 | 393 | ORDER denying 390 Motion to Stay Discovery. The Court denies the request to stay discovery, but ORDERS that the operative Scheduling Order entered May 30, 2017 311 and all deadlines in that Order, are VACATED. Upon the Courts resolution of the Motions for Reconsideration (ECF Nos. 261, 364 & 372), the parties are ORDERED to file within seven (7) days a proposed revised Scheduling Order for the Courts consideration. The Court will consider the period between entry of this Order and resolution of the Motions for Reconsideration in determining the appropriate amount of time for additional discovery, if any, when entering a revised Scheduling Order. Signed by Magistrate Judge Evelyn J. Furse on 1/22/2018. (jds) (Entered: 01/22/2018) |
| 01/26/2018 | 394 | MOTION to Stay re 381 Order on Motion to Compel,, Order on Motion to Expedite,, Order on Motion for Discovery,,,, Memorandum Decision, 389 Objection to Magistrate Judge Decision to District Court, and Memorandum in Support *Motion to Stay January 4, 2018 Order pending the district court's consideration of Defendants' Objections* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Gombos, Steven) (Entered: 01/26/2018) |
| 01/29/2018 | 395 | DOCKET TEXT ORDER Plaintiffs shall file a response to Defendants' Motion to Stay the January 4, 2018 Order 394 by Friday, February 2, 2018. Signed by Magistrate Judge Evelyn J. Furse on 1/29/2018. (nas) (Entered: 01/29/2018) |
| 02/02/2018 | 396 | RESPONSE to Motion re 394 MOTION to Stay re 381 Order on Motion to Compel,, Order on Motion to Expedite,, Order on Motion for Discovery,,,, Memorandum Decision, 389 Objection to Magistrate Judge Decision to District Court, and Memorandum in Support *Motion to Stay filed by Plaintiff United States of America. (Steinvoort, Sandra) (Entered: 02/02/2018)* |
| 02/02/2018 | 397 | RESPONSE to Motion re 394 MOTION to Stay re 381 Order on Motion to Compel,, Order on Motion to Expedite,, Order on Motion for Discovery,,,, Memorandum Decision, 389 Objection to Magistrate Judge Decision to District Court, and Memorandum in Support *Motion to Stay filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 02/02/2018)* |
| 02/05/2018 | 398 | DOCKET TEXT ORDER DENYING 394 Motion to Stay re 381 Order on Motion to Compel. Signed by Magistrate Judge Evelyn J. Furse on 2/5/2018. No attached document. (nas) (Entered: 02/05/2018) |
| 02/05/2018 | 399 | OBJECTION TO MAGISTRATE JUDGE DECISION to District Court by Carl Barney, California College San Diego, Center for Excellence In Higher Education, |

| | | |
|---|---|---|
| | | Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College re 393 Order on Motion to Stay,, (Gombos, Steven) (Entered: 02/05/2018) |
| 02/06/2018 | 400 | **AMENDED NOTICE OF HEARING ON MOTION** re: 364 Motion for Reconsideration, 372 MOTION Reconsideration re 245 Order on Motion to Dismiss Order on Motion to Dismiss for Failure to State a Claim Order on Motion to Strike Order on Motion for Leave to File (Notice generated by ss) Motion Hearing set for 2/13/2018 at 09:00 AM in Rm 8.200 before Judge Jill N. Parrish. **Time Change Only** (ss) (Entered: 02/06/2018) |
| 02/07/2018 | 401 | MOTION to Stay re 389 Objection to Magistrate Judge Decision to District Court, and Memorandum in Support *Pending the Court's Resolution of Defendants' Objections* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Ritzert, Gerald) (Entered: 02/07/2018) |
| 02/08/2018 | 402 | ORDER re pending objections to orders issues by Magistrate Judge Evelyn J. Furse 399 , 389 , 386 , 385 . Plaintiffs are ORDERED to comply with Local Rule 72−3(b). Plaintiffs shall respond accordingly on or before February 13, 2018. Failure to respond accordingly may result in sanctions, including fines. Signed by Judge Jill N. Parrish on 2/8/2018. (jds) (Entered: 02/08/2018) |
| 02/08/2018 | 403 | NOTICE OF FILING of Proposed Order Denying Duane Morris's Objection to Magistrate Judge's Discovery Order re 385 Objection to Magistrate Judge Decision to District Court, filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Text of Proposed Order)(Mark, Brandon) (Entered: 02/08/2018) |
| 02/08/2018 | 404 | NOTICE OF FILING of Proposed Order Denying Defendants' Objection to Magistrate Judge's Discovery Order re 386 Objection to Magistrate Judge Decision to District Court, filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Text of Proposed Order)(Mark, Brandon) (Entered: 02/08/2018) |
| 02/09/2018 | 405 | NOTICE OF FILING of Proposed Order Denying Defendants' Objections to Magistrate Judge's Discovery Order re 389 Objection to Magistrate Judge Decision to District Court, filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Text of Proposed Order)(Mark, Brandon) (Entered: 02/09/2018) |
| 02/09/2018 | 406 | **AMENDED NOTICE OF HEARING ON MOTIONS** re: 364 Motion for Reconsideration, 372 Motion Reconsideration re 245 Order on Motion to Dismiss to Dismiss for Failure to State a Claim Order on Motion to Strike Order on Motion for Leave to File(Notice generated by ss) Motion Hearing RESET for 2/28/2018 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. **Hearing reset at request of counsel for defendant. New hearing date was agreed on by all parties.** (ss) (Entered: 02/09/2018) |
| 02/09/2018 | 407 | Motions No Longer Referred: 401 MOTION to Stay re 389 Objection to Magistrate Judge Decision to District Court, and Memorandum in Support *Pending the Court's Resolution of Defendants' Objections*. District Judge Jill N. Parrish to handle motion. (dcb) (Entered: 02/09/2018) |
| 02/12/2018 | 408 | ORDER staying execution of orders 381 and 379 ; granting 401 Motion to Stay. Signed by Judge Jill N. Parrish on 2/12/2018. (jds) (Entered: 02/12/2018) |
| 02/13/2018 | 409 | |

| | | |
|---|---|---|
| | | NOTICE OF FILING of Submission of Proposed Order filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order Proposed Order)(Steinvoort, Sandra) (Entered: 02/13/2018) |
| 02/26/2018 | 410 | NOTICE OF FILING of Omnibus Response to Objections to Magistrate Judge Furse's Orders filed by Plaintiff United States of America. (Steinvoort, Sandra) (Entered: 02/26/2018) |
| 02/26/2018 | 411 | **NOTICE OF HEARING ON MOTION** re: 364 Motion for Reconsideration, 372 Motion Reconsideration re 245 Order on Motion to Dismiss to Dismiss for Failure to State a Claim Order on Motion to Strike Order on Motion for Leave to File(Notice generated by ss) Motion Hearing reset for 3/15/2018 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. (ss) (Entered: 02/26/2018) |
| 02/26/2018 | 412 | NOTICE OF FILING of Response to Objection to Magistrate Judge Ruling re 389 Objection to Magistrate Judge Decision to District Court, filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 02/26/2018) |
| 02/26/2018 | 413 | NOTICE OF FILING of Response to Objections to Magistrate Judge's Ruling re 386 Objection to Magistrate Judge Decision to District Court, 385 Objection to Magistrate Judge Decision to District Court, filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 02/26/2018) |
| 03/15/2018 | 414 | Minute Entry for proceedings held before Judge Jill N. Parrish. : Motion Hearing held on 3/15/2018 re 364 MOTION for Reconsideration filed by Nannette Wride, Katie Brooks, 372 MOTION Reconsideration re 245 Order on Motion to Dismiss Order on Motion to Dismiss for Failure to State a Claim Order on Motion to Strike, Order on Motion for Leave to File and filed by United States of America. Counsel for parties present. Mr. Gerber appeared by telephone. After hearing arguments from counsel, Court took the motions under advisement. Attorney for Plaintiff: Brandon Mark, Alissa Mellem, Jay Majors, John Black, Attorney for Defendant: Steven Gombos, Paul Shakespear. Court Reporter: Patti Walker.(ss) (Entered: 03/15/2018) |
| 03/30/2018 | 415 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Motion for Reconsideration held on March 15, 2018 before Judge JILL N. PARRISH. Court Reporter/Transcriber Patti Walker, CSR, RPR, CP, Telephone number 801−364−5440.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Within 7 business days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the parties intent to redact personal data identifiers from the electronic transcript of the court proceeding. To redact additional information a Motion to Redact must be filed. The policy and forms are located on the court's website at www.utd.uscourts.gov. Please read this policy carefully. If no Notice of Intent to Redact is filed within the allotted time, this transcript will be made electronically available on the date set forth below.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/20/2018. Redacted Transcript Deadline set for 4/30/2018. Release of Transcript Restriction set for 6/28/2018. (jmr) Modified by removing restricted text on 6/28/2018 (rgj). (Entered: 03/30/2018) |
| 03/30/2018 | 417 | |

| | | |
|---|---|---|
| | | MEMORANDUM DECISION AND ORDER granting in part and denying in part 364 Motion for Reconsideration re 175 Amended Complaint, filed by Nannette Wride, Katie Brooks; granting in part and denying in part 372 Motion; granting in part and denying in part 261 Motion for Entry of Judgment under Rule 54(b);Relators' Third Amended Complaint (ECF No. 175 ) is DISMISSED WITHOUT PREJUDICE; Relators have 21 days from the date of this order to file an amended complaint; Counts I and II of the Governments complaint survive to the extent they are based on a theory of promissory fraud, but they do not adequately articulate claims based on a theory of implied false certification; Count III of the Governments complaint is DISMISSED WITHOUT PREJUDICE; The Government has 21 days from the date of this order to file an amended complaint; and With the exception of that related to Counts I and II of the Governments complaint, discovery is stayed pending the further amendment of the pleadings contemplated by this ruling. Signed by Judge Jill N. Parrish on 3/30/2018. (jwt) (Entered: 03/30/2018) |
| 04/10/2018 | 418 | Stipulated MOTION for Extension of Time Deadline to File Amended Complaints and Deadline to File Responsive Pleadings and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Ritzert, Gerald) (Entered: 04/10/2018) |
| 04/10/2018 | 419 | Motions No Longer Referred: 418 Stipulated MOTION for Extension of Time Deadline to File Amended Complaints and Deadline to File Responsive Pleadings and Memorandum in Support (dcb) (Entered: 04/10/2018) |
| 04/11/2018 | 420 | ORDER granting in part and denying in part 418 Motion for Extension of Time Deadline to File Amended Complaints and Deadline to File Responsive Pleadings and Memorandum in Support. Plaintiffs must file their amended complaints on or before May 4, 2018. Signed by Judge Jill N. Parrish on 4/10/2018. (jwt) (Entered: 04/11/2018) |
| 04/16/2018 | 421 | **NOTICE OF HEARING**: (Notice generated by ss) Miscellaneous/Motion Hearing set for 7/30/2018 at 01:30 PM in Rm 8.200. **If counsel have conflict with date, please contact chambers: stephanie_schaerrer@utd.uscourts.gov** (ss) (Entered: 04/16/2018) |
| 05/01/2018 | 422 | Stipulated MOTION for Extension of Time Scheduling Briefing for Dispositive Motions and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Ritzert, Gerald) (Entered: 05/01/2018) |
| 05/02/2018 | 423 | DOCKET TEXT ORDER granting 422 Motion for Extension of Time. Pursuant to the parties' Stipulated Motion to Schedule Briefing for Dispositive Motions Pursuant to the Court's April 11, 2018 Order (ECF No. 422−1), and good cause appearing therefor, IT IS HEREBY ORDERED that the deadline for Defendants to file motions or responsive pleadings to the Government's and Relators' amended complaint is June 15, 2018. The Government's and Relators' opposition briefs, if necessary, are due on July 13, 2018. Defendants' reply briefs, if necessary, are due on July 25, 2018. Signed by Judge Jill N. Parrish on 5/2/2018. No attached document. (dcb) (Entered: 05/02/2018) |

| | | |
|---|---|---|
| 05/04/2018 | 424 | AMENDED COMPLAINT IN INTERVENTION against Stevens−Henager College. filed by United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F1, # 7 Exhibit F2, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K) (Steinvoort, Sandra) Modified on 6/29/2018: added "In Intervention" to entry text (alt) (Entered: 05/04/2018) |
| 05/04/2018 | 425 | AMENDED COMPLAINT *(Redacted)* against Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College with Jury Demand. filed by Nannette Wride, Katie Brooks. (Attachments: # 1 Exhibit A− Admissions Consultant Manual, # 2 Exhibit B− 2004 Procedure Directive, # 3 Exhibit C− 2008 Procedure Directive, # 4 Exhibit D− Online AC Bonus Plan, # 5 Exhibit E− $60K Club Flyer, # 6 Exhibit F− 2007 SHC Program Participation Agreement, # 7 Exhibit G− DOE Audit Guide) (Mark, Brandon) (Entered: 05/04/2018) |
| 05/04/2018 | 426 | MOTION for Leave to File Sealed Document re 425 Amended Complaint,, filed by Plaintiffs Katie Brooks, Nannette Wride. Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: 05/04/2018) |
| 05/04/2018 | 427 | STRICKEN per 468 MEMORANDUM DECISION AND ORDER ~~**DOCUMENT UNSEALED PER ORDER 434 **SEALED DOCUMENT**** re 425 Fourth Amended Complaint, filed by Plaintiffs Katie Brooks, Nannette Wride~~<br><br>~~**NOTE: Filer is instructed to serve the sealed document on all other parties.**. (Attachments: # 1 Exhibit A− Admissions Consultant Manual, # 2 Exhibit B− 2004 Procedure Directive, # 3 Exhibit C− 2008 Procedure Directive, # 4 Exhibit D− Online AC Bonus Plan, # 5 Exhibit E− $60K Club Flyer, # 6 Exhibit F− 2007 SHC Program Participation Agreement, # 7 Exhibit G− DOE Audit Guide)(Mark, Brandon)~~ Modified on 6/4/2018 (jwt). Modified on 6/29/2018: corrected text to show this is the unsealed Fourth Amended Complaint (alt) Modified on 1/14/2019 (jds). (Entered: 05/04/2018) |
| 05/07/2018 | 428 | DOCKET TEXT ORDER GRANTING 426 Motion for Leave to File Sealed Document. Signed by Magistrate Judge Evelyn J. Furse on 5/7/2018. No attached document. (nas) (Entered: 05/07/2018) |
| 05/08/2018 | 429 | **DOCUMENT UNSEALED PER ORDER 434 **~~SEALED~~ DOCUMENT**** re 425 Fourth Amended Complaint,, filed by Plaintiff Katie Brooks<br><br>**NOTE: Filer is instructed to serve the sealed document on all other parties.**. (Attachments: # 1 Exhibit A−Admissions Consultant Manual, # 2 Exhibit B−2004 Procedure Directive, # 3 Exhibit C−2008 Procedure Directive, # 4 Exhibit D−Online AC Bonus Plan, # 5 Exhibit E−$60K Club Flyer, # 6 Exhibit F−2007 SHC Program Participation Agreement, # 7 Exhibit G−DOE Audit Guide)(White, Juliette) Modified on 6/4/2018 (jwt). Modified on 6/29/2018: corrected entry text to show that this is the unsealed Fourth Amended Complaint (alt) (Entered: 05/08/2018) |
| 05/15/2018 | 430 | DOCKET TEXT ORDER. No attached document. On May 4, 2018, Relators moved to file their fourth amended complaint under seal. Relators moved to file the fourth amended complaint under seal because it referred to quotes from documents that Defendants designated as "Confidential." "If the sole basis for proposing that [a] Document be sealed is that another party designated it as confidential [and] the designating party seeks to have the Document remain under seal, the designating |

| | | |
|---|---|---|
| | | party must file a Motion for Leave to File Under Seal in accordance with DUCivR 5−3(b)(2) within seven (7) days of service of the motion." DUCivR 5−3(b)(2)(C)(i). "If the designating party does not file a motion within seven (7) days, the original motion may be denied, and the Document may be unsealed without further notice." DUCivR 5−3(b)(2)(C)(i). Defendants have not filed a Motion to Seal under DUCivR 5−3(b)(2). Accordingly, the court grants Defendants up to and until Friday, May 18, 2018, to file a motion to seal the fourth amended complaint. If no such motion is filed, the court will unseal the fourth amended complaint in its entirety. Signed by Judge Jill N. Parrish on 5/15/2018. (dcb) (Entered: 05/15/2018) |
| 05/18/2018 | 431 | First MOTION to Seal Document 425 Amended Complaint,, and Memorandum in Support *of Defendants' Motion to Seal Portions of Relators' Fourth Amended Complaint* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order Proposed Order re: Motion to Seal Portions of Relators' Fourth Amended Complaint) Motions referred to Evelyn J. Furse.(Gombos, Steven) (Entered: 05/18/2018) |
| 05/18/2018 | 432 | Motions No Longer Referred: 431 First MOTION to Seal Document 425 Amended Complaint and Memorandum in Support *of Defendants' Motion to Seal Portions of Relators' Fourth Amended Complaint*. District Judge Jill N. Parrish to handle motion. (dcb) (Entered: 05/18/2018) |
| 06/01/2018 | 433 | RESPONSE to Motion re 431 First MOTION to Seal Document 425 Amended Complaint,, and Memorandum in Support *of Defendants' Motion to Seal Portions of Relators' Fourth Amended Complaint* filed by Movants Duane Morris LLP, Keith Zakarin. (Hafen, Tyson) (Entered: 06/01/2018) |
| 06/04/2018 | 434 | ORDER denying 431 Motion to Seal Document 429 Sealed Document, 427 Sealed Document, 425 Amended Complaint. Signed by Judge Jill N. Parrish on 6/4/2018. (jwt) (Entered: 06/04/2018) |
| 06/12/2018 | 435 | NOTICE of Change to Firm Name and Email Addresses by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College (Ritzert, Gerald) (Entered: 06/12/2018) |
| 06/12/2018 | 436 | MOTION for Leave to File Excess Pages and Memorandum in Support *Motion for Leave to File Overlength Motion to Dismiss Relators' FAC* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Ritzert, Gerald) (Entered: 06/12/2018) |
| 06/12/2018 | 437 | DOCKET TEXT ORDER granting 436 Motion for Leave to File Excess Pages. Pursuant to Defendants' Motion to File an Overlength Motion to Dismiss Relators' Fourth Amended Complaint, and good cause appearing therefor, IT IS HEREBY ORDERED the motion is granted. Defendants may file a motion to dismiss that is up to 32 pages in length. Signed by Judge Jill N. Parrish on 6/12/2018. No attached document. (dcb) (Entered: 06/12/2018) |
| 06/15/2018 | 438 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *re Fourth Amended Complaint* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager |

| | | |
|---|---|---|
| | | College. (Gombos, Steven) Modified on 6/29/2018: removed excess text (alt) (Entered: 06/15/2018) |
| 06/15/2018 | 439 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support *re Amended Complaint in Intervention* filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Gombos, Steven) Modified on 6/29/2018: removed excess text (alt) (Entered: 06/15/2018) |
| 06/15/2018 | 440 | MOTION Leave to Take Judicial Notice re 438 MOTION to Dismiss for Failure to State a Claim *re Fourth Amended Complaint*, 439 MOTION to Dismiss for Failure to State a Claim *re Amended Complaint in Intervention* and Memorandum in Support filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Exhibit Hansen Memo, # 2 Exhibit Mitchell Memo, # 3 Exhibit OIG Final Audit Report, # 4 Exhibit GAO Report, # 5 Exhibit GAO Report, # 6 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Gombos, Steven) Modified on 6/29/2018: removed excess text carried over in linked text (alt) (Entered: 06/15/2018) |
| 06/18/2018 | 441 | Motions No Longer Referred: 440 MOTION Leave to Take Judicial Notice re 438 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support and 439 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support. (nas) (Entered: 06/18/2018) |
| 06/18/2018 | 442 | NOTICE of SUPPLEMENTAL AUTHORITY by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College re 439 MOTION to Dismiss for Failure to State a Claim *re Amended Complaint in Intervention* (Ritzert, Gerald) Modified on 6/29/2018: removed excess linked text (alt) (Entered: 06/18/2018) |
| 06/29/2018 | 443 | ERRORS IN DOCUMENTS − ~~Stipulated MOTION for Extension of Time Court's Deadline to File Amended Complaints and to File Schedule Dispositive Motions filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Steinvoort, Sandra)~~ Modified on 6/29/2018: efiling atty will review motion and refile with corrections (alt) (Entered: 06/29/2018) |
| 06/29/2018 | | Modification of Docket: re 438 MOTION to Dismiss for Failure to State a Claim *re Fourth Amended Complaint*, 439 MOTION to Dismiss for Failure to State a Claim *re Amended Complaint in Intervention*, 440 MOTION Leave to Take Judicial Notice re 438 MOTION to Dismiss for Failure to State a Claim and 439 MOTION to Dismiss for Failure to State a Claim, 442 Notice of Supplemental Authority.<br>Error: Unnecessary repetitive text was added to entries 438 and 439 that caused further errors in entries 440 and 442 . Correction: Additional text was reduced to only the unique information needed and subsequent entries corrected so they could be more easily read. (alt) (Entered: 06/29/2018) |
| 06/29/2018 | | Modification of Docket re 443 Stipulated MOTION for Extension of Time Court's Deadline to File Amended Complaints and to File Schedule Dispositive Motions. Error: Document caption/motion relief selected does not match reliefs being sought in body of text. Correction: Efiling atty has been contacted, will verify document and refile with corrected caption, case number and signature. (alt) (Entered: 06/29/2018) |
| 06/29/2018 | | Modification of Docket re 424 Amended Complaint In Intervention, 427 Sealed Document, 429 Sealed Document. Error: Sealed Document entries were linked incorrectly to the motion for leave to seal instead of only the 425 redacted version of |

| | | |
|---|---|---|
| | | the document. Correction: Links removed and text corrected so show that both 427 and 429 are unsealed versions of the Fourth Amended Complaint; Also, the words "In Intervention" were added to entry 424 to clarify what type of amended complaint is filed. (alt) (Entered: 06/29/2018) |
| 06/29/2018 | 444 | Stipulated MOTION for Extension of Time to File Response/Reply as to 440 MOTION Leave to Take Judicial Notice re 438 MOTION to Dismiss for Failure to State a Claim and 439 MOTION to Dismiss for Failure to State a Claim filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Steinvoort, Sandra) (Entered: 06/29/2018) |
| 07/02/2018 | 445 | DOCKET TEXT ORDER granting 444 Motion for Extension of Time to File Response/Reply. Based on the parties' Stipulated Motion to Extend the Court's Deadline to File Responsive Pleadings to Defendants' Motion for Judicial Notice (ECF No. 444), and good cause appearing, it is hereby ORDERED that the deadline for the Government and Relators to file their oppositions is extended to Monday, July 9, 2018. It is further ORDERED that the deadline for Defendants to file their reply is extended to Monday, July 23, 2018. Signed by Judge Jill N. Parrish on 7/2/2018. No attached document. (dcb) (Entered: 07/02/2018) |
| 07/09/2018 | 446 | MEMORANDUM in Opposition re 440 MOTION Leave to Take Judicial Notice re 438 MOTION to Dismiss for Failure to State a Claim and 439 MOTION to Dismiss for Failure to State a Claim filed by Plaintiff United States of America. (Steinvoort, Sandra) (Entered: 07/09/2018) |
| 07/09/2018 | 447 | MEMORANDUM in Opposition re 440 MOTION Leave to Take Judicial Notice re 438 MOTION to Dismiss for Failure to State a Claim and 439 MOTION to Dismiss for Failure to State a Claim filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 07/09/2018) |
| 07/13/2018 | 448 | RESPONSE to Motion re 439 MOTION to Dismiss for Failure to State a Claim *re Amended Complaint in Intervention* filed by Plaintiff United States of America (Steinvoort, Sandra) Modified by correcting docket entry relationship on 7/16/2018 (blh). (Entered: 07/13/2018) |
| 07/13/2018 | 449 | MOTION for Leave to File Excess Pages and Memorandum in Support *(Unoppposed)* filed by Plaintiffs Katie Brooks, Nannette Wride. (Attachments: # 1 Text of Proposed Order (Proposed Order)) Motions referred to Evelyn J. Furse.(Mark, Brandon) (Entered: 07/13/2018) |
| 07/13/2018 | 450 | MEMORANDUM in Opposition re 438 MOTION to Dismiss for Failure to State a Claim *re Fourth Amended Complaint* filed by Plaintiffs Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 07/13/2018) |
| 07/16/2018 | 451 | DOCKET TEXT ORDER granting 449 Motion for Leave to File Excess Pages. Before the court is Relators' Unopposed Motion for Permission to File an Overlength Memorandum in Opposition to Defendants' Fourth Motion to Dismiss (ECF No. 449). Pursuant to Rule 7 of the Federal Rules of Civil Procedure and Local Rule 7−1(e), and for good cause appearing, the court GRANTS the motion. Relators may file a memorandum containing 8,000 words. Signed by Judge Jill N. Parrish on 7/16/2018. No attached document. (dcb) (Entered: 07/16/2018) |
| 07/23/2018 | 452 | REPLY to Response to Motion re 440 MOTION Leave to Take Judicial Notice re 438 MOTION to Dismiss for Failure to State a Claim and 439 MOTION to Dismiss for Failure to State a Claim filed by Defendants Carl Barney, California College San |

| | | |
|---|---|---|
| | | Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 07/23/2018) |
| 07/24/2018 | 453 | MOTION for Leave to File Excess Pages and Memorandum in Support *(Unopposed)* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Ritzert, Gerald) (Entered: 07/24/2018) |
| 07/24/2018 | 454 | MOTION for Leave to File Excess Pages and Memorandum in Support *(Unopposed)* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Ritzert, Gerald) (Entered: 07/24/2018) |
| 07/24/2018 | 455 | DOCKET TEXT ORDER granting 453 Motion for Leave to File Excess Pages. Pursuant to Defendants' Motion for Leave to File an Overlength Reply in Support of Defendants' Motion to Dismiss the Government's Amended Complaint, and good cause appearing, IT IS HEREBY ORDERED that Defendants' motion is GRANTED. Defendants may file a reply brief that is up to 13 pages in length. Signed by Judge Jill N. Parrish on 7/24/2018. No attached document. (dcb) (Entered: 07/24/2018) |
| 07/24/2018 | 456 | DOCKET TEXT ORDER granting 454 Motion for Leave to File Excess Pages. Pursuant to Defendants' Motion for Leave to File an Overlength Reply in Support of Defendants' Motion to Dismiss Relators' Fourth Amended Complaint, and good cause appearing, IT IS HEREBY ORDERED that Defendants' motion is GRANTED. Defendants may file a reply brief that is 17 pages in length. Signed by Judge Jill N. Parrish on 7/24/2018. No attached document. (dcb) (Entered: 07/24/2018) |
| 07/25/2018 | 457 | **AMENDED NOTICE OF HEARING**: (Notice generated by ss) Miscellaneous Hearing set for 8/7/2018 at 10:00 AM in Rm 8.200. **Hearing has been reset due to a criminal trial that will proceed on 7/30/18. If counsel have conflict with new date, please contact chambers. stephanie_schaerrer@utd.uscourts.gov** (ss) (Entered: 07/25/2018) |
| 07/25/2018 | 458 | REPLY to Response to Motion re 439 MOTION to Dismiss for Failure to State a Claim *re Amended Complaint in Intervention* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 07/25/2018) |
| 07/25/2018 | 459 | REPLY to Response to Motion re 438 MOTION to Dismiss for Failure to State a Claim *re Fourth Amended Complaint* filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 07/25/2018) |
| 08/01/2018 | 460 | **NOTICE VACATING MOTION HEARING** set for 8/7/18 at 10:00am before Judge Jill N. Parrish (Notice generated by ss) (ss) (Entered: 08/01/2018) |
| 08/02/2018 | 461 | ORDER requesting supplemental briefing. All parties are ordered to file simultaneous briefs on the questions outlined in the order on Thursday, August 16, 2018. Such briefs shall not exceed twenty pages. Signed by Judge Jill N. Parrish on 8/2/2018. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(dcb) (Entered: 08/02/2018) |

| | | |
|---|---|---|
| 08/16/2018 | 462 | United States' Brief In Response To Order BRIEF re 461 Order, filed by Plaintiff United States of America. (Steinvoort, Sandra) (Entered: 08/16/2018) |
| 08/16/2018 | 463 | Supplemental Briefing Requested by Court BRIEF re 461 Order, filed by Plaintiff Nannette Wride. (Attachments: # 1 Appendix A−List of Cases)(Mark, Brandon) (Entered: 08/16/2018) |
| 08/16/2018 | 464 | Supplemental Brief in Response to Court Order (ECF 461) BRIEF re 461 Order, filed by Defendants Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. (Gombos, Steven) (Entered: 08/16/2018) |
| 09/06/2018 | 465 | NOTICE of SUPPLEMENTAL AUTHORITY by United States of America *Regarding Its Opposition To Defendants' Motion To Dismiss* (Steinvoort, Sandra) (Entered: 09/06/2018) |
| 09/06/2018 | 466 | NOTICE of SUPPLEMENTAL AUTHORITY by Katie Brooks, Nannette Wride re 450 Memorandum in Opposition to Motion (Mark, Brandon) (Entered: 09/06/2018) |
| 09/10/2018 | 467 | NOTICE of SUPPLEMENTAL AUTHORITY by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College re 466 Notice of Supplemental Authority, 465 Notice of Supplemental Authority (Gombos, Steven) (Entered: 09/10/2018) |
| 01/14/2019 | 468 | MEMORANDUM DECISION AND ORDER:granting in part and denying in part 438 Motion to Dismiss Relators Fourth Amended Complaint; granting in part and denying in part 439 Motion to Dismiss the Governments Amended Complaint in Intervention ; granting 440 Motion for Leave to Take Judicial Notice. the relators Second Amended Complaint 52 , Third Amended Complaint 175 , and Fourth Amended Complaint 427 are STRICKEN for the reasons stated in Part III of this Order. If it desires to expand the scope of its allegations, the Government is directed to file a motion to amend under Federal Rule of Civil Procedure 15(a)(2) by February 4, 2019. Signed by Judge Jill N. Parrish on 1/14/2019. (jds) (Entered: 01/14/2019) |
| 02/12/2019 | 469 | **NOTICE OF HEARING**: (Notice generated by EJF Chambers) Scheduling Conference set for 2/27/2019 at 10:00 AM in Rm 7.400 before Magistrate Judge Evelyn J. Furse. (lnp) (Entered: 02/12/2019) |
| 02/12/2019 | 470 | DOCKET TEXT ORDER: The parties are directed to submit to chambers a Proposed Scheduling Order or Orders prior to the February 27, 2019 Scheduling Conference. Word versions (.doc or.docx format) of the Proposed Scheduling Order(s) should be submitted to utdecf_furse@utd.uscourts.gov no later than the close of business on February 22, 2019. Counsel should indicate whether all parties agree on the Proposed Scheduling Order(s). The parties should come to the Scheduling Conference prepared to discuss the Proposed Scheduling Order(s). No attached document. Signed by Magistrate Judge Evelyn J. Furse on 2/12/2019. (nas) (Entered: 02/12/2019) |
| 02/22/2019 | 471 | NOTICE of Compliance with Memorandum Decision and Order of January 14, 2019 (ECF 468) by Katie Brooks, Nannette Wride re 469 Notice of Hearing, 470 Order,, (Mark, Brandon) (Entered: 02/22/2019) |
| 02/22/2019 | 472 | NOTICE of Joint Notice of Filing by United States of America re 470 Order,, (Attachments: # 1 [Proposed] Amended Scheduling Order) (Steinvoort, Sandra) (Entered: 02/22/2019) |

| | | |
|---|---|---|
| 02/27/2019 | 473 | Minute Entry for proceedings held before Magistrate Judge Evelyn J. Furse: Scheduling Conference held on 2/27/2019. Court finds that its prior Orders at ECF 379 and 381 are MOOT in light of the District Judge's Memorandum Decision and Order 468 since those Orders are based on Complaints that have now been stricken. Court therefore RESCINDS the Orders at ECF 379 and 381 , which also MOOTS the Objections to those Orders at ECF 385 , 386 and 389 . Court discusses the proposed schedule submitted and indicates concern with proposed dates given the age of the case. Court sets a status conference for 4/25/2019 at 10:00 AM in Rm 7.400 before Magistrate Judge Evelyn J. Furse. Court instructs counsel to have completed mediation by 4/25/2019 and to come prepared to discuss a schedule. Court indicates its intention to shorten the parties' proposed schedule and set the deadline for written discovery approximately one month after the status conference and deadline to complete all discovery shortly thereafter. Attorney for Plaintiff: Sandra Steinvoort, Carra Cadman, Jay Majors (appearing by phone), John Black (Appearing by phone), Attorney for Defendant: Paul Shakespear, Steven Gombos (Appearing by Phone, Jacob Shorter (Appearing by Phone), Gerald Ritzert (Appearing by phone). Court Reporter: Electronic.(Time Start: 10:04:23, Time End: 10:35:04, Room 7.400.)(lnp) (Entered: 02/27/2019) |
| 02/27/2019 | 474 | **NOTICE OF HEARING**: (Notice generated by EJF Chambers) Status Conference set for 4/25/2019 at 10:00 AM in Rm 7.400 before Magistrate Judge Evelyn J. Furse. (lnp) (Entered: 02/27/2019) |
| 04/22/2019 | 475 | **AMENDED NOTICE OF HEARING**: (Notice generated by EJF Chambers) Status Conference reset for 5/15/2019 at 09:00 AM in Rm 8.400 before Magistrate Judge Evelyn J. Furse. **HEARING RESET AT THE REQUEST OF COUNSEL.** (lnp) (Entered: 04/22/2019) |
| 04/24/2019 | 476 | **2ND AMENDED NOTICE OF HEARING**: (Notice generated by EJF Chambers) Status Conference reset for 5/28/2019 at 02:00 PM in Rm 7.400 before Magistrate Judge Evelyn J. Furse. **HEARING RESET AT THE REQUEST OF COUNSEL.** (lnp) (Entered: 04/24/2019) |
| 05/28/2019 | 477 | Minute Entry for proceedings held before Magistrate Judge Evelyn J. Furse: Status Conference held on 5/28/2019. Court hears from counsel regarding discovery and scheduling. Court to issue an amended scheduling order. Attorney for Plaintiff: Sandra L. Steinvoort. Appearing by phone: John W. Black, Jay D. Majors, Attorney for Defendant: Jeremy Stewart. Appearing by phone: Steven M. Gombos. Court Reporter: Electronic.(Time Start: 2:05:16, Time End: 2:17:47, Room 7.400.)(lnp) (Entered: 05/28/2019) |
| 05/29/2019 | 478 | AMENDED SCHEDULING ORDER: Discovery due by 11/27/2019. Motions due by 4/24/2020. Signed by Magistrate Judge Evelyn J. Furse on 5/28/2019. (mas) (Entered: 05/29/2019) |
| 06/19/2019 | 479 | ANSWER to 424 Amended Complaint, with Jury Demand filed by Center for Excellence In Higher Education, Stevens−Henager College.(Gombos, Steven) (Entered: 06/19/2019) |
| 09/25/2019 | 480 | Stipulated MOTION for Amended Scheduling Order filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Kevin Slupe) Motions referred to Evelyn J. Furse.(Steinvoort, Sandra) (Entered: 09/25/2019) |
| 09/25/2019 | 481 | |

| | | |
|---|---|---|
| | | ORDER granting in part and denying in part 480 Motion for Amended Scheduling Order: Discovery due by 3/27/2020. Motions due by 4/24/2020. Scheduling Conference if no dispositive motion filed set for 5/1/2020 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. Signed by Magistrate Judge Evelyn J. Furse on 9/25/2019. (jds) (Entered: 09/25/2019) |
| 10/09/2019 | 482 | OBJECTION TO MAGISTRATE JUDGE DECISION to District Court by Center for Excellence In Higher Education, Stevens−Henager College re 481 Order on Motion for Amended Scheduling Order, (Gombos, Steven) (Entered: 10/09/2019) |
| 10/22/2019 | 483 | ORDER sustaining 482 Objection to Magistrate Judge Decision to District Court and ORDER Amending Scheduling Order. Discovery due by 6/22/2020, Dispositive Motions due by 7/24/2020. Signed by Judge Jill N. Parrish on 10/22/2019. (jds) (Entered: 10/22/2019) |
| 01/10/2020 | 484 | Consent MOTION for Amended Scheduling Order filed by Plaintiff United States of America. (Attachments: # 1 Attachment A, # 2 Text of Proposed Order) Motions referred to Evelyn J. Furse.(Steinvoort, Sandra) (Entered: 01/10/2020) |
| 01/10/2020 | 485 | ORDER granting 484 Consent Motion for Amended Scheduling Order: Discovery due by 11/22/2020. Motions due by 12/24/2020. Scheduling Conference reset for 12/31/2020 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. Signed by Magistrate Judge Evelyn J. Furse on 1/10/2020. (jds) (Entered: 01/10/2020) |
| 01/24/2020 | 486 | Consent MOTION Entry of Consent Order and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. Motions referred to Evelyn J. Furse.(Gombos, Steven) (Entered: 01/24/2020) |
| 01/27/2020 | 487 | STIPULATED CONSENT ORDER re 486 Stipulated Motion for Entry of Consent Order. Signed by Magistrate Judge Evelyn J. Furse on 1/27/2020. (jds) (Entered: 01/27/2020) |
| 02/14/2020 | 488 | STIPULATION *[Joint] To Narrow The Scope Of Discovery* by United States of America. (Steinvoort, Sandra) (Entered: 02/14/2020) |
| 05/14/2020 | 489 | Consent MOTION for Amended Scheduling Order filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order Proposed Order) Motions referred to Evelyn J. Furse.(Steinvoort, Sandra) (Entered: 05/14/2020) |
| 05/15/2020 | 490 | REASSIGNMENT to Newly Appointed Magistrate Judge. Case Referral Reassigned to Magistrate Judge Daphne A. Oberg. Magistrate Judge Evelyn J. Furse no longer assigned to the case. Case number will now read **2:15−cv−00119−JNP−DAO.** Please make changes to document captions accordingly. Motions referred to Daphne A. Oberg.(nl) (Entered: 05/15/2020) |
| 05/27/2020 | 491 | AMENDED SCHEDULING ORDER granting 489 Consent MOTION for Amended Scheduling Order: Discovery due by 2/19/2021, Motions due by 3/24/2021, Scheduling Conference set for 3/31/2021 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. See order for additional deadlines. Signed by Magistrate Judge Daphne A. Oberg on 5/27/2020. (nl) (Entered: 05/27/2020) |
| 08/20/2020 | 492 | Joint MOTION for Amended Scheduling Order and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Gombos, Steven) (Entered: 08/20/2020) |

| | | |
|---|---|---|
| 08/21/2020 | 493 | AMENDED SCHEDULING ORDER: Expert Discovery due by 5/20/2021. Motions due by 6/22/2021. Status Conference set for 6/29/2021 at 02:00 PM in Rm 8.200 before Judge Jill N. Parrish. See order for additional deadlines. Signed by Magistrate Judge Daphne A. Oberg on 8/21/2020. (nl) (Entered: 08/21/2020) |
| 10/15/2020 | 494 | NOTICE of Appearance by Jessica Toplin on behalf of United States of America (Toplin, Jessica) (Entered: 10/15/2020) |
| 10/15/2020 | 495 | SUBSTITUTION OF COUNSEL Melina Shiraldi replacing Sandra L. Steinvoort as counsel on behalf of United States of America, United States of America. (Shiraldi, Melina) (Entered: 10/15/2020) |
| 10/22/2020 | 496 | NOTICE OF WITHDRAWAL OF COUNSEL of John W. Black filed by John W. Black on behalf of United States of America (Black, John) (Entered: 10/22/2020) |
| 11/20/2020 | 497 | MOTION for Amended Scheduling Order filed by Intervenor Plaintiff United States of America, Plaintiff United States of America. Motions referred to Daphne A. Oberg.(Shiraldi, Melina) (Entered: 11/20/2020) |
| 11/25/2020 | 498 | AMENDED SCHEDULING ORDER: Discovery due by 11/24/2021. Motions due by 12/23/2021. Scheduling Conference reset for 12/30/2021 at 02:00 PM before Judge Jill N. Parrish. See order for other dates and deadlines. Signed by Magistrate Judge Daphne A. Oberg on 11/25/20. (alf) (Entered: 11/25/2020) |
| 03/02/2021 | 499 | NOTICE of Appearance by Kelly Elizabeth Phipps on behalf of United States of America (Phipps, Kelly) (Entered: 03/02/2021) |
| 06/10/2021 | 500 | Stipulated MOTION for Amended Scheduling Order filed by Intervenor Plaintiff United States of America, Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Shiraldi, Melina) (Entered: 06/10/2021) |
| 06/16/2021 | 501 | ~~MOTION to~~ Notice of Withdraw as Counsel *for Jessica R. Toplin* filed by Plaintiff United States of America. Motions referred to Daphne A. Oberg.(Toplin, Jessica) Modified on 6/17/2021 to change from a motion to a notice. (alf). (Entered: 06/16/2021) |
| 06/16/2021 | 502 | Modification of Docket: Error: Document 501 was filed as a motion and should have been filed as a Notice of Withdrawal. Correction: Motion stricken and docket text corrected to reflect that it is a notice. Attorney Toplin terminated. Also please note, that the motion was incorrectly captioned as United States Stipulated Motion to Amend the Scheduling Order. (alf) (Entered: 06/17/2021) |
| 06/18/2021 | 503 | ORDER granting 500 Motion for Amended Scheduling Order. Discovery due by 4/27/2022. Motions due by 6/24/2022. Scheduling Conference reset for 7/1/2022 at 02:00 PM before Judge Jill N. Parrish. See order for other dates and deadlines. Signed by Magistrate Judge Daphne A. Oberg on 6/18/21. (alf) (Entered: 06/18/2021) |
| 06/24/2021 | 504 | **NOTICE VACATING STATUS CONFERENCE HEARING** set for 6/29/21 at 2pm before Judge Jill N. Parrish (Notice generated by JNP Chambers)**Scheduling conference has been set for 7/1/22 at 2:00pm.** (ss) (Entered: 06/24/2021) |
| 06/29/2021 | 505 | NOTICE of Appearance by Michael M. Sawers on behalf of United States of America (Sawers, Michael) (Entered: 06/29/2021) |
| 12/20/2021 | 506 | |

| | | |
|---|---|---|
| | | Stipulated MOTION for Amended Scheduling Order filed by Intervenor Plaintiff United States of America, Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Shiraldi, Melina) (Entered: 12/20/2021) |
| 12/21/2021 | 507 | ORDER granting 506 Motion for Amended Scheduling Order Discovery due by 10/27/2022. Motions due by 11/28/2022. Scheduling Conference reset for 12/5/2022 at 02:00 PM before Judge Jill N. Parrish. See order for other dates and deadlines. Signed by Magistrate Judge Daphne A. Oberg on 12/21/21. (alf) (Entered: 12/21/2021) |
| 12/21/2021 | 508 | NOTICE OF WITHDRAWAL OF COUNSEL of Mark W. Pugsley filed by Mark W. Pugsley on behalf of PricewaterhouseCoopers LLP (Pugsley, Mark) (Entered: 12/21/2021) |
| 12/21/2021 | 509 | NOTICE of REMOVING COUNSEL FROM SERVICE LIST filed by Mark W. Pugsley.Attorney Mark W. Pugsley will no longer receive notice from the court in this case including final judgment. (Pugsley, Mark) (Entered: 12/21/2021) |
| 01/10/2022 | 510 | MOTION for Admission Pro Hac Vice of David A. Obuchowicz , Registration fee $ 250, receipt number AUTDC−4215021,<br><br>Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html.<br>Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at https://www.utd.uscourts.gov/cmecf−electronic−case−filing.<br><br>filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit Application for PHV, # 2 Text of Proposed Order)(Shakespear, Paul) (Entered: 01/10/2022) |
| 01/10/2022 | 511 | MOTION for Admission Pro Hac Vice of Jacob C. Shorter , Registration fee $ 250, receipt number AUTDC−4215085,<br><br>Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html.<br>Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at https://www.utd.uscourts.gov/cmecf−electronic−case−filing.<br><br>filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit Application for Pro Hac Vice, # 2 Text of Proposed Order)(Shakespear, Paul) (Entered: 01/10/2022) |
| 01/10/2022 | 512 | ERRATA to 510 MOTION for Admission Pro Hac Vice of David A. Obuchowicz , Registration fee $ 250, receipt number AUTDC−4215021,<br><br>Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of, 511 MOTION for Admission Pro Hac Vice of Jacob C. Shorter , Registration fee $ 250, receipt number AUTDC−4215085, |

| | | |
|---|---|---|
| | | Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of cas filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College . (Attachments: # 1 Errata Jacob C. Shorter, # 2 Errata David A. Obuchowicz)(Shakespear, Paul) (Entered: 01/10/2022) |
| 01/10/2022 | 513 | ORDER granting 510 Motion for Admission Pro Hac Vice of Attorney David A. Obuchowicz for Center for Excellence In Higher Education.<br><br>*Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at https://www.utd.uscourts.gov/cmecf−electronic−case−filing.*<br><br>*Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at https://www.utd.uscourts.gov/rules−practice.*<br><br>Signed by Judge Jill N. Parrish on 1/10/22. (alf) (Entered: 01/11/2022) |
| 01/10/2022 | 514 | ORDER granting 511 Motion for Admission Pro Hac Vice of Attorney Jacob C. Shorter for Center for Excellence In Higher Education.<br><br>*Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at https://www.utd.uscourts.gov/cmecf−electronic−case−filing.*<br><br>*Attorneys admitted Pro Hac Vice may download a copy of the District of Utahs local rules from the courts web site at https://www.utd.uscourts.gov/rules−practice.*<br><br>Signed by Judge Jill N. Parrish on 1/10/22. (alf) (Entered: 01/11/2022) |
| 06/15/2022 | 515 | Endorsed MOTION for *Amended Scheduling Order* ~~Extension of Time to Complete Discovery~~ and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Gombos, Steven) Modified on 6/16/2022 to correct event type (alf). (Entered: 06/15/2022) |
| 06/16/2022 | 516 | Modification of Docket re 515 MOTION : Error: The document should have been filed using the event "Motion for Amended Scheduling Order" to set new deadlines. Correction: Event type corrected, docket text modified to correct filing. No further action is needed. (alf) (Entered: 06/16/2022) |
| 06/16/2022 | 517 | ORDER granting 515 Motion for Amended Scheduling Order. Expert Discovery due by 10/27/2022. Motions due by 11/28/2022. Scheduling Conference set for 12/5/2022 at 02:00 PM before Judge Jill N. Parrish. See order for other dates and deadlines. Signed by Magistrate Judge Daphne A. Oberg on 6/16/22. (alf) (Entered: 06/16/2022) |
| 06/16/2022 | 518 | SUBSTITUTION OF COUNSEL Sandra L. Steinvoort replacing Melina Shiraldi as counsel on behalf of United States of America, United States of America. (Steinvoort, Sandra) (Entered: 06/16/2022) |
| 07/28/2022 | 519 | NOTICE OF WITHDRAWAL OF COUNSEL of Michael Sawers filed by Sandra L. Steinvoort on behalf of United States of America (Steinvoort, Sandra) (Entered: 07/28/2022) |

| | | |
|---|---|---|
| 08/15/2022 | 520 | Stipulated MOTION for Amended Scheduling Order filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Steinvoort, Sandra) (Entered: 08/15/2022) |
| 08/16/2022 | 521 | ORDER granting 520 Motion for Amended Scheduling Order Expert Discovery due by 1/27/2023. Motions due by 2/24/2023. Scheduling Conference reset for 3/3/2023 at 02:00 PM before Judge Jill N. Parrish. See order for other dates and deadlines. Signed by Magistrate Judge Daphne A. Oberg on 8/16/22. (alf) (Entered: 08/16/2022) |
| 10/24/2022 | 522 | Endorsed MOTION for Amended Scheduling Order and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Gombos, Steven) (Entered: 10/24/2022) |
| 10/25/2022 | 523 | NOTICE OF WITHDRAWAL OF COUNSEL of Alan L. Sullivan filed by Alan L. Sullivan on behalf of Center for Excellence In Higher Education, Stevens−Henager College (Sullivan, Alan) (Entered: 10/25/2022) |
| 10/25/2022 | 524 | ORDER Setting Zoom Hearing on Motion 522 Endorsed MOTION for Amended Scheduling Order and Memorandum in Support : Motion Hearing set for 11/1/2022 at 04:00 PM in US District Court−SLCU *virtual Court Via Zoom Conference* before Magistrate Judge Daphne A. Oberg. Zoom information will be emailed to counsel and available on Judge Oberg's calendar the day before the hearing. Signed by Magistrate Judge Daphne A. Oberg on 10/25/2022. (lam) (Entered: 10/25/2022) |
| 11/01/2022 | 525 | NOTICE of Appearance by Jeffrey Albert McSorley on behalf of United States of America (McSorley, Jeffrey) (Entered: 11/01/2022) |
| 11/01/2022 | 527 | Minute Entry for proceedings held before Magistrate Judge Daphne A. Oberg: Motion Hearing held on 11/1/2022 re 522 Endorsed MOTION for Amended Scheduling Order and Memorandum in Support filed by Center for Excellence In Higher Education, Stevens−Henager College. All parties are present via zoom. The court hears from counsel regarding the status of the case. The court grants the motion to amend the scheduling order. Written order to follow. Attorney for Plaintiff: Jeffery McSorley, Attorney for Defendant: Jacob Shorter, Gerald Ritzert, Paul Shakespear, Steven Gombos. Court Reporter: Electronic−via Zoom.(Time Start: 4:00, Time End: 4:30, Room Chambers.)(lam) (Entered: 11/02/2022) |
| 11/02/2022 | 526 | ORDER granting 522 Stipulated Motion to Amend the Scheduling Order: Expert Discovery due by 6/9/2023. Dispositive or Potentially Dispositive Motions due by 7/28/2023. The hearing before Judge Parrish on 03/03/2023 at 2:00 p.m. is VACATED. If the parties do not intend to file dispositive or potentially dispositive motions, a scheduling conference will be held for purposes of setting a trial date set on 8/4/2023 at 02:00 PM Via Zoom before Judge Jill N. Parrish. Signed by Magistrate Judge Daphne A. Oberg on 11/2/22. (dla) (Entered: 11/02/2022) |
| 06/20/2023 | 528 | SUBSTITUTION OF COUNSEL Carra Sheppard Cadman replacing Sandra L. Steinvoort as counsel on behalf of United States of America. (Cadman, Carra) (Entered: 06/20/2023) |
| 07/21/2023 | 529 | **AMENDED NOTICE OF HEARING**: (Notice generated by JNP Chambers) Scheduling Conference reset for 8/8/2023 at 04:00 PM **VIA ZOOM** before Judge Jill N. Parrish. Hearing will be vacated if dispositive motions are filed. (lwh) (Entered: 07/21/2023) |

| | | |
|---|---|---|
| 07/28/2023 | 530 | Redacted MOTION for Partial Summary Judgment and Memorandum in Support filed by Intervenor Plaintiff United States of America re 532 SEALED Motion. (Attachments: # 1 Appendix of Exhibits, # 2 Text of Proposed Order)(Majors, Jay) Modified by creating docket entry relationship, editing docket text on 7/31/2023 (dle). (Entered: 07/28/2023) |
| 07/28/2023 | 531 | MOTION for Leave to File Sealed Document re 530 Redacted MOTION for Partial Summary Judgment and Memorandum in Support filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Majors, Jay) (Entered: 07/28/2023) |
| 07/28/2023 | 532 | ~~*SEALED~~ DOCUMENT* SEALED ~~MOTION and~~ Memorandum in Support filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Appendix of Exhibits, # 2 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Majors, Jay) Modified editing docket text, terminating motion on 7/31/2023 (dle). Modified by unsealing document per 540 Docket Text Order on 8/15/2023 (dle). (Entered: 07/28/2023) |
| 07/28/2023 | 533 | MOTION for Summary Judgment and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit, # 29 Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit, # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit, # 43 Exhibit, # 44 Exhibit, # 45 Exhibit, # 46 Exhibit, # 47 Exhibit, # 48 Exhibit, # 49 Exhibit, # 50 Exhibit, # 51 Exhibit, # 52 Exhibit, # 53 Exhibit, # 54 Exhibit, # 55 Exhibit)(Gombos, Steven) (Entered: 07/28/2023) |
| 07/28/2023 | 534 | MOTION for Leave to File Sealed Document re 533 MOTION for Summary Judgment and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Gombos, Steven) (Entered: 07/28/2023) |
| 07/28/2023 | 535 | ~~**SEALED~~ DOCUMENT** filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College<br><br>**NOTE: Filer is instructed to serve the sealed document on all other parties.**. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit)(Gombos, Steven) Modified by unsealing document per 541 Docket Text Order on 8/15/2023 (dle). (Entered: 07/28/2023) |
| 07/31/2023 | 536 | ERRATA to 533 MOTION for Summary Judgment and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College . (Attachments: # 1 Exhibit Exhibit 13a to Motion for Summary Judgment, # 2 Exhibit Exhibit 14b to Motion for Summary Judgment, # 3 Exhibit Exhibit 16m − Cover Sheet for Sealed Filing)(Shorter, Jacob) (Entered: 07/31/2023) |
| 08/01/2023 | 537 | |

| | | |
|---|---|---|
| | | Consent MOTION for Extension of Time to File Response/Reply as to 535 Sealed Document,, 534 MOTION for Leave to File Sealed Document re 533 MOTION for Summary Judgment and Memorandum in Support , 531 MOTION for Leave to File Sealed Document re 530 Redacted MOTION for Partial Summary Judgment and Memorandum in Support , 530 Redacted MOTION for Partial Summary Judgment and Memorandum in Support , 533 MOTION for Summary Judgment and Memorandum in Support filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg. Attorney Carra Sheppard Cadman added to party United States of America(pty:pla)(Cadman, Carra) (Entered: 08/01/2023) |
| 08/02/2023 | 538 | ORDER granting 537 Motion for Extension of Time: 1) The parties' responses to each other's summary judgment motions (ECF Nos. 530 and 533 ) shall be due on September 29, 2023. 2) Reply briefs in support of the parties' summary judgment motions shall be due on October 27, 2023. 3) The parties' motions, if any, to maintain the seal over some or all of the documents filed under seal in connection with the parties' summary judgment motions shall be filed by August 11, 2023. Signed by Judge Jill N. Parrish on 8/2/23. (dle) (Entered: 08/02/2023) |
| 08/04/2023 | 539 | **NOTICE VACATING SCHEDULING CONFERENCE HEARING** set for 8/8/2023 at 4:00 p.m. before Judge Jill N. Parrish (Notice generated by JNP Chambers). Hearing vacated due to dispositive motions being filed. (lwh) (Entered: 08/04/2023) |
| 08/14/2023 | 540 | DOCKET TEXT ORDER denying 531 Motion for Leave to File Sealed Document. Plaintiff−Intervenor the United States moves for leave to file under seal portions of its 530 motion for summary judgment and Exhibit 9 thereto, solely on the basis of Defendants' confidentiality designations. Defendants did not file a separate motion to seal these documents as required under DUCivR 5−3(b)(2)(C)(i) within the deadline set by the court. (*See* Doc. No. 538 .) Accordingly, the United States' motion to seal is DENIED. The United States' unredacted motion for summary judgment and Exhibit 9 (Doc. No. 532, including attachments) shall be unsealed. Signed by Magistrate Judge Daphne A. Oberg on 8/14/2023. No attached document. (med) (Entered: 08/14/2023) |
| 08/14/2023 | 541 | DOCKET TEXT ORDER denying 534 Motion for Leave to File Sealed Document. Defendants Stevens−Henager College and Center for Excellence in Higher Education move for leave to file under seal portions of their 533 motion for summary judgment and certain exhibits thereto, solely on the basis of the United States' confidentiality designations. The United States did not file a separate motion to seal these documents as required under DUCivR 5−3(b)(2)(C)(i) within the deadline set by the court. (*See* Doc. No. 538 .) Accordingly, Defendants' motion to seal is DENIED. Defendants' unredacted motion for summary judgment and proposed sealed exhibits (Doc. No. 535, including attachments) shall be unsealed. Signed by Magistrate Judge Daphne A. Oberg on 8/14/2023. No attached document. (med) (Entered: 08/14/2023) |
| 09/22/2023 | 542 | Consent MOTION for Extension of Time to File Response/Reply filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Cadman, Carra) (Entered: 09/22/2023) |
| 09/25/2023 | 543 | ORDER granting 542 Motion for Extensions of Time: The parties' responses to each other's summary judgment motions shall be due on **October 27, 2023.** Reply briefs in support of the parties' summary judgment motions shall be due on **December 5, 2023.** Signed by Judge Jill N. Parrish on 9/25/23. (dle) (Entered: 09/25/2023) |

| | | |
|---|---|---|
| 10/25/2023 | 544 | Consent MOTION for Leave to File Excess Pages filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Cadman, Carra) (Entered: 10/25/2023) |
| 10/25/2023 | 545 | DOCKET TEXT ORDER granting 544 Motion for Leave to File Excess Pages. The response briefs filed by both parties shall not exceed 50 pages in length. Signed by Judge Jill N. Parrish on 10/25/23. (ksb) (Entered: 10/25/2023) |
| 10/27/2023 | 546 | Redacted RESPONSE to Motion re 532 ***SEALED DOCUMENT*** SEALED MOTION and Memorandum in Support***SEALED DOCUMENT*** SEALED MOTION and Memorandum in Support, 530 Redacted MOTION for Partial Summary Judgment and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Appendix)(Gombos, Steven) (Entered: 10/27/2023) |
| 10/27/2023 | 547 | MOTION for Leave to File Sealed Document re 546 Response to Motion, filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Gombos, Steven) (Entered: 10/27/2023) |
| 10/27/2023 | 548 | **~~**SEALED~~ DOCUMENT**** re 547 MOTION for Leave to File Sealed Document re 546 Response to Motion, , 546 Response to Motion, filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College<br><br>**NOTE: Filer is instructed to serve the sealed document on all other parties.**. (Attachments: # 1 Response to the United States's Motion for Partial Summary Judgment, # 2 Appendix)(Gombos, Steven) Modified by unsealing document and attachments per 557 Docket Text Order on 11/13/2023 (dle). (Entered: 10/27/2023) |
| 10/27/2023 | 549 | Redacted MEMORANDUM in Opposition re 533 MOTION for Summary Judgment and Memorandum in Support filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Appendix Appendix of Exhibits, # 2 Text of Proposed Order Proposed Order)(Majors, Jay) (Entered: 10/27/2023) |
| 10/27/2023 | 550 | MOTION for Leave to File Sealed Document re 549 Memorandum in Opposition to Motion, filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Majors, Jay) (Entered: 10/27/2023) |
| 10/30/2023 | 551 | DOCKET TEXT ORDER: Plaintiff's Motion for Leave to File Sealed Document 550 is deficient because Plaintiff failed to contemporaneously file the proposed sealed document(s) under seal, as required by DUCivR 5−3(b)(1). Plaintiff is ORDERED to file the proposed sealed document(s) and serve them on the other parties within three days. To the extent Plaintiff relies on confidentiality designations made by another party, the other party's deadline to file a new motion to seal pursuant to DUCivR 5−3(b)(2)(C)(i) shall be seven days after filing and service of the proposed sealed documents. Signed by Magistrate Judge Daphne A. Oberg on 10/30/2023. No attached document.(med) (Entered: 10/30/2023) |
| 10/30/2023 | 552 | **~~**SEALED~~ DOCUMENT**** re 550 MOTION for Leave to File Sealed Document re 549 Memorandum in Opposition to Motion, filed by Plaintiff United States of America<br><br>**NOTE: Filer is instructed to serve the sealed document on all other parties.**. (Attachments: # 1 Appendix of Exhibits in Support of United States' Brief in |

| | | |
|---|---|---|
| | | Opposition to Defendant's Motion for Summary Judgment, # 2 Text of Proposed Order)(Cadman, Carra) Modified by unsealing main document only per 556 Docket Text Order on 11/13/2023 (dle). (Entered: 10/30/2023) |
| 11/06/2023 | 553 | MOTION for Leave to File Sealed Document re 551 Order,, 549 Memorandum in Opposition to Motion, 552 Sealed Document, 550 MOTION for Leave to File Sealed Document re 549 Memorandum in Opposition to Motion, filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Gombos, Steven) (Entered: 11/06/2023) |
| 11/06/2023 | 554 | ****RESTRICTED−Level 4 (Sealed)**** re 553 MOTION for Leave to File Sealed Document re 551 Order,, 549 Memorandum in Opposition to Motion, 552 Sealed Document, 550 MOTION for Leave to File Sealed Document re 549 Memorandum in Opposition to Motion, filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College<br><br>**NOTE: Filer is instructed to serve the sealed document on all other parties.**. (Gombos, Steven) (Entered: 11/06/2023) |
| 11/09/2023 | 555 | NOTICE of Consent to Defendants' Motion for Leave to File Sealed Document by United States of America re 553 MOTION for Leave to File Sealed Document re 551 Order,, 549 Memorandum in Opposition to Motion, 552 Sealed Document, 550 MOTION for Leave to File Sealed Document re 549 Memorandum in Opposition to Motion, (Cadman, Carra) (Entered: 11/09/2023) |
| 11/10/2023 | 556 | DOCKET TEXT ORDER granting in part and denying in part 550 United States' Motion for Leave to File Sealed Document; granting 553 Defendants' Motion for Leave to File Sealed Document. The United States moved to seal portions of its 549 opposition to Defendants' motion for summary judgment, and portions of the supporting appendix of exhibits, based solely on Defendants' confidentiality designations. Defendants' motion to seal 553 indicates Defendants do not oppose unsealing the opposition in its entirety, and Defendants propose fewer redactions to the appendix solely to protect certain identifying information. Good cause supports Defendants' proposed redactions. Accordingly, the court orders as follows:<br>1. The unredacted version of the United States' opposition filed at Doc. No. 552 (main document only) shall be unsealed. The unredacted appendix (Doc. No. 552−1) shall remain sealed.<br>2. The United States is ORDERED to refile the appendix with only the limited redactions proposed by Defendants within fourteen days.<br>Signed by Magistrate Judge Daphne A. Oberg on 11/10/2023. No attached document. (med) (Entered: 11/10/2023) |
| 11/10/2023 | 557 | DOCKET TEXT ORDER denying 547 Defendants' Motion for Leave to File Sealed Document. Defendants moved to seal portions of their 546 opposition to the United States' motion for partial summary judgment and supporting exhibits under seal solely based on the United States' confidentiality designations under the Standard Protective Order. The United States did not file a separate motion to seal these documents within seven days as required under DUCivR 5−3(b)(2)(C)(i). Therefore, the motion to seal is DENIED and the unredacted opposition and exhibits (Doc. No. 548, including attachments) shall be unsealed. Signed by Magistrate Judge Daphne A. Oberg on 11/10/2023. No attached document. (med) (Entered: 11/10/2023) |
| 11/22/2023 | 558 | |

| | | |
|---|---|---|
| | | RESPONSE to Motion re 553 MOTION for Leave to File Sealed Document re 551 Order,, 549 Memorandum in Opposition to Motion, 552 Sealed Document, 550 MOTION for Leave to File Sealed Document re 549 Memorandum in Opposition to Motion, filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Appendix Redacted per Order 556 )(Majors, Jay) (Entered: 11/22/2023) |
| 11/28/2023 | 559 | Consent MOTION for Extension of Time to File Response/Reply as to 543 Order on Motion for Extension of Time to File Response/Reply, and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens–Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg. Attorney Jacob C. Shorter added to party Stevens–Henager College(pty:dft)(Shorter, Jacob) (Entered: 11/28/2023) |
| 11/28/2023 | 560 | DOCKET TEXT ORDER granting 559 Motion for Extension of Time to File Replies as to 533 MOTION for Summary Judgment , and 530 Redacted MOTION for Partial Summary Judgment. Replies due by 12/15/2023. Signed by Judge Jill N. Parrish on 11/28/23. (ksb) (Entered: 11/28/2023) |
| 12/15/2023 | 561 | REPLY to Response to Motion re 533 MOTION for Summary Judgment and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens–Henager College. (Attachments: # 1 Exhibit GAO Exit Interview)(Gombos, Steven) (Entered: 12/15/2023) |
| 12/15/2023 | 562 | MOTION for Leave to File Sealed Document re 561 Reply Memorandum/Reply to Response to Motion, filed by Defendants Center for Excellence In Higher Education, Stevens–Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Gombos, Steven) (Entered: 12/15/2023) |
| 12/15/2023 | 563 | **UNSEALED DOCUMENT** re 561 Reply Memorandum/Reply to Response to 533 Motion, filed by Defendant Stevens–Henager College<br><br>NOTE: Filer is instructed to serve the sealed document on all other parties.. (Attachments: # 1 Exhibit Unredacted Appendix of Exhibits)(Gombos, Steven) Modified on 5/7/2024: unsealed per 577 DTO, removed incorrectly linked text (alt) (Entered: 12/15/2023) |
| 12/15/2023 | 564 | REPLY to Response to Motion re 530 Redacted MOTION for Partial Summary Judgment and Memorandum in Support filed by Plaintiff United States of America. (Cadman, Carra) (Entered: 12/15/2023) |
| 01/16/2024 | 565 | NOTICE OF HEARING ON MOTIONS re: 533 MOTION for Summary Judgment , 530 Redacted MOTION for Partial Summary Judgment : (Notice generated by JNP Chambers) Motion Hearing set for 2/14/2024 at 01:00 PM VIA ZOOM before Judge Jill N. Parrish. (lwh) (Entered: 01/16/2024) |
| 01/18/2024 | 566 | NOTICE: The court received a bounce–back notification indicating that the primary email address sandra.steinvoort@usdoj.gov, for attorney Sandra L. Steinvoort is invalid. Under DUCivR 83–1.2(e) and 83–1.3(e), attorneys must maintain valid and current contact information in PACER and with the court. Consistent with the CM/ECF Procedures Manual, the court has inactivated the attorneys efiling privileges. When the attorney updates their contact information in PACER, the court will reactivate their efiling privileges. Instructions for updating an address can be found at https://www.utd.uscourts.gov/update–your–address–court. (nl) (Entered: 01/18/2024) |

| | | |
|---|---|---|
| 01/19/2024 | 567 | **AMENDED NOTICE OF HEARING ON MOTIONS** re: 533 MOTION for Summary Judgment , 530 Redacted MOTION for Partial Summary Judgment : (Notice generated by JNP Chambers) Motion Hearing reset for 3/7/2024 at 01:00 PM **VIA ZOOM** before Judge Jill N. Parrish. Hearing reset at the request of the parties. (lwh) (Entered: 01/19/2024) |
| 03/07/2024 | 568 | Minute Entry for proceedings held before Judge Jill N. Parrish: Motion Hearing held on 3/7/2024 re 530 Redacted MOTION for Partial Summary Judgment filed by United States of America, 533 MOTION for Summary Judgment filed by Center for Excellence In Higher Education, Stevens−Henager College. All parties appeared via zoom. After hearing oral argument, court took the matter under advisement. Court adjourned. Attorney for Plaintiff: Jeff McSorley, Carra Sheppard Cadman, Jay D. Majors, Brandon J. Mark, Attorney for Defendant: Steven M. Gombos, Paul W. Shakespear, Jacob C. Shorter. Court Reporter: Patti Walker.(lwh) (Entered: 03/07/2024) |
| 03/29/2024 | 569 | MEMORANDUM DECISION AND ORDER granting in part and denying in part 530 United States' Motion for Partial Summary Judgment; denying 533 Defendants' Motion for Summary Judgment. Signed by Judge Jill N. Parrish on 3/29/24. (Copy sent to parties via email). (dle) Modified by unsealing document per 581 Docket Text Order on 6/6/2024 (dle). (Entered: 03/29/2024) |
| 03/29/2024 | 570 | DOCKET TEXT ORDER. Portions of the parties' briefing on the motions for summary judgment were sealed. Because it discusses matters contained in the sealed portions of the briefing, the court has provisionally sealed its order on the motions for summary judgment. If either party believes that portions of the court's order should remain sealed, it must file a motion to seal that specifically identifies these portions and argues why such portions should remain sealed under the court's local rules and published authority. Any such motion shall be filed no later than April 12, 2024 at 4 p.m. MST. If no motion is filed by this date, the court will unseal its order in toto. Memoranda in opposition may, in turn, be filed no later than April 19, 2024 at 4 p.m. MST. No attached document. Signed by Judge Jill N. Parrish on 3/29/2024. (apf) (Entered: 03/29/2024) |
| 03/29/2024 | 571 | **NOTICE OF HEARING**: (Notice generated by JNP Chambers) Scheduling Conference set for 5/3/2024 at 04:00 PM **VIA ZOOM** before Judge Jill N. Parrish. (lwh) (Entered: 03/29/2024) |
| 04/08/2024 | 572 | **AMENDED NOTICE OF HEARING**: (Notice generated by JNP Chambers) Scheduling Conference reset for 5/31/2024 at 01:00 PM **VIA ZOOM** before Judge Jill N. Parrish. Hearing reset at the request of the parties. (lwh) (Entered: 04/08/2024) |
| 04/18/2024 | 573 | **AMENDED NOTICE OF HEARING**: (Notice generated by JNP Chambers) Scheduling Conference reset for 5/30/2024 at 03:30 PM **VIA ZOOM** before Judge Jill N. Parrish. Hearing reset due to court calendar. (lwh) (Entered: 04/18/2024) |
| 04/26/2024 | 574 | MOTION Partial Reconsideration of Order Denying Summary Judgment re 570 Order,,, and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. Motions referred to Daphne A. Oberg.(Gombos, Steven) (Entered: 04/26/2024) |
| 04/29/2024 | 575 | Motions No Longer Referred: 574 MOTION Partial Reconsideration of Order Denying Summary Judgment re 570 Order (lwh) (Entered: 04/29/2024) |
| 05/06/2024 | 576 | |

| | | |
|---|---|---|
| | | Consent MOTION for Extension of Time to File Response/Reply as to 574 MOTION Partial Reconsideration of Order Denying Summary Judgment re 570 Order,,, and Memorandum in Support filed by Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Cadman, Carra) (Entered: 05/06/2024) |
| 05/06/2024 | 577 | DOCKET TEXT ORDER denying 562 Defendants' Motion for Leave to File Sealed Document. Defendants moved to seal exhibits to their 561 reply in support of their motion for summary judgment under seal, solely based on the United States' confidentiality designations under the Standard Protective Order. The United States did not file a separate motion to seal these documents within seven days as required under DUCivR 5−3(b)(2)(C)(i). Therefore, the motion to seal is DENIED and the exhibits (Doc. No. 563, including attachments) shall be unsealed. Signed by Magistrate Judge Daphne A. Oberg on 5/6/2024. No attached document. (med) (Entered: 05/06/2024) |
| 05/08/2024 | 578 | DOCKET TEXT ORDER granting 576 Motion for Extension of Time to File Response/Reply as to 574 Motion for Partial Reconsideration of Order Denying Summary Judgment. The deadline to file a response to the Motion for Partial Reconsideration is extended to May 24, 2024. Signed by Magistrate Judge Daphne A. Oberg on 5/8/2024. No attached document. (med) (Entered: 05/08/2024) |
| 05/24/2024 | 579 | MEMORANDUM in Opposition re 574 MOTION Partial Reconsideration of Order Denying Summary Judgment re 570 Order,,, and Memorandum in Support filed by Intervenor Plaintiff United States of America. (Majors, Jay) (Entered: 05/24/2024) |
| 05/29/2024 | 580 | **NOTICE VACATING SCHEDULING CONFERENCE HEARING** set for 5/30/2024 at 3:30 p.m. before Judge Jill N. Parrish (Notice generated by JNP Chambers). Hearing vacated due to Motion for Reconsideration being filed. (lwh) (Entered: 05/29/2024) |
| 06/05/2024 | 581 | DOCKET TEXT ORDER. On March 29, 2024, the court issued a provisionally sealed memorandum decision & order on the parties motions for summary judgment. The court gave the parties leave to move to keep portions of that order under seal. Because neither party filed such a motion, the court directs the clerk of court to unseal that order (ECF No. 569). No attached document. Signed by Judge Jill N. Parrish on 6/5/2024. (apf) (Entered: 06/05/2024) |
| 06/05/2024 | 582 | DOCKET TEXT ORDER denying 574 Motion to Reconsider. Defendants' motion to reconsider centers on arguments and issues already briefed by the parties and considered by the court. It does not raise an intervening change in the controlling law or any evidence previously unavailable; additionally, having considered the motion, the court concludes that there is no clear error to correct or manifest injustice to prevent. See United States v. Huff, 782 F.3d 1221, 1224 (10th Cir. 2015). As a result, Defendants' motion is DENIED. Signed by Judge Jill N. Parrish on 6/5/2024. No attached document. (apf) (Entered: 06/05/2024) |
| 06/05/2024 | 583 | **NOTICE OF HEARING**: (Notice generated by JNP Chambers) Scheduling Conference set for 7/9/2024 at 03:00 PM **VIA ZOOM** before Judge Jill N. Parrish. (lwh) (Entered: 06/05/2024) |
| 07/09/2024 | 584 | Minute Entry for proceedings held before Judge Jill N. Parrish: Scheduling Conference held on 7/9/2024. All parties appear via zoom. Court hears status of case. Court sets two−week jury trial to begin in January or February 2025. Parties are to meet and confer and let the court know by July 19, ~~10,~~ 2024, the two−week trial dates |

| | | |
|---|---|---|
| | | that work for all parties in January or February 2025. Court will refer case to magistrate judge for settlement conference if both parties agree that it would be helpful. Once trial date is set, the court will send out a Trial Order that will set the Final Pretrial Conference date. Court adjourned. Attorney for Plaintiff: Carra Sheppard Cadman, Jay D. Majors, Brandon J. Mark, Attorney for Defendant: Steven M. Gombos, Paul W. Shakespear, Jacob C. Shorter. Court Reporter: Laura Robinson.(lwh) Modified by correcting date from July 10 to July 19, 2024, on 7/11/2024 (dle). (Entered: 07/10/2024) |
| 07/11/2024 | 585 | Modification of Docket: Error: Incorrect date noted in minute entry. Correction: Date corrected from July 10 to July 19, 2024 re 584 Scheduling Conference. (dle) (Entered: 07/11/2024) |
| 07/23/2024 | 586 | **NOTICE OF HEARING**: (Notice generated by JNP Chambers) 9−Day Jury Trial set for 2/18/2025 at 08:30 AM in Rm 8.200 before Judge Jill N. Parrish. (lwh) (Entered: 07/23/2024) |
| 08/08/2024 | 587 | **NOTICE OF HEARING**: (Notice generated by JNP Chambers) Final Pretrial Conference set for 2/11/2025 at 09:30 AM **VIA ZOOM** before Judge Jill N. Parrish. (lwh) (Entered: 08/08/2024) |
| 08/08/2024 | 588 | TRIAL ORDER: Final Pretrial Conference set for **2/11/2025 at 09:30 AM Via Zoom before Judge Jill N. Parrish.** Nine−day Day Jury Trial set for **2/18/2025 at 08:30 AM in Rm 8.200 before Judge Jill N. Parrish.** Signed by Judge Jill N. Parrish on 8/8/24. (dle) (Entered: 08/08/2024) |
| 01/08/2025 | 589 | TRIAL ORDER with instructions to counsel: Final Pretrial Conference set for 4/14/2025 at 09:00 AM via Zoom before Judge Jill N. Parrish. 9−Day Jury Trial set for 4/21/2025 at 09:00 AM in Rm 8.200 before Judge Jill N. Parrish. Proposed Voir Dire due 4/7/25. Proposed Jury Instructions due 3/28/25. Motions in Limine due by 3/20/2025. Signed by Judge Jill N. Parrish on 1/8/25 (alt) (Entered: 01/08/2025) |
| 01/09/2025 | 590 | **AMENDED NOTICE OF HEARINGS**: (Notice generated by JNP Chambers) Final Pretrial Conference reset for 4/14/2025 at 09:00 AM **VIA ZOOM** before Judge Jill N. Parrish. 9−Day Jury Trial set for 4/21/2025 at 08:30 AM in Rm 8.200 before Judge Jill N. Parrish. (lwh) (Entered: 01/09/2025) |
| 02/26/2025 | 591 | NOTICE OF INELIGIBLE ATTORNEY − Attorney Kelly Elizabeth Phipps, for Plaintiff United States of America, is being notified that she is currently not in active status, her registration has lapsed, and cannot practice before this court. Counsel is requested to renew her registration. If counsel does not intend to renew her registration or continue representing the clients, it is counsel's responsibility under Local Rule 83−1.4(b) (2) to alert his clients of their responsibility to secure other counsel or appear pro se within 21 days. (dle) (Entered: 02/26/2025) |
| 03/20/2025 | 592 | MOTION in Limine and Memorandum in Support filed by Intervenor Plaintiff United States of America. (Majors, Jay) (Entered: 03/20/2025) |
| 03/20/2025 | 593 | First MOTION in Limine and Memorandum in Support *to Exclude Evidence of Non−Completion−Based Bonuses* filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit O, # 15 Exhibit P)(Shorter, Jacob) (Entered: 03/20/2025) |

| | | |
|---|---|---|
| 03/20/2025 | 594 | Second MOTION in Limine and Memorandum in Support *to Exclude FCA Settlements* filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Ex. A − Tentatively Filed Under Seal, # 3 Exhibit Ex. B − Tentatively Filed Under Seal, # 4 Exhibit Ex. C − Tentatively Filed Under Seal, # 5 Exhibit Ex. D − Tentatively Filed Under Seal, # 6 Exhibit Ex. E − Tentatively Filed Under Seal, # 7 Exhibit Ex. F − Tentatively Filed Under Seal, # 8 Exhibit Ex. G − Tentatively Filed Under Seal, # 9 Exhibit Ex. H − Tentatively Filed Under Seal, # 10 Exhibit Ex. I − Tentatively Filed Under Seal, # 11 Exhibit Ex. J − Tentatively Filed Under Seal, # 12 Exhibit Ex. K − Tentatively Filed Under Seal)(Shorter, Jacob) (Entered: 03/20/2025) |
| 03/20/2025 | 595 | Third MOTION in Limine and Memorandum in Support *to find Plaintiff waived privilege* filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Ex. A (USSHC_00529440) − Tentatively Filed Under Seal, # 3 Exhibit Ex. B (USSHC_00467519) − Tentatively Filed Under Seal, # 4 Exhibit Ex. C (USSHC_00458670) − Tentatively Filed Under Seal, # 5 Exhibit Ex. D, # 6 Exhibit Ex. E)(Shorter, Jacob) (Entered: 03/20/2025) |
| 03/20/2025 | 596 | MOTION for Leave to File Sealed Document re 595 Third MOTION in Limine and Memorandum in Support *to find Plaintiff waived privilege*, 594 Second MOTION in Limine and Memorandum in Support *to Exclude FCA Settlements* filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Text of Proposed Order) Motions referred to Daphne A. Oberg.(Shorter, Jacob) (Entered: 03/20/2025) |
| 03/20/2025 | 597 | ****DOCUMENT UNSEALED**** per 651 Docket Text Entry re 595 Third MOTION in Limine and Memorandum in Support *to find Plaintiff waived privilege*, 594 Second MOTION in Limine and Memorandum in Support *to Exclude FCA Settlements* filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College<br><br>**NOTE: Filer is instructed to serve the sealed document on all other parties.**. (Attachments: # 1 Exhibit Ex. A to ECF 594, # 2 Exhibit Ex. B to ECF 594, # 3 Exhibit Ex. C to ECF 594, # 4 Exhibit Ex. D to ECF 594, # 5 Exhibit Ex. E to ECF 594, # 6 Exhibit Ex. F to ECF 594, # 7 Exhibit Ex. G to ECF 594, # 8 Exhibit Ex. H to ECF 594, # 9 Exhibit Ex. I to ECF 594, # 10 Exhibit Ex. J to ECF 594, # 11 Exhibit Ex. K to ECF 594, # 12 Exhibit Ex. A to ECF 595, # 13 Exhibit Ex. B to ECF 595, # 14 Exhibit Ex. C to ECF 595)(Shorter, Jacob) Modified by unsealing document and attachments per 651 Docket Text Entry on 4/23/2025 (dle). (Entered: 03/20/2025) |
| 03/21/2025 | 598 | ERRATA to 595 Third MOTION in Limine and Memorandum in Support *to find Plaintiff waived privilege*, 594 Second MOTION in Limine and Memorandum in Support *to Exclude FCA Settlements*, 593 First MOTION in Limine and Memorandum in Support *to Exclude Evidence of Non−Completion−Based Bonuses* filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College . (Attachments: # 1 Exhibit Certificates of Conferral for Defendants' Motions in Limine)(Shorter, Jacob) (Entered: 03/21/2025) |
| 03/21/2025 | 599 | ERRATA to 592 MOTION in Limine and Memorandum in Support filed by Intervenor Plaintiff United States of America . (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Certificate of conferral)(Majors, Jay) (Entered: 03/21/2025) |

| | | |
|---|---|---|
| 03/27/2025 | 600 | RESPONSE to Motion re 593 First MOTION in Limine and Memorandum in Support *to Exclude Evidence of Non−Completion−Based Bonuses* filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A)(Majors, Jay) (Entered: 03/27/2025) |
| 03/27/2025 | 601 | RESPONSE to Motion re 592 MOTION in Limine and Memorandum in Support *to Exclude Reference to Treble Damages and Civil Penalties* filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Shorter, Jacob) (Entered: 03/27/2025) |
| 03/27/2025 | 602 | RESPONSE to Motion re 594 Second MOTION in Limine and Memorandum in Support *to Exclude FCA Settlements* filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order)(Majors, Jay) (Entered: 03/27/2025) |
| 03/27/2025 | 603 | RESPONSE to Motion re 595 Third MOTION in Limine and Memorandum in Support *to find Plaintiff waived privilege* filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit 1)(Majors, Jay) (Entered: 03/27/2025) |
| 03/27/2025 | 604 | MOTION for Leave to File Sealed Document re 600 Response to Motion, filed by Intervenor Plaintiff United States of America. Motions referred to Daphne A. Oberg.(Majors, Jay) (Entered: 03/27/2025) |
| 03/27/2025 | 605 | ****DOCUMENT UNSEALED **** per 651 Docket Text Order re 600 Response to Motion, filed by Intervenor Plaintiff United States of America<br><br>**NOTE: Filer is instructed to serve the sealed document on all other parties.**. (Majors, Jay) Modified by unsealing document per 651 Docket Text Order on 4/23/2025 (dle). (Entered: 03/27/2025) |
| 03/28/2025 | 606 | NOTICE OF FILING of Joint Proposed Jury Instructions and Proposed Jury Verdict Forms filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Exhibit A: Joint Proposed Jury Instructions, # 2 Exhibit B:United States' Proposed Jury Verdict Form, # 3 Exhibit C: Defendants' Proposed Jury Verdict Form)(Majors, Jay) (Entered: 03/28/2025) |
| 03/31/2025 | 607 | NOTICE of Appearance by Cameron J. Cutler on behalf of Center for Excellence In Higher Education, Stevens−Henager College (Cutler, Cameron) (Entered: 03/31/2025) |
| 03/31/2025 | 608 | NOTICE OF FILING of Objections to Defendants' Exhibits filed by Intervenor Plaintiff United States of America. (McSorley, Jeffrey) (Entered: 03/31/2025) |
| 03/31/2025 | 609 | NOTICE OF FILING filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Exhibit A − C. Barney Dep., # 2 Exhibit B − SHC 30(b)(6) Dep., # 3 Exhibit C − M. Gerber Dep., # 4 Exhibit D − Duane Morris 30(b)(6), # 5 Exhibit E − ESS 30(b)(6), # 6 Exhibit C. Barney Dep. (Eagle Case))(McSorley, Jeffrey) (Entered: 03/31/2025) |
| 03/31/2025 | 610 | NOTICE OF FILING of Objections to Plaintiff's Exhibits filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit Ex. A − PX006, # 2 Exhibit Ex. B − PX008, # 3 Exhibit Ex. C − PX009)(Gombos, Steven) (Entered: 03/31/2025) |
| 03/31/2025 | 611 | |

| | | |
|---|---|---|
| | | **WITHDRAWN** per 613 NOTICE OF FILING of Withdrawal of Defendants' Request for Judicial Notice. REQUEST for Judicial Notice filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Shorter, Jacob) Modified by withdrawing document on 4/2/2025 (dle). (Entered: 03/31/2025) |
| 03/31/2025 | 612 | NOTICE OF FILING of Notice of Defendants' Deposition Designations filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit Ex. A (Crim), # 2 Exhibit Ex. B (Rosario), # 3 Exhibit Ex. C (Early), # 4 Exhibit Ex. D (Kvaal), # 5 Exhibit Ex. E (Melis), # 6 Exhibit Ex. F (Thomas), # 7 Exhibit Ex. G (Brooks), # 8 Exhibit Ex. H (PWC), # 9 Exhibit Ex. I (Shaw), # 10 Exhibit Ex. J (ESS), # 11 Exhibit Ex. K (Zakarin), # 12 Exhibit Ex. L (Gerber), # 13 Exhibit Ex. M (Barney), # 14 Exhibit Ex. N (SHC), # 15 Exhibit Ex. O (Juhlin))(Shorter, Jacob) (Entered: 03/31/2025) |
| 04/01/2025 | 613 | NOTICE OF FILING of Withdrawal of Defendants' Request for Judicial Notice re 611 Request filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Shorter, Jacob) (Entered: 04/01/2025) |
| 04/02/2025 | | Modification of Docket: Correction: Document withdrawn per 613 NOTICE OF FILING of Withdrawal of Defendants' Request for Judicial Notice re 611 Request. (dle) (Entered: 04/02/2025) |
| 04/04/2025 | 614 | **REQUEST FOR A JURY**<br>40 Jurors Needed for Voir Dire<br>Date Jurors Needed: 4/21/2025<br>Time Jurors Requested in the Courtroom: 9:00 a.m.<br>Length of Trial: 9 Days<br>High Profile Case: NO<br>(lwh) (Entered: 04/04/2025) |
| 04/04/2025 | 615 | NOTICE OF FILING of United States Objections to Defendants Proposed Jury Instructions and Verdict Form re 606 Notice of Filing, *Joint Proposed Jury Instructions and Proposed Jury Verdict Forms* filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Exhibit A. United States Objections to Defendants Proposed Jury Instructions, # 2 Exhibit B. United States Objections to Defendants Proposed Verdict Form)(Majors, Jay) (Entered: 04/04/2025) |
| 04/04/2025 | 616 | NOTICE OF FILING re 606 Notice of Filing, *Defendants' Objections to Plaintiff's Proposed Jury Instructions* filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit Ex. A (Alternative Instruction No. 30), # 2 Exhibit Ex. B (Alternative Instruction No. 57))(Shorter, Jacob) (Entered: 04/04/2025) |
| 04/07/2025 | 617 | **JURORS HAVE BEEN SENT A NOTICE TO APPEAR** by the Jury Office. Jurors to report on April 21, 2025 at 7:40 a.m.<br><br>If a settlement is reached, counsel must immediately contact the Jury Administrator at tracey_hopkins@utd.uscourts.gov to minimize the risk of a cost assessment under DUCivR 41−1. (tlh) (Entered: 04/07/2025) |
| 04/07/2025 | 618 | NOTICE OF FILING of Joint Proposed Juror Questionnaire filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Exhibit A. Joint Proposed Juror Questionnaire)(Majors, Jay) (Entered: 04/07/2025) |
| 04/07/2025 | 619 | |

| | | |
|---|---|---|
| | | NOTICE of filing Defendants' Response in Support of Proposed Jury Instructions by Center for Excellence In Higher Education, Stevens−Henager College re 615 Notice of Filing, *United States Objections to Defendants Proposed Jury Instructions* (Obuchowicz, David) (Entered: 04/07/2025) |
| 04/07/2025 | 620 | NOTICE OF FILING filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Shorter, Jacob) (Entered: 04/07/2025) |
| 04/07/2025 | 621 | TRIAL BRIEF by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Shorter, Jacob) (Entered: 04/07/2025) |
| 04/07/2025 | 622 | TRIAL BRIEF by Intervenor Plaintiff United States of America. (McSorley, Jeffrey) (Entered: 04/07/2025) |
| 04/07/2025 | 623 | NOTICE OF FILING of United States Responses In Support of Its Proposed Jury Instructions and Verdict Form filed by Intervenor Plaintiff United States of America. (Majors, Jay) (Entered: 04/07/2025) |
| 04/07/2025 | 624 | NOTICE of filing by United States of America *of objections to Defendants' deposition designations* (McSorley, Jeffrey) (Entered: 04/07/2025) |
| 04/09/2025 | 625 | NOTICE of Appearance by Paden Gallagher on behalf of United States of America, United States of America (Gallagher, Paden) (Entered: 04/09/2025) |
| 04/11/2025 | 626 | NOTICE: The court received a bounce−back notification indicating that the primary email address asullivan@swlaw.com, for attorney Alan L. Sullivan is invalid. Under DUCivR 83−1.2(e) and 83−1.3(e), attorneys must maintain valid and current contact information in PACER and with the court. Consistent with the CM/ECF Procedures Manual, the court has inactivated the attorneys efiling privileges. When the attorney updates their contact information in PACER, the court will reactivate their efiling privileges. Instructions for updating an address can be found at https://www.utd.uscourts.gov/update−your−address−court. (nl) (Entered: 04/11/2025) |
| 04/11/2025 | 627 | ORDER Permitting the Parties to Raise Objections to the Court's Proposed Jury Instructions. Signed by Judge Jill N. Parrish on 4/11/25. (Attachments: # 1 Exhibit Jury Instructions, # 2 Exhibit Special Verdict Form) (dle) (Entered: 04/11/2025) |
| 04/11/2025 | 628 | Proposed Exhibit List *and Witness List* by Intervenor Plaintiff United States of America.. (Attachments: # 1 Exhibit Exhibit & Witness List)(McSorley, Jeffrey) (Entered: 04/11/2025) |
| 04/11/2025 | 629 | NOTICE of Stipulated Exhibits by United States of America *and Defendants (Joint Filing)* (McSorley, Jeffrey) (Entered: 04/11/2025) |
| 04/14/2025 | 630 | NOTICE of Supplement to Defendants' First Motion in Limine by Center for Excellence In Higher Education, Stevens−Henager College re 593 First MOTION in Limine and Memorandum in Support *to Exclude Evidence of Non−Completion−Based Bonuses* (Attachments: # 1 Exhibit Pl's Resps. to Def's 3rd Set of Interrogatories) (Obuchowicz, David) (Entered: 04/14/2025) |
| 04/14/2025 | 631 | NOTICE OF FILING of Witness and Exhibit List filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit Witness and Exhibit List)(Shorter, Jacob) (Entered: 04/14/2025) |
| 04/14/2025 | 632 | DOCKET TEXT ORDER The court ORDERS the parties as follows: (1) Plaintiff may file a response by noon on Tuesday, April 15, to 630 Defendants' Notice of |

| | | |
|---|---|---|
| | | Supplement; (2) The parties must file a document by noon on Tuesday, April 15, specifying the category into which the exhibits to 594 Defendants' Second Motion in Limine fall: (a) no government intervention, (b) government intervention and ICB is one of several rules allegedly violated, and (c) government intervention and ICB is the only rule allegedly violated; (3) The parties must notify the court by noon on Wednesday, April 16, whether they have resolved 610 Defendants' Objections to Plaintiff's Exhibits or whether they need a ruling from the court; and (4) The parties must file by noon on Thursday, April 17, anything else on which they wish the court to rule prior to opening statements. No attached document. Signed by Judge Jill N. Parrish on 4/14/2025. (ead) (Entered: 04/14/2025) |
| 04/14/2025 | 634 | Minute Entry for proceedings held before Judge Jill N. Parrish: Final Pretrial Conference held on 4/14/2025. All parties appear via zoom. Court discusses trial schedule. Court will be held from 9:00 a.m. to 5:00 p.m., with a short break in the morning and afternoon and a 45−minute lunch break. Counsel will be put on a chess clock. Each side will have a total of 24 hours to present and defend its case. Court will seat 8 jurors. Court hears oral argument on motions in limine. Court will not rule on ECF No. 610 on the docket unless parties file additional request by Wednesday, April 16, 2025. Defense would like to present some witnesses remotely. Court will begin on Monday, April 21, 2025 at 8:30 a.m., after which court will usually convene at 9:00 a.m. After hearing oral argument, court took motions under advisement. Court adjourned. Attorney for Plaintiff: Carra Sheppard Cadman, Jay D. Majors, Paden Gallagher, Jeff McSorley, Attorney for Defendant: Cameron J. Cutler, Steven M. Gombos, David A. Obuchowicz, Paul W. Shakespear, Jacob C. Shorter. Court Reporter: Laura Robinson. Recording: Zoom.(lwh) (Entered: 04/15/2025) |
| 04/15/2025 | 633 | Supplemental RESPONSE to Motion re 593 First MOTION in Limine and Memorandum in Support *to Exclude Evidence of Non−Completion−Based Bonuses* filed by Intervenor Plaintiff United States of America. (Attachments: # 1 Exhibit A)(Majors, Jay) (Entered: 04/15/2025) |
| 04/15/2025 | 635 | DOCKET TEXT ORDER denying without prejudice 596 Defendants' Motion for Leave to File Sealed Document; denying without prejudice 604 Plaintiff's Motion for Leave to File Sealed Document. Each motion seeks to seal documents based solely on the other parties' confidentiality designations, but new new motions to seal were filed by the designating parties within seven days as required under DUCivR 5−3(b)(2)(C)(i). Accordingly, the motions to seal are denied without prejudice. If no new motions to seal are filed by **April 18, 2025**, the documents at issue will be unsealed without further notice. Signed by Magistrate Judge Daphne A. Oberg on 4/15/2025. No attached document. (med) (Entered: 04/15/2025) |
| 04/15/2025 | 636 | Remark Due to the number and contingent nature of the objections in 624 the United States' objections to Defendants' deposition designations, the court deems it not feasible to rule on them before trial. To the extent Defendants wish to use the designated deposition testimony, they must read the deposition transcript, and the United States must make its objections orally. The court will rule on those objections from the bench during the course of trial. (ead) (Entered: 04/15/2025) |
| 04/15/2025 | 637 | NOTICE OF FILING of Response to Court's Request for Additional Information About FCA Exhibits re 632 Order,,, filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit Defendants' Response, # 2 Exhibit Plaintiff's Response)(Gombos, Steven) (Entered: 04/15/2025) |
| 04/15/2025 | 638 | |

| | | |
|---|---|---|
| | | NOTICE: The court received a bounce−back notification indicating that the primary email address asullivan@swlaw.com, for attorney Alan L. Sullivan is invalid. Under DUCivR 83−1.2(e) and 83−1.3(e), attorneys must maintain valid and current contact information in PACER and with the court. Consistent with the CM/ECF Procedures Manual, the court has inactivated the attorneys efiling privileges. When the attorney updates their contact information in PACER, the court will reactivate their efiling privileges. Instructions for updating an address can be found at https://www.utd.uscourts.gov/update−your−address−court. (nl) (Entered: 04/15/2025) |
| 04/15/2025 | 639 | NOTICE OF WITHDRAWAL OF COUNSEL of Alan L. Sullivan filed by Cameron J. Cutler on behalf of Center for Excellence In Higher Education, Stevens−Henager College (Cutler, Cameron) (Entered: 04/15/2025) |
| 04/15/2025 | 640 | MEMORANDUM DECISION AND ORDER granting 592 Plaintiff's Motion in Limine; granting 593 Defendants' First Motion in Limine; granting in part and denying in part 594 Defendant's Second Motion in Limine; and denying 595 Defendants' Third Motion in Limine. Signed by Judge Jill N. Parrish on 4/15/2025. (dle) (Entered: 04/15/2025) |
| 04/16/2025 | 641 | NOTICE OF FILING of Notice to Court in Response to ECF 632 to ECF 63 re 632 Order,,, filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Shorter, Jacob) (Entered: 04/16/2025) |
| 04/16/2025 | 642 | NOTICE of Potential Juror Welcome Letter. (Attachments: # 1 Exhibit A) (dle) (Entered: 04/16/2025) |
| 04/16/2025 | 643 | NOTICE of Objections to the Court's Proposed Jury Instructions by United States of America, United States of America re 627 Order, (Gallagher, Paden) (Entered: 04/16/2025) |
| 04/16/2025 | 644 | NOTICE OF FILING of Defendants' Objections to Proposed Jury Instructions re 627 Order, filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Shorter, Jacob) (Entered: 04/16/2025) |
| 04/17/2025 | 645 | NOTICE of Finalized Preliminary Jury Instructions. Any objections must be filed by 3:00 p.m. Friday April 18, 2025. (Attachments: # 1 Exhibit A Finalized Preliminary Instructions) (alf) (Entered: 04/18/2025) |
| 04/18/2025 | 646 | Emergency MOTION to Continue Trial Date and Memorandum in Support filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit Decl. of Barbara Thomas, # 2 Exhibit Decl. of Jacob Shorter) Motions referred to Daphne A. Oberg. Attorney David A. Obuchowicz added to party Stevens−Henager College(pty:dft)(Obuchowicz, David) (Entered: 04/18/2025) |
| 04/18/2025 | 647 | NOTICE OF FILING of Objections to the Court's Finalized Preliminary Instructions re 645 Notice (Other) filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Shorter, Jacob) (Entered: 04/18/2025) |
| 04/18/2025 | 648 | RESPONSE to Motion re 646 Emergency MOTION to Continue Trial Date and Memorandum in Support filed by Plaintiff United States of America, Intervenor Plaintiff United States of America. (Gallagher, Paden) (Entered: 04/18/2025) |
| 04/18/2025 | 649 | Minute Entry for proceedings held before Judge Jill N. Parrish: Status Conference held on 4/18/2025. All parties appear via zoom. Court hears oral argument on Emergency Motion to Continue Trial. Court DENIES motion and trial will begin on |

| | | |
|---|---|---|
| | | April 21, 2025 as scheduled. Court will inform jury as to why Ms. Thomas's deposition is being read. Ms. Thomas may also testify remotely. Government may submit cross−deposition designations. Court hears oral argument regarding Objections to Preliminary Instructions. Court will issue its ruling shortly. Court adjourned. Attorney for Plaintiff: Jeff McSorley, Jay Majors, Attorney for Defendant: Steven Gombos, Jacob Shorter. Court Reporter: Laura Robinson. Recording: Zoom.(lwh) (Entered: 04/18/2025) |
| 04/18/2025 | 650 | NOTICE FROM THE COURT regarding Final Preliminary Jury Instructions (Attachments: # 1 Final Preliminary Jury Instructions) (lwh) (Entered: 04/18/2025) |
| 04/21/2025 | 659 | Minute Entry for proceedings held before Judge Jill N. Parrish: Jury Trial held on 4/21/2025.<br><br>Counsel and parties present.<br>Preliminary matters heard prior to voir dire being conducted.<br>Court admits all Stipulated Exhibits.<br>Jury Panel brought into the courtroom at 9:17 a.m. Voir dire conducted.<br>Jury selected and seated at 12:45 p.m.<br>Court and jury returned at 1:30 p.m. for preliminary instructions and opening statements.<br>Mr. McSorley calls Ms. Katie Brooks. Witness sworn and testified.<br>Jury is admonished and excused at 5:00 p.m. with instructions to return to the courtroom on 4/22/2025 at 9:00 a.m.<br><br>Admitted Exhibits: All Stipulated Exhibits, 136, 142, 145, 152.<br><br>Court adjourned.<br><br>Attorney for Plaintiff: Jeff McSorley, Jay D. Majors, Paden Gallagher, Attorney for Defendant: Steven M. Gombos, Jacob C. Shorter, David A. Obuchowicz, Cameron J. Cutler. Court Reporter: Laura Robinson. Recording: Electronic.(lwh) (Entered: 05/10/2025) |
| 04/22/2025 | 651 | DOCKET TEXT ORDER: Pursuant to the court's April 15, 2025 docket text order (Doc. No. 635), where no new motions to seal have been filed, the clerk is directed to unseal the documents filed at docket numbers 597 (including attachments) and 605. Signed by Magistrate Judge Daphne A. Oberg on 4/22/2025. No attached document.(med) (Entered: 04/22/2025) |
| 04/22/2025 | 660 | Minute Entry for proceedings held before Judge Jill N. Parrish: Jury Trial held on 4/22/2025.<br><br>Parties and counsel present.<br>Preliminary matters heard outside the presence of the jury.<br>Jury returns to courtroom at 9:20 a.m.<br>Ms. Brooks retakes the witness stand. Witness remains sworn. Witness excused.<br>Mr. Majors calls Ms. Susan Crim. Witness sworn and testified. Witness steps down for the evening but remains under oath.<br>Matters heard outside the presence of the jury. Brandon Mark, counsel for relators, addresses the court.<br>Jury is admonished and instructed to return to courtroom on 4/23/2025 at 9:00 a.m.<br>Matters heard outside the presence of the jury. |

| | | |
|---|---|---|
| | | Court adjourned.<br><br>Admitted Exhibits: 79, 93, 97, 98, 102, 106, 115, 153 (Redacted), 307, 308.<br><br>Attorney for Plaintiff: Jeff McSorley, Jay D. Majors, Paden Gallagher, Attorney for Defendant: Steven M. Gombos, Jacob C. Shorter, David A. Obuchowicz, Cameron J. Cutler. Court Reporter: Laura Robinson. Recording: Electronic.(lwh) (Entered: 05/10/2025) |
| 04/23/2025 | 661 | Minute Entry for proceedings held before Judge Jill N. Parrish: Jury Trial held on 4/23/2025.<br><br>Counsel and parties present.<br>Preliminary matters heard outside the presence of the jury.<br>Jury returned to the courtroom at 9:12 a.m.<br>Ms. Crim returns to the witness stand. Witness remains under oath. Witness testified and is excused.<br>Mr. Gallagher calls Dr. Jeremy Early. Witness sworn and testified. Witness excused.<br>Mr. Gallagher calls Mr. Erik Melis. Witness sworn and testified. Witness excused.<br>Mr. McSorley calls Mr. Carl Barney. Witness sworn and testified. Witness steps down for the evening but remains under oath.<br>Jury is admonished and instructed to return to courtroom on 4/24/2025 at 9:00 a.m.<br>Court adjourned.<br><br>Admitted Exhibits: 6, 13, 23, 25, 32, 35, 119, 120, 121, 122, 125, 126, 127, 129, 135, 244, 301, 342.<br><br>Attorney for Plaintiff: Jeff McSorley, Jay D. Majors, Paden Gallagher, Attorney for Defendant: Steven M. Gombos, Jacob C. Shorter, David A. Obuchowicz, Cameron J. Cutler. Court Reporter: Laura Robinson. Recording: Electronic.(lwh) (Entered: 05/10/2025) |
| 04/24/2025 | 652 | NOTICE of United States' Proposed Curative Instruction by United States of America, United States of America (Gallagher, Paden) (Entered: 04/24/2025) |
| 04/24/2025 | 653 | NOTICE OF FILING of Proposed Curative Instruction re 652 Notice (Other) filed by Defendants Center for Excellence In Higher Education, Stevens−Henager College. (Attachments: # 1 Exhibit A. Proposed Curative Instruction, # 2 Exhibit B. Brooks Deposition Testimony)(Shorter, Jacob) (Entered: 04/24/2025) |
| 04/24/2025 | 662 | Minute Entry for proceedings held before Judge Jill N. Parrish: Jury Trial held on 4/24/2025.<br><br>Counsel and parties present.<br>Jury returned to courtroom at 9:12 a.m.<br>Mr. Carl Barney retakes the witness stand. Witness remains under oath. Witness testified and is excused for now but reserved for later.<br>Mr. Majors calls Ms. Martina Fernandez−Rosario. Witness sworn and testified. Witness is excused for now but is reserved for future examination.<br>Government plays deposition clips.<br>The Government rests.<br>Defense makes Rule 50 motion that will be argued over the break.<br>Jury is admonished and excused at 11:45 a.m. with instructions to return to the |

| | | |
|---|---|---|
| | | courtroom at 9:00 a.m. on 4/25/2025.<br>Court reconvenes at 1:00 p.m.<br>Court hears oral argument on Rule 50 motion. Court takes motion under advisement. Court discusses schedule. Court will not call jurors in on 4/25/2025. Court will hold jury instruction conference, including curative instructions, on 4/25/2025 at 9:30 a.m. Both parties are to file curative instructions on docket today so the court can address it at jury instruction conference on 4/25/25.<br>Court adjourned.<br><br>Admitted Exhibits: 104, 380, 418.<br><br>Attorney for Plaintiff: Jeff McSorley, Jay D. Majors, Paden Gallagher, Attorney for Defendant: Steven M. Gombos, Jacob C. Shorter, David A. Obuchowicz, Cameron J. Cutler. Court Reporter: Laura Robinson. Recording: Electronic.(lwh) (Entered: 05/10/2025) |
| 04/25/2025 | 654 | DOCKET TEXT ORDER terminating 646 Emergency Motion to Continue Trial Date. The motion was denied as stated in the minute entry at Doc. No. 649. Signed by Magistrate Judge Daphne A. Oberg on 4/25/2025. No attached document. (med) (Entered: 04/25/2025) |
| 04/25/2025 | 655 | DOCKET TEXT ORDER As the court mentioned during the jury−instruction conference this morning, the parties are ORDERED to file supplemental briefing addressing the issue of whether the PPAs were contracts and, if so, whether the government's common−law claims must be dismissed given the general rule that quasi−contract claims may not proceed where a valid, enforceable contract governing the dispute exists. No attached document. The briefs must not exceed five pages each, and the parties should submit them by Monday, April 28, at 8:30 am. Signed by Judge Jill N. Parrish on 4/25/2025. (ead) (Entered: 04/25/2025) |
| 04/25/2025 | 656 | DECLARATION of Katie J. Brooks filed by Katie Brooks, Nannette Wride. (Mark, Brandon) (Entered: 04/25/2025) |
| 04/25/2025 | 663 | Minute Entry for proceedings held before Judge Jill N. Parrish: Jury Trial held on 4/25/2025.<br><br>Parties and counsel present.<br>Court hears oral argument on jury instructions.<br>Mr. Brandon Mark, counsel for relator, Ms. Katie Brooks, addresses the court regarding proposed curative instruction.<br>Court will issue a full set of jury instructions on 4/28/2025 after court reviews new briefs from counsel.<br>Court hears argument regarding special verdict form. Court will issue the final verdict form on 4/28/2025.<br>Court adjourned.<br><br>Attorney for Plaintiff: Jeff McSorley, Jay D. Majors, Paden Gallagher, Attorney for Defendant: Steven M. Gombos, Jacob C. Shorter, David A. Obuchowicz, Cameron J. Cutler. Court Reporter: Laura Robinson. Recording: Electronic.(lwh) (Entered: 05/10/2025) |
| 04/27/2025 | 657 | STIPULATION *under Fed.R.Civ.P. 41(a)(1)(A)(ii) to Dismiss Counts III (Payment By Mistake) and IV (Unjust Enrichment) of the United States Amended Complaint in* |

| | | |
|---|---|---|
| | | *Intervention* by United States of America. (Majors, Jay) (Entered: 04/27/2025) |
| 04/28/2025 | 664 | Minute Entry for proceedings held before Judge Jill N. Parrish: Jury Trial held on 4/28/2025.<br><br>Parties and counsel present.<br>Preliminary matters discussed outside the presence of the jury.<br>Jury returned to the courtroom at 9:21 a.m.<br>Mr. Gombos calls Mr. Keith Zakarin. Witness sworn and testified. Witness excused.<br>Mr. Gombos calls Mr. Eric Juhlin. Witness sworn and testified. Witness excused.<br>Mr. Gombos plays the deposition testimony of Mr. James Kvaal.<br>The defense rests.<br>Plaintiff will not present a rebuttal case. Plaintiff rests.<br>Matters discussed outside the presence of the jury.<br>Court hears further argument on jury instructions. Jury instructions are finalized.<br>Government makes a Rule 50 motion. Defense counsel renews Rule 50 motion. Court will hear oral argument on Motions after jury recesses for deliberations. Arguments are preserved for later hearing.<br>Jury returns to courtroom at 1:55 p.m.<br>Court instructs the jury.<br>Government's closing argument heard.<br>Jury is admonished and excused with instructions to return to the courtroom on 4/29/2025 at 9:30 a.m.<br>Parties argue Rule 50 motions. Court takes the motions under advisement.<br>Court adjourned.<br><br>Admitted Exhibits: 56, 214, 261, 271, 419.<br><br>Attorney for Plaintiff: Jeff McSorley, Jay D. Majors, Paden Gallagher, Attorney for Defendant: Steven M. Gombos, Jacob C. Shorter, David A. Obuchowicz, Cameron J. Cutler. Court Reporter: Laura Robinson. Recording: Electronic.(lwh) (Entered: 05/10/2025) |
| 04/29/2025 | 665 | Minute Entry for proceedings held before Judge Jill N. Parrish: Jury Trial completed on 4/29/2025.<br><br>Parties and counsel present.<br>Jury returned to the courtroom at 9:38 a.m.<br>Defense presents closing argument.<br>Government presents rebuttal argument.<br>Court instructs the jury.<br>Deliberations begin at 11:25 a.m.<br>Jury and court returned at 2:04 p.m. for verdict. Verdict read on the record.<br>Jury polled.<br>Jury thanked and excused at 2:06 p.m.<br>Court adjourned.<br><br>Attorney for Plaintiff: Jeff McSorley, Jay D. Majors, Paden Gallagher, Attorney for Defendant: Steven M. Gombos, Jacob C. Shorter, David A. Obuchowicz, Cameron J. Cutler. Court Reporter: Laura Robinson. Recording: Electronic.(lwh) (Entered: 05/10/2025) |
| 05/02/2025 | 658 | |

| | | |
|---|---|---|
| | | JUDGMENT: This action came before the court for a trial by jury. The issues have been tried, and the jury has rendered its verdict. JUDGMENT IS ENTERED against the United States of America and in favor of the following Defendants: Stevens−Henager College, Inc., Center for Excellence in Higher Education. Case Closed. Magistrate Judge Daphne A. Oberg no longer assigned to case. Signed by Judge Jill N. Parrish on 5/2/25. (dle) (Entered: 05/02/2025) |
| 05/10/2025 | 666 | Final Witness and Exhibit List. (lwh) (Entered: 05/10/2025) |
| 05/10/2025 | 667 | Jury Instructions. (Attachments: # 1 Final Jury Instructions)(lwh) (Entered: 05/10/2025) |
| 05/10/2025 | 668 | ****SEALED DOCUMENT**** Jury Questionnaires. (lwh) (Entered: 05/10/2025) |
| 05/10/2025 | 669 | ****SEALED DOCUMENT**** Jury Panel Record. (lwh) (Entered: 05/10/2025) |
| 05/10/2025 | 670 | ****SEALED DOCUMENT**** Jury Notes. (lwh) (Entered: 05/10/2025) |
| 05/10/2025 | 671 | JURY VERDICT for Defendants. (lwh) (Entered: 05/10/2025) |
| 05/10/2025 | 672 | Plaintiff Receipt for Returned Exhibits. (lwh) (Entered: 05/10/2025) |
| 05/10/2025 | 673 | Defendant Receipt for Returned Exhibits. (lwh) (Entered: 05/10/2025) |
| 05/30/2025 | 674 | NOTICE OF APPEAL filed by Katie Brooks, Nannette Wride. Appeals to the USCA for the 10th Circuit. Filing fee $ 605, receipt number AUTDC−5442453. (Mark, Brandon) (Entered: 05/30/2025) |
| 06/02/2025 | 675 | Transmission of Preliminary Record to USCA re 674 Notice of Appeal. (Attachments: # 1 Appendix)(jrj) (Entered: 06/02/2025) |
| 06/03/2025 | 676 | USCA Case Number Case Appealed to Tenth Circuit Case Number 25−4070 for 674 Notice of Appeal filed by Nannette Wride, Katie Brooks. A transcript order form or notice that no transcript is necessary per 10th Cir. R. 10.2. This form must be filed in both the district court and this court. See letter for additional information. (jrj) (Entered: 06/03/2025) |
| 06/16/2025 | 677 | TENTH CIRCUIT APPEALS TRANSCRIPT ORDER FORM filed by Katie Brooks, Nannette Wride re 674 Notice of Appeal<br>(Mark, Brandon) (Entered: 06/16/2025) |
| 06/17/2025 | 678 | Please be advised the Record is complete for purposes of appeal for USCA case number 25−4070 re 674 Notice of Appeal. (jrj) (Entered: 06/17/2025) |
| 06/26/2025 | 679 | The court reporter(Laura R.) has filed the Transcript Order Form re 674 Notice of Appeal, 677 Tenth Circuit Appeals Transcript Order Form. Transcript estimated completion date is 6/30/25. (jrj) (Entered: 06/26/2025) |
| 06/27/2025 | 680 | ****RESTRICTED DOCUMENT**** NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Jury Trial Volume 1 held on April 21, 2025 before Judge Jill Parrish. Court Reporter/Transcriber Laura W. Robinson, RPR, FCRR, CSR, CP, Telephone number (801)201−9731.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS: Please review the transcript within 14 days after receiving this notice to determine if personal data identifiers need to be redacted. If redaction is not required, the transcript will be made electronically available 90 days after this notice. If redaction of personal** |

| | | |
|---|---|---|
| | | **identifies is needed, a party must file a Notice of Intent to Request Redaction within 21 days after receiving this notice. Within 42 days after receiving this notice, a party must file a Redaction Request identifying the information that must be redacted. Please review DUCivR 5.2−1 for additional information about redacting personal identifiers or protected information. The Attorney Filing the Notice of Intent To Request Redaction and Redaction request must send a copy to the court reporter. The court will not send a copy to the court reporter.**<br><br>**Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Request Redaction due 7/18/2025. Redaction Request due 8/8/2025. Redacted Transcript Deadline set for 8/29/2025. Release of Transcript Restriction set for 9/25/2025. (jrj) (Entered: 06/27/2025)** |
| 06/27/2025 | 681 | NOTICE OF APPEAL filed by United States of America. Appeals to the USCA for the 10th Circuit. No Filing Fee. (Majors, Jay) (Entered: 06/27/2025) |
| 06/27/2025 | 682 | Transmission of Preliminary Record to USCA re 681 Notice of Appeal. (Attachments: # 1 Appendix)(jrj) (Entered: 06/27/2025) |
| 06/27/2025 | 683 | NOTICE OF CROSS APPEAL as to 640 Order on Motion in Limine,,,,,,,, Memorandum Decision, 468 Memorandum Decision,,, Order on Motion to Dismiss for Failure to State a Claim,,, Order on Motion for Miscellaneous Relief,,,,, 658 Judgment, 245 Order on Motion to Dismiss,,,,,,,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,,, Order on Motion to Strike,,,, Order on Motion for Leave to File,,,, 569 Order on Motion for Partial Summary Judgment,, Order on Motion for Summary Judgment,, Sealed Order,, Terminate Motions, filed by Carl Barney, California College San Diego, Center for Excellence In Higher Education, Collegeamerica Arizona, Inc, Collegeamerica Denver, Inc, Stevens−Henager College. Appeals to the USCA for the 10th Circuit. Filing fee $ 605, receipt number AUTDC−5473152. (Shorter, Jacob) (Entered: 06/27/2025) |
| 06/30/2025 | 684 | Transmission of Preliminary Record to USCA re 683 Notice of Cross Appeal. (Attachments: # 1 Appendix)(jrj) (Entered: 06/30/2025) |

**FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KATIE BROOKS and NANNETTE WRIDE,<br><br>Plaintiffs,<br><br>v.<br><br>STEVENS-HENAGER COLLEGE, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS<br><br>Case No. 2:15-cv-119-JNP-EJF<br><br>Judge Jill N. Parrish<br>Magistrate Judge Evelyn J. Furse |

Before the court are five pending motions to dismiss: Defendant PricewaterhouseCoopers LLP's ("PwC") Motion to Dismiss the Relators' Complaint (Docket 194); Defendant Shaw & Co.'s ("Shaw") Motion to Dismiss the Relators' Complaint (Docket 196); Defendant Weworski & Associates' ("Weworski") Motion to Dismiss the Relators' Complaint (Docket 201); Defendants Carl Barney's, California College San Diego's ("California College"), Center for Excellence in Higher Education's ("CEHE"), Collegeamerica Arizona, Inc.'s ("Collegeamerica Arizona"), Collegeamerica Denver, Inc.'s ("Collegeamerica Denver"), and Stevens-Henager College's ("Stevens-Henager") Motion to Dismiss the Relators' Complaint (Docket 198); and Defendants CEHE's and Stevens-Henager's Motion to Dismiss the Intervenor's Complaint (Docket 197).

On October 6, 2015, the court held a hearing on all pending motions to dismiss. The court then took the motions under advisement. After careful consideration of the record, relevant law, and the parties' memoranda, the court GRANTS PwC's Motion to Dismiss (Docket 194), Shaw's Motion to Dismiss (Docket 196), and Weworski's Motion to Dismiss (Docket 201), and GRANTS IN PART AND DENIES IN PART the Motion to Dismiss the Relators' Complaint

(Docket 198) and the Motion to Dismiss the Intervenor's Complaint (Docket 197).

## BACKGROUND

Katie Brooks and Nannette Wride (collectively "Relators") filed this case in the District of Idaho in January 2013 seeking relief under the federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA"). Relators allege that Defendants CEHE, Stevens-Henager, California College, Collegeamerica Arizona, Collegeamerica Denver (collectively "Defendant Schools")[1] and Mr. Barney, the owner of Defendant Schools, submitted false claims and statements to the United States Department of Education ("DOE") from 2002 to 2011 in order to participate in Title IV federal financial aid programs. Relators separately allege that Defendants PwC, Shaw, and Weworski (collectively "Defendant Auditors") facilitated Defendant Schools' false claims when they performed audits of Defendant Schools' compliance with Title IV regulations. In April 2014, the United States (the "Government") intervened as to claims related to only two of the Defendants, CEHE and Stevens-Henager.

In February 2015, the District of Idaho granted Defendants' motion for transfer of venue without ruling on several pending motions to dismiss. Because previous briefing primarily relied on Ninth Circuit law, the court ordered new briefing and allowed Relators to file a Third Amended Complaint.

Before detailing the Relators' and Government's allegations against Defendants, the Court first provides background information on the FCA and Title IV of the Higher Education Act ("HEA"), 20 U.S.C. §§ 1070–99.

### I. The FCA

The FCA is the Government's "primary vehicle . . . for recouping losses suffered through

[1] On December 31, 2012, Defendant Schools merged into an Indiana nonprofit corporation, CEHE. CEHE continues to operate Defendant Schools under the same trade names as before.

fraud." *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 700 (7th Cir. 2015) (quoting 31 U.S.C. § 3729 *et seq.*). Prior to May 20, 2009, the FCA imposed civil liability on "[a]ny person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval," or "(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(1)–(2) (1986). On May 20, 2009, Congress amended the FCA to impose civil liability on "any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)–(B) (2009).[2] Because Relators bring claims spanning from 2002 to 2011, the court must analyze the applicability of both versions of the FCA.

FCA violations result in civil penalties and treble damages. *Id.* § 3729(a)(1). The FCA also provides a *qui tam* enforcement mechanism, thereby allowing private parties, known as relators, to bring a civil suit on the Government's behalf. *Id.* § 3730(b). If the *qui tam* action is successful and results in the recovery of money for the Government, the relator shares in the Government's award. *Id.* § 3730(d).

## II. Title IV

In order to participate in financial aid programs under Title IV of the Higher Education Act, institutions must enter into a Program Participation Agreement ("PPA") with the DOE. 20 U.S.C. § 1094(a). The PPA "condition[s] the initial and continuing eligibility of an institution to participate in a program [for Title IV funding] upon compliance with . . . [certain] requirements."

[2] As amended, § 3729(a)(1)(B) applies retroactively to claims pending on or after June 7, 2008. *See infra* I.A.4.

*Id.* "In sum, the PPA includes certifications of existing facts and forward-looking promises that the institution will abide by certain statutes and regulations attendant to Title IV." *Sanford-Brown*, 788 F.3d at 701.

**III. The Relators' and Government's Allegations**

Relators worked as admissions consultants at Stevens-Henager's Orem, Utah campus from 2009 to 2011. The Relators' Third Amended Complaint asserts three different categories of alleged FCA violations. First, Relators allege that they, along with their counterparts at other Defendant Schools, were paid bonuses for enrolling students in violation of the Incentive Compensation Ban, a law that prohibits institutions from "provid[ing] any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid." 20 U.S.C. § 1094(a)(20). Relators further allege that from 2002 to 2011, Defendant Schools and Mr. Barney falsely certified to the Government in their PPAs that Defendant Schools were in compliance with the Incentive Compensation Ban when in fact they paid bonuses to admissions personnel based on their success in enrolling students. Relators allege that Defendant Schools knew the certifications in their PPAs were false and that they made the certifications in order to induce the Government to allow them to receive Title IV funding. Defendant Schools and Mr. Barney contend, however, that their compensation system fell within Safe Harbor E, a former regulatory safe harbor to the Incentive Compensation Ban that allowed schools to pay "[c]ompensation . . . based upon students successfully completing their educational programs, or one academic year of their educational programs, whichever is shorter." 34 C.F.R. § 668.14(b)(22)(ii)(E) (repealed 2011).[3]

---

[3] Effective July 2011, the DOE eliminated the regulatory safe harbors to the Incentive Compensation Ban. *See* Program Integrity Issues, 75 Fed. Reg. 66,832 (Oct. 29, 2010). In 2012, the D.C. Circuit found that the DOE's repeal of Safe Harbor E was "arbitrary and capricious." *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d

Second, Relators allege that Defendant Schools falsely certified compliance with other regulations in their PPAs, including the 90/10 Rule[4] and regulations concerning accreditation requirements, such as attendance-taking, refunds of unearned Title IV funds, and students' satisfactory academic progress. Relators allege that Defendant Schools knew that their promises to comply with these regulations were false and were made only to induce the Government to allow them to receive Title IV funding. Relators also allege that Defendant Schools presented false certifications to their accreditation agency, ACCSC, such as falsified faculty personnel reports, in order to meet ACCSC's accrediting standards to appear eligible for Title IV funding.

Third, Relators allege that Defendant Auditors violated the FCA when they falsely certified in their audits that they had audited Defendant Schools in accordance with applicable standards and guidelines. Relators also allege that Defendant Auditors made false certifications regarding Defendant Schools' compliance with Title IV requirements in their annual audit reports in order to induce the DOE to deem Defendant Schools eligible to participate in Title IV.

After evaluating all of the Relators' claims, the Government intervened in claims against only two of the defendants, Stevens-Henager and CEHE. The Government's allegations are limited to violations of the Incentive Compensation Ban and do not include claims against Defendant Auditors. The Government also alleges it paid Stevens-Henager and CEHE by mistake of fact and that these two schools were unjustly enriched when they obtained federal funds they were not entitled to receive.

**ANALYSIS**

Defendant Schools, Mr. Barney, and Defendant Auditors collectively bring five different

---

427, 448 (D.C. Cir. 2012). However, neither the Relators nor the Government allege any FCA violations occurring after 2011. Thus, any issues arising out of the D.C. Circuit's opinion are not implicated in this case.

[4] The "90/10 Rule" prohibits schools from "deriv[ing] . . . less than ten percent of . . . [their] revenues from sources other than [Title IV] funds." 20 U.S.C. § 1094(a)(24), (d); 34 C.F.R. § 668.14(b)(16). Schools are also required to report their calculations under the 90/10 Rule in their annual financial audits. 34 C.F.R. § 668.23(d)(3).

motions to dismiss the Relators' and Government's complaints under Federal Civil Rules of Procedure 12(b)(6), 8(a), and 9(b). The court first addresses Defendants' arguments to dismiss the Relators' and Government's FCA claims and then addresses Stevens-Henager's and CEHE's arguments to dismiss the Government's claims for mistake and unjust enrichment.

## I. The Relators' and Government's FCA Claims

The court first addresses the legal sufficiency of the Relators' and Government's FCA claims under Rule 12(b)(6). The court then addresses the sufficiency of the Relators' and Government's factual allegations under Rules 8(a) and 9(b).

### A. The Legal Sufficiency of the Relators' and Government's FCA Claims

In order to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To do so, plaintiffs must plead both a legitimate legal theory and "enough factual matter, taken as true, to make [their] 'claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The FCA "covers all fraudulent attempts to cause the government to pay out sums of money." *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quoting *United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1172 (10th Cir. 2007)). Both Relators and the Government allege violations of 31 U.S.C. § 3729(a)(1)(A)–(B) and their pre-amendment predecessors, 31 U.S.C. § 3729(a)(1)–(2). Before the 2009 amendment, § 3729(a)(1)–(2) imposed liability on any person who

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

Following the 2009 amendment, the FCA was renumbered as § 3729(a)(1)(A)–(B). It

then imposed liability on "any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* While the text of these provisions varies, each shares the common elements of a "false or fraudulent claim" and scienter. Consequently, the court addresses these elements first. The court then reviews the remaining elements particular to each subsection of the FCA and addresses any material differences between the pre-and post-2009 FCA.

**1) A False or Fraudulent Claim**

The first element universal to all FCA claims is a false or fraudulent claim. The allegations in this case fall within three broad categories: the Relators' and Government's allegations regarding Defendant Schools' and Mr. Barney's Incentive Compensation Ban violations, the Relators' and Government's allegations regarding Defendant Schools' fraudulent certifications, and the Relators' allegations regarding Defendant Auditors' fraudulent certifications.

Defendant Schools raise a defense that applies only to the alleged Incentive Compensation Ban violation. The court first addresses this defense before turning to the issue of whether Relators and the Government have alleged a legitimate legal theory for pleading a false or fraudulent claim.

**a) The Incentive Compensation Ban and Safe Harbor E**

At the outset, Defendant Schools and Mr. Barney assert that their incentive compensation program did not violate the Incentive Compensation Ban, 20 U.S.C. § 1094(a)(20), because they complied with a former regulatory safe harbor known as Safe Harbor E, 34 C.F.R. § 668.14(b)(22)(ii)(E) (repealed 2011). On this basis, Defendant Schools and Mr. Barney seek dismissal under Rule 12(b)(6) of all FCA claims arising out of Defendant Schools' and Mr.

Barney's alleged Incentive Compensation Ban violation.

In order to evaluate Defendant Schools' and Mr. Barney's defense, it is necessary to begin with the Incentive Compensation Ban's statutory and regulatory framework. The Incentive Compensation Ban states that an institution receiving Title IV funds

> will not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance, except that this paragraph shall not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

20 U.S.C. § 1094(a)(20).

Following Congress's enactment of the Incentive Compensation Ban, the DOE adopted numerous regulations interpreting the ban in an effort to provide greater clarity with respect to how it would be enforced. These regulations reiterate the overarching prohibition on providing "any commission, bonus, or other incentive payment based directly or indirectly upon success in securing enrollments or financial aid to any person or entity engaged in any student recruiting or admission activities or in making decisions regarding the awarding of Title IV, HEA program funds." 34 C.F.R. § 668.14(b)(22)(i). But the DOE also set forth several regulatory safe harbors that describe "[a]ctivities and arrangements that an institution may carry out without violating the provisions of [the Incentive Compensation Ban]." 34 C.F.R. § 668.14(b)(22)(ii) (repealed 2011). Among these, Safe Harbor E excludes "[c]ompensation that is based upon students successfully completing their educational programs, or one academic year of their educational programs whichever is shorter." *Id.* § 668.14(b)(22)(ii)(E).

With this framework in mind, the court can dismiss the Relators' and Government's claims under Rule 12(b)(6) only if the court concludes that Defendant Schools' and Mr. Barney's incentive compensation plan fell within Safe Harbor E. And at this stage of the proceedings, the

court must accept as true all of the Relators' and Government's factual allegations regarding Defendant Schools' and Mr. Barney's compensation plan. *Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011).

Here, Relators and the Government both allege that Defendant Schools and Mr. Barney provided incentive compensation to admissions consultants and other employees involved in the recruiting process if they satisfied three requirements: (1) the employee recruited a student who completed thirty-six credit units—the equivalent of one year of study, (2) that employee had also recruited at least five new students within the past three months, and (3) the employee maintained at least a 33% conversion ratio over the past three months.[5] If an employee met each of these criteria, the employee was entitled to a bonus. The value of the bonus was determined on a sliding scale that considered the employee's conversion ratio and whether the employee independently recruited new students.

Defendant Schools and Mr. Barney assert that, accepting all of these facts as true, their incentive compensation program fell within the plain language of Safe Harbor E and did not violate the Incentive Compensation Ban. Defendant Schools and Mr. Barney emphasize that Safe Harbor E lacks any language restricting a school's ability to set additional requirements for awarding bonuses so long as the bonuses are always tied to a student who has completed thirty-six credits.

The court disagrees. For the reasons that follow, the court concludes that, accepting all factual allegations as true, Defendant Schools' and Mr. Barney's compensation program falls outside the scope of Safe Harbor E and violates the plain language of the Incentive Compensation Ban. Defendant Schools and Mr. Barney attempt to read Safe Harbor E in a

---

[5] Defendant Schools' "conversion ratio" is the number of actual enrollments divided by the number of interviews the employee conducted with prospective students.

vacuum. Standing by itself, Safe Harbor E might fairly be read in a way that allows schools to set additional requirements for awarding bonuses so long as the bonus is linked to a student who has completed at least thirty-six credits. But Safe Harbor E is not a standalone provision. It is part of a statutory and regulatory framework that opens with an expansively worded ban on any incentive compensation for recruiters. Both the language of the statute and the regulation prohibit the payment of "*any* commission, bonus, or other incentive payment *based directly or indirectly on success in securing enrollments* or financial aid." 20 U.S.C. § 1094(a)(20) (emphasis added); 34 C.F.R. § 668.14(b)(22)(i). Safe Harbor E is an exception to this overarching ban. Thus, the language of Safe Harbor E allowing "[c]ompensation that is based upon students successfully completing" at least one year of their programs, 34 C.F.R. § 668.14(b)(22)(ii)(E) (repealed 2011), must be read narrowly and in light of the overarching prohibition on incentive payments "based directly or indirectly" on enrollments. *See In re Woods*, 743 F.3d 689, 699–700 (10th Cir. 2014) (holding that "exceptions must not be interpreted so broadly as to swallow the rule"); *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 994 (9th Cir. 2011).

Defendant Schools and Mr. Barney attempt to read Safe Harbor E's silence on additional requirements for awarding completion bonuses as an affirmative authorization for such requirements. This reading is erroneous. Safe Harbor E is the exception and not the rule. Therefore, in construing the exception narrowly, the regulation's silence regarding additional requirements for completion bonuses may not be read as an affirmative authorization for a more expansive exception allowing bonuses to be conditioned on meeting recruiting goals.

In fact, the court concludes that the opposite of Defendant Schools' and Mr. Barney's reading is true. That is, the absence of an affirmative authorization for additional requirements on awarding bonuses is evidence of the DOE's intent *not* to allow such requirements. In Safe

Harbor A, the DOE created an exception allowing consideration of an employee's recruitment statistics for awarding raises, subject to specific limitations. *See* 34 C.F.R. § 668.14(b)(22)(ii)(A) (repealed 2011). The fact that the DOE expressly authorized consideration of recruitment statistics in Safe Harbor A, but did not authorize such consideration in Safe Harbor E, indicates that Safe Harbor E does not encompass completion bonuses if they are dependent upon the realization of additional recruiting requirements. *Cf. Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 671 (2008) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002)).

Because Defendant Schools' and Mr. Barney's incentive compensation program falls outside of Safe Harbor E, Safe Harbor E does not provide a basis for dismissing the Relators' or Government's claims as alleged in the operative complaints.[6]

**b) Actionable False or Fraudulent Claims**

Having rejected Defendant Schools' and Mr. Barney's arguments with respect to Safe Harbor E, the court reviews whether Relators and the Government have stated a proper legal theory for all three categories of violations: the Relators' and Government's allegations regarding Defendant Schools' and Mr. Barney's Incentive Compensation Ban violations, the Relators' and Government's allegations regarding Defendant Schools' fraudulent certifications, and the Relators' allegations regarding Defendant Auditors' fraudulent certifications.

[6] After the hearing, Defendants submitted supplemental briefing regarding a recent administrative decision published by the DOE. The decision clarified the DOE's 2011 amendments to the Incentive Compensation Ban regulations. However, because Defendant Schools' alleged violations of the Incentive Compensation Ban occurred prior to the 2011 amendments, the DOE's clarification is not relevant and the court need not consider it in ruling on Defendants' motions to dismiss.

Because the court need not consider Defendants' supplemental authority, all other motions regarding the supplemental authority—Relators' Motion to Strike (Docket 240) and Defendant Weworski's Alternative Motion for Leave for Court to Consider Weworski's December 10, 2015 Response (Docket 242)—are DENIED AS MOOT.

"The FCA recognizes two types of actionable claims—factually false claims and legally false claims." *Conner*, 543 F.3d at 1217. A plaintiff under the False Claims Act may plead the element of a false or fraudulent claim by showing that a claim was either factually or legally false or fraudulent.

"[P]roving [factual] falsehood is relatively straightforward: A relator must generally show that the government payee has submitted 'an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'" *Id.* (quoting *Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001)). Proving legal falsehood is less straightforward. In the Tenth Circuit, "legally false certification claims can rest [on] one of two theories—express false certification, and implied false certification." *Id.* While an express false certification theory may be pled under any of the FCA sections at issue, an implied false certification theory arises only under § 3729(a)(1)(A) and its predecessor, § 3729(a)(1). *See United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1168 (10th Cir. 2010).

"An express false certification theory applies when a government payee 'falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment.'" *Conner*, 543 F.3d at 1217 (quoting *Mikes*, 274 F.3d at 698). An implied false certification theory "focuses on the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment." *Id.* at 1218. When defendants "knowingly violate[] such a condition while attempting to collect remuneration from the government, [they] may have submitted an impliedly false claim." *Id.*

Under both false certification theories, the court must assess whether compliance with the underlying statute, regulation, or contractual term is "a prerequisite to payment," namely,

whether compliance is "material to the government's decision to pay out moneys to the claimant." *See id.* at 1217–19 (quoting *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1172 (9th Cir. 2006)). "Thus, a false certification—regardless of whether it is implied or express—is actionable under the FCA only if it leads the government to make a payment which, absent the falsity, it may not have made." *Lemmon*, 614 F.3d at 1169.

With respect to federal programs, the Tenth Circuit has been "careful to distinguish between conditions of program *participation* and conditions of *payment*." *Conner*, 543 F.3d at 1220. This distinction is important in determining whether compliance with a given statute, regulation, or contractual provision is material to the Government's payment decisions, thereby triggering potential FCA liability. Congress and the agencies that administer federal programs are free to adopt a scheme that expressly requires strict regulatory compliance as a condition of payment. They are equally free, however, to adopt a system where "[c]onditions of participation, as well as a [participant institution's] certification that it has complied with those conditions, are enforced through administrative mechanisms, and the ultimate sanction for violation of such conditions is removal from the government program." *Id.*

In *United States ex rel. Conner v. Salina Regional Health Center, Inc.*, the Tenth Circuit reviewed Medicare's administrative enforcement regime to determine whether a provider's compliance with Medicare regulations was a prerequisite to receiving Medicare payments or a condition of continuing eligibility to participate in the Medicare program. *See id.* at 1220–22. After reviewing various aspects of the Medicare regulatory scheme, the Tenth Circuit determined that compliance with Medicare regulations is a condition of ongoing program participation that is enforced through an administrative scheme. *See id.* at 1221. In making this determination, the Tenth Circuit rejected the argument that strict regulatory compliance was material to the

Government's decision to pay a provider's claims for Medicare funds.[7]

In this case, the parties dispute whether an institution's compliance with Title IV regulations is a condition of participation in Title IV (i.e. not material for purposes of FCA liability) or is a condition of receiving federal financial aid payments (i.e. material for purposes of FCA liability). Following the Tenth Circuit's analytical framework in *Conner*, the court "review[s] . . . the scheme for managing [Title IV, HEA program] participation" to discern whether Congress and the DOE have conditioned program payments on regulatory compliance, or whether, like Medicare, regulatory compliance is instead only a condition of ongoing program participation that is enforced through an administrative regime. *See id.* at 1220–21. The court addresses in turn each of the considerations identified by the Tenth Circuit in *Conner*.

First, the *Conner* court noted that before participating in Medicare, "hospitals must undergo inspections, which may be conducted by private accreditation organizations." *Id.* at 1220 (citing 42 C.F.R. § 488.5(a)). Similarly, in order to participate in Title IV, educational institutions must "meet the requirements established by . . . accrediting agencies or associations." 20 U.S.C. § 1094(a)(21). Accrediting agencies are required to assess an institution's educational objectives and degree requirements through written reports and on-site reviews "to determine if the institution or program complies with the agency's standards." 34 C.F.R. § 602.17(c).

Second, hospitals must "complete a Medicare Participation Certification, which includes a representation that the provider has complied with all applicable laws and regulations." *Conner*, 543 F.3d at 1220. Likewise, institutions desiring to participate in Title IV programs are

[7] *See Conner*, 543 F.3d at 1221 ("It follows that the certification in the annual cost report represents the provider's assurance that it continues to comply with the requirements of Medicare participation. Implied in this certification is the recognition that the provider could face consequences through the administrative procedures described above if it falls short of substantial compliance. Based on the fact that the government has established a detailed administrative mechanism for managing Medicare participation, we are compelled to conclude that although the government considers substantial compliance a condition of ongoing Medicare *participation*, it does not require perfect compliance as an absolute condition to receiving Medicare *payments* for services rendered.").

required to enter into a PPA. 20 U.S.C. § 1094(a). The PPA "condition[s] the initial and continuing eligibility of an institution to participate in [Title IV] program[s] upon compliance with" a number of statutes and regulations with which the institution must comply or promise to comply in order to participate in Title IV. *Id.*

Third, "[a]fter the organization is accredited, the government may at any time initiate a 'validation survey,' which may be conducted by a state agency that ensures ongoing compliance with Medicare conditions." *Conner*, 543 F.3d at 1220 (citing 42 C.F.R. § 448.10(c)). Similarly, after an institution enters into a PPA and begins to participate in Title IV programs, the institution must continue to comply with the PPA's requirements in order to remain eligible to participate in Title IV. 20 U.S.C. § 1094(a). Continued compliance is in part measured by accreditation agencies, which "must reevaluate, at regularly established intervals, the institutions or programs it has accredited." 34 C.F.R. § 602.19(a). This monitoring "must include periodic reports, and collection and analysis of key data and indicators, . . . including, but not limited to, fiscal information and measures of student achievement." *Id.* § 602.19(b). Accreditation agencies may also conduct unannounced inspections. *Id.* § 602.23(f). Similarly, each institution is required to undergo compliance audits "with regard to any funds obtained by it under [Title IV] . . . on at least an annual basis." 20 U.S.C. § 1094(c)(1)(A)(i).

Fourth, "[e]ven if . . . a provider appears noncompliant, the government does not immediately suspend Medicare enrollment or billing privileges. Rather, the relevant regulations permit the provider to create a plan of correction, and allow a reasonable period of time . . . to address any deficiencies." *Conner*, 543 F.3d at 1220–21 (citing 42 C.F.R. § 488.28 (a), (c) & (d)). Similarly, institutions participating in Title IV programs may be placed on "provisional status" for violations of the 90/10 Rule, 20 U.S.C. § 1094(d)(2)(B), and are afforded

opportunities to correct instances of noncompliance discovered through audits by creating a corrective action plan. U.S. DEP'T OF EDUC. OFFICE OF INSPECTOR GEN., AUDIT GUIDE I-6 (2000), *available at* http://www.ifap.ed.gov/aguides/attachments/sfgd2000.pdf.

Fifth, "[o]nly after finding that the provider has not 'substantially' complied may the government, at its discretion, terminate a Medicare participation agreement." *Conner*, 543 F.3d at 1221 (citing 42 C.F.R. § 1395cc(b)(2)). Likewise, if an institution is noncompliant with Title IV requirements, the relevant regulations allow for "the limitation, suspension, or termination of the participation . . . of an eligible institution, or the imposition of a civil penalty." 20 U.S.C. § 1094(c)(1)(F) & (3). Such penalties, however, may only be administered "after reasonable notice and opportunity for hearing." *Id.* Title IV regulations also provide for emergency action in which the DOE can temporarily withhold funds from an institution if the DOE "determines that immediate action is necessary to prevent misuse of Federal funds." *Id.* § 1094(c)(1)(G)(ii).

Finally, like the plaintiff in *Conner*, neither Relators nor the Government cite "regulations or case law indicating that the government normally seeks retroactive recovery of [Title IV] Payments for [education] actually [provided] on the basis that the noncompliance rendered [the payments] fraudulent." *Conner*, 543 F.3d at 1221.[8]

For all of the foregoing reasons, the court concludes that like Medicare, Title IV does not condition payment on regulatory compliance. Upon entering a PPA and becoming a program participant, regulatory compliance is enforced through an administrative regime where the ultimate sanction is removal from the program. False certifications of compliance during program participation do not have any tendency to affect payment of program funds in the first instance. Instead, regulatory noncompliance and false certifications during program participation

[8] Title IV requires institutions to return funding in some instances, for example, when a student fails to attend a sufficient number of classes. 20 U.S.C. § 1091b. However, these requirements are part of the administrative regime and do not evidence an intent to condition initial payment on perfect regulatory compliance.

provide grounds for administrative sanctions and possible removal from the program.

Relators and the Government counter with the Tenth Circuit's statement in *Conner* that some "regulations or statutes may be so integral to the government's payment decision as to make any divide between conditions of participation and conditions of payment a 'distinction without a difference.'" *Id.* at 1222 (quoting *Hendow*, 461 F.3d at 1177). But neither the Tenth Circuit nor any other court to grapple with the issue has established a meaningful standard for distinguishing "integral" conditions of participation that trigger FCA liability from traditional conditions of participation that are enforced exclusively through the "carefully crafted remedial process[es]" of an administrative regime. *See id.* at 1221–22. At minimum, the circuit courts that have addressed this issue, including the Tenth Circuit in dicta, agree that "falsely promis[ing] to comply with Title IV's [regulatory scheme including the] ban on 'incentive compensation' simply to become eligible for Title IV federal funds" materially impacts "the government's payment decision," even though the promise is made as a condition of program participation. *Id.* at 1222;[9] *see also Sanford-Brown*, 788 F.3d at 708–12; *United States ex rel. Miller v. Weston Educ., Inc.*, 784 F.3d 1198, 1204, 1207–09 (8th Cir. 2015), *petition for cert. docketed*, No. 15-404 (U.S. Oct. 1, 2015); *Hendow*, 461 F.3d at 1172–73; *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 916–17 (7th Cir. 2005).

Relators and the Government argue that the Incentive Compensation Ban qualifies as an integral regulation under *Conner*, a violation of which automatically triggers FCA liability. The court disagrees. Indeed, the overarching theme of the *Conner* opinion is that courts should be careful not to impose a requirement of strict regulatory compliance where none exists.

[9] The Tenth Circuit expressly acknowledged the Ninth Circuit's reasoning that if FCA liability were not triggered by knowingly making false promises to gain admission to Title IV participation, defendants "would be virtually unfettered in [their] ability to receive funds from the government while flouting the law." *Conner*, 543 F.3d at 1222 (quoting *Hendow*, 461 F.3d at 1176).

As the Tenth Circuit reasoned in *Conner*, under the FCA "[a]n individual private litigant, ostensibly acting on behalf of the United States, could prevent the government from proceeding deliberately through [its] carefully crafted remedial process and could demand damages far in excess of the entire value of [program] services [provided] by the [recipient of program funds]." *Conner*, 543 F.3d at 1221. There is a significant risk that such claims could have "catastrophic" consequences directly contrary to the purpose of the federal program. *See id.* For example, in the Medicare context, the Tenth Circuit noted that FCA liability for regulatory noncompliance would "likely be catastrophic for hospitals that provide medical services to the financially disadvantaged and the elderly," and would undermine the very purpose of Medicare. *Id.* Similarly, in the Title IV context, imposition of FCA liability for regulatory violations may jeopardize broad access to education. Just as federal courts are ill-equipped to make decisions about medical care standards, *see id.*, courts are equally ill-equipped to determine the proper balance between enhancing access to education by allowing schools to retain eligibility for Title IV funding and adequately enforcing the requirements of program participation.

For these reasons, the court concludes that "[g]ood-faith entry into the PPA is the [sole] condition of payment necessary to be eligible for subsidies under the U.S. Department of Education's subsidies program." *Sanford-Brown*, 788 F.3d at 710. Drawing the line at entering into a PPA makes sense. The Title IV administrative regime is not set up to monitor whether an institution knowingly makes false promises of compliance in a PPA to gain entry into the program. Rather, it is designed to monitor and remediate compliance issues arising *after* institutions become program participants—that is, after participants have promised in good faith to abide by the requirements of program participation. In short, until an institution participates in Title IV, Title IV has no hold over them.

In contrast, the very purpose of the FCA is to protect the Government from deliberate and knowing efforts to submit false claims. Liability at the PPA stage protects the Government from an institution's knowingly false entry into the program. Thus, the FCA fills the gaps and protects the Government at the stage where Title IV cannot. But once an institution becomes a Title IV participant, Title IV's regulatory scheme, rather than the FCA, governs program compliance.

In addition, the court's conclusion that FCA liability does not extend to subsequent regulatory violations prevents "catastrophic" consequences undermining the purposes of Title IV. Instead, the court's conclusion gives the DOE room to calibrate its enforcement efforts to balance the need to maintain broad access to education with Title IV compliance.

For these reasons, the court reaches the same conclusion as every circuit to address the question: entry into a PPA is the condition of payment triggering potential FCA liability. In contrast, subsequent regulatory compliance—such as complying with the 90/10 Rule and other accreditation regulations—is only a condition of continuing program participation and is governed only by Title IV's administrative compliance regime. *See id.* at 710–11; *Miller*, 784 F.3d at 1204.[10]

With this standard in mind, the Court addresses the legal sufficiency of the Relators' and Government's allegations of a false or fraudulent claim under Rule 12(b)(6). Relators and the Government raise several distinct theories to satisfy the element of a false or fraudulent claim. The court addresses each of these theories in turn.

---

[10] In their motions to dismiss, Defendant Schools ask the court to take judicial notice of several documents that state what they believe to be the DOE's position on the materiality of Incentive Compensation Ban violations. In light of the above analysis, the court declines Defendant Schools' request. Regardless, it would be improper for the court to take judicial notice of these documents because Defendant Schools rely on them "to prove the truth of matters asserted therein." *See Tal v. Hogan*, 453 F.3d 1244, 1264–65 n.24 (10th Cir. 2006) (holding that documents that a court takes judicial notice of at the motion to dismiss stage "may only be considered to show their contents, not to prove the truth of matters asserted therein" (quoting *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

**c) The Sufficiency of the Relators' Allegations with Respect to a False or Fraudulent Claim Against Defendant Schools and Mr. Barney**

The Relators' Third Amended Complaint contains a host of allegations of wrongdoing by Defendant Schools and Mr. Barney. With respect to a false or fraudulent claim, these allegations can be categorized under two legal theories. Relators' first legal theory is that Defendant Schools and Mr. Barney entered into multiple PPAs, promising to comply with Title IV requirements, including the Incentive Compensation Ban, while knowing they were in fact violating these requirements or knowing they did not intend to comply with them. The second theory is that once Defendant Schools and Mr. Barney became Title IV participants, they made numerous, subsequent false certifications of compliance with Title IV requirements in order to maintain Title IV eligibility and draw down Title IV funds. These subsequent false certifications include promises to comply with the 90/10 Rule and regulations concerning accreditation requirements, including attendance-taking, refunding unearned Title IV funds, accurately recording students' satisfactory academic progress, and maintaining accurate faculty personnel reports.

For the reasons outlined in the foregoing analysis of this issue, the court holds that the first theory, with respect to Defendant Schools' and Mr. Barney's entry into the PPAs, states a legally cognizable theory for a false or fraudulent claim. However, the court further holds that the alleged subsequent false certifications cannot give rise to a false or fraudulent claim. Payment of Title IV funds is conditioned only on properly becoming a program participant, not on regulatory compliance. Subsequent certifications are material only to continued eligibility for program participation, which is governed by Title IV's comprehensive administrative regime and not the FCA.[11]

---

[11] Although evidence of subsequent false certifications and affirmative attempts to cover up such violations—such as failing to comply with the 90/10 Rule and other accreditation regulations—are not an

#### d) The Sufficiency of the Relators' Allegations with Respect to a False or Fraudulent Claim Against Defendant Auditors

The Relators' allegations against Defendant Auditors raise a third legal theory for finding a false or fraudulent claim. Title IV requires program participants to obtain an annual compliance audit conducted in accordance with the DOE's Audit Guide. Relators allege that Defendant Auditors knowingly failed to comply with the audit standards. Relators further allege that an audit that complies with all relevant regulations is material to the DOE's decision to make Defendant Schools eligible to receive Title IV funds. Relators therefore conclude that all claims for payment in the year following the deficient audits are false or fraudulent.

The Relators' audit theory fails as a matter of law. Title IV auditor compliance is governed by an administrative regime. Like the subsequent certifications addressed previously, the compliance audit requirement is a condition of ongoing program participation. While an auditor's failure to follow mandated regulations may trigger civil penalties or bar the auditor from conducting further Title IV audits, it does not render a school's subsequent claims false or fraudulent, or give rise to auditor liability under the FCA. A school's failure to obtain a proper audit may also lead to administrative sanctions against the school. But unless the school's promise to obtain a proper compliance audit in its PPA is knowingly false at the time the PPA is signed, a noncompliant audit will not render the school's subsequent claims false or fraudulent.[12] Because Relators have not alleged that Defendant Schools falsely promised to obtain a proper compliance audit, Relators' noncompliant audit theory fails.[13]

---

independent basis for showing a false or fraudulent claim, this evidence may nonetheless provide circumstantial proof that Defendant Schools and Mr. Barney knowingly entered into the PPAs to become eligible for Title IV funding with no intention of following through on their promise to comply with program requirements.

[12] If the promise to obtain a proper compliance audit were false when made, this would still fail to trigger FCA liability for the auditor. The school, not the auditor, would be the entity making a false promise to receive access to Title IV funds.

[13] During oral argument, Relators warned that without FCA liability for knowingly deficient audits, Defendant Auditors would be immunized from accountability for their wrongful conduct. The court is not persuaded

**e) The Sufficiency of the Government's Allegations with Respect to a False or Fraudulent Claim Against Stevens-Henager and CEHE**

Like the Relators' allegations against Defendant Schools, the Government's allegations against Stevens-Henager and CEHE are premised on two general legal theories. Under the first theory, the Government alleges that Stevens-Henager and CEHE entered into multiple PPAs while knowingly violating the Incentive Compensation Ban and promising compliance with the ban while knowing they in fact did not intend to comply with it. Under the second theory, the Government alleges that Stevens-Henager and CEHE made numerous certifications of compliance with the Incentive Compensation Ban during their participation in Title IV programs while knowing they were violating the ban. For the same reasons outlined above with respect to the Relators' allegations against Defendant Schools, the court holds that only the Government's allegations of knowingly false entry into the PPAs states a legally cognizable theory for satisfying the element of a false or fraudulent claim.

**2) Scienter**

The second element universal to all FCA claims is scienter. The relevant subsections of 31 U.S.C. § 3729(a) require defendants to have the state of mind of "knowingly." Defendants must have acted with "actual knowledge of the information," "deliberate ignorance," or "reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b) (1986); 31 U.S.C. § 3729(b)(1) (2009). The FCA does not require proof of specific intent to defraud. 31 U.S.C. § 3729(b) (1986); 31 U.S.C. § 3729(b)(1) (2009). The court next addresses the legal and factual sufficiency of the Relators' and Government's allegations regarding Defendants' scienter.

---

by this argument. Auditors may be held accountable by both the DOE and their clients. *See, e.g.*, *Reynolds v. Bickel*, 307 P.3d 570, 573 (Utah 2013) (outlining statutory remedies available to third parties against auditors). The Audit Guide itself makes clear that failure to follow DOE Guidelines can result in civil penalties and being barred from conducting subsequent DOE compliance audits. *See, e.g.*, AUDIT GUIDE, *supra*, at I-15 to I-16. And the Defendant Auditors' clients may seek remedies for breach of contract when auditors knowingly perform an audit that does not comply with required regulations.

Both Relators and the Government allege the proper standard for scienter in their respective complaints. But Defendant Schools and Mr. Barney argue that even if the court concludes their incentive compensation program did not fully comply with Safe Harbor E, neither Defendant Schools nor Mr. Barney had the requisite scienter because they believed their program complied with Safe Harbor E and the Incentive Compensation Ban. This argument, however, is not a proper basis for granting a motion to dismiss. A defendant's state of mind is a fact peculiarly within the defendant's control and need not be pled with particularity to survive a motion to dismiss. *See Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

Here, the Relators and the Government allege that Defendant Schools and Mr. Barney knew their incentive compensation program was prohibited under the Incentive Compensation Ban. These allegations are sufficient to survive a motion to dismiss.[14]

**3) Elements for Claims under § 3729(a)(1)(A) and its Predecessor, § 3729(a)(1)**

With respect to the claims at issue in the present case, the court finds that the 2009 amendments to § 3729(a)(1) did not materially alter this section.[15] Therefore, the court addresses the remaining elements of § 3729(a)(1)(A) and its predecessor, § 3729(a)(1), together. These sections include an element of presentment in addition to the requisite scienter and proof of a false or fraudulent claim. Specifically, the defendant must have presented or proximately caused to be presented a false or fraudulent claim. *See* 31 U.S.C. § 3729(a)(1) (1986); 31 U.S.C.

[14] For the reasons stated above, the court concludes that Relators failed to state a legitimate legal theory against Defendant Auditors. *Supra* I.A.1.d. However, for completeness, the court notes that Relators adequately pled that Defendant Auditors acted knowingly in their alleged FCA violations.

[15] The 2009 amendments removed the requirement that a claim be presented "to an officer or employee of the United States Government or a member of the Armed Forces of the United States," and expanded liability for all false or fraudulent claims "knowingly present[ed], or cause[d] to be presented . . . for payment or approval." *Compare* 31 U.S.C. § 3729(a)(1) (1986), *with* 31 U.S.C. § 3729(a)(1)(A) (2009). In this case, all of the alleged claims were presented "to an officer or employee of the United States Government," 31 U.S.C. § 3729(a)(1) (1986), so the amendments do not alter the court's analysis of the legal sufficiency of the Relators' and Government's claims.

§ 3729(a)(1)(A) (2009); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 713–15 (10th Cir. 2006).

The Tenth Circuit has rejected a loose "but for" causation standard in favor of a proximate cause standard for FCA liability under § 3729(a)(1). *Sikkenga*, 472 F.3d at 715 n.17 ("The proximate causation standard strikes the proper analytical balance and comports with the rule requiring strict construction of punitive civil statutes."). In so doing, the Tenth Circuit "narrow[ed], rather than enlarge[d], the field of actions for which FCA liability may be imposed." *Id.* Thus, plaintiffs must establish a "sufficient nexus," more than an "attenuated link[,] between the defendants' specific actions and the presentation of the false claim." *Id.* at 714. They must demonstrate that Defendants have taken some "affirmative action" that "cause[s] or assist[s] the presentation of a fraudulent claim." *Id.* at 714–15.

In deciding the issue of proximate cause on a Rule 12(b)(6) motion to dismiss, the court must not "weigh potential evidence that the parties might present at trial, but [rather] assess whether the plaintiff's complaint alone is legally sufficient to state a claim upon which relief may be granted." *Id.* at 715 (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). As an initial matter, the court has no trouble finding the Relators' allegations against Defendant Schools and the Government's allegations against Stevens-Henager and CEHE legally sufficient. Both Relators and the Government allege direct presentment claims against these defendants. The court thus assesses and compares the allegations against Defendant Auditors[16] and Mr. Barney to determine whether the Relators' allegations present a legally cognizable causation theory to support the presentment element.

[16] For the reasons stated above, the court concludes that Relators failed to state a legitimate legal theory against Defendant Auditors. *Supra* I.A.1.d. The court nonetheless addresses the sufficiency of Relators' § 3729(a)(1)(A) allegations against Defendant Auditors as an alternative basis for dismissing the claims against them.

**a) The Sufficiency of the Relators' § 3729(a)(1)(A) Allegations Against Defendant Auditors**

Relators aver that Defendant Auditors proximately caused false claims to be submitted when Defendant Auditors failed to conduct audits in accordance with DOE regulations. This allegation is premised on either of two potential causation theories. First, had the DOE known the audits did not comply with its regulations, it could have terminated Defendant Schools' Title IV eligibility. Second, a properly conducted audit could have turned up evidence of substantial regulatory violations by Defendant Schools. The DOE could therefore have terminated Defendant Schools' Title IV eligibility on account of the violations. Under either theory, if the DOE had terminated Defendant Schools' eligibility, Defendant Schools would not have been able to submit false claims in the year following the compliance audits.

In asserting that these allegations are legally sufficient to establish causation, Relators cite *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702 (10th Cir. 2006). *Sikkenga* involved allegations that a lab facility submitted false claims for payment to a Medicare-contracted insurer by using a generic code that triggered Medicare coverage even when doctors had not authorized its use. *Id.* at 712–15. The plaintiff alleged that the insurer could be held liable under the FCA because the insurer caused the claims for payment to be submitted when it assured the lab that it "would continue to accept the [allegedly miscoded] claims" and affirmatively "'agree[d] to circumvent' contractual and statutory requirements." *Id.* at 715.

Unlike *Sikkenga*, which the Tenth Circuit acknowledged was a "close case," *see id.*, Relators fail to allege any basis on which Defendant Auditors actually assisted in the submission of claims to the DOE. Even the Relators' case of "but for" causation is tenuous. Relators allege only that the DOE had "authority" to render noncompliant schools ineligible for Title IV

funding. They do not actually allege that the DOE would in fact have terminated Defendant Schools' eligibility for Title IV funds had it known of the deficient audits.

In any case, the mere possibility that the DOE would have terminated Defendant Schools' Title IV eligibility had Defendant Auditors properly conducted the audits is a far different allegation than the allegation that Defendant Auditors affirmatively assisted in the submission of false claims. There is no allegation of an agreement between Defendant Schools and Defendant Auditors to circumvent Title IV regulations,[17] nor is there an allegation that Defendant Auditors were involved at all in submitting claims for Title IV funding. Consequently, the court holds, as an alternative and independent ground for dismissal, that the Relators' Third Amended Complaint fails to plead a "legally sufficient" theory of presentment under § 3729(a)(1)(A), and its predecessor, § 3729(a)(1), with respect to Defendant Auditors. *See id.*

**b) The Sufficiency of the Relators' § 3729(a)(1)(A) Allegations Against Mr. Barney**

The sufficiency of the Relators' allegations with respect to Mr. Barney stands in contrast to the sufficiency of the allegations against Defendant Auditors. Although Mr. Barney did not himself submit the claims, Relators allege that he was both the architect of Defendant Schools' compensation scheme and the signer of Defendant Schools' PPAs. Relators allege that Mr. Barney owned and controlled Defendant Schools and orchestrated the alleged scheme to submit fraudulent claims to the DOE. Consequently, the court holds that Relators have sufficiently alleged the presentment element with respect to their claims against Mr. Barney.

[17] The closest Relators come to such an allegation is to assert on information and belief that Auditors were motivated to conduct lax audits by a desire to retain valuable clients. There is no affirmative allegation that Defendant Auditors agreed with Defendant Schools to circumvent DOE regulations in order to assist Defendant Schools in submitting false claims.

#### 4) Elements for Claims under § 3729(a)(1)(B) and its Predecessor, § 3729(a)(2)

Relators assert claims under both 31 U.S.C. § 3729(a)(1)(B) (2009) and its predecessor, 31 U.S.C. § 3729(a)(2) (1986). The Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, § 4, 123 Stat. 1617, 1621 (2009), amended and renumbered § 3729(a)(2) of the FCA as § 3729(a)(1)(B). Although FERA was not enacted until 2009, Congress stated the new version applied retroactively: it "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act that are pending on or after that date." § 4, 123 Stat. at 1625. In *Lemmon*, the Tenth Circuit acknowledged that "certain changes" to the FCA "would apply to all claims pending on June 7, 2008." *See* 614 F.3d at 1167 n.3. But the court found those changes immaterial to the facts before it, so to "avoid confusion," the court cited the unamended § 3729(a)(2). *See id.*

In this case, the amendments to § 3729(a)(2) embodied in § 3729(a)(1)(B) are relevant to the court's evaluation of the legal sufficiency of the Relators' and Government's claims. After reviewing FERA, the court agrees with the Sixth Circuit that § 3729(a)(1)(B) applies to cases filed after June 7, 2008. *Sanders v. Allison Engine Co.*, 703 F.3d 930, 936–42 (6th Cir. 2012) (holding that the language, "all claims under the False Claims Act," referred to FCA cases alleging violations of § 3729(a)(1)(B) or its predecessor, § 3729(a)(2), that were pending on or after June 7, 2008). The Sixth Circuit's opinion is both consistent with the Tenth Circuit's footnote in *Lemmon* and persuasive in its reasoning. *See Lemmon*, 614 F.3d at 1167 n.3; *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, Civ. No. 05-279 WJ/ACT, 2014 WL 10212869, at *1–2 (D.N.M. Sept. 15, 2014) (finding *Sanders* "persuasive and dispositive" with respect to the applicability of § 3729(a)(1)(B) to cases pending on or after June 7, 2008).

Because the FERA amendments to § 3729(a)(2) apply retroactively, the court must also

determine whether retroactive application of § 3729(a)(1)(B) violates the Ex Post Facto Clause. Here, the court again agrees with the Sixth Circuit in *Sanders* that retroactive application of § 3729(a)(1)(B) does not violate the Ex Post Facto Clause. *Sanders*, 703 F.3d at 941–49. In analyzing the constitutionality of the retroactive application, the Sixth Circuit followed the same law applicable in the Tenth Circuit, namely the factors outlined by the Supreme Court in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69 (1963). *Compare Sanders,* 703 F.3d at 941–49, *with Femedeer v. Haun*, 227 F.3d 1244, 1248–49 (10th Cir. 2000); *see also Baker*, 2014 WL 10212869, at *1 (adopting the holding in *Sanders* that retroactive application of § 3729(a)(1)(B) does not violate the Ex Post Facto Clause). The court concludes that *Sanders* reached the correct result. Thus, the court applies § 3729(a)(1)(B) to all of the alleged false claims in this case, even those submitted before the 2009 FERA amendments to the FCA.

In addition to the elements of scienter and a false or fraudulent claim, § 3729(a)(1)(B) requires plaintiffs to plead that defendants "ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim." Unlike § 3729(a)(2), the amended and renumbered § 3729(a)(1)(B) does not require the false record or statement to be made "for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.'" *See Sanders*, 703 F.3d at 933–34 (quoting *Allison Engine Co.*, 553 U.S. at 671). Rather, the statement or record need only be "material to a false or fraudulent claim." *See id.* Under the amended statute, material means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." § 3729(b)(4).

In light of this analysis, the court next addresses the legal sufficiency of the Relators' and Government's claims for relief under this provision of the FCA.

**a) The Sufficiency of the Relators' § 3729(a)(1)(B) Claims Against Defendant Schools and Mr. Barney**

As indicated above, the court finds that the pre-amendment version of the FCA, § 3729(a)(2), does not apply to this case. Accordingly, the Relators' fifth claim for relief, which asserts claims for the time period of July 1, 2002 to June 7, 2008, and relies only on liability under § 3729(a)(2), is therefore dismissed. Relators re-allege the allegations of their fifth claim as part of their sixth claim under the amended § 3729(a)(1)(B). The court thus reviews the sufficiency of these allegations under § 3729(a)(1)(B).

Relators sufficiently allege that Defendant Schools and Mr. Barney made and used false statements and records. But for the reasons stated above, only false statements or records made or used, or caused to be made or used, in connection with entry into a PPA are material to a false or fraudulent claim. Subsequent certifications of compliance do not have a natural tendency to influence and are not capable of influencing the payment or receipt of money or property. Rather, these subsequent certifications are material only to continued participation in Title IV and are governed by the administrative enforcement regime. *See supra* I.A.1.b.

**b) The Sufficiency of the Relators' § 3729(a)(1)(B) Claims Against Defendant Auditors**

Relators also bring claims against Defendant Auditors under § 3729(a)(2) and § 3729(a)(1)(B).[18] For reasons already articulated, the court dismisses the Relators' claims against Defendant Auditors under § 3729(a)(2) and reviews all of the allegations against Defendant Auditors under the amended statute, § 3729(a)(1)(B). Relators properly allege that Defendant Auditors falsely certified that their audits complied with DOE regulations. But the Relators' allegations against Defendant Auditors fail on the issue of materiality. The audits at

[18] For the reasons stated above, the court concludes that Relators failed to state a legitimate legal theory against Defendant Auditors. *Supra* I.A.1.d. However, for completeness, the court addresses the sufficiency of the Relators' § 3729(a)(1)(B) claims against Defendant Auditors.

issue in the Relators' Third Amended Complaint are compliance audits that are only material to the DOE's determination of continuing program eligibility, not its decision to admit Defendant Schools into the program. While certain financial audits are required in the initial PPA and may thus trigger potential FCA liability, Relators have not brought any FCA claims associated with the initial audit. Rather, Relators' claims against Defendant Auditors under § 3729(a)(1)(B) are limited to the annual compliance audits for which no FCA liability can attach. Thus, the court concludes that Relators have failed to plead the materiality element against Defendant Auditors.

#### c) The Sufficiency of the Government's § 3729(a)(1)(B) Claims Against Stevens-Henager and CEHE

The Government raises claims under § 3729(a)(1)(B) for false records and statements made between July 1, 2007 and July 1, 2011. Like Relators, the Government pleads several allegedly false statements and records. For the same reasons outlined previously, the court concludes that only the statements and records made or used, or caused to be made or used, by Stevens-Henager and CEHE in connection with their entry into the PPAs are material to a claim. The court thus holds that annual financial and compliance audits, student loan and grant applications, and all other subsequent certifications of compliance do not qualify as material false statements or records for purposes of satisfying § 3729(a)(1)(B).

### B. The Factual Sufficiency of the FCA Claims under Rules 8(a)(2) and 9(b)

Having considered the legal sufficiency of the Relators' and Government's claims, the court now turns to the sufficiency of the Relators' and Government's factual allegations to support those claims. Because the Relators' and Government's claims involve allegations of fraud and mistake, they must satisfy both Federal Rules of Civil Procedure 8(a)(2) and 9(b).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating the

sufficiency of factual allegations under Rule 8(a)(2), the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff[s]." *Jordan-Arapahoe*, 633 F.3d at 1025. However, the court will not accept as true "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Consequently, "if the complaint is sufficiently devoid of facts necessary to establish liability [such] that it 'encompass[es] a wide swath of conduct, much of it innocent,' a court must conclude that 'plaintiffs have not nudged their claims across the line from conceivable to plausible.'" *Bryson*, 534 F.3d at 1286 (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

In addition to satisfying the pleading requirements of Rule 8(a)(2), claims under the FCA must also satisfy the more rigorous pleading requirements of Rule 9(b). *Sikkenga*, 472 F.3d at 726. Rule 9(b) requires allegations of fraud to "state with particularity the circumstances constituting fraud or mistake." In the FCA context, Rule 9(b) requires the "who, what, when, where and how," including the "time, place, content, and consequences of the fraudulent conduct" such that the allegations lay out "the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as a part of that scheme." *Lemmon*, 614 F.3d at 1171–72 (quoting *Sikkenga*, 472 F.3d at 727). Rule 9(b) thus "afford[s] defendant[s] fair notice of the plaintiff[s'] claim[s] and the factual ground upon which [they are] based" and "safeguards defendant[s'] reputation and goodwill from improvident charges of wrongdoing." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992) (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)).

Upon thorough review of the Government's complaint, the court concludes that the Government has satisfied both the Rule 8(a)(2) and 9(b) requirements with respect to their

allegations against Stevens-Henager and CEHE. The court, likewise, concludes that Relators have alleged sufficient facts to satisfy the pleading standards with respect to their claims against Defendant Schools and Mr. Barney. But the court finds that Relators have failed to meet the Rule 9(b) requirements with respect to Defendant Auditors. In support of its holding, the court outlines the "who, what, when, where, and how" pled in the Relators' and Government's complaints against Stevens-Henager, CEHE, Mr. Barney, and the remaining Defendant Schools. It then contrasts these well-pled allegations with the Relators' deficient allegations against Defendant Auditors.

**1) The Sufficiency of the Government's Allegations Against Stevens-Henager & CEHE**

The Government's allegations against Stevens-Henager and CEHE meet the heightened pleading standards of Rule 9(b). The Government clearly provides detailed allegations regarding the "who, what, when, where, and how" of the alleged FCA violations.

With regard to the "who," the Government alleges that Mr. Barney issued Procedure Directives in 2000, 2003, 2004, and 2007. These directives were incorporated into employee manuals and set out the compensation structure that violated the Incentive Compensation Ban. Despite its ongoing compensation scheme, the Government alleges that Vicky Dewsnup, then-president of Stevens-Henager, signed PPAs in 2007 and 2010 in which Stevens-Henager promised compliance with the Incentive Compensation Ban.

Addressing the "what," the Government alleges that the compensation structure outlined in company materials set up a bonus program in direct violation of the PPAs entered into by Stevens-Henager. The Government further alleges that Stevens-Henager knew its compensation structure did not comply with PPA requirements and that it signed the PPAs solely to become eligible for Title IV funds despite its intent not to comply.

In support of its theory, the Government first notes that Stevens-Henager certified in its PPAs that it would not offer "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments . . . to any persons or entities engaged in any student recruiting or admission activities." To show that Stevens-Henager's promise to comply with this provision was knowingly false, the Government attached to its complaint copies of procedure directives and employee handbooks, published both before and after entering into the PPAs, showing that Stevens-Henager offered its admissions consultants bonuses on a sliding scale depending on average recruitment of new students.[19]

To plead the "when," the Government alleges that "[f]rom July 1, 2007, or earlier, through the last claims for the funding year ending July 1, 2011, Stevens-Henager submitted numerous claims to the government for Title IV funding that it knew to be false based upon its non-compliance with the Incentive Compensation Ban." The Government also provided dates for when the PPAs were signed as well as several dated procedure directives and employee manuals, including manuals that were distributed before Defendant Schools signed the 2007 PPA.

For the "where," the Government alleges that Ms. Wride attended conferences at which Stevens-Henager conducted trainings for admissions consultants at "schools in Utah, Idaho and other states." From the trainings, "Ms. Wride understood that Stevens-Henager's incentive compensation practices were institution-wide."

Finally, with regard to the "how," the Government lays out in detail the requirements of the Incentive Compensation Ban that are incorporated into the PPAs and the means through which Stevens-Henager circumvented the ban. The Government's allegations demonstrate how

[19] The Government further alleges that Stevens-Henager made additional subsequent certifications of compliance with the Incentive Compensation Ban. But as the court has already noted, these subsequent certifications are not material to the DOE's payment decisions and are therefore not an independent basis for FCA liability. The court does, however, consider these additional allegations as circumstantial evidence showing that Stevens-Henager made knowingly false promises to comply when it entered into its PPAs.

the use of completion certificates circumvented the ban by awarding completion bonuses that appear to fall within a regulatory safe-harbor but are in fact awarded based on recruitment.

Taken together, the Government has satisfied the pleading requirements of Rules 8(a) and 9(b) with respect to Defendants Stevens-Henager and CEHE.

**2) The Sufficiency of the Relators' Factual Allegations Against Defendant Schools & Mr. Barney**

Like the Government, Relators plead the "who, what, when, where, and how" of Defendant Schools' and Mr. Barney's alleged fraudulent scheme.

With regard to the "who," Relators identify Mr. Barney as the sole shareholder and owner of Defendant Schools. Relators allege that Mr. Barney not only controlled Defendant Schools' operations, but also authored the compensation directives that constitute the knowingly false scheme to unlawfully obtain Title IV funds. Relators also include the names of individuals who allegedly violated regulations and attempted to conceal Defendant Schools' and Mr. Barney's ongoing violations.

Addressing the "what," Relators offer at least two ways in which Defendant Schools and Mr. Barney made knowingly false certifications in their PPAs in order to be eligible for Title IV funds they otherwise could not have obtained. First, in entering the PPAs, Defendant Schools and Mr. Barney made knowingly false certifications about their compliance and intent to comply with the Incentive Compensation Ban. Second, in entering the PPAs, Defendant Schools and Mr. Barney made knowingly false certifications about their compliance with and intent to comply with accreditation requirements.

In pleading the "when," Relators provide a timeframe during which they allege Defendant Schools and Mr. Barney knowingly violated the PPAs, and they further allege the dates of specific instances of conduct that demonstrate Defendant Schools and Mr. Barney knew

they violated the PPAs.

For the "where," Relators allege that Defendant Schools' and Mr. Barney's false certifications led to FCA liability for funds that improperly went to all of Defendant Schools' campuses. This sweeping conclusion is supported with specific factual allegations. Specifically, Relators allege that Defendant Schools' employees were trained in how to circumvent the Incentive Compensation Ban at companywide conferences. Relators likewise provide factual allegations of particular campuses that violated PPA obligations and attempted to conceal violations from regulators.

With regard to the "how," Relators provide extensive factual detail regarding Defendant Schools' and Mr. Barney's misconduct. Relators outline not only the conduct at issue, but also why that conduct violated specific regulations and how Defendant Schools and Mr. Barney concealed these violations from the DOE. Finally, Relators allege the effect of the violations in terms of funds unlawfully obtained.

In sum, Relators have satisfied the pleading requirements of Rules 8(a) and 9(b) with respect to Defendant Schools and Mr. Barney.

**3) The Sufficiency of the Relators' Factual Allegations Against Defendant Auditors**

Having already concluded that the Relators' allegations against Defendant Auditors fail to state a legal claim on which relief may be granted, the court nonetheless reviews the Relators' factual allegations and, as an alternative basis for its decision, holds that Relators have failed to satisfy the pleading standards under Rules 8(a) and 9(b) for Defendant Auditors. Unlike their factual allegations against Defendant Schools and Mr. Barney, Relators' allegations against Defendant Auditors amount to little more than vague, conclusory allegations that could describe any auditor who fails to uncover a school's violations of Title IV requirements. Relators

essentially allege that Defendant Auditors must have conducted knowingly deficient audits because they failed to identify Defendant Schools' misconduct. But unlike their allegations against Defendant Schools and Mr. Barney, Relators' substantive allegations against Defendant Auditors are made on information and belief without the requisite factual background to support inferential pleadings.

"Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." *Scheidt*, 956 F.2d at 967; *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000); *Sikkenga*, 472 F.3d at 728. But this "exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Sikkenga*, 472 F.3d at 728 (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). In short, even in the limited circumstances where allegations of fraud may be pled on information and belief, plaintiffs must still provide sufficient "factual basis" to support these allegations. *Id.* (quoting *Koch*, 203 F.3d at 1237).

Here, Relators have not provided a sufficient factual basis to support their allegations. Thus, the court concludes that Relators failed to plead with particularity the "who, what, when, where, and how" of its fraud claims against Defendant Auditors.

With regard to the "who," Relators fail to identify any individual whose conduct was knowingly deficient. The only factual allegations that identify actual individuals at the auditing firms do not allege any wrongdoing or deficiency. In fact, the only allegation against these individuals is that they requested payroll records from Defendant Schools in accordance with the Audit Guide requirements. It is simply not enough under Rule 9(b) to bring a claim for FCA liability without identifying any of the individuals whose conduct, statements, or certifications

Case 2:15-cv-00119-JNP Document 285-1 Filed 06/30/25 Page 137 of 246 PageID 135780

knowingly caused false claims to be submitted.

The court next combines its analysis of the Relators' allegations with respect to the "what" and the "how." In pleading the "what" and the "how," Relators rely on conclusory allegations made almost exclusively on information and belief. The only facts not alleged on information and belief are as follows: Relators plead that Defendant Auditors certified that their audits complied with required regulations. Standing alone, this does not establish the "what" or the "how" of Defendant Auditors' alleged fraud. Relators then allege that the payroll records Defendant Auditors received from Defendant Schools showed that bonuses were paid to admissions consultants, financial aid officers, and admissions directors. But Defendant Auditors' actions in requesting payroll records are again consistent with the Audit Guide requirements.[20]

Relators next allege that the audits certified to the DOE that there were no instances of non-compliance. The fact that Defendant Auditors reported full compliance even though the requested payroll records showed bonuses may support an inference that the audit opinion was false. But Relators expressly disavow any theory of liability arising from the DOE's reliance on an auditor's opinion that there were no violations. Instead, Relators assert only that an FCA violation arises out of the Defendant Auditors' alleged failure to follow the Audit Guide as well as other auditing standards. Specifically, Relators plead, on information and belief, that contrary to their certifications, Defendant Auditors did not follow the requirements of the audit guide in conducting the audits.

The court has significant doubts with respect to the weight that can be given to these information and belief allegations. For example, in Relators' view, the factual allegation that payroll records disclosed bonus payments to admissions consultants, financial aid officers, and admissions directors is sufficient standing alone to support allegations on information and belief

[20] And with respect to Shaw, this allegation was made only on information and belief.

that Defendant Auditors failed to, among other things,

> (1) test payroll and other disbursement records to determine compliance with the Incentive Compensation Ban, even though the payroll records disclosed that Defendant Schools were not in compliance; (2) perform examination-level verifications of Defendant Schools' attestation that they did not violate the Incentive Compensation Ban; (3) design their examinations to detect intentional noncompliance with the Incentive Compensation Ban; (4) use due care to tailor the examination procedures so that the compliance attestation engagement objectives were achieved, including the objectives relating to the attestations about the Incentive Compensation Ban; (5) design and perform examination procedures that were reasonably capable of detecting significant illegal acts, including systematic and widespread violations of the Incentive Compensation Ban; (6) take special precautions to detect fraud or high risk areas, including with respect to the Incentive Compensation Ban; (7) recognize basic weaknesses in internal control; (8) review, evaluate, and document the institution's methodologies for determining compliance with institutional eligibility and participation criteria, particularly the methodologies relating to the Incentive Compensation Ban; (9) exercise the proper degree of professional skepticism to achieve reasonable assurance that material noncompliance would be detected; and (10) guard against accepting explanations for audit exceptions without competent evidence. Nevertheless, Defendant Auditors certified to the Department of Education that they in fact had done these things as part of their audits.

The court disagrees. Not only are these specific allegations conclusory, but Relators also fail to plead a sufficient "factual basis" to support them. *See id.*

Relators have alleged one fact that does not itself "establish liability." *See Bryson*, 534 F.3d at 1286. And taking as true the other facts pleaded, "it 'encompass[es] a wide swath of conduct, much of it innocent,'" such that the "court must conclude that 'plaintiffs have not nudged their claims across the line from conceivable to plausible'" with respect to Defendant Auditors. *See id.* (quoting *Robbins*, 519 F.3d at 1247). In short, the court finds that Relators do not even satisfy the minimal Rule 8(a) requirements for pleading sufficient facts to plausibly establish an FCA violation.

Even assuming the Relators' pleading met the Rule 8(a) standard, they have not set out with particularity the "what" or the "how" as required by Rule 9(b). In *Lemmon*, the plaintiff's

pleadings with respect to the "what" "alleged a series of contractual and regulatory breaches, pointing to specific obligations that [the defendant] breached." 614 F.3d at 1172. And, in alleging the "how," the plaintiff "included extensive factual detail regarding how the violations occurred, adding, in many instances, the conduct that led to the violation, the reason the result constituted a violation, and a description of the effect of the violation." *Id.* Here, while Relators include numerous allegations with respect to the "what," the allegations are all conclusory. More importantly, the Relators' allegations with respect to the "how" are a far cry from the "extensive factual detail" in *Lemmon*. *See id.* In fact, in reviewing the Relators' allegations, the court finds the complaint is wholly lacking in "factual detail regarding how the violations occurred." *See id.*

With respect to the "when," the complaint includes sufficient allegations with respect to the timeframe during which the audits were conducted to satisfy the Rule 9(b) requirements.

Finally, on the question of "where," Relators plead only the identities of the auditing firms, and given the nature of the Relators' claims, this is likely sufficient.

For these reasons, the court holds that, even assuming Relators had alleged a viable legal theory upon which relief might be granted, the factual pleadings with respect to Defendant Auditors fail to satisfy the Rule 8(a) and 9(b) pleading standards.

In sum, the court grants Defendant Auditors' motions to dismiss. But the court does not dismiss any of the Relators' or Government's FCA claims with respect to Defendant Schools or Mr. Barney.[21] The court does, however, limit the basis on which Relators and the Government may proceed on these claims. Namely, the only well-pleaded basis for relief against these defendants is that Defendant Schools and Mr. Barney knowingly made false certifications or

[21] The solitary exception is the Relators' fifth claim for relief, which is dismissed on the grounds that 31 U.S.C. § 3729(a)(2) (1986) has been superseded by 31 U.S.C. § 3729(a)(1)(B) (2009). *See supra* I.A.4.a. Relators incorporated by reference the substance of the allegations in the fifth claim for relief into the sixth claim for relief under § 3729(a)(1)(B). Thus, Relators may continue to pursue these allegations under the sixth claim for relief.

statements, either express or implied, when entering into PPAs with the DOE. Subsequent

certifications of compliance are not material for FCA purposes but are instead governed

exclusively by the DOE's administrative compliance regime.

## II. The Government's Mistake and Unjust Enrichment Claims

In addition to its FCA claims, the Government also brings claims for mistake and unjust

enrichment. Defendant Schools briefly argue for dismissal of these claims on the basis that the

Government failed to plead a proper theory for relief and that Defendant Schools complied with

Title IV requirements and were thus entitled to the funds they received. Defendant Schools also

argue that recovery under unjust enrichment would be improper because the Government has

various regulatory remedies available to it.

Defendant Schools' arguments fail. First, the Government pleads a proper theory for

relief under federal common law. *See United States v. Wurts*, 303 U.S. 414, 415–16 (1938).

Second, the Government pleads sufficient facts to demonstrate that Defendant Schools may not

have been entitled to the funds they received due to their allegedly false entry into Title IV

programs. *See supra* I.B.1. And third, the Government may plead inconsistent claims for relief in

the alternative. *See Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1081 (10th Cir. 1999).

The Government has thus properly pled its mistake and unjust enrichment claims, and it is

entitled to bring these claims with its FCA claims. For these reasons, the court denies Defendant

Schools' motion to dismiss the Government's mistake and unjust enrichment claims.

## CONCLUSION

For the foregoing reasons, the court GRANTS PwC's Motion to Dismiss (Docket 194),

Shaw's Motion to Dismiss (Docket 196), and Weworski's Motion to Dismiss (Docket 201). All

claims against Defendant Auditors are therefore dismissed with prejudice. The court GRANTS

IN PART and DENIES IN PART Defendant Schools' Motion to Dismiss the Relators'

Complaint (Docket 198) and CEHE's and Stevens-Henager's Motion to Dismiss the Intervenor's Complaint (Docket 197). While all claims against Defendant Schools and Mr. Barney may proceed, Relators and the Government are limited to the legal theory that Defendant Schools and Mr. Barney knowingly made false certifications or statements, either express or implied, when entering into PPAs with the DOE.

DATED this 30th day of March, 2016.

Jill N. Parrish
United States District Court Judge

**FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KATIE BROOKS and NANNETTE WRIDE,<br><br>*Plaintiffs,*<br>v.<br><br>STEVENS-HENAGER COLLEGE, INC., *et al.*,<br><br>*Defendants*. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>Case No. 2:15-cv-119-JNP-EJF<br><br>District Judge Jill N. Parrish |

**INTRODUCTION**

This is a qui tam action. Relators Katie Brooks and Nannette Wride alleged that Defendants Stevens-Henager College, Inc.; California College San Diego, Inc.; CollegeAmerica Denver, Inc.; CollegeAmerica Arizona, Inc.; the Center for Excellence in Higher Education (CEHE); and Carl Barney (collectively, the Colleges) submitted false claims for federal financial aid.

The Government filed a complaint in intervention. It intervened on some but not all of the relators' claims against two defendants: Stevens-Henager and its apparent successor in interest, CEHE. Shortly thereafter, the relators filed their second amended complaint. This complaint asserted new claims and named additional defendants. The Government elected to not intervene as to the new claims but "respectfully refer[red]" the court to 31 U.S.C. § 3730(b)(1), which supposedly "allows [a] relator to maintain the non-intervened portion of the action in the name of the United States."

Since then, the Government's claims against the Colleges have had two masters. The United States has pursued some claims directly through its Complaint in Intervention. The relators,

on behalf of the United States, have asserted other claims against the Colleges in a separate Complaint, which the relators have publicly amended by naming additional defendants and asserting additional claims for relief. The operative pleadings in this case currently consist of an Amended Complaint in Intervention filed by the Government and a Fourth Amended Complaint filed by the relators.

The Colleges filed a motion to dismiss the Government's Amended Complaint, [Docket 439], and a separate motion to dismiss the relators' Fourth Amended Complaint, [Docket 438]. The Colleges have also moved this court to take judicial notice of certain documents in relation to the motions to dismiss. [Docket 440]. The court subsequently asked the parties to brief whether the False Claims Act permitted the relators to independently pursue claims against the Colleges after the Government elected to intervene in the lawsuit. Upon consideration of the briefing of the parties, the court rules as follows: the court GRANTS the motion for judicial notice, GRANTS IN PART and DENIES IN PART the motion to dismiss the Government's Amended Complaint, and GRANTS IN PART and DENIES IN PART the motion to dismiss the relators' Fourth Amended Complaint. Finally, the court concludes that the relators may not maintain their separate complaint in this action because the Government has elected to intervene. The court, therefore, STRIKES the relators' post-intervention complaints.

## BACKGROUND

The relators filed their complaint in early 2013. They named as defendants Stevens-Henager, California College, CollegeAmerica Denver, and CollegeAmerica Arizona. The complaint alleged that these schools were liable under the False Claims Act because they made false statements concerning compliance with the Incentive Compensation Ban (ICB). Moreover, the complaint alleged an alternative factual basis for liability as to Stevens-Henager: the school made false statements to its accreditor regarding faculty qualifications.

Toward the end of 2013, the relators amended their complaint, adding CEHE and Carl Barney as defendants. The amended complaint added three factual bases for liability as to Stevens-Henager. Specifically, Stevens-Henager allegedly made false statements concerning attendance-taking requirements, academic-progress requirements, and recordkeeping requirements.

In May 2014, the Government intervened in the action. The Government filed a complaint in intervention that named two defendants: Stevens-Henager and CEHE. The Government stated that it was intervening on some but not all of the relators' claims. Specifically, the Government alleged one factual basis for its claims against Stevens-Henager and CEHE: Stevens-Henager made false statements concerning the ICB. The Government chose not to intervene as to any of the claims against California College, CollegeAmerica Denver, CollegeAmerica Arizona, and Mr. Barney.

Shortly after the Government intervened, the relators filed their second amended complaint. Purporting to comply with 31 U.S.C. § 3730(b)(2), the relators filed portions of the second amended complaint under seal because it "alleged violations of the [False Claims Act] never before set forth in any prior complaint." The relators included allegations that the Colleges made false statements concerning the so-called 90/10 Rule—another factual basis for imposing liability on the Colleges. The relators also expanded the factual bases for liability as to California College, CollegeAmerica Denver, and CollegeAmerica Arizona.

The Government declined to intervene as to the new claims alleged in the second amended complaint. But the Government "respectfully referred the Court to 31 U.S.C. § 3730(b)(1)," which supposedly "allows [a] relator to maintain the non-intervened portion of the action in the name of the United States . . . ." Section 3730(b)(1) actually provides:

> A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the

> Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

The relators subsequently moved for leave to file a third amended complaint. The stated purpose of the third amended complaint was to "narrow and streamline the scope of the allegations and eliminate two theories of falsity from the [second amended complaint]: [the Colleges'] violations of the attendance-taking and academic-progress requirements." The relators explained that they "never intended to pursue these theories" but included them "at the Government's request." But because the Government declined to intervene as to these theories, the relators "wish[ed] to eliminate them and focus on the . . . more substantial theories."

Some six months later, following a change of venue to this court, the court granted the relators leave to file a third amended complaint. At the hearing on the motion to amend, the parties agreed that the relators could file a complaint that differed from the one attached to the motion to amend. But despite representing that they would eliminate factual bases for liability related to violations of attendance-taking and academic-progress requirements, the Third Amended Complaint actually expanded those factual bases for liability to California College, CollegeAmerica Denver, and CollegeAmerica Arizona. The Third Amended Complaint also added Weworski & Associates, an accounting firm, as a defendant. The relators did not file the Third Amended Complaint under seal, so the Government had no opportunity to intervene while the complaint remained under seal.

The court eventually dismissed the relators' Third Amended Complaint and granted the relators and the Government leave to amend. The court granted both parties leave to amend so that they could allege facts to support a theory of liability that appeared viable in light of the Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct.

1989 (2016). The Government filed an Amended Complaint in intervention, and the relators filed their Fourth Amended Complaint.

The Fourth Amended Complaint, like the relators' previous complaints, expands the scope of their claims. The relators allege that CEHE fraudulently induced the Department of Education to execute a Program Participation Agreement (PPA) in January 2013—a period that was not covered by any prior pleadings. And the relators allege that Stevens-Heanger violated the ICB by paying bonuses to online admissions consultants and enrollment advisors who worked for Independence University—an online school operated by Stevens-Henager. No prior pleading mentioned Independence University. The relators did not file the Fourth Amended Complaint under seal, so the Government had no opportunity to intervene while the complaint remained under seal.

The Colleges moved to dismiss both the relators' and the Government's complaints, claiming that neither states a claim upon which relief can be granted. After reviewing the briefing, however, the court became concerned with the way the case had been litigated. Specifically, the False Claims Act provides that if the Government intervenes in the action, the Government conducts the action and has the primary responsibility for prosecuting the action. Nothing in the False Claims Act suggests that a relator could maintain the non-intervened portion of an action, conducting, in essence, his or her separate action. And in light of how the case had proceeded, the court expressed concern as to whether the False Claims Act violates the "take Care" clause of Article II. Accordingly, the court asked the parties to submit supplemental briefs on these issues, which they did.

**ANALYSIS**

The court first addresses the Colleges' motion to dismiss the Government's Amended Complaint and the related motion to take judicial notice. The court then turns to the Colleges'

motion to dismiss the relators' Forth Amended Complaint. Finally, the court addresses the issue of whether the relators may maintain a separate action after the Government chose to intervene.

## I. MOTION TO DISMISS THE GOVERNMENT'S AMENDED COMPLAINT

### *A. The Government's Amended Complaint in Intervention*

Stevens-Henager must comply with the ICB, which provides that schools will not provide "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance." (Government's Am. Compl. ¶ 27 (quoting 20 U.S.C. § 1094(a)(20)).)

In 2002, the regulations that accompany the ICB were amended to add certain "safe harbor[s]." (*Id.* ¶¶ 30–31.) One of the safe harbors—Safe Harbor E—allows schools to pay "[c]ompensation that is based upon students successfully completing their educations programs, or one academic year of their education programs, whichever is shorter." (*Id.* ¶ 30 (quoting 34 C.F.R. § 668.14(b)(22)(ii)(E)).)

#### 1) The Admissions Consultant Bonus Plan

Stevens-Henager distributed manuals to its admissions consultants. (*Id.* ¶ 69.) Each manual provides examples of how an admissions consultant can receive bonuses by enrolling students. (*Id.*) Stevens-Henager also issued various directives to its admissions consultants in the form of "Procedure Directives" and "Information Letters." (*Id.* ¶ 70.) Mr. Barney, the former sole shareholder and chairman of Stevens-Henager, issued versions of "Procedure Directive 85R" in 2000, 2003, 2004, and 2007. (*Id.* ¶ 71.)

The 2007 Procedure Directive 85R details the Admissions Consultant Bonus Plan. (*See id.* ¶ 72.) When a student completes 36 credits, the admissions consultant who enrolled that student receives a "Completion Certificate." (*Id.* ¶ 74.) The value assigned to a Completion Certificate

depends on two factors: (1) the average number of starts (*i.e.*, enrollments) that the admissions consultant achieved during the last three modules, and (2) the admissions consultant's "Interview Conversion Rate." (*Id.* ¶ 75.) Each module is about one month long and consists of about three or four credit hours. (*Id.* ¶ 90.)

The 2007 Procedure Directive 85R contains a chart for determining the value of Completion Certificates. (*Id.* ¶ 75.) The first row in the column is "Packaged Starts." (*Id.* ¶ 79.) Packaged Starts refers to the average number of starts that an admissions consultant achieved per module during the last three modules. (*See id.* ¶ 72.) The lowest value in the Packaged Starts column is five. (*Id.* ¶ 79.) The top row of the chart lists ascending Interview Conversion Rates, or "Intconversion%" for short. (*Id.* ¶ 76.) The lowest value in the Intconversion% row is 33 percent. (*Id.* ¶ 77.) Notes to the chart explain that "Intconversion%" is calculated by "[t]otal[ing] the last three modules' starts and interviews and dividing the total number of starts by the total number of interviews." (*Id.* ¶ 76.) So if an admissions consultant interviewed ten students and five enrolled, the "Intconversion%" would be 50 percent. (*See id.*)

ADMISSION CONSULTANT POTENTIAL COMPENSATION

| Packaged Starts | Intconversion% – Quality of Service to Honored Guests | | | | |
|---|---|---|---|---|---|
| | min. >33% | >35% | >40% | >45% | >50% |
| 5 | $100 | $300 | $400 | $500 | $600 |
| 6 | $100 | $300 | $400 | $500 | $600 |
| 7 | $100 | $300 | $400 | $500 | $600 |
| 8 | $100 | $300 | $400 | $500 | $600 |
| 9 | $100 | $300 | $400 | $500 | $600 |
| 10 | $100 | $300 | $400 | $500 | $600 |
| **Total @ 10** | **$1,000** | **$3,000** | **$4,000** | **$5,000** | **$6,000** |
| 11 | $100 | $300 | $400 | $500 | $600 |
| 12 | $100 | $300 | $400 | $500 | $600 |
| 13 | $100 | $300 | $400 | $500 | $600 |
| 14 | $100 | $300 | $400 | $500 | $600 |
| 15 | $100 | $300 | $400 | $500 | $600 |
| **Total @ 15** | **$1,500** | **$4,500** | **$6,000** | **$7,500** | **$9,000** |
| 16 | $100 | $300 | $400 | $500 | $600 |
| 17 | $100 | $300 | $400 | $500 | $600 |
| 18 | $100 | $300 | $400 | $500 | $600 |
| 19 | $100 | $300 | $400 | $500 | $600 |
| 20 | $100 | $300 | $400 | $500 | $600 |
| **Total @ 20** | **$2,000** | **$6,000** | **$8,000** | **$10,000** | **$12,000** |

According to the chart, before an admissions consultant's Completion Certificates were worth anything, the admissions consultant had to (1) "start," or enroll, at least five students per module, and (2) enroll at least one out of every three students interviewed. If an admissions consultant failed to meet either requirement, the admissions consultant's Completion Certificates were worthless because he or she would be ineligible to receive a bonus.

Under the 2007 Procedure Directive 85R, an admissions consultant who enrolled four students, all of whom completed their studies, received no bonus. But an admissions consultant who achieved a 33 percent Conversion Rate and enrolled five students—three of whom completed their studies—would receive a $1,500 bonus ($500 per Completion Certificate). And an admissions consultant who achieved a 40 percent Conversion Rate and enrolled ten students—two

of whom completed their studies—would receive an $8,000 bonus ($4,000 per Completion Certificate).

| Hypothetical Admissions Consultant | Starts | Completions | Conversion Rate | Bonus |
|---|---|---|---|---|
| A | 4 | 4 | 33% | $0 |
| B | 5 | 3 | 33% | $1,500 |
| C | 10 | 2 | 40% | $8,000 |

Ms. Brooks and Ms. Wride worked at Stevens-Henager between 2009 and 2011, and both were aware of the Admissions Consultant Bonus Plan. (*Id.* ¶¶ 13–14.) Ms. Brooks and Ms. Wride attended conferences in Las Vegas where they learned that Stevens-Henager employed the Admissions Consultant Bonus Plan at all of its campuses. (*Id.* ¶ 84.) Stevens-Henager paid bonuses based on the Admissions Consultant Bonus Plan until at least 2011. (*Id.* ¶ 89.)

2)      The Program Participation Agreements

To participate in Title IV programs, Stevens-Henager entered into PPAs with the Department of Education. (*Id.* ¶ 25 (citing 20 U.S.C. § 1094(a); 34 C.F.R. § 668.14).) Each PPA provides:

> By entering into this [PPA], the Institution agrees that:
>
> . . .
>
> (22) It will not provide, nor contract with any entity that provides, any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the awarding of student financial assistance . . . .

(*Id.* ¶ 28 (citing 34 C.F.R. § 668.14(b)(22)).)

Vicky Dewsnup, as the President of Stevens-Henager, executed two PPAs on the school's behalf, one on April 19, 2007 and another on January 21, 2010. (*Id.* ¶¶ 57–58.) In both PPAs,

Stevens-Henager promised to comply with the ICB. (*Id.* ¶ 114.) But Stevens-Henager allegedly knew that these promises were false because it was paying and planned to continue paying admissions consultant bonuses based on their success in securing enrollments. (*Id.*) According to the Government, Stevens-Henager's promises to comply with the ICB were material to the Department of Education's decision to allow Stevens-Henager to receive Title IV funds. (*Id.*)

              3)        The G5 Certifications

A student applies for financial aid by completing a free application. (*Id.* ¶ 40.) A school uses the information in the application to create a financial-aid package for the student. (*Id.* ¶ 43.) The student can accept all or part of the package. (*Id.* ¶ 44.) If the student accepts a Pell Grant, a Direct Loan, or both, the student's school creates an electronic origination record. (*Id.* ¶ 45.) The school then submits the record to the Department of Education using a computerized database called the Common Origination and Disbursement System. (*Id.*)

If the information supplied by the school is consistent with the Department of Education's information, the Department of Education makes funds available for the school to draw down from a computerized system known as G5. (*Id.* ¶ 46.) Before drawing down funds, a school certifies that "the funds are being expended within three business days of receipt for the purpose and condition of the agreement." (*Id.* ¶ 47.) The parties refer to this as the G5 certification.

Stevens-Henager submitted numerous claims for Title IV funds under its 2007 and 2010 PPAs. (*Id.* ¶ 61.) These claims were made in the G5 system and were accompanied by the representation that the funds would be "expended within three business days of receipt for the purpose and condition of the agreement." (*Id.* ¶ 64.) According to the Government, the "agreement" referenced in the G5 certification is the school's PPA. (*Id.*) And, according to the Government, "Stevens-Henager failed to disclose that it was violating the [ICB]" when it requested funds in the G5 system. (*Id.* ¶ 65.) Because Stevens-Henager was "knowingly violating the [ICB],

[it] was not an eligible institution, thus rendering the institution (and its students) ineligible for Title IV funds." (*Id.*)

*B. The Motion to Take Judicial Notice*

Stevens-Henager and CEHE (collectively, Stevens-Henager) ask the court to take judicial notice of five Government documents: (1) the "Hansen Memo," (2) the "Mitchell Memo," (3) the Government Accountability Office, GAO-10-370R, Higher Education: Information on Incentive Compensation Violations Substantiated by the U.S. Department of Education (First GAO Report), (4) the United States Government Accountability Office Report to the Congressional Committees: Stronger Federal Oversight Needed to Enforce Ban on Incentive Payments to School Recruiters (Second GAO Report), and (5) an Office of Inspector General Audit Report (OIG Report).

1) The Hansen Memo

The Hansen Memo is dated October 30, 2002. It was written by William D. Hansen, the former Deputy Secretary of Education, and addressed to Terri Shaw, the former Chief Operating Officer for Federal Student Aid. It provides, in relevant part:

> The purpose of the memorandum is to provide direction with regard to the Department's response to violations of [the ICB] . . . .
>
> The [ICB] was designed to reduce the financial inventive for an institution to enroll students by misrepresenting the quality of the institution, or the ability of students to benefit from its educational programs. The Department has in the past measured the damages resulting from a violation as the total amount of student aid provided to each improperly recruited student. After further analysis, I have concluded that the preferable approach is to view a violation of the [ICB] as not resulting in monetary loss to the Department. Improper recruiting does not render a recruited student ineligible to receive student aid funds for attendance at the institution on whose behalf the recruiting is conducted. Accordingly, the Department should treat a violation of the law as a compliance matter for which remedial or punitive sanctions should be considered.
>
> In some instances, violations of the [ICB], either themselves or in combination with other program violations, may constitute a basis for limitation, suspension, or termination action. However, much more commonly, the appropriate sanction to consider will be the imposition of a fine.

(footnote omitted).

2) The Mitchell Memo

The Mitchell Memo is dated June 2, 2015. It was written by Ted Mitchell, the former Undersecretary to the Secretary of Education, and addressed to James Runcie, the former Chief Operating Office of Federal Student Aid. It provides, in relevant part:

> Until 2002, long after the enactment of the [ICB], the Department measured damages resulting from a violation of the prohibition as the total amount of student aid provided to improperly recruited students. In 2002, however, the Department's Deputy Secretary issued [the Hansen Memo] that changed the Department's approach for measuring damages in the context of establishing administrative liabilities, to view a violation of [the ICB] as not resulting in monetary loss to the Department. The [Hansen Memo] rested on the view that the Department purportedly suffers no loss when an institution receives Title IV funds by violating the promises and representations it made as a condition of participation in the Title IV programs.
>
> To the contrary, the Department, in fact, incurs monetary loss upon a violation of [the ICB], and the appropriate response is to recover that loss, as provided for in the Department's original policy. When acting as the Department's fiduciary, an institution may receive funds only in accord with the representations it makes in order to become eligible for those funds. When an institution makes an incentive payment based upon the number of students enrolled, the institution breaches those representations. It thus violates a condition of its Title IV program eligibility and is not entitled to receive those Title IV funds. In this situation, an institution is liable to the Department for the cost of the funds it received.

Put simply, the Mitchell Memo repealed the Hansen Memo. But between October 30, 2002 and June 2, 2015, the Department of Education's position was that ICB violations do not result in monetary loss and do not render students ineligible to receive Title IV funds.

3) The Remaining Reports

In addition to the Hansen Memo and the Mitchell Memo, Stevens-Henager asks the court to take notice of three reports: (1) the First GAO Report, (2) the Second GAO Report, and (3) the OIG Report.

In the First GAO Report, the GAO analyzed the Department of Education's program-review and audit-report data related to the ICB for January 1998 through December 2009. The GAO found that during that period the Department of Education reported that 32 schools violated the ICB. In addition to these 32 schools, the Department of Education entered into settlement agreements with 22 other schools.

In the Second GAO Report, the GAO provided "additional information" on the Department of Education's oversight of the ICB between January 1998 and December 2009. The relevant findings are as follows:

- Between 1998 and 2008, [the Department of Education] resolved most incentive compensation cases by requiring corrective actions or reaching settlement agreements, and did not limit, suspend, or terminate any school's access to federal student aid.

- [The Department of Education] changed its enforcement policy in 2002, which resulted in an increased burden on [the Department of Education] to prove a violation and lessened associated financial penalties (fines and settlement payments). As a result, it became more difficult for [the Department of Education] to prove a school violated the [ICB] and schools ultimately paid smaller penalties.

- [Department of Education] officials shared with [the GAO] internal guidance that is used to determine fines and settlement payments for incentive compensation cases. Internal guidance for imposing fines and settlement payments establishes caps on total penalty amounts, although related regulations do not have such caps. [Department of Education] officials have stated that the agency has not always used the guidance to determine fines and settlement payments.

- [The Department of Education's] varying approaches for determining fines and settlement payments could lead to inconsistent treatment of schools without adequate justification for the differential treatment. For example, some schools were fined for [ICB] violations, while others were not. In one case, [the Department of Education] withdrew an initiated school fine of over $2 million dollars, and case documentation did not reveal the reason for the fine withdrawal.

In the OIG Report, the OIG reiterated the findings from the First and Second GAO Reports, made findings as to Department of Education's enforcement of the ICB, and proposed recommendations that would facilitate enforcement of the ICB.

4) Judicial Notice: Federal Rule of Evidence 201

A court may take judicial notice of a fact that is not subject to reasonable dispute because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). This rule allows courts to "take judicial notice of . . . facts which are a matter of public record." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citation omitted). If a party requests that a court take judicial notice of a fact and supplies the court with the necessary information to do so, the court must take judicial notice of the fact. FED. R. EVID. 201(c).

Here, the court must take judicial notice as to the contents of the five documents provided by Stevens-Henager because their contents can be accurately and readily determined from sources whose accuracy cannot be questioned. *See* FED. R. EVID. 201(b); *Tal*, 453 F.3d at 1264 n.24. Indeed, no party disputes the authenticity and accuracy of the documents, and the documents are a matter of public record. Instead, the parties' dispute centers on what the court should do once it has taken notice as to the contents of the documents.

Stevens-Henager contends that the court can use the documents to take judicial notice of the fact that the Department of Education "did not enforce the ICB by seeking the return of Title IV funds or by terminating or limiting participation in Title IV programs." The Second GAO Report provides: "Between 1998 and 2008, [the Department of Education] resolved most incentive compensation cases by requiring corrective actions or reaching settlement agreements, and did not limit, suspend, or terminate any school's access to federal student aid."[1] The Government has not argued that the accuracy of this finding can be questioned, so the court takes judicial notice of it.

[1] This is hearsay, but it is covered by the public-records exception. *See* FED. R. EVID. 803(8)(A)(iii) (factual findings from a legally authorized investigation).

But the Government argues that the court must not use this fact to infer that the Department of Education did not attach importance to a school's representations about the ICB, and the court agrees that it would be improper to use this fact to draw inferences against the Government at this stage. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (citation omitted)); *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) ("Nonetheless, we may not, on the basis of these reports, draw inferences or take notice of facts that might reasonably be disputed.").

In sum, the court takes judicial notice of the fact that "[b]etween 1998 and 2008, [the Department of Education] resolved most incentive compensation cases by requiring corrective actions or reaching settlement agreements, and did not limit, suspend, or terminate any school's access to federal student aid." But it would nevertheless be improper for the court to use this fact to draw inferences against the Government or the relators at this stage of the proceedings, which is, in reality, what Stevens-Henager asks the court to do. Indeed, Stevens-Henager asks the court to use the judicially noticed fact to conclude that the Department of Education did not attach importance to a school's promise to comply with the ICB. This the court cannot do.

*C. The Motion to Dismiss*

Stevens-Henager moves to dismiss the Government's amended complaint on the grounds that it fails to state a claim upon which relief can be granted. But, as noted above, Stevens-Henager did not address the Government's claims for payment by mistake and unjust enrichment, so the motion is better characterized as a motion to dismiss the Government's claims that arise under the False Claims Act. Moreover, Stevens-Henager's motion focuses almost entirely on only one of the Government's two theories of liability, the theory based on Stevens-Henager's G5 certifications.

Stevens-Henager raises, in essence, three arguments. First, Stevens-Henager argues that the Government fails to allege that Stevens-Henager's requests for payment in the G5 system constitute false claims. Second, Stevens-Henager argues that the Government fails to allege that Stevens-Henager knew that its requests for payment made in the G5 system were false. Third, Stevens-Henager argues that the Government has not alleged sufficient facts to establish that ICB noncompliance was material to the Department of Education's payment decisions.

1) Motion Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Where the allegations are merely "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," the plaintiff's claim will not survive a motion to dismiss. *Twombly*, 550 U.S. at 555. To survive, the plaintiff's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility, in this context, means that the allegations allow "the court to draw [a] reasonable inference that the defendant is liable for the alleged misconduct." *Id*. Allegations that are merely consistent with a defendant's liability do not give rise to a plausible claim. *Id.*

A plaintiff alleging violations of the False Claims Act must also satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *U.S. ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006). Rule 9(b) provides that a plaintiff must "state with particularity the circumstances constituting fraud." To satisfy this standard, a plaintiff must allege the "'who, what, when, where, and how' of the alleged fraud." *Id.*

at 726–27 (citation omitted). Put another way, the plaintiff must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* at 727 (citation omitted). "Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the 'circumstances constituting fraud and mistake' that must be pled with particularity under Rule 9(b)." *Id.* (citation omitted). Moreover, "[a] relator must provide details that identify particular false claims for payment that were submitted to the government." *Id.* (citation omitted).

2) The False Claims Act: Section 3729

"[A]ny person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . is liable to the United States Government for a civil penalty . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1). The term "knowingly" means "that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard to the truth or falsity of the information." § 3729(b)(1). The term "claim" means, among other things, "any request or demand . . . for money or property . . . that is presented to an officer, employee, or agent of the United States." § 3729(b)(2). Thus, to state a claim under the False Claims Act, a plaintiff must allege three things: (1) the defendant submitted a claim for payment to the Government, (2) the claim was false, and (3) the defendant knew the claim was false. § 3729(a)(1)(A); *United States ex rel. Brooks v. Stephens-Henager College*, 305 F. Supp. 3d 1279, 1293 (D. Utah 2018).[2]

[2] The False Claims Act was amended in 2009. Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, sec. 4, 123 Stat. 1617, 1621 (2009). And the Government brings claims under both the pre- and post-amendment versions of the statute. But the court previously determined that there is no reason to treat the claims differently, *Brooks*, 305 F. Supp. 3d at 1293 n.5, and no party has

3) The G5 Certifications

The Government contends that it has sufficiently alleged that Stevens-Henager's requests for payment in the G5 system are false claims because they were accompanied by G5 certifications that were half-truths that misled the Department of Education into believing that Stevens-Henager was an eligible institution. According to the Government, a G5 certification impliedly certifies that the student for whom the funds are requested is eligible to receive Title IV funds. And, as the Government's argument goes, a student is eligible to receive Title IV funds only if he or she is enrolled at an eligible institution. And Stevens-Henager, according to the Government, was not an eligible institution because it violated the ICB. But this theory fails for at least two reasons.

*First*, the Government's allegations are inconsistent with Title IV's regulatory framework. There is a distinction between an institution's designation as an eligible institution under Part 600 and its certification to participate in Title IV programs under Part 668. The regulations "recognize [a] distinction between determinations that institutions meet the definition of an eligible institution, and matters relating to the assessment of administrative and financial capability, typically referred to as the certification process." Institutional Eligibility Under the Higher Education Act of 1965, as Amended; Student Assistance General Provisions, 55 Fed. Reg. 32,180 (Aug. 7, 1990) (to be codified at 34 C.F.R. pts. 600 and 668).

An institution must qualify as an eligible institution *before* it can be certified to participate in Title IV programs. "The Secretary certifies an institution to participate in the title IV, HEA programs if the institution qualifies as an eligible institution under 34 CFR Part 600 [and] meets the standards of [Part 688, subpart B, which includes the PPA requirement]." 34 C.F.R.

suggested that the court do otherwise. Accordingly, the court applies the post-2009 version of the statute.

§ 668.13(a). An institution becomes certified when it enters into a PPA with the Department of Education. Indeed, the PPA "conditions the initial and continued participation *of an eligible institution* in any Title IV programs" on compliance with various legal requirements. § 668.14(a)(1) (emphasis added). The "initial and continuing participation" language does not mean that a school becomes ineligible to participate in Title IV programs simply because it violates the ICB.

The applicable regulations explain the possible consequences for failing to comply with a PPA:

> Noncompliance with these standards by an institution already participating in any Title IV, HEA program . . . *may subject* the institution . . . to proceedings under subpart G of this part. These proceedings *may lead* to any of the following actions:
>
> (1) An emergency action.
>
> (2) The imposition of a fine.
>
> (3) The limitation, suspension, *or termination of the participation of the institution* in a Title IV HEA, program.

§ 668.11(b) (emphasis added). Notably, an institution may continue to participate in Title IV programs despite noncompliance with its PPA *unless* the Secretary of Education commences proceedings that result in the "termination of the participation of the institution in a Title IV HEA, program." § 668.11(b)(3). Moreover, the regulations make clear that "[a]n institution's participation in a Title IV, HEA program ends on the date that . . . [t]he institution's participation *is terminated under the proceedings in subpart G* [of Part 668]; [or] . . . [t]he institution's [PPA] is *terminated or expires* under § 668.14 . . . ." § 668.26(a)(3), (5) (emphasis added). That is, an institution can participate in Title IV programs unless and until its PPA is terminated or expires.

The Government argues that Stevens-Henager "was not an eligible institution because it violated a core requirement in its PPA—the ICB—and that violation made the institution (and thus

its students) ineligible for Title IV funds." But there is no regulation that provides for an automatic loss of eligibility when an institution violates "a core requirement of its PPA." The Government simply ignores the applicable regulations in an attempt to suit its legal theory.

In short, the Government fails to allege that students at Stevens-Henager were ineligible to receive Title IV funds. The Government does not allege that the Secretary of Education terminated Stevens-Henager's PPA or its participation in Title IV programs. Put simply, the Government's allegation that Stevens-Henager was ineligible to participate in Title IV because it violated the ICB is an unsupported legal conclusion that is belied by the applicable regulations. Consequently, the Government's claims fail to the extent they are based on a theory that Stevens-Henager's students were ineligible to receive Title IV funds because the school was not an eligible institution.[3]

*Second*, even if the Government had alleged that Stevens-Henager was not an eligible institution (it did not), the Government has failed to allege that Stevens-Henager *knowingly* misrepresented that it was an eligible institution when it submitted G5 certifications. The Government alleges that Stevens-Henager knowingly violated the ICB. (Am. Compl. ¶ 97.) But "a violation of a regulatory provision, *in the absence of a knowingly false or misleading representation*, does not amount to fraud." *United States ex rel. Trim v. McKean*, 31 F. Supp. 2d 1308, 1315 (W.D. Okla. 1998) (emphasis added). "Violating a regulation is not synonymous with filing a false claim." *United States ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014).

---

[3] In fact, the Government, as amicus curiae in another case, admitted that a school's G5 certifications were "literally true," despite noncompliance with the ICB, because the Department of Education had "not (yet) terminated the school's eligibility." Brief for the United States of America as Amicus Curiae Supporting Appellees at 20, *United States ex rel. Rose v. Stephens Institute*, No. 17-15111 (filed Aug. 7, 2017). This admission is consistent with the regulatory framework and contradicts the Government's theory in this case.

The Government argues in its brief that it has alleged that Stevens-Henager knew that it was ineligible to receive Title IV funds because of ICB violations, rendering its requests for Title IV funds false or fraudulent. To support this, however, the Government cites a paragraph of its complaint that provides that Stevens-Henager was not an eligible institution because it "knowingly violat[ed] the [ICB]." (Am. Compl. ¶ 65.) That is not enough. The Government needed to allege that Stevens-Henager knew that it was ineligible to receive Title IV funds, and thus knew that its requests for payment were false or fraudulent.

The Government notes that knowledge may be alleged generally. True, "[k]nowledge . . . may be alleged generally." FED. R. CIV. P. 9(b). But the Government has not even attempted to allege that Stevens-Henager knew that it was ineligible to receive Title IV funds because of ICB violations. Put simply, the Government misses the point. Perhaps the Government could have alleged generally that Stevens-Henager knew that it was ineligible to receive Title IV funds based on ICB violations. But it did not.[4] Because the Government has failed to allege that Stevens-Henager knew that it was ineligible to receive Title IV funds because of ICB violations, the Government has not plausibly alleged that Stevens-Henager knew that its requests for Title IV funds were false.

Stevens-Henager also argues that the Government's claims based on G5 certifications fail because the Government has not pled "facts supporting materiality." The court, however, need not address this argument because the Government has failed to allege that Stevens-Henager's requests

[4] The Government, however, is probably unable to allege this in good faith because its own policy between 2002 and 2015 was that "[i]mproper recruiting does not render a recruited student ineligible to receive student aid funds for attendance at the institution on whose behalf the recruiting is conducted."

for payment in the G5 system were either expressly or impliedly false, and even if they were, the Government has not alleged that Stevens-Henager knew that the requests for payment were false.

For the reasons stated above, the court dismisses the Government's claims under the False Claims Act to the extent that they are based upon its G5 certification theory of liability. Because there is a fundamental legal impediment to the G5 certification theory, amendment of the complaint would be futile. *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) ("Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." (citation omitted)). Therefore, dismissal is with prejudice.

   4)  Promissory Fraud: The PPAs

The court previously determined that the Government had stated a claim under the False Claims Act based on a theory of promissory fraud. Stevens-Henager suggests that the court should reconsider this ruling and hold that ICB noncompliance is not material to the Department of Education's payment decisions. But Stevens-Henager misunderstands the court's prior holding and the promissory-fraud theory of liability.

Unlike the terms "claim" and "knowingly," which are defined in the False Claims Act, "false" and "fraudulent" are defined only by judicial interpretation and construction. *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 740 (10th Cir. 2018). Congress has explained that the terms "false" and "fraudulent" should be construed broadly:

> [E]ach and every claim submitted under a contract, loan guarantee, or other agreement *which was originally obtained by means of false statements* or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim.

S. Rep. No. 99-345, at 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274 (emphasis added) (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943)).

Consistent with this, courts have recognized that False Claims Act liability can attach to each and every claim submitted under a PPA that was obtained through fraudulent statements. *United States ex rel. Miller v. Weston Educ., Inc.*, 840 F.3d 494, 503–05 (8th Cir. 2016); *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006); *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 916–17 (7th Cir. 2005). Put simply, an initial falsehood "can taint subsequent claims for payment, even if those claims are for legitimate goods or services." Joan H. Krause, *Reflections on Certification, Interpretation, and the Quest for Fraud that "Counts" Under the False Claims Act*, 2017 U. Ill. L. Rev. 1811, 1817 (2017); *see also Hendow*, 461 F.3d at 1173 ("[S]ubsequent claims are false because of an *original fraud* (whether a certification or otherwise).").

As the court previously explained, to state claim under the False Claims Act based on promissory fraud, the Government must allege: "(1) Stevens-Henager made false statements in its PPAs; (2) Stevens-Henager knew that its statements were false; (3) *the statements were material to Department of Education's decision to execute the PPAs*; and (4) Stevens-Henager made claims for payment under the fraudulently induced PPAs." *Brooks*, 305 F. Supp. 3d at 1299–300 (emphasis added).

The court went to great lengths to explain to the parties the proper focus for materiality when liability is based on a theory of promissory fraud:

> [T]he Government's claims are based on promissory fraud, unlike the claim in *Escobar*, which was based on implied certification. The Supreme Court, in *Escobar*, discussed materiality as it relates to claims for reimbursement that are allegedly false because they impliedly certify compliance with underlying regulations. Here, the Government alleges that claims were false based on promissory fraud: Stevens-Henager falsely certified that it would comply with the ICB in its 2007 and 2010 PPAs. In other words, the "fraud" was not a failure to disclose noncompliance with a regulation, as was the case in *Escobar*, but rather an affirmative misrepresentation: a false promise to comply with the ICB. Because the Government alleges promissory fraud, the court "examines the false statements that

> *induced the government to enter the* [*PPAs*].” Thus, the court must determine whether the Government has alleged sufficient facts to plausibly establish that Stevens-Henager’s allegedly false promises to comply with the ICB *in its PPAs* were material to the Department of Education’s decision to execute the PPAs.

*Id.* at 1301–02 (citation omitted). After explaining the relevant inquiry, the court held that “the Government ha[d] alleged sufficient facts to plausibly establish that the Department of Education attached importance to Stevens-Henager’s promises to comply with the ICB.” *Id.* at 1302.

Stevens-Henager suggests that this was error “because the same materiality requirements apply to all [False Claims Act] claims.” True, the materiality standard does not change: “a false statement is material under the False Claims Act ‘if either (1) a reasonable person would likely attach importance to it or (2) the defendant knew or should have known that the government would attach importance to it.’” *Id.* at 1300 (citation omitted). But, as the court made clear, the standard applies to the false statement that forms the basis of liability, which, for the Government’s claims based on promissory fraud, is the statement that induced the Department of Education to enter into PPAs with Stevens-Henager.

Because Stevens-Henager has not addressed whether its allegedly false promises in its PPAs were material to the Department of Education’s decision to enter into the PPAs, the court declines to revisit its prior holding. Accordingly, the Government may proceed on a theory that Stevens-Henager submitted false claims for payment based on a theory of promissory fraud.

## II. MOTION TO DISMISS THE RELATORS’ FOURTH AMENDED COMPLAINT

The relators allege three claims for relief based upon three distinct theories of liability. First, the relators allege that the Colleges are liable under 31 U.S.C. § 3729(a)(1)(B) and its predecessor because they fraudulently induced the Department of Education to enter into various PPAs, thereby rendering their subsequent requests for Title IV funds “false or fraudulent.” Second, the relators allege that the Colleges are liable under § 3729(a)(1)(A) and its predecessor because

their requests for Title IV funds were rendered false by virtue of their G5 certifications. Third, the relators allege that the Colleges are liable under § 3729(a)(1)(B) and its predecessor because they made false statements in their Required Management Assertions (RMAs).

*A. The G5 Certifications*

The relators, like the Government, allege that the Colleges are liable under the False Claims Act because of their G5 certifications. (Fourth Am. Compl. ¶¶ 387–91.) This claim, however, fails for the same reason that the Government's G5 certification claim fails. The relators, like the Government, have failed to allege that the Colleges were ineligible to receive Title IV funds, and even if the relators had, they have not alleged that the Colleges knew that they were ineligible to receive Title IV funds. The court, therefore, dismisses the relators' second claim for relief with prejudice.

*B. The Required Management Assertions*

The Colleges submitted RMAs that expressly certified compliance with the legal requirements that they allegedly violated. (*Id.* ¶ 235.) The RMAs were required as part of the Colleges' annual audit process. (*Id.* ¶ 236.) Indeed, the first step of the audit process is for a school's management to provide RMAs to the school's auditor. (*Id.* ¶ 238.)

According to the relators, the Colleges are liable under the False Claims Act because assertions in their RMAs were false. (*Id.* ¶ 394.) In the relators' own words, the Colleges "are liable for . . . violations of 31 U.S.C. § 3729(a)(1)(B) and its predecessor statute for falsely and expressly certifying compliance with each of the Legal Requirements in the[ir] RMAs." (*Id.* ¶ 392.) But this claim for relief fails.

Section 3729(a)(1)(B) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." A claim for relief under § 3729(a)(1)(B) has three elements: (1) the defendant makes a false

statement, (2) the defendant knows that the statement is false, and (3) the false statement is material to a false claim for payment. § 3729(a)(1)(B); *Brooks*, 305 F. Supp. 3d at 1293–94. "Section 3729(a)(1)(B) is 'designed to prevent those who make false records or statements . . . to get claims paid or approved from escaping liability solely on the ground that they did not *themselves* present a claim for payment or approval.'" *Brooks*, 305 F. Supp. 3d at 1294 (quoting *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 87 (D.D.C. 2014)). "In other words, the primary purpose of § 3729(a)(1)(B) is to remove any defense that the defendant did not personally submit, or cause to be submitted, a false claim." *Id.* Indeed, many violations of § 3729(a)(1)(B) may also be considered violations of § 3729(a)(1)(A), which imposes liability on persons who "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval." *Id.*

The court has already explained the problems with relators' theory of liability based on the RMAs. *Brooks*, 305 F. Supp. 3d at 1314. To be clear, the RMAs are not "claims"—that is, they are not requests for payment. *See* § 3729(b)(2); *Brooks*, 305 F. Supp. 3d at 1296 n.6 (pointing out that PPAs are not "claims," as that term is used in the statute). The RMAs are nothing more than a set of statements, or assertions. And the False Claims Act does not impose liability on persons who "knowingly make[] . . . a false record or statement." *Cf.* § 3729(a)(1)(B). Instead, the false record or statement must be material to a "false or fraudulent claim." § 3729(a)(1)(B). In essence, the relators attempt to impose liability on false statements alone, reading the "false or fraudulent claim" requirement out of § 3729(a)(1)(B). Consequently, the relators' third claim for relief must be dismissed with prejudice because it is not based on a valid legal theory.

Indeed, the court is confused as to the purpose of the relators' third claim for relief. The purpose of § 3729(a)(1)(B) is to remove any defense that the defendant did not submit the false claim. *Brooks*, 305 F. Supp. 3d at 1294. But in this case the Colleges are alleged to have submitted

(or at least caused to be submitted) each and every claim for payment. And the relators themselves allege, albeit in a conclusory fashion, that "the RMAs did influence the payment of *false claims*." (Fourth Am. Compl. ¶ 395 (emphasis added).) That is, the relators allege that the Colleges' claims for payment, *which the Colleges submitted*, are false claims. If those claims are false, which they must be for the relators to prevail under § 3729(a)(1)(B), then the relators should have proceeded under § 3729(a)(1)(A). In other words, if the Colleges' claims for payment were false, there is no need to show that they also made false statements in their RMAs. *See* § 3729(a)(1)(A) (imposing liability on anyone who submits a false claim for payment).

The court, therefore, dismisses with prejudice the relators' third claim for relief based upon the RMAs.

*C. The PPAs*

The Colleges entered into a number of PPAs with the Department of Education. (*See* Fourth Am. Compl. ¶ 208.) When a school enters into a PPA, it agrees that, among other things:

> (4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs . . . .
>
> (16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV, HEA program funds . . . .
>
> (22) It will not provide, nor contract with any entity that provides, any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any person or entities engaged in any student recruiting or admission activities or in making decisions regarding the awarding of student financial assistance . . . .
>
> (23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by . . . nationally recognized accrediting agencies; [and]
>
> (24) It will comply with the refund provisions established in 34 CFR Part 668.22.

(*Id.* ¶ 212.)

    1) The 90/10 Rule

A proprietary school, when it executes a PPA, agrees that it "will derive at least 10 percent of its revenues for each fiscal year from sources other than Title IV [programs]." (*Id.*) This is the so-called 90/10 Rule. 20 U.S.C. § 1094(a)(24). The relators allege that the Colleges took various steps "to inflate their revenue from non-governmental sources for 90/10 Rule purposes." (*Id.* ¶ 196.) But the relators have not alleged that the Colleges made false statements in their PPAs concerning the 90/10 Rule. (*See id.* ¶¶ 215–24.)[5] Accordingly, the relators have not sufficiently alleged that any of the Colleges' claims for payment were "false or fraudulent" because they made false statements in their PPAs concerning the 90/10 Rule. (*See id.*) Thus, the court dismisses the relators' first claim to the extent that it rests upon the 90/10 Rule.

2) The ICB

As explained above, schools, in their PPAs agree to not pay employees "commission[s], bonus[es], or other incentive payment[s] based directly or indirectly on [their] success in securing enrollments." (*Id.* ¶ 212.) The relators have plausibly alleged that the Colleges compensated employees based on their success in enrolling students beginning in 2003 and ending in July 2011. (*Id.* ¶¶ 34–120.) Specifically, the Colleges uniformly paid bonuses on versions of Procedure Directive 85R during this timeframe. (*Id.* ¶¶ 42–65.) Each version of Procedure Directive 85R detailed bonuses that admissions consultants could earn based "on [their] success in securing enrollments." (*Id.*)

[5] The court is confused as to why the relators allege that the Colleges agreed to comply with the 90/10 Rule in their PPAs. (Fourth Am. Compl. ¶ 212.) But then the relators do not allege that any of the Colleges ever made false statements in their PPAs as to the 90/10 Rule. (*See id.* ¶¶ 215-24.) This, however, is consistent with the scattershot approach that the relators have taken with their pleadings. *See Brooks*, 305 F. Supp. 3d at 1309 n.20 (discussing how the relators copied wholesale portions of a complaint used by the Government in another case).

In July 2011, the Colleges "repealed their then-existing [Admissions Consultant] Bonus Plan and FP Bonus Plan." (*Id.* ¶ 120.) But according to the relators, the Colleges began violating the ICB again in "approximately April 2014." (*Id.* ¶ 121.) Specifically, the Colleges implemented an Online Admissions Consultant Bonus Plan under which online admissions consultants earned a base salary of $38,000 but could earn up to $60,000 if they started, or enrolled, an average of six students per module. (*Id.* ¶ 122.) In short, the relators have plausibly alleged that the Colleges compensated online admissions consultants based on their success in enrolling students beginning around April 2014. (*See id.* ¶¶ 120–27.)

The relators have plausibly alleged that the Colleges knowingly misrepresented their intent to comply with the ICB in the following PPAs: Stevens-Henager's April 2007 PPA; Stevens-Henager's January 2010 PPA; CollegeAmerica Denver's June 2007 PPA; College America Denver's February 2010 PPA; CollegeAmerica Arizona's June 2008 PPA; CollegeAmerica Arizona's November 2011 PPA; and California College's August 2008 PPA. (*See id.* ¶¶ 215–24.)[6] When the Colleges executed these PPAs, they were paying and continued to pay bonuses based on employees' successes in enrolling students. (*See id.* ¶¶ 42–65.) This plausibly establishes that the Colleges knowingly misrepresented their intent to comply with the ICB when they executed the various PPAs identified above.

The relators, however, have failed to allege that CEHE knowingly misrepresented its intent to comply with the ICB in its 2013 PPA. (*Id.* ¶¶ 217, 220). When CEHE executed this PPA, the

---

[6] Notably, if the Government can prove that the Colleges made false statements concerning their intent to comply with the ICB in these PPAs, the additional factual bases for proving that the Colleges fraudulently induced the Department of Education to enter into these PPAs would be irrelevant for establishing a claim under § 3729(a)(1)(A). That is, proving that a school made multiple false statements in a PPA does *not* increase the number of false claims. Put simply, the number of claims doesn't change when there are multiple false statements in a PPA.

Colleges had "repealed their then-existing [Admissions Consultant] Bonus Plan and FP Bonus Plan." (*Id.* ¶ 120.) Indeed, "[admissions consultants] could earn no new bonuses after July 2011" but "they continued to be paid under the old program *until approximately early 2012*." (*Id.* ¶ 82 (emphasis added); *see also id.* ¶ 110.)

So, taking the relators' allegations as true, the Colleges were *not* violating the ICB when CEHE executed its PPAs in January 2013. (*See id.* ¶¶ 82, 120.) And the Colleges did not begin to violate the ICB because of the Online Admissions Consultant Bonus Plan until "approximately April 2014," over a year after CEHE executed its January 2013 PPAs. (*See id.* ¶ 121.) Consequently, unlike the PPAs executed between 2007 and 2011, the relators have not plausibly alleged that CEHE knowingly misrepresented its intent to comply with the ICB in its January 2013 PPA.

In sum, the relators have plausibly alleged that the Colleges knowingly misrepresented their intent to comply with the ICB in the PPAs executed between 2007 and 2011. But the relators have not plausibly alleged that CEHE knowingly misrepresented its intent to comply with the ICB in its January 2013 PPA. The court dismisses the relators' first cause of action to the extent that it is based upon this PPA.

3) Refund Requirement

Schools that participate in Title IV programs must keep accurate records related to administration of Title IV funds, including records relating to student attendance and grades. (*Id.* ¶ 156.) Regulations specify that all schools must keep accurate records at all times, including records relating to a student's eligibility to receive Title IV funding and any refunds that the school must remit to the Department of Education based on a student's ineligibility to receive Title IV funds. (*Id.* ¶ 157 (citing 34 C.F.R. § 668.24(c)(iii)–(iv)).)

If a student enrolls at a school but fails to attend class, the school must refund any Title IV funds received for that student to the Department of Education. (*Id.* ¶ 158 (citing 20 U.S.C. § 1091b; 34 C.F.R. § 668.21(a), (c)).) Similarly, if a student attends some classes but then stops attending classes, the school must calculate the amount of unearned Title IV funds and refund that amount to the Department of Education. (*Id.* ¶ 159 (citing 20 U.S.C. § 1091b; 34 C.F.R. § 668.22(a)(1), (4); § 668.33(b), (g)(i)).)

A school uses its attendance records to determine a student's withdrawal date, which, in turn, determines how much money the school must refund to the Department of Education. (*Id.* ¶ 160 (citing 34 C.F.R. § 668.22(a)(2)(i)(A), (b)).) Because a student's withdrawal date is determined based on attendance records, schools must accurately record and report student attendance. (*Id.* ¶ 161.) But because schools retain more money if a student's withdrawal date is "postponed," schools have a financial incentive to misreport students' withdrawal dates. (*Id.*)

As noted above, when a school executes a PPA, it agrees to "comply with the refund provisions established in 34 CFR Part 668.22." (*Id.* ¶ 212.) The relators allege that three of the Colleges made false statements concerning the refund requirement in certain PPAs:

- Stevens-Henager falsely stated that it would comply with the refund requirement in its January 2010 PPA. (*Id.* ¶ 216.)
- CollegeAmerica Denver falsely stated that it would comply with the refund requirement in its February 2010 PPA. (*Id.* ¶¶ 219.)
- CEHE—on behalf of CollegeAmerica Denver and California College—falsely stated that it would comply with the refund requirement in its January 2013 PPA. (*Id.* ¶ 220, 224.)

i. Stevens-Henager: January 2010 PPA

The relators have alleged five "[r]epresentative examples" of Stevens-Henager falsifying attendance records. (*Id.* ¶ 168.) First, in "November 2009 and December 2009," an instructor reported that a student had perfect attendance for an externship before the student completed the

externship. (*Id.*) The relators do not allege whether the student did not end up with perfect attendance. Second, in July 2010, an instructor reported that a student had perfect attendance when the student missed a number of classes because she was pregnant and gave birth. (*Id.*) Third, in June 2010, an instructor gave a student an 84 percent attendance report even though the student missed about half of the classes. (*Id.*) Fourth, in August 2010, an investigation found that an instructor was "marking students present . . . when they are not in class." (*Id.*) The relators do not allege what action, if any, Stevens-Henager took when it discovered this. Fifth, in 2013 and 2014, several online admissions consultants called students and encouraged them to login to the online learning program because their attendance was determined based on whether they logged in. (*Id.*)

These examples, four of which occurred between November 2009 and August 2010, plausibly establish that Stevens-Henager knew that it would not comply with the refund requirement when it executed its January 2010 PPA. *See Miller*, 840 F.3d at 498–99 (identifying potential violations of the refund requirement that occurred "before and after the signing of the PPA").

ii. CollegeAmerica Denver: February 2010 PPA

For CollegeAmerica Denver, the relators allege that "Joshua Allen, who was a faculty member and an Associate Dean . . . explained that when he worked for [CollegeAmerica Denver], he attended 'Last Day Attended' meetings in which [the deans] reached out to students who weren't showing up and encouraged them to log on to their student account so [CollegeAmerica Denver] wouldn't have to count them as dropped." (Fourth Am. Compl. ¶ 168 (internal quotation marks omitted).) According to Mr. Allen, "it was his most important duty to encourage students to appear to be attending classes by logging into their accounts because [CollegeAmerica Denver] 'needed the students to have attendance so [it] wouldn't have to drop them." (*Id.* (internal quotation

marks omitted).) Mr. Allen worked at CollegeAmerica Denver "from November 2009 to October 2013." (*Id.*) This allegation does not plausibly establish that CollegeAmerica Denver falsely certified that it intended to comply with the refund requirement in the February 2010 PPA. At most, the allegation suggests that it was possible but not plausible that CollegeAmerica Denver falsely certified that it would comply with the refund requirement in its February 2010 PPA. Indeed, the allegation does not even establish that CollegeAmerica Denver improperly withheld Title IV funds from the Department of Education. Consequently, the relators have failed to allege that CollegeAmerica Denver falsely certified that it would comply with the refund requirement in its February 2010 PPA.[7] The court, therefore, dismisses the first cause of action against CollegeAmerica Denver to the extent that it is based upon the February 2010 PPA.

iii. CEHE: January 2013 PPA

The relators allege that CEHE, acting on behalf of CollegeAmerica Denver and California College, falsely certified that it intended to comply with the refund requirement. (*Id.* ¶¶ 220, 224.) For California College, the relators allege one representative example of "instructors falsifying attendance records." (*Id.* ¶ 168.) Specifically, in "approximately 2013," an adjunct professor taught a "hybrid class" (*i.e.*, a class that is partially online and partially in class). (*Id.*) The Associate Dean of Medical Specialties allegedly told the adjunct professor "to deal with students that failed to attend [the class] by 'at least getting them to sign in on their computers to keep their attendance active.'" (*Id.*) The relators do not allege whether the professor actually followed this

[7] To the extent relators are aware of specific instances where a school improperly withheld Title IV funds, they could have alleged violations of § 3729(a)(1)(D), which imposes liability on any person who "has possession . . . of . . . money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money." *See Brooks*, 305 F. Supp. 3d at 1313 n.24. Indeed, it is likely far easier to allege a violation of § 3729(a)(1)(D) than it is to allege that all of a school's claims for payment are false or fraudulent based on a theory of promissory fraud.

advice. And, most importantly, the relators do not allege that any professor at California College engaged in such conduct. For CollegeAmerica Denver, the relators again point to Mr. Allen's statements about the importance of encouraging students to log on to their accounts so that they would not be "dropped." (*Id.*)

These allegations do not plausibly establish that CEHE knowingly misrepresented its intent to comply with the refund requirement. Indeed, the allegations do not establish that CEHE improperly withheld Title IV funds from the Department of Education. That is, the relators have failed to identify any students whose attendance records were falsified, resulting in an underpayment of Title IV funds. Consequently, these allegations do not plausibly establish that CEHE knowingly misrepresented its intent to comply with the refund requirement when it signed its January 2013 PPA, and the court dismisses the first cause of action against CEHE to the extent that it is based upon this PPA.

4) Accreditation Requirement

To be eligible to participate in Title IV programs, all schools must "meet the requirements established by . . . accrediting agencies or associations." (*Id.* ¶ 128 (quoting 20 U.S.C. § 1094(a)(21).) Indeed, when schools execute PPAs, they agree that they will "meet the requirements established pursuant to Part H of Title IV of the HEA by . . . nationally recognized accrediting agencies." (*Id.* ¶ 212.) The Colleges accrediting agency is the Accrediting Commission of Career Schools and Colleges (ACCSC). (*Id.* ¶ 130.)

The relators allege that three schools made false statements concerning the accreditation requirement in certain PPAs:

- Stevens-Henager falsely stated it would comply with the accreditation requirement in its January 2010 PPA. (*Id.* ¶ 216.)
- CollegeAmerica Denver falsely stated that it would comply with the accreditation requirement in its February 2010 PPA. (*Id.* ¶ 219.)

- CEHE—on behalf of Stevens-Henager, CollegeAmerica Denver, and California College—falsely stated that it would comply with the accreditation requirement in its January 2013 PPA. (*Id.* ¶¶ 217, 220, 224.)

        i.    Stevens-Henager: January 2010 PPA

In the summer of 2010, Ms. Wride became the executive assistant to the Dean of Education at Stevens-Henager's Orem campus. (*Id.* ¶ 133.) She was asked to investigate each faculty member's qualifications to ensure that they met the minimum accrediting standards for the ACCSC. (*Id.*)

According to the relators, Ms. Wride "discovered that many faculty members . . . did not have the required minimum qualifications, as established by the ACCSC, to teach the courses that [Stevens-Henager] allowed them to teach." (*Id.* ¶ 134.) The relators provide two examples. (*See id.* ¶¶ 135–39.) First, Ms. Wride discovered that one professor "did not have the minimum number of years of related practical work experience that the ACCSC required him to have . . . to teach certain courses . . . ." (*Id.* ¶ 135.) This professor, according to Ms. Wride, had "misrepresented the nature of his prior work experience." (*Id.* ¶ 137.) Second, Ms. Wride discovered that another professor "did not have sufficient education and related practical work experience to meet the ACCSC accreditation standards for faculty members." (*Id.* ¶ 139.) Specifically, the professor "had never practiced as a chiropractor and had no related practical work experience . . . ." (*Id.*)

Ms. Wride eventually raised these issues with the Dean of Education at Stevens-Henager's Orem campus. (*Id.* ¶ 140.) The Dean told Ms. Wride that he previously brought similar problems to the attention of "upper management" and that he was "nearly terminated for exposing the problems." (*Id.*) Ms. Wride eventually reported the problems to the Colleges' CEO and COO. (*Id.* ¶ 144.) Despite this, Stevens-Henager continued to submit the same faculty personnel reports to the ACCSC for accreditation. (*Id.* ¶ 146.)

When the ACCSC conducted an audit of Stevens-Henager's Orem campus, Ms. Wride was told to "take the day off" to make sure that she had no contact with the auditors. (*Id.* ¶ 149.) Ms. Wride was also dropped from Stevens-Henager's respiratory-therapy program, the program in which she was enrolled, as retaliation for raising concerns with faculty personnel reports. (*Id.* ¶ 150.) When Ms. Wride complained, she was reinstated and Stevens-Henager agreed to waive her tuition and fees if she "just [left] things alone." (*Id.* ¶ 151.)

While the relators allegations suggest that Stevens-Henager knowingly violated accreditation requirements beginning in "summer 2010," the allegations do not establish that Stevens-Henager knowingly made false statements regarding its intent to comply with accrediting standards in January 2010, months before Ms. Wride first raised concerns over faculty qualifications. Notably, the relators have alleged only violations that occurred after Stevens-Henager entered into the relevant PPA. *See Main*, 426 F.3d at 917 ("Tripping up on a regulatory complexity does not entail a knowingly false representation."). Indeed, the relators have not alleged that Stevens-Henager knew that faculty members were under-qualified when it executed its PPA in January 2010. At most, the relators' allegations are merely consistent with Stevens-Henager knowingly misrepresenting its intent to comply with accreditation requirements. Consequently, the relators have not plausibly established that Stevens-Henager knowingly misrepresented its intent to comply with the accreditation requirement in its January 2010 PPA, and the court dismisses the first cause of action against Stevens-Henager to the extent that it rests upon the accreditation requirement in this PPA.

ii. CollegeAmerica Denver: February 2010 PPA

The relators allege four examples of CollegeAmerica Denver violating accrediting standards. (*Id.* ¶ 154.) First, in approximately 2009, an instructor observed work-study students

and employees falsifying student files in an attempt to bring the files into compliance with ACCSC standards. (*Id.*) Second, during the same time period, the same instructor falsified student files before giving them to an ACCSC auditor. (*Id.*) Third, between 2011 and 2013, a career services employee reported students as being "self-employed" with sufficient information and in violation of ACCSC standards. (*Id.*) Fourth and finally, in 2012, employees were told to hide documents and a book room from ACCSC representatives. (*Id.*) The documents advertised a "free" college program used to recruit students, but ACCSC standards prohibit the use of such inducements to enroll students. (*Id.*)

These allegations plausibly establish that CollegeAmerica Denver knowingly violated accrediting standards between 2009 and 2013. Consequently, the relators' allegations plausibly established that CollegeAmerica Denver knowingly misrepresented its intent to comply with accrediting standards in its 2010 PPA.

iii. CEHE: January 2013 PPA

The relators allege that CEHE—acting on behalf of Stevens-Henager, CollegeAmerica Denver and California College—falsely certified that it intended to comply with accrediting standards. (*Id.* ¶¶ 217, 220, 224.)

For California College, the relators allege examples of when the school took action to conceal violations of accrediting standard. (*Id.* ¶ 153.) But these events occurred in "February 2016," over three years after CEHE entered into its January 2013 PPA. (*Id.*) For Stevens-Henager, the relators allege that "[i]n 2013" the school reported to ACCSC that a philosophy class was being taught by a professor with the requisite qualifications. (*Id.*) But in reality, a different instructor who was not qualified taught the class. (*Id.*) "In 2013," Stevens-Henager "allowed instructors without the required years of experience to teach medical coding and billing courses." (*Id.* ¶ 155.)

And in late 2013, Stevens-Henager "allowed an instructor without a background in the law to teach a business law course." (*Id.*) For CollegeAmerica Denver, the relators have alleged the examples discussed above in connection with CollegeAmerica Denver's February 2010 PPA. And the relators also allege that in 2013, a professor was allowed to teach several accounting courses even though "he did not have the correct degree to teach the classes." (*Id.*)

These allegations plausibly establish that Stevens-Henager and CollegeAmerica Denver violated accrediting standards both before and after CEHE executed its PPA (on their behalf) in January 2013. Consequently, the allegations plausibly established that CEHE falsely certified that it intended to comply with accrediting standards in its 2013 PPA.[8]

## III.    VIABILITY OF THE RELATORS' POST-INTERVENTION COMPLAINTS[9]

The court finally turns to the question of whether the relators have a right to "maintain the non-intervened portion of the action in the name of the United States." Up till this point, the parties have operated under the assumption that the relators may do so. This apparently led the relators to publicly file amended complaints, name additional defendants, and assert additional claims for relief. Problematically, however, nothing in the False Claims Act or the legislative history suggests that a relator can maintain the non-intervened portion of an action. In fact, the plain language of the statute suggests otherwise.

The statute is unambiguous. If the Government intervenes in the action, it must conduct the action and has the "primary responsibility for prosecuting the action." While a relator retains

---

[8] The allegations related to California College add little, if any, support to this conclusion because the alleged violations took place in February 2016—over three years after CEHE entered into the January 2013 PPA.

[9] The court also asked the parties to brief whether permitting private citizens to prosecute claims on behalf of the Government violates the "take Care" clause found in Article II of the U.S. Constitution. Because the court strikes the relators' complaints, it need not address this constitutional question.

a limited right to continue as a party to the action, that right does not allow the relator to amend his or her complaint to add defendants and claims to the Government's action. Those rights necessarily belong to the party with the primary responsibility for conducting the action—in this case, the Government. Consequently, the Government's complaint in intervention superseded the relators' amended complaint, and any pleading subsequently filed by the relators lacked legal effect.

*A. The False Claims Act*

"A [relator] may bring a civil action for a violation of section 3729 for the person and for the United States Government." 31 U.S.C. § 3730(b)(1). "The action shall be brought in the name of the Government." § 3730(b)(1). The Federal Rules of Civil Procedure provide that "[t]here is one form of action—the civil action," FED. R. CIV. P. 2, and one commences a civil action "by filing a complaint with the court," FED. R. CIV. P. 3.[10] In short, a relator commences a civil action by filing a complaint with the court.

"A copy of the complaint and written disclosure of substantially all material evidence and information the [relator] possesses shall be served on the Government . . . ." § 3730(b)(2). "The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." § 3730(b)(2).

"The Government may elect to intervene and proceed with the action within 60 days after it received both the complaint and the material evidence and information." § 3730(b)(2). "The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal . . . ." § 3730(b)(3).

[10] *See Civil Action*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining civil action as "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation").

"Before the expiration of the 60-day period and any extensions . . . , the Government *shall* (A) *proceed with the action*, in which case *the action shall be conducted by the Government*; or (B) notify the court that it declines to take over the action, *in which case the* [*relator*] *shall have the right to conduct the action*." § 3730(b)(4) (emphasis added).

"*If the Government elects not to proceed with the action*, the [relator] shall have the right to conduct the action." § 3730(c)(3) (emphasis added). "When a [relator] proceeds with the action, the court, without limiting the status and rights of the [relator], may nevertheless permit the Government to intervene at a later date upon a showing of good cause." § 3730(c)(3).

"If the Government proceeds with the action, it shall have the *primary responsibility for prosecuting the action*, and shall not be bound by an act of the [relator]." § 3730(c)(1) (emphasis added). "If the Government elects to intervene and proceed with an action . . . , the Government may file its own complaint or amend the complaint of [the relator] to clarify or add detail to the claims in which the Government is intervening and to add any additional claims with respect to which the Government contends it is entitled to relief." § 3731(c).

If the Government intervenes, the relator has "the right to continue as a party to the action," subject to certain limitations. § 3730(c)(1). Those limitations include "(i) limiting the number of witnesses the [relator] may call; (ii) limiting the length of the testimony of such witnesses; (iii) limiting the [relator's] cross-examination of witnesses; [and] (iv) otherwise limiting the participation by the [relator] in the litigation." § 3730(c)(2)(C).

If the Government intervenes, the court may impose restrictions on the relator if: (1) the Government shows that "unrestricted participation during the course of the litigation by the [relator] would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for the purpose[] of harassment," § 3730(c)(2)(C); or (2) the defendant

shows that "unrestricted participation during the course of the litigation by the [relator] would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense . . . ," § 3730(c)(2)(D).

*B. "Action" Unambiguously Means "Civil Action"*

The Government contends that Congress used the word "action" to mean "cause of action," as opposed to "civil action." In evaluating this contention, the court must "determine congressional intent, using traditional tools of statutory construction." *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009) (citation omitted). The first step in statutory construction is to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," which is determined by "reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340–41 (1997). To the extent a statute is ambiguous, a court must consider its purpose and the legislative history to determine the statute's meaning. *McGraw v. Barnhart*, 450 F.3d 493, 499 (10th Cir. 2006).

Here, the text of the statute and its structure undermine the Government's interpretation of the term "action." *First*, § 3730(b)(1) unambiguously shows that Congress used "action" to mean "civil action." The first sentence provides that a relator may bring a "civil action," and the following sentence explains that the "action" (*i.e.*, the civil action) shall be brought in the name of the Government. § 3730(b)(1). The next sentences provides that "[t]he action [*i.e.*, the civil action] may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." § 3730(b)(1).[11]

[11] This sentence further undermines the Government's position because it is unlikely that Congress would have required that the court and the Attorney General give written consent anytime a relator moves to dismiss a cause of action.

*Second*, other provisions show that Congress used "action" to mean something other than "cause of action." "The court shall dismiss an action *or claim* under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action *or claim* were publicly disclosed." § 3730(e)(4)(A) (emphasis added). If "action" means "cause of action," the words "or claim" would be superfluous. *See Cause of Action*, BLACK'S LAW DICTIONARY (10th ed. 2014) (suggesting that one review the definition of "claim" for more information on the definition of "cause of action"). That is, interpreting "action" to mean "cause of action" runs afoul of the rule that courts must "give effect, if possible, to every clause and word of a statute." *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883).

The Government contends that the so-called first-to-file bar supports its position. It provides, "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." § 3730(b)(5). According to the Government, courts uniformly examine the bar's applicability to a second case on a cause-of-action by cause-of-action basis. And, as the Government's argument goes, this suggests that "action" means "cause of action." Not so.

The court agrees that the phrase "related action based on the facts underlying the pending action," bars claims arising from events that are already the subject of existing suits. *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232 (3d Cir. 1998). But this is because once a court dismisses the claims that arise from events that are the subject of a pending suit, the second action is no longer "based on the facts underlying [a] pending action." § 3730(b)(5). The cause-of-action by cause-of-action approach simply lets courts excise those

claims that are the subject of a pending action. This makes it so that the second action is no longer based on the facts underlying a pending action.[12]

Notably, the Government's proffered interpretation is inconsistent with actions it took in this case. Following the Supreme Court's decision in *Escobar*, the Government, by its own admission, instructed the relators to not file a motion for reconsideration. Specifically, the Government "asserted its authority to restrict Relators' counsel from taking actions in the case that the Government believed were inappropriate."

But according to the Government's proffered interpretation, it declined to intervene as to the relators' "causes of action," so the relators should have had the right to conduct those "causes of action." *See* § 3730(c)(3). Short of seeking outright dismissal of those "causes of action," which would require a showing of good cause, *see* § 3730(c)(2)(A), it is unclear what authority the Government had to instruct the relators to not file a motion for reconsideration. Indeed, "if the United States declines to intervene, the relator retains 'the right to conduct the action'" and "[t]he United States is thereafter limited to exercising only *specific rights* during the proceeding," such as "requesting service of pleadings and deposition transcripts," "seeking to stay discovery that 'would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts,'" and "vetoing a relator's decision to voluntarily dismiss the action"

[12] The relators contend that the court's interpretation will lead to a perverse outcome: relators will "file separate complaints—perhaps for each defendant, each cause of action, or both." But the court struggles to see how relators would do so when the first-to-file bar provides that "[w]hen a person brings an action under this subsection, *no person other than the Government may . . . bring a related action* based on the facts underlying the pending action." § 3730(b)(5) (emphasis added). The plain language of the first-to-file bar prevents a relator from commencing a second action that is based on the facts underlying the first. The relators also contend that "a construction that eliminates partial intervention will simply lead the Government and relators to sever the non-intervened claims into separate actions during the seal period." Again, the court struggles to see how this is possible when relators cannot file a second action that is based on the underlying facts of the first action.

*United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932 (2009) (emphasis added). Nothing in the statute gives the Government the authority to instruct relators to not file certain motions when the Government has declined to intervene. *See* § 3730(c)(3), (4). Instead, the Government's actions in this case are consistent with the court's interpretation and the plain language of the statute, which gives the Government the primary responsibility for prosecuting "the action."

In sum, the False Claims Act unambiguously uses "action" to mean "civil action." *See Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."). The Government's arguments to the contrary are unavailing and undermined by the plain language of the statute.

*C. The Government May Intervene on Some But Not All of a Relator's Claims*

The Government, in its briefing, creates a false narrative. The Government argues that the court's interpretation will force the Government to "choose between intervening in the case as a whole, even including those claims and defendants that it did not wish to pursue, or declining the entire matter and abandoning potentially meritorious causes of action." This would be troubling if it were true. But it is not.

"If the Government elects to intervene and proceed with an action . . . , the Government may file its own complaint or amend the complaint of [the relator] to clarify or add detail *to the claims in which the Government is intervening* and to add any additional claims with respect to which the Government contends it is entitled to relief." § 3731(c) (emphasis added). This unambiguously lets the Government add claims when it intervenes—indeed, the Government did so in this case. And it lets the Government intervene as to certain claims in the relators' complaint. But it says nothing about whether relators can maintain the non-intervened portion of the action, which is the concern at issue here.

*D. Relators May Not Maintain the Non-Intervened Portion of an Action*

The court now turns to the heart of the matter: whether a relator retains an independent right to maintain the non-intervened portion of an action. The Government's main argument is that Congress' silence as to whether a relator may prosecute the non-intervened portion of an action suggests that the relator retains a right to do so. Specifically, the Government contends that the language allowing it "to clarify or add detail to the claims in which [it] is intervening" means that a relator can pursue the non-intervened claims. The court is not convinced.

Congress would not have given relators the primary responsibility for prosecuting the non-intervened claims in such a cryptic fashion. *See F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000) ("[W]e are confident that Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion."). There are a number of ways in which Congress could have given relators such a right. It could have written, "The person bringing the action has the primary responsibility for prosecuting the claims in which the Government did not intervene." *Cf.* § 3731(c). Or, "If the Government proceeds with the action, the action shall be conducted by the Government *and the person bringing the action*." *Cf.* § 3730(b)(4). Or, Congress could have taken the Government's "practical" approach, replacing "action" with "claim for relief."[13] But such language is noticeably absent from the statute.

Congress' silence as to a relator's right to prosecute the non-intervened claims leads to the conclusion that no such right exists. In essence, the Government asks the court to read provisions into the statute to allow the relators to maintain the non-intervened portion of the action. But this would result "not [in] a construction of [the] statute, but, in effect, an enlargement of it by the

---

[13] *See Claim*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining claim as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for.—Also termed *claim for relief*").

court, so that what was omitted [*i.e.*, the relator's right to maintain the non-intervened claims] . . . may be included within its scope." *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) (first and second alterations in original) (citation omitted). But the court need not proceed in this fashion—indeed, there is a fundamental "difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted," which is what the Government asks the court to do. *Id.* (citation omitted).

The structure of the statute further undermines the Government's position. Indeed, if the Government intervenes, it has "the *primary responsibility for prosecuting the action, and shall not be bound by an act of the* [*relator*]." § 3730(c)(1) (emphasis added). Allowing relators to pursue the non-intervened claims is in direct conflict with this provision. The Government would not have primary responsibility for conducting the action if, after the Government files a complaint in intervention, a relator's complaint remained operative and the relator retained the right to amend that complaint, adding parties and claims to the Government's action. And it is unclear how the Government is not "bound by an act of [a relator]" if the relator can add allegations, defendants, and claims to the Government's action.[14]

At least three other provision of the False Claims Act suggest that relators may not maintain the non-intervened portion of an action. *First*, consider the provisions that deal with awards to relators. Section 3730(d)(1) provides that "[i]f the Government *proceeds with an action* brought by a [relator] under subsection (b), such [relator] shall . . . receive at least 15 percent but not more

[14] The relators argue that "[t]he Government is primarily, not solely, responsible for the claims in which it has intervened." And they state that they are "not in any way challenging the authority of the Government to prosecute the *intervened claims in whatever way the Government prefers*, with as little or as much help from Relators as the Government desires." (emphasis added). This statement is problematic. It implies that the relators think that they, not the Government, are primarily responsible for prosecuting portions of the action, which is troubling since it is the Government that is primarily responsible for "prosecuting the action." § 3730(c)(1).

than 25 percent of the proceeds of the action or settlement of the claim." (emphasis added). Section 3730(d)(2) provides that "[i]f the Government does *not proceed with an action* under this section, the [relator] . . . shall receive . . . not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement." (emphasis added). Put simply, a relator's potential award depends on whether the Government intervenes in the action, not on whether a relator prevails on the non-intervened claims.

The legislative history confirms this:

> *If the Government enters the action* and if the [relator] disclosed relevant evidence or relevant information which the Government did not have at the time the action was brought, the [relator] shall receive not less than 15% nor more than 25% of the proceeds of the action or settlement of the claim. . . .
> *If the government does not enter and proceed with the action*, and *if the* [*relator*] *proceeds with it to judgment or settlement*, the [relator] shall receive an amount which the court decides is reasonable. That amount shall not be less than 25% nor more than 30% of the proceeds of the action or settlement and is to be paid out of such proceeds.

H.R. Rep. No. 99-660, at 36–37 (1986) (emphasis added).[15] Like the statute, nothing in the legislative history suggests that Congress intended for courts to apply the damages provision for intervened actions to the claims that the Government prosecuted and then apply the damages provision for non-intervened actions to the claims that the relators prosecuted.

The relators, in their fourth amended complaint, request that "to the extent that the United States Government has not intervened in this action, [they] be awarded an amount that the Court decides is reasonable, which is not less than 25% nor more than 30% of the proceeds of any award

[15] *See also* S. Rep. No. 99-345, at 27 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5292 ("Subsection (d)(1) provides that when the Government has intervened, taken over the suit and produced a recovery either through a settlement agreement or a judgment, the relators will receive between 10 and 20 percent [sic] of the recovery. Subsection (d)(2) provides that if the relator has litigated the false claims action successfully and the Government did not take over the suit, the relator will be awarded between 20 and 30 percent [sic] of the judgment or settlement proceeds.")

or settlement for those claims." But the statute unambiguously provides that the relators would be entitled to "at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim" because the Government has "proceed[ed] with [the] action." § 3730(d)(1); *see also* H.R. Rep. No. 99-660, at 36 (1986) ("If the Government enters the action . . . the [relator] shall receive not less than 15% nor more than 25% . . . ."). Neither the statute nor the legislative history suggests that a relator can pursue claims that are separate from the Government's to recover an increased award. In sum, the structure of damages provisions undermines the idea that relators can pursue "non-intervened claims."

Even if the court could apply the damages provisions to separate claims, the way in which this case has been litigated would create additional problems with apportioning an award between the Government and the relators. The Government seeks to impose liability on Stevens-Henager's requests for Title IV funds based on allegations that the school made false statements in certain PPAs concerning its intent to comply with the ICB. The relators seek to impose liability on the same exact requests for Title IV funds based on different sets of false statements. That is, the relators' claims against Stevens-Henager are duplicative of the Government's in the sense that the relators attempt to impose liability on the same claims for payment, but with a different factual basis. Assuming that both the relators and the Government prevail on their claims, it is entirely unclear how the court would determine the relators' share of damages. Presumably, the Government and the relators can come up with a "practical" solution to this problem. But such a solution would be unmoored from the plain language of the statute.[16]

[16] In fact, with respect to the claims against Stevens-Henager, the relators' interests and the Government's are potentially adverse. Assuming that relators are entitled to an increased award if they prevail on their separate claims, it is in the relators' interest to prevail on their claims against Stevens-Henager without assisting the Government. Indeed, under the relators' interpretation of the statute, this would allow them to recover 25 to 30 percent of the proceeds of any award or

*Second*, consider the provisions dealing with an award of attorney fees to the defendant:

> *If the Government does not proceed with the action and the [relator] conducts the action*, the court may award to the defendant its reasonable attorneys' fees and expenses *if the defendant prevails in the action* and the court finds that the claim of the [relator] was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

§ 3730(d)(4) (emphasis added); *see also* H.R. Rep. No. 99-660, at 37 (1986) ("This section further provides that that if the [relator] proceeds with the action without the Government and the defendant prevails, the court may award reasonable attorneys fees and expenses to the defendant . . . ."). Put simply, defendants are precluded entirely from recovering attorney fees if the Government "proceeds with the action." If, however, the Government declines to intervene in the action, the relator is potentially on the hook for expenses and attorney fees.

The attorney fee provision does not contemplate a situation in which a relator prosecutes "separate" claims after the Government intervenes in the action. And this makes sense. When the Government intervenes, it has the primary responsibility for conducting the action, and the Government presumably elected to intervene because the action has merit: Congress envisioned that the Government would intervene in those cases with merit, as opposed to those without. *See*

settlement. But if the Government were to prevail on its claims against Stevens-Henager, the relators would potentially be limited to recovering 15 to 25 percent of the proceeds. Surely Congress did not intend that relators could prosecute claims in a way that makes them potentially adverse to the Government. This would undermine the entire purpose of the statute: "to encourage a working partnership between both Government and the [relator]." 132 Cong. Rec. H9382-03, 1986 WL 786917 (1986) (Remarks of Rep. Howard L. Berman). The Government even points out, citing *United States ex rel. Becker v. Tools & Metals, Inc.*, Nos. 3:05-CV-0627-L, 3:05-CV-2301-L, 2009 WL 855651, at *6 (N.D. Tex. Mar. 31, 2009), that courts have dismissed "claims of relators that overlap[] with the claims as to which the Government intervened." So it is unclear why the Government has not taken issue with the relators' continued attempts to allege alternative factual bases for liability related to the same exact claims for payment upon which the Government seeks to impose liability. Indeed, even if the relators could pursue their own separate claims, the court would likely need to strike the relators' allegations that arise from alternative factual bases for liability as to Stevens-Henager.

*Eisenstein*, 556 U.S. at 933 ("Congress expressly gave the United States discretion to intervene in [False Claims Act] actions—a decision that requires consideration of the costs and benefits of party status.").

But if relators, after the Government intervenes, are allowed to add defendants and claims to the action, the attorney fee provision is undermined because the relators' new claims could prove frivolous, and the defendants would nevertheless be precluded from recovering attorney fees because the Government "proceed[ed] with the action." In short, the attorney fee provision envisions that the Government, when it intervenes, takes responsibility for the entire action. It does not contemplate a situation in which a relator continues to add claims to the action.[17]

*Third*, consider the False Claims Act's statute of limitations:

> *A civil action* under section 3730 may not be brought
>
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

§ 3731(b) (emphasis added).

The Tenth Circuit has held that paragraph (2) "was not intended to apply to private qui tam suits." *United States ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 725 (10th Cir. 2006). So only the six-year statute of limitations in paragraph (1) "applies to actions pursued by private qui tam relators." *United States ex rel. Told v. Interwest Constr. Co.*, 267 F.

[17] The relators contend that the attorney fee provision can be applied to non-intervened claims only. Of course, this conflicts with the plain language of the statute. And it is problematic because it would shift the burden to defendants to apportion attorney fees and expenses between the intervened and non-intervened claims. Thus, even if a defendant proves that a relator's claims were frivolous, the relator could, and likely would, argue that the defendant has not properly apportioned fees between the fee-bearing and non-fee-bearing claims.

App'x 807, 809 (10th Cir. 2008). Put simply, the Tenth Circuit's interpretation of § 3731(b) suggests that either the Government or the relators conducts the action, not both. Indeed, if a relator could pursue non-intervened claims after the Government intervenes in an action, it is unclear why the relator could not invoke the statute of limitations found in paragraph (2). The better approach is that the Government, when it intervenes, decides which claims are a part of the action, and the Government decides whether to prosecute any claims that fall under paragraph (2).

In sum, there is nothing in the False Claims Act to suggest that a relator may maintain "non-intervened portion[s] of [an] action." Indeed, the False Claims Act is clear that the Government either "elect[s] to intervene and proceed with the action," § 3730(b)(2), or it "declines to take over the action," § 3730(b)(4)(B).[18] There is no in between.[19]

When the Government intervenes in the action, the relator can "continue as a party to the action." § 3730(c)(1). But that right does not encompass the right to conduct the action. If Congress intended to let relators conduct portions of the action after the Government intervened, the statute would provide, "If the Government proceeds with the action, the action shall be conducted by the Government *and the person bringing the action*." *Cf.* § 3730(b)(4); *see also* § 3730(c)(3) ("If the

[18] *See also United States ex rel. Bennett v. Biotronik, Inc.*, 876 F.3d 1011, 1021 (9th Cir. 2017) ("[T]he Government becomes a 'party' to the suit as a whole when it intervenes. It does not become a 'party' to a particular claim or number of claims."); *United States ex rel. Estate of Robert Gadbois v. PharMerica Corp.*, 292 F. Supp. 3d 570, 577 (D.R.I. 2017) ("The plain language of the statute makes clear that intervention serves to make the Government a party to the entire suit, not just certain claims or causes of action.")

[19] This is confirmed by the legislative history:

> Subsection (b)(4) of section 3730 restates current law which provides that within the initial 60-day period, or before expiration of any stays granted by the court, the Government must indicate whether it will intervene and proceed *with the action or decline to enter*. *If the Government takes over the civil false claims suit, the litigation will be conducted solely by the Government*. *If the Government declines, the suit will be litigated by the individual who brought the action*.

S. Rep. No. 99-345, at 23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5290 (emphasis added).

Government elects not to proceed with the action, the [relator] shall have the right to conduct the action."). But it does not. Instead, after the Government intervenes, it conducts the action and the relator continues as a party to the action. § 3730(c)(1); *Eisenstein*, 556 U.S. at 932 ("If the United States intervenes, the relator has 'the right to continue as a party to the action, but the United States acquires the 'primary responsibility for prosecuting the action.'").

The right to continue as a party to the action is more limited than the right to conduct the action, and it does not encompass the right to add defendants and claims to the action. Section 3730(c)(2)(C) contemplates the rights that a relator would have as a party to the action. It provides that the court, after the Government has intervened, can limit the number of witnesses a relator may call, limit the testimony of those witnesses, and limit the relator's cross-examination of other witnesses. § 3730(c)(2)(C). So, the statute contemplates that a relator, as a party to the action, could call and cross-examine witnesses.

Section 3730(c)(2)(D) further undermines the idea that a relator, as a party to the action, can add defendants and claims to the Government's action. It lets a court limit a relator's "participation during the course of the litigation" if the defendant shows that the relators' participation "would cause the defendant undue burden or unnecessary expense." § 3730(c)(2)(D). This provision makes little sense if the right to continue as a party to the action includes the right to add defendants and claims to the action.

Assume, as is the case here, that a relator named an additional defendant after the Government intervened. Could the defendant then argue that the relator's "participation" causes the defendant "undue burden" and "unnecessary expense"? § 3730(c)(2)(D). Indeed, the defendant would not have been a party to the action *but for* the relator's "participation." If a relator had the right to add defendants and claims to the action, courts would be put in the awkward position of

evaluating these types of arguments. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 28–29 (D.D.C. 2014) (noting that the "similarity of the legal theories advanced by the government and the relator" alleviates the potential burden "caused by relator's continued prosecution of th[e] action").

If Congress truly intended that the right to continue as a party to the action included the right to add defendants and claims to the action, it would not have given courts the ability to limit a relator's "participation" upon a showing that the defendant would suffer undue burden or unnecessary expense. Section 3730(c)(2)(D) contemplates that the right to continue as a party to the action is more limited (*e.g.*, calling and cross-examining witnesses and engaging in discovery). And it suggests that Congress did not intend to let relators maintain the non-intervened portion of an action.

The legislative history provides further insight on what Congress intended when it gave relators the right to continue as a party to the action. The Senate Judiciary Committee explained that relators, under prior versions of the False Claims Act, "ha[d] virtually no guaranteed involvement or access to information about the false claims suit." S. Rep. No. 99-345, at 25 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5290. So, the proposed § 3730(c)(1) in the Senate Bill gave relators the right to request "copies of all pleadings filed in the action and copies of all deposition transcripts." S. 1562, 99th Cong. (1986). It also gave relators the right to "file objections with the court and petition for an evidentiary hearing to object to any proposed settlement or to any motion to dismiss filed by the Government." *Id.* But the court was required to grant an evidentiary hearing only "upon a showing of substantial and particularized need." *Id.* And finally, the relators could "move the court for leave to conduct the action in the name of the United States if, after making its election to take over the suit, the Government does not proceed with the action with reasonable

diligence within six months or such reasonable additional time as the court may allow after notice." *Id.* As the Senate Judiciary Committee explained, the proposed Senate Bill gave relators "increased involvement in suits brought by the relator *but litigated by the Government*." S. Rep. No. 99-345, at 13 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5278 (emphasis added).

The House Judiciary Committee expressed similar concerns, citing an example where a relator was "precluded from conducting his own discovery." H.R. Rep. No. 99-660, at 29 (1986). So, the proposed § 3730(c)(1) in the House Bill would have expanded the "role of the relator so that when the Government enters the action . . . , the relator remains a party to the suit with the same rights as if he had been an intervenor of right under Rule 24(a), Federal Rules of Civil Procedure." *Id.* at 30. "*The Government remains the primary litigant and has control of the litigation*, but . . . the relator has access to all documents filed with the court, as well as the right to conduct discovery." *Id.* (emphasis added).

Notably, the final language passed by Congress tracked the proposed Senate Bill, which "narrowed somewhat" a relator's role as a party to the action by allowing courts "to limit the role of qui tam plaintiffs in the litigation." 132 Cong. Rec. H9382-03, 1986 WL 786917 (1986) (remarks of Rep. Dan R. Glickman). The House Bill defined the rights of relators by express reference to the rights of an intervenor of right under Federal Rules of Civil Procedure. *See* H.R. Rep. No. 99-660, at 30 (1986). But the final language of the statute does not. This severely undercuts the relators' argument that the court must look to the Federal Rules of Civil Procedure to ascertain what rights a relator has as a "party to the action."[20]

---

[20] Moreover, the Department of Justice expressed concerns with the language in the House Bill that gave relators the "same rights as provided by Rule 24(a)." Specifically, the Department of Justice believed that there was a "serious potential for the [misuse] of the statute and the sweeping rights available to a private plaintiff under the Federal Rules of Civil Procedure," so it "strongly object[ed]" to the provision giving relators the same rights "as provided by Rule 24(a)." H.R. Rep.

In sum, both the plain language of the statute and the legislative history suggest that Congress envisioned that a relator, as a party to the action, could (1) call witnesses, (2) cross examine witnesses, (3) request to receive pleadings and deposition transcripts, (4) object to proposed settlements, and (5) at the most, conduct discovery. *See A.C.L.U. v. Holder*, 673 F.3d 245, 250 (4th Cir. 2011) (noting that a relator, as a party to the action, "may participate in discovery, engage in motions practice, and participate at trial"). But neither the statute nor the legislative history suggests that a relator, as a party to an action, can add defendants and claims to the action. If Congress intended to give relators such rights, one would imagine that either the statute or the legislative history would reflect its intent to do so. But neither does.[21]

*E. The Relators' Post-Intervention Complaints Lack Legal Effect*

Here, the relators filed a complaint and later an amended complaint. The Government then filed its complaint in intervention. *See* § 3731(c) (providing that the Government may file its own complaint if it elects to intervene in an action). At that point, the Government was required to conduct the action and had the primary responsibility for prosecuting the action. § 3730(b)(4); § 3730(c)(1). The Government's complaint superseded the relators' complaint and became the operative pleading. *Cf. United States ex rel. Serrano v. Oaks Diagnostics, Inc.*, 568 F. Supp. 2d 1136, 1140 (C.D. Cal. 2008) ("The intervening complaint simply alters the complaint already filed

No. 99-660, at 67 (1986) (letter from Assistant Attorney General John R. Bolton). In the Department of Justice's view, giving relators the same rights as a private plaintiff would "introduce[] a major disruptive element into the careful and tactically difficult job of proving a complex fraud case," leading to "an unnecessary burden to the courts and to the United States." *Id.*

[21] Indeed, if finding legislative history to support one's position is "the equivalent of entering a crowded cocktail party and looking over the heads of guests for one's friends," the relators and the Government have no friends at the party. *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993). At most, the Government and the relators point to general statements about the statute's purpose. These statements, however, do not suggest one way or the other that Congress intended to let relators maintain the non-intervened portion of an action.

[by the relator].").[22] The relators then lost the right to add defendants and claims to the action. Any pleading filed by the relators after the Government elected to intervene lacked legal effect. At most, the relators could have persuaded the Government to amend its complaint to include additional claims, allegations, or defendants.[23] But the relators were unable to take the steering wheel from the Government, adding new claims, allegations, and defendants to the Government's action. Accordingly, the court must strike the relators' second, third, and fourth amended complaints because they have no legal effect.

### *F. Alternatively, Relators May Not Pursue Claims Alleged in Their Fourth Amended Complaint Because It Was Not Filed Under Seal*

The False Claims Act provides that relators must comply with certain mandatory filing requirements. Specifically, a relator must (1) provide the Government with a copy of the complaint and (2) file the complaint under seal for at least 60 days. § 3730(b)(2); *State Farm Fire & Cas. Co. v. United States ex rel. Rigby*, 137 S. Ct. 436, 442 (2016). These requirements allow the Government to "make an informed decision about whether to intervene in the qui tam action." *A.C.L.U.*, 673 F.3d at 250.

[22] Indeed, the statute is clear that the action is "brought in the name of the Government" and no one else. § 3730(b)(1). So it is unclear why the plaintiff—the Government—can have two operative complaints, one filed by the Government and one filed by the relators. The Federal Rules of Civil Procedure contemplate no such thing. *See* FED. R. CIV. P. 2, 3, 15.

[23] This would let the relators take some responsibility in prosecuting those claims, but the Government would nevertheless be primarily responsible for prosecuting them. This is entirely consistent with the purpose of the statute, which is "to encourage a working partnership between both Government and the [relator]." 132 Cong. Rec. H9382-03, 1986 WL 786917 (1986) (remarks of Rep. Howard L. Berman). The Government could delegate work to the relators' counsel, achieving "a coordinated effort of both the Government and the citizenry [to] decrease [fraud on the Government]." S. Rep. No. 99-345, at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5267. If anything, this approach would achieve a more coordinated effort between the Government and the relators.

The False Claims Act, however, says nothing "about the remedy for a violation of [the sealing requirement]." *State Farm*, 137 S. Ct. at 442. The structure of the statute indicates that violating the sealing requirement "does not mandate dismissal." *Id.* The sealing requirement is meant to protect the Government, so it "make[s] little sense to adopt a rigid interpretation of the seal provision that prejudices the Government by depriving it of needed assistance from private parties." *Id.* at 443. Thus, while dismissal may be an appropriate sanction in some cases, courts should look to the following factors: (1) whether the Government suffered harm because of the violation of the sealing requirement, (2) the nature of the violation, and (3) whether the violation was willful or made in bad faith. *See id.* at 444 (citing *United State ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 246 (9th Cir. 1995)).

Here, the relators have added new claims to both their third and fourth amended complaint while disregarding the sealing requirement. The relators were aware of the sealing requirement. In fact, they stated that they filed portions of their second amended complaint under seal because it "alleged violations of the [False Claims Act] never before set forth in any prior complaint." *See also United States ex rel. Davis v. Prince*, 766 F. Supp. 2d 679, 684 (E.D. Va. 2011) (holding that the sealing requirement applies when a relator "add[s] new claims for relief or new and substantially different allegations of fraud").

Most recently, the relators added allegations that CEHE fraudulently induced the Department of Education to execute a PPA in January 2013. By including allegations concerning the January 2013 PPA, the relators attempted to impose liability on claims for payment that were never before at issue in this case. That is, the fourth amended complaint "allege[s] violations of the [False Claims Act] never before set forth in any prior complaint." But the relators did not file it under seal.

The Government states that the third and fourth amended complaints merely "added detail to the fraudulent schemes already described, and thus did not have to be filed under seal." This is, at best, a misstatement. As noted above, the third amended complaint added a defendant—Weworski & Associates—to the action. And the fourth amended complaint attempts to impose liability on requests for Title IV funds that were not covered by any prior pleading. Those complaints undeniably allege new violations of the False Claims Act.

Because the fourth amended complaint was not filed under seal, the Government had no opportunity to intervene as to the new claims while the fourth amended complaint remained under seal. By not filing the complaint under seal, the relators deprived the Government of its right to intervene as to the new claims without showing "good cause" to do so. *Compare* § 3730(b)(2) ("The Government may elect to intervene and proceed with the action . . . ."), *with* § 3730(c)(3) ("When a person proceeds with the action, the court, without limiting the status and rights of the [relator], may nevertheless permit the Government to intervene at a later date upon a showing of good cause.").

Even if the relators had a right to pursue their own claims, the proper sanction for violating the sealing requirement in this case is to prohibit relators from pursing the new claims alleged in their third and fourth amended complaints. *See State Farm*, 137 S. Ct. at 444 (suggesting that district courts have broad discretion to craft sanctions when the sealing requirement is violated). Such a sanction is appropriate because it encourages compliance with the sealing requirement, but it does not prevent the Government from pursuing the relators' claims. *See id.* at 443 (stating that the sealing requirement was meant to protect the Government's interest).

*G. Government's Request to Amend*

The Government requests that it be given an opportunity to submit a revised complaint in intervention if the court determines that the relators cannot pursue the non-intervened portion of

the action. If the Government intends to expand the scope of its allegations, it is directed to file a motion to amend under Federal Rule of Civil Procedure 15(a)(2). Given the age of this case, the court is inclined to deny a motion to amend unless the Government files its motion within 21 days of this order.

**CONCLUSION AND ORDER**

For the reasons set forth above, it is hereby ORDERED:

1. The Colleges' "Motion for Leave to Take Judicial Notice" (ECF No. 440) is GRANTED.
2. Stevens-Henager's and CEHE's "Motion to Dismiss the Government's Amended Complaint in Intervention" (ECF No. 439) is GRANTED IN PART and DENIED IN PART. The court dismisses with prejudice the Government's claims under the False Claims Act to the extent that they are based upon its G5 certification theory of liability. The court denies the remainder of this motion to dismiss.
3. The Colleges' "Motion to Dismiss Relators' Fourth Amended Complaint" (ECF No. 438) is GRANTED IN PART and DENIED IN PART. The court dismisses with prejudice the relators' second cause of action based upon the G5 certifications and the third cause of action based upon the RMAs. As described in detail above, the court also dismisses portions of the relators' first cause of action based upon the PPAs.
4. Additionally, the relators' "Second Amended Complaint" (ECF No. 52), "Third Amended Complaint" (ECF No. 175), and "Fourth Amended Complaint" (ECF No. 427) are STRICKEN for the reasons stated in Part III of this Order.

5. If it desires to expand the scope of its allegations, the Government is directed to file a motion to amend under Federal Rule of Civil Procedure 15(a)(2) by February 4, 2019.

Signed January 14, 2019

BY THE COURT

Jill N. Parrish
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE,<br><br>Plaintiffs,<br><br>v.<br><br>STEVENS-HENAGER COLLEGE, INC., a Utah corporation, CENTER FOR EXCELLENCE IN HIGHER EDUCATION, a Delaware corporation,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**<br><br>**FILED UNDER SEAL**<br><br>Case No. 2:15-cv-00119-JNP-DAO<br><br>District Judge Jill N. Parrish |

In this action, the United States of America ("Government"), acting as Intervenor-Plaintiff, alleges that Stevens-Henager College, Inc. and its apparent successor, the Center for Excellence in Higher Education (collectively, "Defendants" or "Stevens-Henager"), submitted false claims for federal financial aid and are therefore liable under the False Claims Act and the common law. Before the court at this time are two motions: the United States' Motion for Partial Summary Judgment, ECF No. 530 ("Government Mot."), and Defendants' Motion for Summary Judgment, ECF No. 533 ("Defs.' Mot."). For the reasons set out below, the Government's motion is **GRANTED IN PART AND DENIED IN PART**, and the Defendants' motion is **DENIED**.

## BACKGROUND

This lawsuit began in January 2013, when relators Katie Brooks and Nannette Wride filed suit in the United States District Court for the District of Idaho, alleging that Stevens-Henager and

others had submitted false claims to the Government to receive federal financial aid. In May 2014, the Government intervened in some (but not all) of the relators' claims. Then, in February 2015, the action was transferred to this court. In March 2016, this court dismissed the relators' third amended complaint and granted both the relators and the Government leave to amend their respective complaints. *United States ex rel. Brooks v. Stevens-Henager Coll.*, 174 F. Supp. 3d 1297 (D. Utah 2016) ("*Brooks I*"). Two years later, this court granted in part and denied in part the parties' motions for reconsideration filed in response to the Supreme Court's decision in *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), which expressly rejected a legal theory upon which the court had relied in *Brooks I*. *United States ex rel. Brooks v. Stevens-Henager Coll.*, 305 F. Supp. 3d 1279 (D. Utah 2018) ("*Brooks II*").

In 2019, this court, in ruling on motions to dismiss the Government's amended complaint and the relators' fourth amended complaint, determined that the relators could not maintain their separate complaint in this action given the Government's election to intervene on some of their claims. *United States ex rel. Wride v. Stevens-Henager Coll.*, 359 F. Supp. 3d 1088 (D. Utah 2019) ("*Brooks III*"). It also narrowed the range of legal theories that the Government could maintain.

Central to the parties' summary judgment motions are the Government's claims brought under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA" or "Act"). "The FCA imposes liability for 'fraudulent attempts to cause the government to pay out sums of money.'" *United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co.*, 48 F.4th 1146, 1151 (10th Cir. 2022) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 736 (10th Cir. 2019)). "It permits the recovery of civil penalties and treble damages from anyone who, inter alia, (1) 'knowingly presents . . . a false or fraudulent claim for payment or approval,' 31 U.S.C. § 3729(a)(1)(A), or (2) 'knowingly makes, uses, or causes to be made or used, a false record or

statement material to a false or fraudulent claim,' id. § 3729(a)(1)(B)." *Id*. The "FCA does not impose liability for any and all falsehoods," *United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 540 (10th Cir. 2020), and is "not an appropriate vehicle for policing technical compliance with administrative regulations," *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 959 (10th Cir. 2008).

Here, the alleged false claims relate to Stevens-Henager's compliance with the Incentive Compensation Ban, 20 U.S.C. § 1094(a)(20), as set out in Title IV of the Higher Education Act of 1965. 20 U.S.C. §§ 1070-1099c. The Incentive Compensation Ban demands that institutions "not provide any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance." 20 U.S.C. § 1094(a)(20); 34 C.F.R. § 668.14(b)(22).

Effective July 1, 2003, the Department of Education ("Department") amended the regulations governing the Incentive Compensation Ban to include Safe Harbor E. Safe Harbor E created a carveout from Incentive Compensation Ban liability, indicating that institutions could properly carry out

> [c]ompensation that is based upon students successfully completing their educational programs, or one academic year of their educational programs, whichever is shorter. For this purpose, successful completion of an academic year means that the student has earned at least 24 semester or trimester credit hours or 36 quarter credit hours, or has successfully completed at least 900 clock hours of instruction at the institution.

34 CFR § 668.14(b)(22)(ii)(E) (2003). Safe Harbor E was eliminated by the Department effective July 1, 2011. *See* 75 Fed. Reg. 66832, 66872-73 (October 29, 2010).

Institutions like Stevens-Henager must enter into program participation agreements ("Participation Agreements") with the Department in order to receive Title IV funding. 20 U.S.C. § 1094(a); 34 C.F.R. § 668.14. The Department countersigns such Participation Agreements after reviewing an institution's online application ("E-App"). At issue here are two such Participation Agreements that promise compliance with the Incentive Compensation Ban: Stevens-Henager's 2007 and 2010 Participation Agreements. Government Mot. at 6. Both Participation Agreements were signed by a regional director of Stevens-Henager named Vicky Dewsnup ("Ms. Dewsnup"). Government Opp'n Mem. at 13. The Participation Agreements state that

> [b]y entering into this Program Participation Agreement, the Institution agrees that . . . (22) [i]t will not provide, nor contract with any entity that provides, any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the awarding of student financial assistance[.]

*See* ECF Nos. 533-2, 533-3.

Stevens-Henager's policy for compensating its admissions consultants was contained in a series of procedure directives, which were updated or reissued from time to time. Stevens-Henager maintained some version of Procedure Directive 85R ("PD 85R") between 2006 and July 1, 2011, when the procedure directive was cancelled. The version in effect when Stevens-Henager executed its Participation Agreement on April 19, 2007, was PD 85R-06. *Id*. at 4-10. Stevens-Henager later revised the directive and issued PD 85R-08 in November of 2008. This is the version that was in effect when Stevens-Henager executed its Participation Agreement in January of 2010.

Under PD 85R, admissions consultants were entitled to receive a bonus for each student enrolled by the admissions consultant who completed 36 credit hours. However, the amount of the completion bonus earned by an admissions consultant was based on the number of students he or

she recruited. Specifically, the exact value of the bonus an admissions consultant could receive for a student who completed 36 hours, under PD 85R-06, was tied to how many students the admissions consultant had successfully enrolled at Stevens-Henager (known as "starts") and, under PD 85R-08, reflected the admissions consultant's "conversion ratio." The conversion ratio was calculated by dividing the number of starts by the number of prospective students who went through the interview process.

The parties do not dispute that Stevens-Henager's on-the-ground practice conformed to PD 85R. The parties do dispute, however, the legal import of this fact, including whether this compensation regime falls within Safe Harbor E. Before the execution of the 2010 Participation Agreement, Stevens-Henager consulted with an attorney from the law firm of Duane Morris regarding PD 85R, who, after 2.2 hours of time billed to the question, opined that PD 85R was legal. Stevens-Henager also distributed each iteration of PD 85R widely within the firm for an process internally referred to as "side-checking," Defs.' Mot. at 7, and sought the advice of external specialists such as Education Management Systems. The Accrediting Commission of Career Schools and Colleges, which accredited Stevens-Henager, was also aware of its compensation plan for its admissions consultants but did not ever raise it as a potential legal issue. Carl Barney ("Mr. Barney"), the sole owner and chairman of the board of Stevens-Henager during the relevant period, testified in a 2006 deposition in an unrelated civil case that he was aware that any violations of the Incentive Compensation Ban would be an issue of great concern and a violation of law. Government Mot. at 25-26.

During the relevant period, Department of Education policy regarding enforcement of the Incentive Compensation Ban was set forth in the "Hansen Memorandum." The Hansen Memorandum stated that the Department's "preferable approach [was] to view a violation of the

incentive compensation prohibition as not resulting in monetary loss to the Department," because "[i]mproper recruiting does not render a recruited student ineligible to receive student aid funds for attendance at the institution on whose behalf the recruiting is conducted." Government Opp'n Mem. at 15. Nonetheless, the Government alleges that it enforced the Incentive Compensation Ban through a range of actions. The Government points to the fact that it has recovered over $100 million from approximately 37 schools through a combination of fines, administrative settlements, and FCA settlements relating to Incentive Compensation Ban violations. *Id.* at 2. Additionally, the Department rejected a Participation Agreement application by the Medical and Technical Institute and revoked a provisionally certified Participation Agreement with another institution, Maison D'Esthetique. *Id.* at 32. Both institutions were in violation of, among other things, the Incentive Compensation Ban.

False promises to comply with the Incentive Compensation Ban are potentially actionable under the FCA. Liability under the Act arises when there is "(1) a false statement or fraudulent course of conduct; (2) made with the requisite scienter; (3) that is material; and (4) that results in a claim to the Government or conceals, decreases, or avoids an obligation to pay the Government." *Janssen*, 949 F.3d at 539.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A fact is material only if it might affect the outcome of the suit under the governing law. And a dispute over a material fact is

genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Foster v. Mountain Coal Co*., 830 F.3d 1178, 1186 (10th Cir. 2016).

Once the movant has met this burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). When applying the summary judgment standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). However, this does not mean that nonmovants may "defeat summary judgment by relying on ignorance of the facts, on speculation, or on suspicion." *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (citation omitted). "Rather, to defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) (cleaned up).

In any case, a plaintiff "must still identify sufficient evidence requiring submission to the jury," *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1142 (10th Cir. 2009); *accord Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005), where such evidence offered is in admissible form. *Wetherill v. Bank IV Kan., N.A.*, 145 F.3d 1187, 1191 (10th Cir. 1998). Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

### I.    Government's Motion

The Government moves for summary judgment on three issues. In particular, the Government moves for summary judgment (a) as to the first FCA claim element (falsity) under

both Participation Agreements; (b) as to Stevens-Henager's affirmative defense of advice of counsel under the 2007 Participation Agreement; and (c) as to the third FCA claim element (scienter) under the 2007 Participation Agreement. The court considers each of these arguments in turn. At the outset, however, the court emphasizes that it does not attempt to determine how it would rule if it were the trier of fact. *See Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1377 (10th Cir. 1988). Instead, this court only circumscribes the range of conclusions that a reasonable jury could reach based upon the evidence. Where reasonable jurors might disagree on matters of fact, summary judgment is inappropriate. *Id*.

**A. Falsity**

The Government argues that it is entitled to summary judgment on the element of falsity because "[t]here is no factual dispute about how Stevens-Henager's compensation program for its Admissions Consultants operated." Government Mot. at 7. "In other words, there is no dispute that Stevens-Henager compensated [its] Admissions Consultants in accordance with the plain text of its compensation plans," including as it was alleged by the Government in its pleadings. *Id*. at 17. And this court has already determined that, if Stevens-Henager's compensation plan operated as alleged by the Government, it would fall outside the scope of Safe Harbor E and violate the plain language of the Incentive Compensation Ban. *Brooks I*, 174 F. Supp. 3d at 1305-06.

Because Stevens-Henager signed Participation Agreements promising compliance with the Incentive Compensation Ban, and because Stevens-Henager's compensation plan was not compliant with the Incentive Compensation Ban during the program participation period, the Government argues that Stevens-Henager cannot identify a triable issue as to whether or not its representations of compliance were false. Stevens-Henager responds by arguing that the issue of falsity should instead be determined by analyzing its *intent* to comply with the Incentive

Compensation Ban requirement in good faith during the program participation period. Defs.' Opp'n Mem. at 15.

There are "two doctrines that attach potential False Claims Act liability to claims for payment that are not explicitly and/or independently false: (1) false certification (either express or implied); and (2) promissory fraud." *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1171 (9th Cir. 2006) (citing *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). As this court explained in *Brooks II*, the Government's FCA claims rely on a theory of promissory fraud, not false certification. 305 F. Supp. 3d at 1301.

The promissory-fraud theory of FCA liability "holds that liability will attach to each claim submitted to the government under a contract, when the contractor extension of government benefit was originally obtained through false statements or fraudulent conduct." *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1173 (9th Cir. 2006). When considering whether certain representations are false based on a promissory-fraud theory of liability, the Seventh and Ninth Circuits have looked to defendants' subjective state of mind:

> To prevail in this suit [relator] must establish that the University not only knew . . . that contingent fees to recruiters are forbidden, but also planned to continue paying those fees while keeping the Department of Education in the dark. This distinction is commonplace in private law: failure to honor one's promise is (just) breach of contract, but making a promise that one intends not to keep is fraud. . . . [I]f the University knew about the rule and told the Department that it would comply, while planning to do otherwise, it is exposed to penalties under the False Claims Act.

*Id*. at 1174 (quoting *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005).

The Tenth Circuit had not yet had occasion to consider the issue of when a representation is false for FCA purposes under a promissory-fraud theory of liability.[1] However, the court finds the intent-informed falsity analysis for promissory-fraud FCA claims, as adopted by the Seventh and Ninth Circuits, to be persuasive. Because the Government's FCA claims turn on a theory of promissory fraud, Stevens-Henager's representations were false "if the University knew about the rule and told the Department that it would comply, *while planning to do otherwise*." *Id*. (emphasis added); accord *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996); *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 733, 741 (7th Cir. 2021). Because the Government's claims against Stevens-Henager turn on a promissory-fraud theory of FCA liability, Stevens-Henager's intent, plans, and scienter are all relevant to the falsity analysis. And because, as is discussed below, there remains a genuine dispute as to material facts regarding Stevens-Henager's intent to comply with the Incentive Compensation Ban, summary judgment on this issue is inappropriate.[2]

---

[1] In fairness, an analysis of falsity that considers Stevens-Henager's mental state or intention invites conceptual overlap with the independent scienter inquiry. The Tenth Circuit has addressed this in the context of FCA claims relying on a false certification theory. *See United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 743 (10th Cir. 2018); *accord United States ex rel. Druding v. Druding*, 952 F.3d 89, 96-97 (3d Cir. 2020).

[2] The court reiterates its position, taken in *Brooks I*, that PD 85R fell without the ambit of Safe Harbor E. 174 F. Supp. 3d at 1305-06. Although Stevens-Henager cursorily invites reconsideration of this court's earlier holding that Safe Harbor E does not apply, on the basis of "starts or [conversion] percentage to value completion certificates," *id*. at 21, it does not sufficiently explain its position or prove factual disputes that would demand this court change course from its interpretation of Safe Harbor E. *See Brooks I*, 174 F. Supp. 3d at 1306. The court already considered the issue of Safe Harbor E's "silence on additional requirements," and determined that the "value of the bonus" being "determined on a sliding scale that considered the employee's conversion ratio and whether the employee independently recruited new students" violated the Incentive Compensation Ban. *Id*. at 1305. Because completion bonus amounts for completion certificates, as the parties stipulated, varied depending upon the realization of additional recruiting

**B. Advice of Counsel**

Second, the Government moves for summary judgment on Stevens-Henager's affirmative defense that it acted upon advice of counsel in executing the 2007 Participation Agreement. Government Mot. at 8. In the Tenth Circuit, to establish a good-faith reliance on counsel defense, a defendant must show

> (1) a request for advice of counsel on the legality of a proposed action, (2) full disclosure of the relevant facts to counsel, (3) receipt of advice from counsel that the action to be taken will be legal, and (4) reliance in good faith on counsel's advice.

*United States v. Wenger*, 427 F.3d 840, 853 (10th Cir. 2005). Such reliance must also be reasonable. *See Roesler v. TIG Ins. Co.*, 251 F. App'x 489, 502 (10th Cir. 2007) (unpublished).

Stevens-Henager concedes this affirmative defense as to the 2007 Participation Agreement. Defs.' Opp'n Mem. at 1 n.1. Thus, summary judgment in favor of the Government is appropriate as to the availability of the affirmative defense of advice of counsel on the 2007 Participation Agreement. Stevens-Henager's affirmative defense of advice of counsel as it relates to the 2010 Participation Agreement is discussed below.

**C. Scienter**

i) Government's Motion

The Government argues that there is no genuine dispute as to any fact material to the issue of Stevens-Henager's mental state (i.e., scienter) in executing the 2007 Participation Agreement. It therefore seeks summary judgment on that part of its FCA claim. Government Mot. at 8. The

---

requirements (that is, starts and interview conversion percentages), PD 85R fails to pass muster under Safe Harbor E and was therefore violative of the Incentive Compensation Ban.

scienter required for FCA liability is that the false claim be made knowingly. Under the FCA, "knowing" and "knowingly" are defined to mean

> (A) [] that a person, with respect to information—
> (i) has actual knowledge of the information;
> (ii) acts in deliberate ignorance of the truth or falsity of the information; or
> (iii) acts in reckless disregard of the truth or falsity of the information; and
> (B) require no proof of specific intent to defraud[.]

31 U.S.C. § 3729(b)(1).

The Government argues that Stevens-Henager "appreciated the substantial risks associated with the Incentive Compensation Ban" but nonetheless "avoided taking steps to confirm compliance before entering the 2007 Participation Agreement." Government Mot. at 25. It further argues that this matches the culpable mental state of deliberate ignorance described by 31 U.S.C. § 3729(b)(1)(A)(ii).

The Government first points to Mr. Barney, "the sole owner and chairman of the board of Stevens-Henager during the period at issue in the case." Government Mot. at 25. Specifically, the Government cites to Mr. Barney's 2006 deposition testimony in an unrelated civil lawsuit in which he generally acknowledges the unremarkable proposition that paying compensation based on the number of students "would be an issue of great concern and violation of law, a serious violation of law," particularly "Department of Education Regulations." Government Mot. at 26. The Government argues that this testimony, coupled with his testimony acknowledging that "[t]here's a section of" Department of Education "regulations which prohibit any kind of incentive, bonus, commission, payable to admissions personnel based on recruiting statements," demonstrates that Mr. Barney was well aware of potential legal jeopardy flowing from Incentive Compensation Ban violations. *Id*.

Stevens-Henager responds that the Government has failed to identify any evidence that Stevens-Henager "subjectively believed there was a high probability that *PD 85R violated the Incentive Compensation Ban* and took deliberate actions to avoid learning this fact before promising to comply with the Incentive Compensation Ban in its 2007 Participation Agreement." Defs.' Opp'n Mem. at 21 (emphasis added) (citing *United States ex rel. Schutte v. SuperValu, Inc.,* 143 S. Ct. 1391 (2023)).

As the Supreme Court articulated in *Schutte*, the three-prong scienter element of the FCA tracks Restatement (Second) of Torts § 526. And the Act's inclusion of deliberate ignorance as a culpable mental state tracks a deeply rooted tradition in Anglo-American fraud jurisprudence that makes a person liable should he "shut his eyes to the facts, or purposely abstain[] from inquiring into them." 143 S. Ct. at 1400 (quoting *Derry v. Peek*, [1889] 14 App. Cas. at 376). Thus, "deliberate ignorance" in the Act captures "defendants who are aware of a substantial risk that their statements are false, *but intentionally avoid taking steps* to confirm the statement's truth or falsity." *Schutte*, 143 S. Ct. at 1400 (emphasis added). Under *Schutte*, where a defendant becomes "aware of a substantial likelihood of [] terms' correct meaning," even where such terms are ambiguous, he can be held to have knowingly acted in violation of the False Claims Act. *Id*. at 1401-02. As applied to a theory of deliberate indifference, "[t]he [Act's] scienter element refers to [a defendant's] knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Schutte*, 143 S. Ct. at 1399.[3]

---

[3] However, the Supreme Court squarely declined to address the question of whether the third form of scienter in the Act—reckless disregard—may incorporate an objective test. *See Schutte*, 143 S. Ct. at 1401 n.5. This apparent carveout, and its interaction with Tenth Circuit precedent, are discussed at greater length below.

With *Schutte* in mind, Stevens-Henager argues that its decision to have legal counsel review PD 85R for Incentive Compensation Ban compliance shortly after the execution of the Participation Agreement "underscores (rather than undermines) the good-faith nature of [its] promise in the Participation Agreement." Defs.' Opp'n Mem. at 22. Stevens-Henager also contends that "[t]here is no record evidence" that it was "aware of any substantial risk that PD 85R violated the Incentive Compensation Ban." *Id*. Stevens-Henagar argues that neither annual compliance audits by the Accrediting Commission of Career Schools and Colleges nor review by the Department of Education alerted it to the possibility that PD 85R violated the Incentive Compensation Ban, which evidences a lack of a culpable mental state. Because Mr. Barney sought non-legal expert advice regarding Incentive Compensation Ban compliance, he did not stick his head in the sand, Stevens-Henager argues.

Stevens-Henager is correct that the Government has failed to demonstrate an entitlement to summary judgment on the issue of scienter (under a theory of deliberate ignorance) as to the 2007 Participation Agreement. As Stevens-Henager points out, the Government's evidence is generally directed towards Stevens-Henager's awareness of the *general* legal risks of noncompliance with the Incentive Compensation Ban rather than the *particular* noncompliance of PD 85R itself. This lack of evidence of subjective knowledge defeats the Government's entitlement to summary judgment, at least under a theory of deliberate indifference.

A reasonable jury could find that Stevens-Henager took reasonable steps to secure Incentive Compensation Ban compliance and did not subjectively believe that there was a substantial risk of noncompliance in the case of PD 85R. Because the mental state under which a party acted is generally squarely within the province of the jury, *Goodman v. Simonds*, 61 U.S. (20 How.) 343, 366 (1858), and because the court is satisfied that there is more than a scintilla of

evidence suggesting that Stevens-Henager did not "shut [its] eyes to the facts, or purposely abstain[] from inquiring into them," *Schutte*, 143 S. Ct. at 1400, it declines to withhold this question from the wisdom of the jury.

ii) Defendants' Motion as to scienter

Through its cross motion, Stevens-Henager also moves for summary judgment on the Government's FCA claims as to the element of scienter. Specifically, it argues that the Government has failed to raise any genuine dispute of material fact regarding whether it acted knowingly as that term is defined in 31 U.S.C. § 3729(b)(1)(A) as to either of the Participation Agreements. Stevens-Henager's first argument regards *whose* knowing action is of concern. They cite *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 709 (7th Cir. 2015), for the proposition that it is the knowledge of the individual representative who signed the Participation Agreement—in this case, Ms. Dewsnup—that counts. Defs.' Mot. at 36. Because the Government did not depose Ms. Dewsnup, Stevens-Henager argues that the Government cannot show that *she* knowingly made a false claim. *Id*.

But zeroing in on Ms. Dewsnup is inappropriate. As a preliminary matter, the court is of the opinion that Stevens-Henager reads this sentence fragment of *Sanford-Brown* out of context. In any case, however, parsing *Sanford-Brown* is unnecessary: it is beyond dispute that Ms. Dewsnup signed the Participation Agreement on behalf of (and as an agent of) the corporation, which was the Participation Agreement signatory and party. Because Stevens-Henager was the Participation Agreement signatory, it is the knowledge of Stevens-Henager as a corporation, not its signing agents, that is relevant to the Government's FCA claims. It is the black-letter law that corporations are chargeable with the knowledge of agents acting within the scope of their authority. *W. Diversified Servs. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1276 (10th Cir. 2005); *Polukoff*,

895 F.3d at 745 n.9. Thus, what Stevens-Henager knew or may be deemed as having known as a corporation is not limited to the knowledge of Ms. Dewsnup who signed on its behalf.

Stevens-Henager then argues that even if this court were to consider the "collective knowledge of [Stevens-Henager's] management," there is still no genuine dispute of fact as to the scienter requirement even under the liberal "reckless disregard" standard. Defs.' Mot. at 37. "Reckless disregard" includes "defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway." *Schutte*, 143 S. Ct. at 1401 (citing Restatement (Third) of Torts § 10, Comment c).

As discussed above, when theories of direct knowledge or deliberate indifference are at play, FCA scienter generally demands evidence of subjective knowledge. But the Supreme Court expressly left open the question of whether an objective theory of knowledge (i.e., allowing the jury to consider what a defendant should have known) may be applied to a theory of reckless disregard under the FCA. *Schutte*, 143 S. Ct. at 1401. Without express guidance from a higher court to do otherwise, then, this court is bound by previous doctrinal declarations of the Tenth Circuit.

The Tenth Circuit, borrowing from the D.C. Circuit, has adopted a "gross negligence plus" theory of reckless disregard under which reckless disregard is understood to be "an aggravated form of gross negligence." *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 945 n.12 (10th Cir. 2008) (citing *United States v. Krizek*, 111 F.3d 934, 941-42 (D.C. Cir. 1997)). Under *Krizek*, the reckless disregard standard of § 3729(b)(1)(A)(iii) does not merely stand as a substitute for "willful misconduct," but instead makes culpable "an extreme version of ordinary negligence." 111 F.3d at 942. *Krizek*, including through its reference to another D.C. Circuit opinion, *Saba*, accepts that such reckless disregard can be demonstrated through objective analysis of what a

defendant should have known. *See Saba v. Compagnie Nationale Air Fr.*, 78 F.3d 664, 668-69 (1996). Because the court understands the Tenth Circuit as having adopted a test for reckless disregard that would allow weighing of inferences derived from objective analysis, and because the Supreme Court expressly declined to address the question, the jury is entitled to consider what Stevens-Henager should have known or considered as it considers the culpability of Stevens-Henager's mental state.

Stevens-Henager argues that the unrefuted evidence establishes that it sincerely believed that PD 85R complied with Safe Harbor E when it executed the 2007 and 2010 Participation Agreements. This allegedly unrefuted evidence comes from Stevens-Henager's attendance at higher education conferences and meetings where the Incentive Compensation Ban was discussed, from its understanding of Safe Harbor E, in the form of internal side-checks, and from the fact that it repeatedly passed independent audits.

While the evidence adduced by Stevens-Henager may be appropriately weighed by a jury, it is not the only evidence relevant to the issue. *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1221 (10th Cir. 2013). It therefore does not remove the issue of scienter from the province of a jury. As the Government argues, there is other evidence supporting its contention that Stevens-Henager acted with reckless disregard of the truth or falsity of its certifications to the Department. Government Opp'n Mem. at 40. This includes evidence regarding Mr. Barney's appreciation of the complexity and legal risk presented by Incentive Compensation Ban compliance (or what he *should have* known under an objective test) and his understanding of how PD 85R actually worked. *Id*. at 41, 44-45.

The same analysis applies to Stevens-Henager's affirmative defense of reliance on the advice of counsel as to the 2010 Participation Agreement. While Stevens-Henager has established

that it obtained legal advice regarding PD 85R, the jury is entitled to decide whether its reliance on counsel was, in fact, reasonable. Whether the 2.2 hours billed by outside counsel on the issue of Incentive Compensation Ban compliance was sufficient to render reliance reasonable (or whether Stevens-Henager actually relied on such advice in continuing an existing practice adopted before the advice was obtained) demands weighing and evaluating evidence. *See Brooks II*, 305 F. Supp. 3d at 1300 n.13. Because both parties have adduced evidence that may support a verdict in their favor on the issue of Stevens-Henager's mental state when executing the Participation Agreements, there is a triable issue regarding scienter as to both Participation Agreements, at least under a theory of reckless disregard.

**II. Defendants' Motion**

Stevens-Henager moves for summary judgment as to the Government's FCA claims, arguing that the Government cannot create a triable issue as to three FCA claim elements: (a) materiality, (b) causation, and (c) scienter (discussed above). Additionally, Stevens-Henager moves for summary judgment as to the Government's common-law claims.

**A. Materiality**

Stevens-Henager first argues that the Government cannot identify a genuine dispute as to any fact material to whether Stevens-Henager's allegedly false representations regarding its compliance with the Incentive Compensation Ban were material to the Department's decision to execute the 2007 and 2010 Participation Agreements. Defs.' Mot. at 29-30. In support of its argument that its representations regarding the Incentive Compensation Ban were not material, Stevens-Henager points to the Department's past conduct, including its execution of Participation Agreements with other institutions despite credible allegations of non-compliance with the Incentive Compensation Ban.

Stevens-Henager further relies on the testimony of the Department's 30(b)(6) designee who, by Stevens-Henager's characterization, stated that "no school was denied participation solely based on Incentive Compensation Ban violations" and that "the Department could not say that it would have refused to enter Participation Agreements with [Stevens-Henager] had it known of PD 85R." *Id*. at 30. Given this testimony, Stevens-Henager argues that a jury verdict for the United States would necessarily be founded on speculation. *Id*.

i) Materiality Standard

"[A] misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." *Escobar*, 579 U.S. at 192. "Materiality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question." *Janssen*, 949 F.3d at 539 (citing *Long v. Ins. Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982)). The FCA itself defines materiality as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). But "the mere fact 'the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment' is not enough, standing alone, to render a misrepresentation material." *Sorenson*, 48 F.4th at 1151-52 (citing *Escobar*, 579 U.S. at 194). "Likewise, the mere fact the Government could opt not to pay if it knew about a defendant's noncompliance does not, in itself, establish materiality." *Id*.

The Supreme Court recently discussed the materiality requirement under the FCA in *Escobar*, in which it clarified that "rather than directing courts to focus exclusively on a reasonable person—as they would under a purely objective analysis—or exclusively on the mindset of the misrepresenter—as they would under a purely subjective analysis—*Escobar* focuses the

materiality inquiry on the likely reaction of the recipient." *Janssen*, 949 F.3d at 541. Thus, materiality is determined by reference to the actual or likely reaction of the *factual* recipient of the representations—in this case, the Department of Education—rather than the reasonable person as a legal fiction.

"[P]roof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id*. (citing *Escobar*, 579 U.S. at 194-95). Rather than zero in on any singular element to derive materiality, the Tenth Circuit has, in light of *Escobar*'s language, determined that a "holistic" inquiry is most appropriate in making materiality determinations. *Id*. at 541.

Elements in this "holistic" inquiry identified in *Escobar* and further expounded by the Tenth Circuit in *Janssen* include, but are not limited to, "(1) whether the Government consistently refuses to pay similar claims based on noncompliance with the provision at issue, or whether the Government continues to pay claims despite knowledge of the noncompliance; (2) whether the noncompliance goes to the 'very essence of the bargain' or is only 'minor or insubstantial;' and (3) whether the Government has expressly identified a provision as a condition of payment." *Id*. at 541 (quoting *Escobar*, 579 U.S. at 193 & n.5). "None of these factors alone are dispositive." *Id*. (citing *United States v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 831 (6th Cir. 2018)).

**Escobar *Element One.*** The first *Escobar* element considers the Government's past conduct, including its payment history with respect to similar claims despite knowledge of noncompliance. The Government's awareness of detailed allegations of noncompliance, unless coupled with some action, is taken by the Tenth Circuit to weigh in favor of immateriality. *Id*. at 542 & n.12. Contrary to the Government's apparent position, the Government need not have actual

knowledge of the violations before an inference of immateriality can be drawn from Government inaction. *Janssen*, 949 F.3d at 542 n.13.[4]

Both *Escobar*, *see, e.g.*, 579 U.S. at 195-96, and *Janssen* emphasize and use the "payment of claims" as the exemplar or typical indicator of materiality. *Janssen*, 949 F.3d at 542 n.13. However, some other governmental remedial actions may also give rise to an inference of materiality—particularly where such remedial action does more than merely police noncompliance, *id*. at 543, but, for example, disgorges previously disbursed funds or is punitive in nature. Such actions may give rise to an inference that, had the Department known about the violations before entering into a Participation Agreement, it would have declined to disburse the funds in the first place, rather than seek post-execution remedial action.

This is consistent with the position taken by the Ninth Circuit in *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1022 (9th Cir. 2018), in which it concluded that "[a] full examination of the Department's past enforcement habits in similar cases, therefore, reveals that a reasonable trier of fact could find that Defendant's violations of the incentive compensation ban were material," even though the Department failed to limit, suspend, or terminate schools' access to federal student aid in 32 cases in spite of Incentive Compensation Ban violations. *Id*. at 1020-22.

**Escobar *Element Two.*** The second element looks to a number of factors, including the sort of violations at issue, the scope of noncompliance, and defendants' conduct in attempting to

---

[4] Doing "nothing in response" to credible allegations of Incentive Compensation Ban violations, or total "inaction," beyond merely investigating such allegations, may suggest immateriality. *Janssen*, 949 F.3d at 542. However, the court reiterates its previous holding, *see Brooks II*, 305 F. Supp. 3d at 1304 n.16, that rescinding payment contracts or refusing to pay are not the *only* Government reactions to alleged violations that may speak to materiality.

obfuscate such noncompliance. "[M]inimal aspects" of alleged misconduct, or noncompliance with a regulatory requirement that is "minor or insubstantial," suggest immateriality. *Janssen*, 949 F.3d at 543. On the opposite side of this ledger are instances where the alleged noncompliance goes to the "essence of the bargain." *Id*. Thus, *Escobar* Element Two acknowledges that some kinds of noncompliance are more material than others.

But *Escobar* and *Janssen* suggest that the "essence of the bargain" may be inferred not only from the sort of noncompliance but also the scope of noncompliance and the degree to which it is systemic in nature within the relevant institution. In other words, whether noncompliance occurs occasionally, in some sporadic fashion—perhaps "limited" rather than a "wholesale," institution-wide failure, *id*. at 545—goes to whether an FCA plaintiff has demonstrated "sufficiently widespread deficiencies that they would likely affect the Government's payment decision." *Id*. at 543. Built into this calculus is the assumption that the Government is less likely to contract with or disburse funds to institutions that practice widespread noncompliance of many sorts.

Element Two also considers whether the Government has at its disposal, as an alternative to the FCA, an "administrative scheme for ensuring that [institutions] remain in compliance and for bringing them back into compliance when they fall short." *Id*. (quoting *U.S. ex rel. Conner v. Salina Regional Health Ctr., Inc.*, 543 F.3d 1211, 1220 (10th Cir. 2008)). Where this is the case, immateriality is properly inferred. But even where alternative administrative procedures exist,

courts nonetheless consider whether "sufficiently widespread deficiencies" exist, such that the Government's payment decision may have nevertheless been affected. *Id.*[5]

**Escobar *Element Three.*** The third *Escobar* element considers whether the Government has expressly required compliance with some regulatory or other requirement as a condition of payment. In evaluating this element, courts ask whether the thing at issue is actually and expressly enumerated by the Government as a condition of payment, rather than simply being included within "generic regulatory requirements." *Id*. at 544-45. As *Escobar* makes clear, "when evaluating materiality under the [FCA], the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Sorenson*, 48 F.4th at 1152 (citing *Escobar*, 597 U.S. at 194-95).

ii) Materiality of the Instant Representations

**Escobar *Element One Applied.*** Stevens-Henager argues that the Government cannot establish materiality because the Department executed Participation Agreements with numerous institutions despite credible allegations of regulatory violations *and* can point to only one instance "in which [it] revoked a provisionally certified institution's [i.e., Maison D'Esthetique's] participation in the Title IV programs" upon discovery of Incentive Compensation Ban violations. Defs.' Mot. at 31-32.

The Government responds by asserting that, in addition to revoking the provisionally certified Participation Agreement of Maison D'Esthetique, it also rejected a Participation

---

[5] Additionally, *Janssen* suggests that evidence of a cover-up by FCA defendants signals materiality, notwithstanding "the minor effects of the alleged misconduct." *Id.* at 544 (citing *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 638 (4th Cir. 2015), and *Triple Canopy, Inc.*, 857 F.3d 174 (4th Cir. 2017)).

Agreement application by the Medical and Technical Institute in 2006 on the basis of its owners' prior violations of the Incentive Compensation Ban. The Government also points to its recovery of over $100 million from approximately 37 schools through a combination of fines, administrative settlements, and FCA settlements relating to Incentive Compensation Ban violations." Government Opp'n Mem. at 16, 31-32.

As to the Government's response that it rejected one Participation Agreement and revoked another, Stevens-Henager replies by arguing that these two instances cited by the Government do not tend to show materiality because Incentive Compensation Ban violations were not the only Title IV violations at issue in those cases. Instead, the Government "terminated eligibility in instances when institutions with Incentive Compensation Ban violations have engaged in student aid fraud." Defs.' Reply Mem. at 2-3. While it is true that Incentive Compensation Ban violations played only a partial role in these two Participation Agreement decisions of the Government, the court is hesitant to lean too far into the province of the jury by weighing competing inferences regarding the Government's motivation, or otherwise divvy out materiality between multiple possible rationales that may have driven the Government's decision.

As to the Government's response that it recovered fines and settlements, Stevens-Henager argues that post-Participation Agreement-execution corrective action by the Department against Incentive Compensation Ban-violating schools "confirms that Incentive Compensation Ban compliance is *immaterial to its decision to execute Participation Agreements*," Defs.' Reply Mem. at 9 (emphasis in original), since it can always simply take post-execution action later. Stevens-Henager is correct that the Government's election to enter into Participation Agreements with some

institutions, despite detailed allegations of Incentive Compensation Ban violations, necessarily "suggests immateriality." *Janssen*, 949 F.3d at 542.[6]

But the Tenth Circuit has not gone so far as to explicitly adopt the position taken by other courts that such inaction is independently "sufficient to establish the lack of materiality." *See United States ex rel. Thomas v. Black & Veatch Special Projects Corp.*, 820 F.3d 1162, 1174 (10th Cir. 2020). After all, no single factor of the *Escobar* analysis is dispositive. *Janssen*, 949 F.3d at 541. And this court has previously determined that past "corrective action" taken by the Department against other institutions for Incentive Compensation Ban violations could "support the conclusion that [Stevens-Henager's] promises to comply with the Incentive Compensation Ban were material," *Brooks II*, 305 F. Supp. 3d at 1304 n.16, regardless of whether or not fines and settlements are, as the Government argues, literally the functional equivalent to revoking funds or refusing to pay claims in full. *See* Government Opp'n Mem. at 30 (citing *Rose*, 909 F.3d at 1020). Under *Escobar* Element One, the court is thus satisfied that reasonable minds could disagree in resolving the inferences to be drawn from the Government's post-execution corrective action.

***Escobar Element Two Applied.*** This element considers issues such as the type of violations at issue and the scope of noncompliance. As the Government argues, the regulatory noncompliance at issue here consists of more than mere stray inaccuracies—far from "uncertain effects on a factor of a factor." *Janssen*, 949 F.3d at 544. Stevens-Henager's alleged violations were company-wide, institutional, systemic, and definitionally "widespread," *id*. at 543, as opposed to "minor or insubstantial." *Escobar*, 579 U.S. at 194.

[6] Stevens-Henager is also correct that immateriality is supported by the statements of the Department's 30(b)(6) designee conceding that revocation or denial of recertification were not "ordinary remed[ies]," ECF No. 533-11 at 164:18-165:2, including under then-existing policy.

The "widespread" nature of the violations gives rise to an inference that they would likely affect the Government's payment decision, particularly given the size of the alleged monetary awards at issue. *See Rose*, 909 F.3d at 1022. Also, much like the Ninth Circuit in *Rose*, this court previously has determined that Congress enacted the Incentive Compensation Ban because it determined that violative payments "were associated with serious program abuse and high loan default rates," *Brooks II*, 305 F. Supp. 3d at 1303. This gives rise to an inference that Incentive Compensation Ban compliance may go to the essence of the bargain underlying the execution of the Participation Agreements and be integral to the Government's payment decision. *Accord Conner*, 543 F.3d at 1222. While certainly not dispositive, analysis of *Escobar* Element Two tends to support a conclusion that the allegedly widespread Incentive Compensation Ban violations at issue could be material.

***Escobar Element Three Applied.*** This element considers whether the Government has expressly required compliance as a condition of payment. *Escobar*, 579 U.S. at 194. As this court has already acknowledged, "the Government expressly conditioned Stevens-Henager's participation in Title IV programs on the school promising to comply with the Incentive Compensation Ban." *Brooks II*, 305 F. Supp. 3d at 1302. This express conditioning differs from the facts at issue in *Janssen*, where the regulatory conditions at issue were not "directly address[ed]" in the program terms and the payment of Government funds was apparently conditioned on compliance with "generic regulatory requirements" instead. *Janssen*, 949 F.3d at 544. While the express conditioning of payment of funds on compliance with certain regulatory

requirements is far from dispositive, the court is satisfied that *Escobar* Element Three weighs in favor of the Government.[7]

* * *

In sum, the "holistic" materiality analysis mandated by the Tenth Circuit, *Janssen*, 949 F.3d at 541, leads to the conclusion that there is a dispute of material fact regarding the issue of materiality. While Stevens-Henager has marshaled strong evidence for its position on materiality (which may very well find significant persuasive power with a jury), the Government has adduced admissible record evidence giving rise to the contrary inference. Because reasonable minds could differ on the question of materiality, entry of summary judgment on materiality is inappropriate.

**B. Causation**

As an alternative ground for the entry of summary judgment against the Government on its FCA claims, Stevens-Henager argues that "the United States cannot show that [Stevens-Henager's] alleged failure to disclose [its] alleged Incentive Compensation Ban violations actually caused" the Department to execute the Participation Agreement. Defs.' Mot. at 33. While "causation is generally a jury question," *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975); *accord Hayes v. Mich. C. R. Co.*, 111 U.S. 228, 241 (1884), evidence as to causation can be "too speculative" to be presented to the jury, *Valdez v. Macdonald*, 66 F.4th 796, 833 (10th Cir. 2023). Stevens-Henager

[7] Stevens-Henager also argues that this court should look to the terms of the E-App, rather than the Participation Agreement, in its materiality analysis. While the E-App does not identify Incentive Compensation Ban compliance as a prerequisite for the payment of funds, Defs.' Mot. at 32, Stevens-Henager fails to show that the Participation Agreement is not the document governing the transaction and the payment of funds. Similarly, it fails to show that execution of both the E-App and Participation Agreement is not a prerequisite—part of the "causal chain"—leading to the disbursement of funds, rendering false statements in *either* actionable. *See Hendow*, 461 F.3d at 1174. "[I]t is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork." *Id*. at 1177; *accord Main*, 426 F.3d at 917.

argues that the Department, through its 30(b)(6) designee, testified "that it could not say it would have refused to enter Participation Agreements with Stevens-Henager in 2007 and 2010 even had it known about PD 85R." Defs.' Mot. at 34. This testimony by itself, Stevens-Henager argues, "precludes the United States from establishing causation" and would demand that a jury speculate in order to find in the Government's favor. *Id*. The court disagrees.

When asked if she would say whether the Department, knowing about Stevens-Henager's compensation plan, would have declined to enter into the 2007 and 2010 Participation Agreements, the Department's designee gave a somewhat inconsistent answer. Speaking as of the day of her testimony, she said that the Department "would not have entered into a [Participation Agreement]." ECF No. 533-30 at 282:12-14. However, as of 2002, she could not say definitively whether the Department would have declined to enter into the Participation Agreement with Stevens-Henager. *Id*. at 282:5-11.

It is unclear whether the designee's reference to 2002 refers to the Hansen memorandum and a policy extending into 2007 and 2010,[8] or whether it should be understood in isolation—meaning that her answer was generally unresponsive as not answering the question as it related to the execution of the 2007 and 2010 Participation Agreements. And the Government's opposition memorandum does not meaningfully articulate its arguments in response to Stevens-Henager's contentions. *See* Government Opp'n Mem. at 32. While unclear, the court concludes that the

[8] The Hansen Memorandum states that the Department's "preferable approach [was] to view a violation of the incentive compensation prohibition as not resulting in monetary loss to the Department" because "[i]mproper recruiting does not render a recruited student ineligible to receive student aid funds for attendance at the institution on whose behalf the recruiting is conducted." Government Opp'n Mem. at 15. Like the Seventh Circuit, however, this court is cautious to read too much into the Memorandum, which does not authoritatively construe any regulation. *Main*, 426 F.3d at 917.

designee's testimony is insufficient to remove the issue of causation from the province of the jury, nor would it be "necessarily contradict[ed]" by a verdict in favor of the United States. Defs.' Mot. at 34. The testimony is confusing, and it is altogether best left to a jury to draw out the meaning of the designee's statement and testimony, as well as inferences surrounding the factual question of causation.

Stevens-Henager's additional arguments as to causation, for the most part, overlap with arguments made on materiality. Stevens-Henager argues that the Department's past conduct or policy show that it would have executed the Participation Agreement in any case, or that the E-App, which did not refer to the Incentive Compensation Ban regulations, should be understood as setting the transactional terms. But for the same reasons set out above in relation to materiality, reasonable jurors could disagree regarding whether Stevens-Henager's representations regarding Incentive Compensation Ban compliance in the Participation Agreement actually caused the Government to disburse funds it otherwise would have withheld. Thus, there is an evidentiary basis to dispute whether the Department would have approved Stevens-Henager to participate in Title IV programs.

**C. Common-law Claims**

The final issue raised by Stevens-Henager's motion relates to its entitlement to summary judgment as to the Government's common-law claims for unjust enrichment and payment by mistake. Stevens-Henager argues that *Brooks III* supports a conclusion that the Department cannot show that it would not have made Title IV funds available to Stevens-Henager's students had it known about the college's compensation plan. *See Brooks III*, 359 F. Supp. 3d at 1105. However, the portion of *Brooks III* identified by Stevens-Henager is inapt. There, this court discussed the sufficiency of the Government's allegations "to the extent that they are based upon its G5

certification theory of liability." *Id.* at 1106.[9] The Government's claims based on a G5 certification theory of liability were dismissed in *Brooks III*, and the Government's common-law claims do not rely on a such a theory. Instead, these claims turn on whether Stevens-Henager made false statements on which the Department relied in entering into the 2007 and 2010 Participation Agreements. These claims thus turn on the same analysis as is discussed above regarding the FCA claims—including elements of falsity, factual reliance, and causation. For the same reasons as discussed above, summary judgment on the common-law claims is inappropriate.

## CONCLUSION

For the foregoing reasons, the United States' Motion for Partial Summary Judgment, ECF No. 530, is **GRANTED IN PART AND DENIED IN PART**. The Government is entitled to summary judgment as to Defendants' affirmative defense of advice of counsel regarding the 2007 Participation Agreement. The Government's motion is denied in all other respects. Defendants' Motion for Summary Judgment, ECF No. 533, is also **DENIED**.

DATED March 29, 2024.

BY THE COURT

Jill N. Parrish
United States District Court Judge

[9] The G5 certification theory of liability refers to a theory of FCA liability previously pursued by the Government. A student applies for financial aid by completing a free application. A school uses the information in the application to create a financial-aid package for the student. The student can accept all or part of the package. If the student accepts a Pell Grant, a Direct Loan, or both, the student's school creates an electronic origination record. The school then submits the record to the Department of Education using a computerized database called the Common Origination and Disbursement System. If the information supplied by the school is consistent with the Department of Education's information, the Department of Education makes funds available for the school to draw down from a computerized system known as G5. *Brooks III*, 359 F. Supp. 3d at 1099.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE,<br><br>Plaintiffs,<br><br>v.<br><br>STEVENS-HENAGER COLLEGE, INC., and CENTER FOR EXCELLENCE IN HIGHER EDUCATION,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE; GRANTING DEFENDANTS' FIRST MOTION IN LIMINE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION IN LIMINE; AND DENYING DEFENDANTS' THIRD MOTION IN LIMINE**<br><br>Case No. 2:15-cv-00119-JNP-DAO<br><br>District Judge Jill N. Parrish |

Intervenor-Plaintiff the United States and Defendants Stevens-Henager College and Center for Excellence in Higher Education are preparing for trial set to begin on April 21, 2025. Before the court now are four motions in limine—one filed by the United States, ECF No. 592, and three filed by Defendants, ECF Nos. 593, 594, 595. For the reasons below, the court GRANTS the United States' motion, GRANTS Defendants' first motion, GRANTS IN PART AND DENIES IN PART Defendants' second motion, and DENIES Defendants' third motion.

**ANALYSIS**

Since the court writes for the parties, it is not necessary to recount the factual background of this case. The court begins with Defendants' motions because resolution of the United States' motion depends on the resolution of Defendants' second motion.

## I. Defendants' Motions

### A. Motion to Exclude Evidence of Non–PD 85R Payments (Motion in Limine #1)

As the parties are well aware, this False Claims Act ("FCA") case centers on Defendants' payments to admissions consultants under Procedure Directive 85R ("PD 85R"), a specific policy at Stevens-Henager College in place from 2006 to 2011 for compensating admissions consultants based in part on the number of students who completed at least one year of their programs. The parties agree that the College's on-the-ground practice conformed to PD 85R, and this court has already determined (1) that PD 85R violated the Incentive Compensation Ban ("ICB"), a regulation prohibiting compensation based on the number of students who enroll, because it relied not only on completions but also enrollments, and (2) that PD 85R did not fall within the boundaries of Safe Harbor E, a since-eliminated exception allowing compensation based on the number of students who completed at least one year of their programs (i.e., completion bonuses). *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 174 F. Supp. 3d 1297, 1305–06 (D. Utah 2016).

Now, the purpose of trial is to determine whether the government can satisfy its burden under the FCA of showing that Stevens-Henager College knowingly made a false promise to comply with the ICB, that the College's promise to comply was material to the decision of the Department of Education to execute program participation agreements with the college, and that the College's promise to comply caused the Department to execute the participation agreements. *See United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 2:15-cv-00119, 2024 WL 2857885 (D. Utah Mar. 29, 2024). The knowledge issue boils down to whether Stevens-Henager College knew that PD 85R violated the ICB yet continued to award bonuses under it anyway.

In its first in limine, Defendants seek to preclude the government from referencing or putting on evidence of non–PD 85R compensation, bonuses, or other incentive payments. This evidence, as Defendants see it, falls into two categories: non-completion bonuses and prizes allegedly awarded by the manager of the relators in this action, and non-completion bonuses awarded to Stevens-Henager College's directors of admissions.[1] In Defendants' view, such evidence is irrelevant given the parties' agreement that this case centers on the legal import of the PD 85R bonuses, exceeds the parties' Joint Stipulation to Narrow Discovery, ECF No. 488 (Joint Stipulation), and is unduly prejudicial, confusing, and misleading.

The Federal Rules of Evidence broadly consider evidence relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence." FED. R. EVID. 401. According to the government, the evidence of non-completion bonuses, prizes, and awards is relevant mostly because Stevens-Henager College's knowledge that these forms of compensation were unlawful makes it more likely that it knew that PD 85R compensation was unlawful.

The court is not persuaded. Evidence that the College knew that the non–PD 85R forms compensation—which appear to have obviously violated the ICB—does not bear on whether the College knew that PD 85R—which arguably could have been lawful due to Safe Harbor E—was also unlawful. The College had sought legal advice regarding PD 85R, and until this court's 2016 ruling on Defendants' motions to dismiss, a genuine question remained as to whether PD 85R fell

[1] Originally, Defendants also sought to exclude a third category of non–PD 85R compensation: bonus plans used at Independence University, a separate educational institution not subject to the ICB. During the final pretrial conference, the government stated that it does not plan to introduce evidence of compensation at Independence University, mooting that portion of Defendants' motion in limine.

within the safe harbor. *Stevens-Henager*, 174 F. Supp. 3d at 1305. Knowledge about the unlawfulness of compensation schemes entirely unrelated to PD 85R has no probative value for the issue in this case.

That leaves only one other basis for relevance in the government's case in chief: propensity. The logic goes, if Stevens-Henager College was a bad actor in handing out non-completion bonuses, prizes, and awards, then it is more likely to have been a bad actor in compensating admissions consultants under PD 85R. Rule 404(b), however, prohibits propensity evidence of this sort. FED. R. EVID. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

The government resists, arguing that the evidence of non–PD 85R compensation is relevant for rebutting Defendants' good-faith defense. The court is not convinced; once again, the non–PD 85R compensation was entirely separate and carried different legal implications, so Defendants' state of mind with respect to the non–PD 85R compensation does not illuminate Defendants' state of mind with respect to PD 85R compensation.

But even if the evidence is relevant and otherwise admissible, the court finds that its minimal probative value would be substantially outweighed by the danger of unfair prejudice to Defendants and the danger of wasting time with unnecessary minitrials. *See* FED. R. CIV. P. 403. Throughout the government's involvement in this case over the past 11 years, it has consistently signaled to Defendants that it was concerned only with PD 85R compensation, not other forms of incentive compensation (even though it was aware of those other forms of compensation). First, it intervened in the relators' action only as to the claims that PD 85R violated the ICB. ECF Nos. 23, 41. When given an opportunity to amend its claims after the court dismissed the non-intervened

portions of the relators' action, ECF No. 468, at 60, it could have added claims based on non–PD 85R compensation but declined to do so. Then, when asked by Defendants in an interrogatory to "[i]dentify the facts known [to it] about each Defendant's compliance or noncompliance with . . . [the ICB]," the government failed to indicate in any way that it considered non–PD 85R compensation to violate the ICB. ECF No. 630-1, at 17–19. On top of that, the government entered into a Joint Stipulation, which stated that "[t]he dispute between the United States and the Defendants . . . centers upon the legal import of the completion bonuses" and accordingly forbade the parties from "attempt[ing] to introduce evidence for any purpose in this case that contravene[d] th[e] Stipulation." Joint Stipulation at 2. Given these signals, Defendants reasonably expected that trial would concern PD 85R compensation and not other forms of incentive compensation. It would be deeply unjust to force Defendants on the eve of trial to prepare to defend against a whole swath of evidence that they reasonably expected was no longer relevant to the action.

Allowing the evidence of non–PD 85R compensation would also waste time and distract the jury with minitrials. Any probative value the non–PD 85R compensation may have for the issues remaining in the case rests largely on a determination that those forms of compensation were also unlawful and that Defendants knew they were unlawful. They likely were unlawful—patently unlawful, even—but the government would need to prove their unlawfulness at trial, requiring numerous minitrials for each type of non–PD 85R compensation. Even accepting the government's view that it need not prove that non–PD 85R compensation was unlawful, that what matters is merely Defendants' efforts (or lack of efforts) to ascertain its lawfulness, it would be difficult to avoid wading into minitrials. Especially given the government's own recognition that it "does not intend to dwell at trial on these other violations of the ICB," ECF No. 600 at 4, the court deems it proper to exclude the non–PD 85R evidence.

For these reasons, the court GRANTS Defendants' motion to exclude evidence about non–PD 85R compensation.

**B. Motion to Exclude Evidence of FCA Settlements (Motion in Limine #2)**

As noted above, one issue to be resolved at trial is whether the promise to comply with the ICB was material to the decision of the Department of Education to execute program participation agreements with Defendants. To meet its burden on materiality, the government plans to introduce evidence of FCA settlements involving allegations of ICB violations entered into by other colleges and universities. Defendants seek to exclude this evidence on three grounds: irrelevance, risk of unfair prejudice, and Rule 408's bar on settlement agreements.

First, Defendants argue that the evidence of settlements by other institutions is irrelevant because the evidence does not show that ICB violations had actually occurred at those other institutions or even that the Department of Education believed that ICB violations had occurred. Moreover, Defendants press, the claims underlying those settlements were brought by private litigants (relators) or the Department of Justice, so they have no bearing on how the Department of Education viewed ICB allegations in the context of executing program participation agreements.

As the court sees it, whether ICB violations had actually occurred at those other institutions is beside the point; what matters is whether the Department of Education believed that violations had occurred. In the court's view, some of the evidence does suggest that the Department believed ICB violations had occurred. *See, e.g.*, ECF No. 597-1, at 2 ("With respect to the . . . School, the Government Complaint asserts claims . . . alleging that throughout the Covered Period, the . . . School (1) paid incentive compensation to its enrollment personnel based on their success in securing enrollments."). And as this court has already explained, "the fact that the Department of Education has taken corrective action against other schools based on ICB

violations . . . support[s] the conclusion that Stevens-Henager [College]'s promises to comply with the ICB were material." *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 305 F. Supp. 3d 1279, 1304 n.16 (D. Utah 2018).

This reasoning, however, applies only to the settlement agreements in those cases where the government alleged only ICB violations and intervened to litigate its allegations. The settlement agreements in cases with no government intervention are irrelevant because they do not indicate how seriously the government took ICB allegations.[2] The settlement agreements in cases where the government alleged violations of the ICB among other rules or regulations are minimally probative because the government's choice to intervene could have been driven largely by the allegations of violations of the other rules; any probative value would be substantially outweighed by the inefficiencies of conducting a minitrial on the government's motivations in a given case with allegations of violations of multiple rules. And the settlement agreements in cases where the government intervened only late in the case (e.g., around the time of settlement) may be relevant, but determining their relevance would require minitrials to assess the level of the government's involvement in the settlement negotiations.

At the pretrial conference, the court ordered the parties to file a document placing the government's proposed exhibits into three categories: (a) no government intervention, (b) government intervention and ICB was one of several rules allegedly violated, and (c) government

[2] During the pretrial conference, counsel for the government observed that the FCA allows the government to dismiss or settle an FCA action notwithstanding any objection from the relator. 31 U.S.C. § 3730(c)(2). So, the government argues, its lack of intervention in a given suit brought under the Act by a relator should be an indication that it approves of the action. In the court's view, the government's lack of intervention does not provide a basis to infer either approval or disapproval of the action. That is, the government's lack of intervention ordinarily should be no basis to infer either materiality or immateriality.

intervention and ICB was the only rule allegedly violated. After reviewing the parties' filings, the court determines that only PX093 and PX106 fall into the third category and are therefore relevant under the logic outlined above. PX086 and PX110 may be relevant, but it would be unwieldy to determine because their relevance because their dockets contain mostly sealed entries and the court would need to conduct a minitrial for each, risking juror confusion and wasting time during an already-tight trial schedule. The remaining exhibits are not relevant.

Separately, Defendants' argument distinguishing the Department of Justice from the Department of Education in this context is easy to reject: the Department of Education is responsible for executing program participation agreements, and when it wishes to pursue an enforcement action against an allegedly noncompliant institution, it refers the case to the Department of Justice. So the references in the settlement agreements to the Department of Justice rather than the Department of Education are of no consequence.

Next, Defendants argue that the evidence of settlements with other institutions carries a high risk of prejudice because a jury could improperly infer from the amounts of the settlements that ICB violations must be material or because the settlement amounts could influence the jury's determination on the amount of damages to award. These concerns are valid, and redacting the settlement agreements to hide the settlement amounts would cure the risk of unfair prejudice.

Finally, Defendants invoke Rule 408, which excludes evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim." FED. R. EVID. 408(a). The Rule explicitly allows the court to admit such evidence "for another purpose." FED. R. EVID. 408(b). This Rule, designed to encourage parties to settle their disputes without litigation, bars evidence "only when the evidence is offered to show the following inference: that because a settlement offer was made,

the offeror must be liable, because people don't offer to pay for things for which they are not liable." *In re Donohoe*, 180 B.R. 491, 494 (Bankr. N.D. Ohio 1995). In other words, the Rule "does not . . . cover compromises and compromise offers that do not involve the dispute that is the subject of the suit." *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363 (10th Cir. 1987). The settlement agreements that Defendants challenge do not concern the dispute that is the subject of this action, so Rule 408 does not bar their admission.

For these reasons, the court GRANTS IN PART AND DENIES IN PART Defendants' motion to exclude evidence of FCA settlements with other institutions insofar as that evidence is used to establish materiality. The government may introduce PX093 and PX106, provided any settlement amounts are redacted, but no other exhibits containing settlement agreements with other institutions.

**C. Motion to Find Waiver of Attorney-Client Privilege (Motion in Limine #3)**

A motion in limine is an appropriate vehicle to resolve pretrial disputes over whether a privilege exists. FED. R. EVID. 104(a). Here, Defendants argue based on four disclosures by the United States during discovery that the United States has waived attorney-client privilege as to not only those four documents but also the entire subject matter of ICB enforcement by the Department of Education. These four documents are the following:

- Exhibit 16o, ECF No. 535-15—an email exchange from 2012 between Department of Justice attorneys, the Office of General Counsel of the Department of Education, and the Office of the Inspector General at the Department of Education addressing whether Stevens-Henager College's incentive compensation scheme was legal and whether the case should be reviewed for violations of the FCA

- Exhibit A, ECF No. 597-12—email exchange between the then–deputy general counsel for the Postsecondary Office of the Department of Education and several others concerning what conduct the ICB did and did not cover in the context of an ongoing enforcement action against two educational institutions
- Exhibit B, ECF No. 597-13—an email exchange in which several individuals assembled questions to assist the then–deputy general counsel for the Postsecondary Office of the Department of Education to prepare for negotiations with an educational entity believed to have violated the ICB
- Exhibit C, ECF No. 597-14—an email chain recounting a determination in a proceeding concerning an unspecified educational institution, a determination that was subsequently communicated to that institution

The United States argues primarily that it did not waive any attorney-client privilege because the four documents on which Defendants' motion is based were not privileged in the first place.

As the court sees it, there is no meaningful dispute between the parties on the issue of attorney-client privilege. Defendants wish to explore the four exhibits and their topics at trial, and the government does not claim that those exhibits are privileged. Accordingly, the court DENIES this motion as moot, noting, however, that if the government claims attorney-client privilege for a document similar to one of those four during trial, it will be bound by its admission here that the attorney-client privilege does not attach. Whether a given document is similar enough for these purposes is a determination the court will make at the appropriate time during the course of trial.

**II. The United States' Motion**

Given the court's ruling denying in part Defendants' motion to exclude evidence of FCA settlements with other institutions, the government seeks to preclude Defendants from introducing

evidence of or making any reference to the FCA's treble-damages and civil-penalties provisions, 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.3(a)(9), on the grounds that such evidence is irrelevant to the jury's role of deciding liability and determining the amount of damages. Not only is such evidence irrelevant, the government presses, but allowing it could also prejudice the government by encouraging the jury to reduce its damages award. In Defendants' view, the evidence of FCA settlements with other institutions unaccompanied by any reference to the statute's treble-damages and civil-penalties provisions risks swaying the jury to award more damages than it otherwise would. Their argument goes, the settlement amounts with other entities reflect the statute's treble-damages and civil-penalties structure (i.e., they were negotiated against this backdrop) and so are higher than what they would have been if the statute did not provide for treble damages and civil penalties. But without knowledge of the statute's structure, they say, a jury might see the higher settlement amounts and increase its own award of damages. Separately, Defendants also argue that testimony about or reference to the statute's structure is relevant to the issue of their knowledge of the ICB violation—that is, the statute's treble-damages and civil-penalties provisions bear on Defendants' decision to seek attorney advice and so undercut the government's claim that Stevens-Henager College knowingly made a false promise to comply with the ICB.

The court is ultimately persuaded by the government's view on relevance. Initially, note "the general rule that it is error to instruct a jury as to treble damages, attorneys fees, or other court-determined awards that might pervert the jury's damages determination." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231, 2007 WL 851868, at *2 (D.D.C. Mar. 14, 2007). In the FCA context specifically, the Supreme Court has explained that "if [the jury] finds liability, its instruction is to return a verdict for actual damages, for which the court alone then determines any multiplier, just as the court alone sets any separate penalty." *Cook County v. United*

*States ex rel. Chandler*, 538 U.S. 119, 132 (2003). Therefore, "[t]estimony about treble damages or other penalties is not relevant to the jury's determination of liability or damages." *United States v. BlueWave Healthcare Consultants, Inc.*, No. 9:14-cv-00230, 2017 WL 11621328, at *2 (D.S.C. Nov. 20, 2017).

The court is also not persuaded that such testimony is relevant to the issue of Defendants' scienter in this case, or insofar as it is relevant to that issue, its probative value is substantially outweighed by the "risk that a jury could use knowledge of the trebling of damages and statutory penalties as an intimation to keep the damages at a low level, in view of the fact that the amount allowed by the jury would be multiplied by three." *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, No. 10-1094, 2017 WL 9889370, at *1 (D.D.C. Sept. 20, 2017). It would be contrary to the purpose of the trebling provision for the jury to reduce its award proportionately. After all, Congress provided for treble damages to permit the government to recover "the costs of investigation, detection, and prosecution, prejudgment interest, the consequential damages of fraud, and the costs of enticing relators to bring suit, all of which are implicated in FCA cases but none of which are otherwise provided for in the statutory scheme." *Miller*, 2007 WL 851868, at *2.

That said, Defendants' concern that the evidence of FCA settlements may encourage the jury to award greater damages than it otherwise would is legitimate. To remedy this concern, the court ORDERS the settlement amounts to be redacted on any settlement agreements that the government intends to introduce consistent with this order.[3] Accordingly, the court GRANTS the

[3] The court deems it proper not to redact the administrative-fine amounts, which are highly probative on the materiality issue due to their temporal proximity to the government's discovery of the violations.

United States' motion to exclude evidence about the FCA's treble-damages or civil-penalties scheme.

**CONCLUSION AND ORDER**

For the reasons above, the court

- **GRANTS** the United States' motion to exclude testimony about or reference to the FCA's treble-damages and civil-penalties provisions, ECF No. 592;
- **GRANTS** Defendants' motion to exclude evidence of non–PD 85R compensation, ECF No. 593;
- **GRANTS IN PART AND DENIES IN PART** Defendants' motion to exclude evidence of FCA settlements with other institutions, ECF No. 594—the government may introduce PX093 and PX106, provided any settlement amounts are redacted, but no other exhibits containing settlement agreements with other institutions; and
- **DENIES** Defendants' motion to find waiver of attorney-client privilege, ECF No. 595, as moot.

Signed April 15, 2025.

BY THE COURT

Jill N. Parrish
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. KATIE BROOKS and NANNETTE WRIDE,<br><br>Plaintiffs,<br><br>v.<br><br>STEVENS-HENAGER COLLEGE, INC., and CENTER FOR EXCELLENCE IN HIGHER EDUCATION<br><br>Defendants. | **JUDGMENT**<br><br>Case No. 2:15-cv-00119-JNP-DAO<br><br>District Judge Jill N. Parrish |

This action came before the court for a trial by jury. The issues have been tried, and the jury has rendered its verdict.

JUDGMENT IS ENTERED against the United States of America and in favor of the following Defendants:

- Stevens-Henager College, Inc.
- Center for Excellence in Higher Education

Signed May 2, 2025.

BY THE COURT

Jill N. Parrish
United States District Court Judge

Paul W. Shakespear (14113)
Cameron J. Cutler (15116)
Snell & Wilmer L.L.P.
15 W. South Temple, Ste. 1200
Gateway Tower West
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Email: pshakespear@swlaw.com
ccutler@swlaw.com

Steven M. Gombos (*pro hac vice*)
Gerald M. Ritzert (*pro hac vice*)
David A. Obuchowicz (*pro hac vice*)
Jacob C. Shorter (*pro hac vice*)
Gombos Leyton, P.C.
11350 Random Hills Road
Suite 400
Fairfax, VA 22030
Telephone: (703) 934-2660
Email: sgombos@glpclaw.com
gritzert@glpclaw.com

*Attorneys for Defendants*

**United States District Court**
**for the District of Utah**

| | |
|---|---|
| United States of America ex rel. Katie Brooks and Nannette Wride,<br><br>Plaintiffs,<br><br>vs.<br><br>Stevens-Henager College, Inc., et al.<br><br>Defendants. | DEFENDANTS' NOTICE OF CONDITIONAL CROSS APPEAL<br><br>Case No. 2:15-cv-00119-JNP-DAO<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Defendants Stevens-Henager College, Center for Excellence in Higher Education, College AmericaDenver, CollegeAmerica Arizona, California College San Diego, and Carl Barney (individually and collectively, "Defendants") conditionally cross-appeal to the United States Court of Appeals for the Tenth Circuit from the final judgment of the United States District Court for the District of Utah, in Case No. 2:15-cv-00119-JNP-DAO, entered on May 2, 2025, together with the interlocutory orders and rulings that produced the final judgment (ECF 658), including, but not limited to, those parts of the Court's memorandum opinions and orders denying Defendants'

motion for summary judgment, motions to dismiss Relators' Third and Fourth Amended Complaints, and motions to dismiss the Government's complaints in intervention (ECF Nos. 245, 468, and 569); those parts of the Court's order granting the United States' motion in limine (ECF No. 640); and the Court's ruling on Defendants' Rule 50 motion for judgment as a matter of law.

Defendants' cross-appeal is conditional and is pursued only to the extent the Tenth Circuit Court of Appeals reverses, vacates, or modifies any judgment or order entered by the district court as a result of an appeal filed by either Relators or the United States.

Dated: June 27, 2025

*s/Jacob Shorter*
Steven M. Gombos
Gerald M. Ritzert
David A. Obuchowicz
Jacob C. Shorter
Gombos Leyton, PC
11350 Random Hills Rd., Suite 400
Fairfax, VA 22030
T: 703.934.2660
E: sgombos@glpclaw.com
   gritzert@glpclaw.com
   dobuchowicz@glpclaw.com
   jshorter@glpclaw.com

*Attorneys for Defendants Stevens-Henager College, Inc., Center for Excellence in Higher Education, CollegeAmerica Denver, CollegeAmerica Arizona, California College San Diego, and Carl Barney*

**Certificate of Service**

I CERTIFY that I served the foregoing document via the court's CM/ECF electronic filing system on June 27, 2025, which will provide notice to all counsel of record.

/s/ Jacob Shorter